HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MAUREEN RIORDAN
Acting Chief, Voting Section
Civil Rights Division

ERIC NEFF
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE Room 8.139
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>STEVE HOBBS, in his official capacity as Secretary of State of the State of Washington,<br><br>Defendant. | CASE NO:<br><br>MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*. |

## MOTION TO COMPEL PRODUCTION OF RECORDS DEMANDED PURSUANT TO THE CIVIL RIGHTS ACT OF 1960

2

*United States of America v. Steve Hobbs*
Motion for Order to Produce

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................5

II.  BACKGROUND ........................................................................................7

    A.   Title III of the Civil Rights Act of 1960....................................7

    B.   The Attorney General Demanded Federal Election Records Under the CRA to Assess Washington's NVRA and HAVA Compliance……………………………………………………..……8

III. ARGUMENT………………………………………………………….10

    A. The United States is Entitled to an Order Compelling Defendant to Produce the Requested Documents under the CRA…………...10

    B. A State's Claims to Protecting Privacy Interests Are Not a Basis to Withhold the Information Requested…………………………….13

    C. A Motion to Compel Production is Appropriate, Necessary, and Grounded in Law…………………………………………………...15

IV.  PRAYER FOR RELIEF…………………………………………………..16

V.   CONCLUSION…………………………………………………………...17

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)……………………………………………………………………6, 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)…………………14

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)…………………………..6, 8, 13

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) ……………………………………………………………..14

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961)………………………..6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)……………………………14, 15

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963)……………………………..7, 17

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)……………………………………7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)………………………………passim

*Smith v. City of Jackson*, 544 U.S. 228 (2005)……………………………………16

**Statutes**

52 U.S.C. § 20701…………………………………………………………….passim

52 U.S.C. § 20703…………………………………………………………….passim

52 U.S.C. § 20704…………………………………………………………………..10

52 U.S.C. § 20501…….……………………………………………………….......8

52 U.S.C. § 20507……………………………………………………….8, 13, 15

52 U.S.C. § 21083……………………………………………………………passim

5 U.S.C. § 522a…………………………………………………………………10

Plaintiff, UNITED STATES OF AMERICA, by and through the Attorney General, pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701, *et seq.*, hereby moves this Honorable Court for an Order requiring Defendant, STEVE HOBBS, Secretary of State, to produce the documents requested by Plaintiff. The United States offers the attached Declaration of Maureen S. Riordan ("Riordan Decl."), and its accompanying Exhibits, in Support.

## I.   INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974)) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

1  a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d
2  867, 868 (5th Cir. 1963) (per curiam).

3        On September 8, 2025, the Attorney General, through her representative,
4  made a written demand to Steve Hobbs to produce certain Federal election records
5  covered by the CRA. *See generally* Compl. ECF 1; *see also* Riordan Decl., Exhibit
6  1, Dep't Ltr. to Sec'y Hobbs dated Sept. 8, 2025 ("Sept. 8 Letter"). That written
7  demand explained that the purpose was for enforcement of the list maintenance
8  requirements of the National Voter Registration Act ("NVRA") and the Help
9  America Vote Act ("HAVA"). *Id.* In a responsive letter sent on September 23, 2025,
10 Secretary Hobbs refused to produce the requested Federal election records. Riordan
11 Decl., Exhibit 2, Sec'y Hobbs Ltr. to Dep't dated Sept. 23, 2025 ("Sept. 23 Letter").
12 This litigation followed.

13       Pursuant to Section 305 of the CRA, the United States moves for an order
14 requiring Secretary Hobbs and Washington to produce the Federal election records
15 identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp.
16 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney*
17 *General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal
18 Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306
19 F.2d at 225. "All that is required is a simple statement by the Attorney General" after
20 making a written demand for Federal election records and papers covered by the
21 statute, explaining that the person against whom an order is sought has failed or
22 refused to make the requested records "'available for inspection, reproduction, and
23 copying…'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied
24 those requirements. Accordingly, the United States respectfully requests that the
25 Court issue an order requiring Defendant to produce the Federal election records
26 described in its written demand.

27
28

6

*United States of America v. Steve Hobbs*
Motion for Order to Produce

## II. BACKGROUND

### A. Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election, 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a Federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for Federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural

7

*United States of America v. Steve Hobbs*
Motion for Order to Produce

device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

**B.    The Attorney General Demanded Federal election records under the CRA to assess Washington's NVRA and HAVA compliance.**

On September 8, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Hobbs, an officer of election, regarding Washington's compliance with Federal list maintenance requirements. Sept. 8 Letter. The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for Federal elections. *See* 52

8

U.S.C. §§ 20507(a)(4)(A)-(B), 20507(i)(1), 21083(a)(1)(A). Assistant Attorney General Harmeet K. Dhillon, on behalf of the Attorney General, sent a letter to Secretary Hobbs on September 8, 2025 seeking information regarding Washington's compliance with federal election law based on a review of the U.S. Election Assistance Commission's biennial Election Administration and Voting Survey ("EAVS") report released in June 2025 ("2024 EAVS Report"). *See* Compl. ¶¶ 17-19, ECF 1; s*ee also* Sept. 8 Letter.

The September 8 Letter requested, among other information and documents, pursuant to Section 8(i) of the NVRA, a current electronic copy of Washington's computerized statewide voter registration list ("VRL"), which is required by HAVA. Sept. 8 Letter. In the September 8 Letter, the Department made an express written demand for the Federal election records in Washington's VRL pursuant to Section 303 of the CRA. *Id.* The demand reiterated that the electronic SVRL must be produced within fourteen days and contain "*all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA." *Id.* (emphasis in original).

The Department made clear in the September 8 Letter that the Attorney General and her representatives would comply with Federal privacy laws applicable to the demanded Federal election records. For example, the Department pointed out that in addition to the Privacy Act, the CRA provides:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Sept. 8 Letter (quoting 52 U.S.C. § 20704).

The September 8 Letter further explained, "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974…'" *Id.* (citing note to 5 U.S.C. § 522(a) and 52 U.S.C. § 21083(c)). In addition, the letter noted that any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency, such as the Department, that is carrying out its enforcement functions. *Id.* To facilitate Secretary Hobbs' safe transmission of the Federal election records, the Department provided instructions to use encrypted email or to send via the Department's secure file-sharing system. *Id.*

On September 23, 2025, Secretary Hobbs sent a letter refusing to produce the complete statewide voter registration list demanded in the Attorney General's September 8 letter, erroneously citing RCW 29A.08.710 and .720—statutes that govern only *public* disclosure requests and the commercial sale of voter data and are wholly irrelevant to disclosure to the federal government for official purposes. Sept. 23 Letter. Moreover, Secretary Hobbs erroneously asserted that Washington law (RCW 29A.08.710 and .720) prohibits disclosure of any voter file containing date of birth, driver's license number, or partial Social Security number—an argument that is plainly incorrect. The requested fields are mandated by federal law (HAVA) and explicitly required to be preserved and produced to the Attorney General under the Civil Rights Act of 1960 (52 U.S.C. §§ 20701, 20703), and federal law in any event preempts any conflicting state restriction.

### III.     ARGUMENT

**A.     The United States is entitled to an Order Compelling Defendant to produce the requested documents under the CRA.**

An order for production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was

10

directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's September 8 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of Federal election records, including the VRL and records of voter registration application within twenty-two months of a Federal election; (2) directing that demand to Secretary Hobbs, an officer of election as defined by Section 306 of the CRA;[2] (3) stating that the purpose of the demand is "to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA," Sept. 8 Letter; and (4) stating the basis for the request is based on a review of data that Washington reported in its response to the EAVS survey that was included in the biennial 2024 EAVS Report and to ascertain whether the responses are consistent with the reasonable list maintenance required by HAVA and the NVRA. Sept. 8 Letter.

Secretary Hobbs' refusal to provide the requested information and/or any attempt to limit the Attorney General to inspection only of Washington's VRL is

---

[2] Section 306 provides:

> As used in this title, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

1  insufficient to meet the CRA's requirements. Officers of election have no discretion
2  to limit the Federal election records or papers or the content of those records made
3  available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C.
4  § 20701 (referring to "all records and papers"). Nor do they have discretion to limit
5  the Attorney General solely to inspection, contrary to the statutory requirement of
6  "inspection, reproduction, and copying." 52 U.S.C. § 20703; *see also Gallion*, 187
7  F. Supp. At 855-56 (granting "the application for an order to require the *production*
8  of records for inspection, reproduction, and copying") (emphasis added). The United
9  States has discussed this point at length previously. *See United States v. Weber, et al.*
10 2:25-cv-09149-DOC-ADS (CDCA 2025), United States' Opp. to Mot. to Dismiss at
11 9-11, 14-17, ECF 63.

    Moreover, a redacted copy would undermine the investigative purposes of
Section 303 of the CRA. The Attorney General cannot assess compliance with
HAVA and the NVRA without the full, unredacted VRL and other requested Federal
election records pertaining to Washington's list maintenance efforts. HAVA
prohibits a state from processing a voter registration application without the
applicant's driver's license number, where an applicant has a current and valid
driver's license, or, for other applicants, the last four digits of the applicant's social
security number; for those lacking both identification numbers, the state must assign
a unique HAVA identifier. *See* 52 U.S.C. §§ 21083(a)(5)(A)(i)-(ii). Without the
unredacted data including those identification numbers, the United States cannot
evaluate the state's compliance with HAVA.

    Similarly, HAVA requires list maintenance to "be conducted in a manner that
ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. §
21083(a)(2)(B)(iii). Unredacted voter files, including the three identification
numbers described above, are needed to determine if the state has a reasonable
program of identifying and removing duplicate voter registrations. That is why
twenty-five states and the District of Columbia (including Washington) participate

1  in the Electronic Registration Information Center ("ERIC") and routinely share that
2  data with one another. *See United States v. Weber, et al.* 2:25-cv-09149-DOC-ADS
3  (CDCA 2025), United States' Opp. to Mot. to Dismiss at 16-17, 26, ECF 63.
4      The same unredacted Federal election records, including the VRL, are needed
5  to assess Washington's compliance with the NVRA. Section 8(a)(4) of the NVRA
6  requires each state to "conduct a general program that makes a reasonable effort to
7  remove the names of ineligible voters from the official lists of eligible voters…" 52
8  U.S.C. § 20507(a)(4). For example, use of unredacted voter data ensures that
9  matches to identify deceased voters are more accurate and complete.
10      Secretary Hobbs has rejected the United States's written demand pursuant to
11  the CRA to produce Washington's statewide VRL and other Federal election records.
12  Consequently, the United States respectfully requests that this Court issue an Order
13  requiring Secretary Hobbs and the State of Washington to immediately produce
14  those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313
15  F.2d at 868.

16      **B.    The CRA does not permit Defendant to withhold Federal elections
17  because of privacy concerns.**

18      Defendant have refused to produce the Federal election records demanded by
19  the Attorney General under the CRA because they contend that Washington's privacy
20  laws are controlling. The Supremacy Clause of the Constitution says otherwise. It is
21  a basic tenet of our Federal system that when Federal and state law conflict, the
22  federal law governs. *See* U.S. Const. art. VI. As this Circuit has explained, if a
23  Federal election law like the NVRA and state law "do not operate harmoniously in
24  a single procedural scheme for federal voter registration, then Congress has
25  exercised its power to 'alter' the state's regulation, and that regulation is
26  superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd
27  sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).
28      A South Carolina court recently confronted the same argument from an

individual voter seeking to enjoin state officials from cooperating with the Department. Addressing Federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Maureen Riordon as Ex. 3, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id*. at 10-11. The court reasoned,

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id*. § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id*.

*Id*. at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id*. at 11-12. For those reasons, *id.*, and the reasons previously briefed by the United States, *see See United States v. Weber, et al.* 2:25-cv-09149-DOC-ADS (CDCA 2025), United States' Opp. to Mot. to Dismiss at 23-29, ECF 63, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Gonzalez*, 677 F.3d at 394. Consequently, the Attorney

14

*United States of America v. Steve Hobbs*
Motion for Order to Produce

General is entitled to the Federal election records she has demanded from Washington under the CRA, notwithstanding any conflicting state privacy laws.

### C. The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining Federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Hobbs, as an officer of election for Washington, must produce the voter-registration lists and other Federal election records demanded by the Attorney General.[3] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain Federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only

---

[3] Although this Motion is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. *See* 52 U.S.C. §§ 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

15

*United States of America v. Steve Hobbs*
Motion for Order to Produce

file a "simple statement" describing its written demand for the Federal election records and explaining that Secretary Hobbs, acting as an officer of election for Washington, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order directing Secretary Hobbs and Washington to produce the Federal election records described in the Attorney General's written demand.

## IV.   PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff requests that this Court enter an Order directing Defendant to produce the demanded records. Plaintiff further requests this Court:

A. Order Defendant to produce an electronic copy of the Washington statewide Voter Registration List, to include each registrant's name, date of Birth, address, and as required by HAVA, the last four digits of the registrant's social security number, driver's license/state identification number or the unique HAVA identifier;

B. Order Defendant to produce the other documents demanded by the Attorney General to ascertain Defendant's compliance with federal law; specifically, the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.*, and the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C § 20901, *et seq.*;

C. Order Defendant to submit electronically to the Attorney General, Civil Rights Division Voting Section, within 5 (five) days of this order;

D. Order Defendant to produce all documents requested immediately; and

E. Grant such other and further relief as the Court may deem just and proper.

## V. CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendant to comply with the Attorney General's request for all Federal election records described in its September 8 Letter. Those records should be provided electronically to the United States within fifteen days, or within such time as this Court deems reasonable. *See Gordon*, 218 F. Supp. at 827 (deeming "fifteen days [a]s a reasonable time"). For the Court's convenience, a proposed form of order is provided with this filing.

17

*United States of America v. Steve Hobbs*
Motion for Order to Produce

| | |
|---|---|
| Dated: December 2, 2025 | Respectfully submitted, |
| | HARMEET K. DHILLON<br>Assistant Attorney General<br>Civil Rights Division |
| | MAUREEN S. RIORDAN<br>Acting Chief, Voting Section<br>Civil Rights Division |
| | */s/ Eric Neff*<br>ERIC NEFF<br>Trial Attorney, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>4 Constitution Square<br>150 M Street NE, Room 8.139<br>Washington, D.C. 20002<br>Telephone: (202) 704-5430<br>Email: Eric.Neff@usdoj.gov<br>Attorneys for the United States |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Eric V. Neff*
Eric V. Neff
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.139
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov

**CERTIFICATION OF WORD COUNT**

I hereby certify that I used Microsoft Word word count feature to confirm that the applicable body of this memorandum is 3809 words.

/s/ *Eric V. Neff*
Eric V. Neff
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.139
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov

*United States of America v. Steve Hobbs*
Motion for Order to Produce