1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MAUREEN RIORDAN
Senior Counsel, Voting Section
Civil Rights Division

ERIC NEFF
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.139
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

1

*United States of America v. Anthony Albence*
Declaration

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>STEVE HOBBS, in his official capacity as Secretary of State of the State of Washington,<br><br>Defendant. | CASE NO:<br><br><br>DECLARATION OF MAUREEN RIODAN IN SUPPORT OF THE MOTION FOR ORDER TO PRODUCE RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq.* |

<u>**DECLARATION**</u>

I, Maureen S. Riordan, declare, pursuant to 28 U.S.C. § 1746, that:

1.      I am currently a Senior Counsel to the Assistant Attorney General of the Civil Rights Division and oversee the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in support of the United States's motion, brought on by Motion for an Order to Compel for refusal to produce election registration records, pursuant to the Civil Rights Act codified at 52 U.S.C. § 20701, *et seq.*

2.      The National Voter Registration Act, 52 U.S.C. § 20501, *et seq.*, and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*, require each state to perform voter-list maintenance to ensure that only eligible voters remain on the statewide voter registration list. Under Section 11 of the NVRA and Section 401 of HAVA, the Attorney General is charged with the responsibility for enforcement of

the list maintenance requirements of both statutes. *See* 52 U.S.C. § 20510(a) and 52 U.S.C. § 21111. This enforcement responsibility has been delegated to the Civil Rights Division by Congress.

3.      One of the Justice Department's responsibilities is monitoring states' compliance with the requirements of the NVRA and HAVA, including the filing of enforcement actions for noncompliance.

4.      On September 8, 2025, the Civil Rights Division sent a request pursuant to 52 U.S.C. § 20507 to Secretary of State Hobbs, requesting, *inter alia*, an electronic copy of Washington's statewide voter registration list ("VRL"), containing all fields.

5.      The letter of September 8, 2025, also asked for the electronic copy of the statewide VRL specifically demanding that it include registrant's Driver's License number or last four digits of the social security number as required by HAVA for federal registration.

6.      The letter further explained that HAVA specifies that "the last four digits of a social security number…shall not be considered a social security number for purposes of Section 7 of the Privacy Act of 1974 (5 U.S.C. § 522a note)." 52 U.S.C. § 21083. The demand also instructed that any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. §2721(b)(1), is exempted, when the disclosure is for use by a government agency in carrying out the agency's enforcement authority, which the Department of Justice is now endeavoring to do.

7.      The letter also explained to Secretary Hobbs that the Attorney General would keep all data received secure and treat it consistently with the Privacy Act. The Justice Department's requests came with instructional information the statewide VRLs should be transmitted securely to the Justice Department by way of encryption.

*United States of America v. Anthony Albence*
Declaration

8.    The letter also informed the Secretary that the purpose of the demand for these records was to ascertain Washington's compliance with the list maintenance requirements of federal laws, specifically the NVRA and HAVA.

9.    The request specified a deadline for responses within 14 days of the letter.

10.    On September 23, 2025, Secretary of State Hobbs refused to provide the Attorney General with an electronic copy of Washington's statewide VRL, demanded pursuant to federal law.

11.    True and correct copies of the Justice Department letters dated September 8, 2025 and the response letter byt the Secretary dated September 23, 2025, are attached as Exhibits 1 and 2.

12.    A true and correct copy of the Order denying temporary injunction in *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) as cited in the Memorandum of Support is attached hereto as Exhibit 3.


I declare under the penalty of perjury that the above statements are true and correct. Executed on December 2, 2025.


Dated: December 2, 2025 at Washington, DC.


/s/ *Maureen Riordan*
Maureen S. Riordan

4
*United States of America v. Anthony Albence*
Declaration

# EXHIBIT 1



**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

September 8, 2025

<u>Via Mail and Email</u>

The Honorable Steve Hobbs
Secretary of State
PO Box 40220
Olympia, WA 98504-0220
steve.hobbs@sos.wa.gov;
secretaryofstate@sos.wa.gov

Re:      **Request for Complete Washington's Voter Registration List with All Fields**

Dear Secretary Hobbs:

  We write to you as the chief election official for the State of Washington concerning your State's compliance with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*  Please provide a copy of Washington's statewide voter registration list ("VRL") within fourteen days of the date of this letter.

  The electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA[1] to register individuals for federal elections.  *See* 52 U.S.C. § 21083(a)(5)(A)(i).

  We request Washington's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the NVRA. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20510(a).

  HAVA also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list.  Any statewide prohibitions are clearly preempted by federal law.

computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding no private right of action to enforce HAVA requirements).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" *See* 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is requesting an electronic copy of Washington's complete and current VRL. The purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA.

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. § 20704. HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 522a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act explained at Civil Rights Division - Department of Justice - Privacy Policy[2].

Please provide the requested electronic VRL[3] to the Justice Department fourteen days from the date of this letter. The information and materials may be sent by encrypted email to

---

[2] Available at: https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). If Washington would be interested in a data sharing agreement with the Civil Rights Division, please reply to voting.section@usdoj.gov prior to the expiration of the fourteen-day response window. Upon receipt, we will send you an agreement template.

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc:    Stuart Holmes
       Director of Elections
       416 Sid Snyder Ave SW
       Olympia, WA 98501
       stuart.holmes@sos.wa.gov

# EXHIBIT 2



**WASHINGTON** SECRETARY OF STATE

September 23, 2025

Harmeet K. Dhillon
Assistant Attorney General, Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

Re: Request for Complete Washington's Voter Registration List with All Fields

Dear Ms. Dhillon:

This letter responds to your September 8, 2025, letter, which requests "a copy of Washington's statewide voter registration list." As detailed below, without further explanation of the basis for your request, I cannot provide you with some of the information you have requested without violating state and federal law.

Your letter requests an electronic copy of the statewide voter registration list that "contains *all fields*," including information that Washington law prohibits me from disclosing, such as voters' full dates of birth, driver's license numbers, and the last four digits of voters' social security numbers. This request raises serious legal and privacy concerns. As the Chief Election Officer of the State, I take very seriously the responsibility to safeguard highly personal voter information protected from disclosure under both Washington and federal law. The information that you have provided is not sufficient to allow me to release voters' personal confidential information. I welcome additional clarification of your authority, as discussed below.

Washington law requires that "current lists of registered voters . . . must be made available for public inspection and copying[.]" Wash. Rev. Code § 29A.08.720(3)(a). This disclosure, however, is limited to select data fields, including the voter's name, address, political jurisdiction, gender, year of birth, voting record, date of registration, and registration number." *See* RCW 29A.08.710. Aside from these enumerated fields, "no other information from voter registration records or files is available for public inspection or copying." *Id.* As such, many of the data fields you have requested — including the registrant's full date of birth, driver's license

**WASHINGTON** SECRETARY OF STATE

number, and the last four digits of their social security number — are protected from disclosure under Washington law.

None of the statutes you cite support production of such highly sensitive voter registration information. Your letter relies on Section 11 of the NVRA, but nothing in that provision requires that States provide confidential information to the Attorney General. Your letter also relies on Section 401 of HAVA, but again, nothing in that provision requires that States provide confidential information to the Attorney General. And your letter invokes the federal Civil Rights Act of 1960. But any demand for records "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Your letter identifies DOJ's purpose as ensuring compliance with HAVA and the NVRA, but as stated above, the cited provisions of the NVRA and HAVA provide no basis to seek confidential information.

Moreover, the CRA does not authorize collection of information for purposes not authorized under the statute. While you claim in your September 8 letter that "the purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA," I have significant concerns that this is not the real reason for your request. Public reporting indicates that DOJ intends to use these lists to attempt to create a national voter registration database, to share information with the Department of Homeland Security to assist in immigration enforcement efforts, and for other purposes not authorized by law.[1] My concerns are underscored by DOJ's evolving explanations for requesting such information, as well as public reporting that DOJ already has or imminently plans to send a virtually identical request to all states, without citing any basis to believe that any state is failing to meet its responsibilities under the NVRA or explaining why voters' highly personal information is necessary to assess any state's list-maintenance process. DOJ has also filed lawsuits against both Oregon and Maine, in which it, again, conspicuously fails to explain how this sensitive data is needed to assess states' list maintenance programs.

---

[1] Trump Administration Quietly Seeks to Build National Voter Roll Using State Data - The New York Times

**WASHINGTON**    SECRETARY OF STATE

Election law experts have noted that data on individual registrants would not be particularly useful in DOJ's claimed effort to assess states' general programs.[2] Washington is more than willing to provide you with the publicly available voter registration list that we are required to make public by law, which provides each voters' name, address, and year of birth. That should be more than sufficient information to assess Washington's list maintenance efforts.

Finally, I have significant concerns that DOJ's collection of personal information on hundreds of millions of voters may violate federal law. Under the Privacy Act of 1974, any creation of a system of records must comply with specific legal requirements to safeguard against abuse. Please explain in detail how DOJ's request complies with the Privacy Act. Specifically, please explain the following:

1) A citation to the notice published in the Federal Register with all the information required under 5 U.S.C. § 552a(e)(4) about the system of records DOJ is creating;

2) Whether DOJ has transferred or plans to transfer any state voter data collected from any State outside DOJ's Voting Rights Section, including to any other law enforcement agencies, and your basis for believing that such transfer complies with the Privacy Act;

3) Why highly sensitive information, including voters' drivers' license numbers and social security numbers, is necessary to assess Washington's general program for voter list maintenance, how precisely DOJ would use such information to assess the State's list maintenance processes, and why that evaluation cannot be accomplished with voters' names, addresses, and years of birth;

4) How the system of records DOJ is establishing complies with the prohibition in 5 U.S.C. § 552a(e)(7) on maintaining records "describing how any individual exercises rights guaranteed by the First Amendment," considering that voter registration lists include party affiliation for some states and voter participation history; and

5) What, if any, measures DOJ is taking to ensure the new system of records will be

---

[2] The Trump Administration Wants Your Voter Registration Data. Why? - Democracy Docket



WASHINGTON SECRETARY OF STATE

maintained with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).

As an elected state official, I have taken an oath to obey the United States Constitution. The Constitution is clear about the power to regulate elections — the power is vested in state governments, subject only to alteration by Congress. Nowhere does the Constitution give the President or the Executive Branch independent power to control how States regulate elections or to force States to surrender their voters' highly sensitive personal information. My obligation is to support and defend the Constitution of the United States and the Constitution of the State of Washington and ensure election laws are being enforced. In addition to ensuring that Washington's voter registration list complies with all applicable federal and state laws, my obligation also includes protecting Washington voters from unnecessary and illegitimate intrusions on their privacy.

In light of these concerns, I am providing a link to where you can request a copy of the publicly available voter registration list. I welcome clarification of your authority to access confidential voter information.

Regards,

Steve Hobbs
Washington Secretary of State

# EXHIBIT 3

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND | ) | FIFTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | Civil Action No. 2025-CP-40-06539 |
| | ) | |
| ANNE CROOK, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| | ) | |
| SOUTH CAROLINA ELECTION | ) | |
| COMMISSION A/K/A STATE | ) | |
| ELECTION COMMISSION, | ) | |
| *Defendant,* | ) | |
| | ) | |
| HENRY DARGAN MCMASTER, IN HIS | ) | |
| OFFICIAL CAPACITY AS GOVERNOR | ) | |
| OF THE STATE OF SOUTH | ) | |
| CAROLINA, | ) | |
| *Intervenor-Defendant.* | ) | |

This matter is before the Court on a Motion for Temporary Injunction filed by Plaintiff, Anne Crook. The motion seeks to prevent or limit the Election Commission's dissemination to DOJ of certain information from the South Carolina statewide voter registration list (VRL), containing Plaintiff's personal information. The Court heard this matter on September 26, 2025, and took the matter under advisement. For the reasons stated below, the Motion is **DENIED**.

## Introduction

Plaintiff is requesting an injunction to prevent the South Carolina Election Commission (Election Commission) from releasing any protected election data to the Department of Justice (DOJ) until there is a memorandum of understanding (MOU) between the two parties. Additionally, Plaintiff requests that this Court review any MOU. In the Election Commission's memorandum in opposition, as well as at oral arguments by their counsel, they have stated point-

blank that they will not release the data to the DOJ without an MOU between the two government agencies. Additionally, counsel stated that the contents of the MOU would be discussed and voted on in open session by the commissioners. This Court denies the drastic remedy of granting injunction for several reasons.

**First**, Plaintiff has failed to prove she will suffer an irreparable harm because the Election Commission has stated it will not release the data without an MOU containing necessary security safeguards to ensure the proper and confidential use of that data and its transmission.

**Second**, Plaintiff has failed to prove there are no adequate remedies at law because she could avail herself to the state and federal tort claims acts if any data is negligently handled in the future.

**Finally**, Plaintiff is not likely to succeed on the merits for several reasons. **1**. The Election Commission is statutorily authorized to engage in the conduct she seeks to enjoin; specifically, South Carolina law vests the Election Commission with the authority to enter data sharing agreements to disclose securely certain voter registration data. **2.** The "right to privacy" constitutional provision does not encompass the sharing of data between the State and the federal government to secure federal elections. **3.** Requesting this Court to mandate an MOU and to assess its adequacy would improperly entangle the judiciary in the routine operations of the Election Commission, which would offend foundational separation of powers principles. **4.** Federal law likely requires the Election Commission to provide the requested information to DOJ.

## Factual Background

On August 6 and 14, 2025, the Department of Justice Civil Rights Division (DOJ) sent letters to the Election Commission, requesting, in sum, South Carolina's VRL. Specifically, in the second letter, DOJ requested "an electronic copy of the statewide voter VRL[, which] should contain *all fields*, which means, [the] state's VRL must include the registrant's full name, date of birth, residential address, [and] his or her state driver's license number or the last four digits of the registrant's social security number . . . ." *See* Compl. at 7–11 (Letter from Harmeet K. Dhillon, Assistant Attorney General Civil Rights Division to Howard Knapp, then-Executive Director, State Election Commission).

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

On August 27, 2025, the Election Commission met to address DOJ's requests. Wooten Aff. ¶ 4. Specifically, the Election Commission directed its staff to confer with DOJ about the prospect of entering into a data sharing agreement as authorized by section 7-5-186(C) of the South Carolina Code of Laws. *Id.* After additional communications with DOJ, on September 3, 2025, the Election Commission and DOJ held a conference call to discuss a possible data sharing agreement. *Id.*¶ 5. Based on that conference call, the Election Commission understands that DOJ is currently developing a Memorandum of Understanding (MOU) that identifies the requested information and addresses the security and privacy concerns raised by the Election Commission. *Id.* ¶ 6. The Election Commission has not yet received the MOU. *Id.* The Election Commission has stated that it will not share any data without a proper MOU in place.

Contesting dissemination of the VRL to DOJ, Plaintiff filed a complaint with a request for injunctive relief and a declaratory judgment in Calhoun County. Ultimately, the case was transferred to Richland County and assigned to the Honorable Daniel M. Coble. The Election Commission filed its Answer on September 25, 2025.

<u>**Legal Standard**</u>

An injunction is a "drastic" remedy that "ought to be applied with caution." *Strategic Res. Co. v. BCS Life Ins. Co.*, 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006). A plaintiff "must establish three elements" to obtain a preliminary injunction: (1) irreparable harm, (2) likelihood of success on the merits, and (3) no adequate remedy at law. *Compton v. S.C. Dep't of Corr.*, 392 S.C. 361, 366, 709 S.E.2d 639, 642 (2011).

**1. Irreparable harm**

Plaintiff submits to the Court that she would suffer irreparable harm "if either 1) more of her [personal information] is shared than is permissible under the law or 2) the information is shared without adequate protection." Motion for Temporary Injunction at 11 (Sept. 23, 2025). Transmitting her personal information within the defined confines of an MOU protects against either scenario. Therefore, Plaintiff has failed to identify any sufficient harm—let alone an irreparable harm—she would suffer absent an injunction.

The Election Commission stated in court and in the filings with this Court that they will enter into an MOU with the DOJ that complies with all state law and ensure the protection of any

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

personal information.  Additionally, the Election Commission stated that the contents of the MOU would be discussed and voted on at an open hearing.  The Election Commission stated in their Memorandum in Opposition to Plaintiff's Motion for a Temporary Injunction:

> Specifically, in recognition of the significant privacy concerns involved, the Election Commission will fulfill its statutory obligations to protect private information and share voter information with DOJ only pursuant to an MOU containing necessary security safeguards to ensure the proper and confidential use of that data and its transmission. Indeed, this explains why the Election Commission has not transmitted the requested information since DOJ first inquired in early August. To appease her concerns, Plaintiff need not look any further than to the MOUs into which the Election Commission routinely perfects when exercising its statutory authority to share voter registration data to carry out its obligation "to maintain accurate voter registration records." *See* Wooten Aff. ¶ 4; S.C. Code Ann. §§ 7-3-20(D)(11), 7-5-186(A). As is standard practice, those MOUs outline the limited purpose for which the shared voter information will be used and the steps taken to protect the confidentiality of that data upon disclosure. For example, such documents ordinarily set forth data use limitations and provide secure transmission protocols and storage and destruction procedures. Any perfected MOU with DOJ should be no different.

Memorandum in Opposition to Plaintiff's Motion for a Temporary Injunction at 5 (Sept. 26, 2025).

Further, Plaintiff's alleged irreparable harm rests on the premise that the Election Commission will not act in good faith or properly carry out the law. Public officials are, absent evidence to the contrary, presumed to act in good faith and follow the laws. *S.C. Jurisprudence*, Evidence § 29 (1999*); see also Toporek v. S.C. State Election Comm'n*, 362 F. Supp. 613 (D.S.C. 1973) (stating that without an evidentiary basis, courts will not assume that state election officials will act arbitrarily in the future). The only evidence in this case is that the Election Commission has acted in good faith in enacting the MOUs with other states to fulfill its statutory duty to maintain accurate voter lists—that is, to prevent voter fraud. Plaintiff has not alleged, and the Court cannot assume, that the Election Commission will do anything other than adhere to state law in any negotiations with DOJ.

### 2.  Adequate remedies

Actions for injunctive relief are equitable in nature. *Grosshuesch v. Cramer*, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005) (citation omitted). Generally, equitable relief is available only where there is no adequate remedy at law. *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 298

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

S.C. 179, 185, 379 S.E.2d 119, 123 (1989). Specifically, "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Id*. In the unlikely event that Plaintiff's private information somehow falls in the hands of a "bad actor" as a result of the Election Commission's fulfillment of its statutory obligations under S.C. Code Ann. § 7-5-186(C) as she hypothesizes, she could avail herself to the state and federal tort claims acts. Such claims are more than adequate vehicles for relief such that an injunction is improper.

### 3.  Success on the Merits

#### *Statutory Authorization*

Because the Election Commission is statutorily authorized to engage in the conduct she seeks to enjoin, Plaintiff cannot possibly establish she is likely to succeed on the merits. More specifically, South Carolina law vests the Election Commission with the authority to enter data sharing agreements to disclose securely certain voter registration data.

The South Carolina Constitution mandates the General Assembly to enact legislation providing for the regulation of elections (article II, section 1), the registration of voters (article II, section 8), and "the fulfillment and integrity of the election process" (article II, section 10). Pursuant to that authority, the General Assembly enacted Title 7 of the South Carolina Code of Laws, in turn establishing the Election Commission to oversee the administration of elections and to maintain fair and fraud-free elections. *See* S.C. Code Ann. § 7-3-10(F) (charging the Election Commission with "promulgat[ing] regulations to establish standardized processes for the administration of elections and voter registration that must be followed by the county boards of voter registration and elections").

To that end, relevant here, section 7-5-186(A) requires the Election Commission to establish and maintain a statewide voter registration database and to "conduct an annual general registration list maintenance program to maintain accurate voter registration records in the statewide voter registration system." S.C. Code Ann. § 7-5-186(A).  Included in that list is the information the Election Commission collects pursuant to its statutory mandate for contents of voter registration applications. In particular, the application (and therefore the VRL) must contain a registrant's name, sex, race, social security number, date of birth, residential address and may

also include driver's license numbers, state-issued identification numbers, telephone numbers, email addresses, mailing addresses, location of prior voter registrations, voter registration agencies, and other data incident to voter registrations. S.C. Code Ann. § 7-5-170(2); *see also* S.C. Code Ann. § 7-5-185(B)(5) (requiring the same information for electronic applications for voter registration).

Furthermore, section 7-5-186(C) expressly provides,

The State Election Commission *may enter into agreements to share information or data* with other states or groups of states, *as the commission considers necessary*, in order to maintain the statewide voter registration database established pursuant to this section. Except as otherwise provided in this subsection, the commission shall ensure that any information or data provided to the commission that is confidential in the possession of the state providing the data remains confidential while in the possession of the commission. *The commission may provide such otherwise confidential information or data to persons or organizations that are engaging in legitimate governmental purposes related to the maintenance of the statewide voter registration database.*

S.C. Code Ann. § 7-5-186(C) (Emphasis added). The plain language of the statute permits the Election Commission to share the requested information with "organizations" such as DOJ. Before perfecting the agreement, the Election Commission determines whether the DOJ MOU meets the state's statutory requirements for disclosure of voter personal information. If it does not, the Election Commission will not enter the agreement or share the VRL.

Much of the Family and Personal Identifying Information Privacy Protection Act is not relevant to this action. For instance, it requires state agencies to have privacy policies and to inform people that collected information might be disclosed, and it prohibits anyone from using personal information obtained from a government agency from using that information for commercial solicitation. *See* S.C. Code Ann. §§ 30-2-20, -40, -50(A). Specific to the section Crook cites in the heading of her motion, section 30-2-20 permits agencies to share personal information to "fulfill a legitimate public purpose." *Id*. § 30-2-20. Surely protecting the voter rolls fits that description. *See id*. § 7-3-10(G) (Commission must "comply with applicable state and federal election law").

Put simply, the statute's plain text authorizes the Election Commission to engage in the conduct Plaintiff hopes to enjoin. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("Under the plain meaning rule, it is not the province of the court to change the meaning of a clear and unambiguous statute.").

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

### *Right to Privacy*

A statute gives a plaintiff the right to sue only if the General Assembly intended to create that right. *Denson v. Nat'l Cas. Co.*, 439 S.C. 142, 151, 886 S.E.2d 228, 233 (2023). "Generally, when a statute does not expressly create civil liability, a duty will not be implied unless the statute was enacted for the special benefit of a private party." *Id*. at 151–52, 886 S.E.2d at 233. Nothing in section 7-5-170 (or section 7-5-186) is for any special benefit of an individual. Instead, these statutes provide the framework how voters register and how the Election Commission handles the voter registration database. Bolstering this conclusion are other parts of Title 7, which expressly provide a person the right to challenge certain Election Commission actions. *See, e.g.*, S.C. Code Ann. §§ 7-5-230(C), 7-5-240.

Because there is no private cause of action conferred under these election statutes, the Plaintiff's standing hinges on whether or not her "right to privacy" has been implicated under South Carolina's Constitution.  Article I, section 10 prohibits "unreasonable invasions of privacy." S.C. Const. art. I, § 10. That provision was intended "to take care of the invasion of privacy through modern electronic devices." Committee to Make a Study of the Constitution of South Carolina, 1895, *Minutes of Committee Meeting* 6 (Sept. 15, 1967). It sought "to protect the citizen from improper use of electronic devices, computer data banks, etc." Committee to Make a Study of the Constitution of South Carolina, 1895, *Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895*, at 15 (1969). As originally understood then, this provision has nothing to do with the sharing of data between the State and the federal government to secure federal elections.

This constitutional provision's current jurisprudence is not precisely clear, and there is limited case law on the issue.  Therefore, this Court must look to several recent cases to ascertain and interpret the provision in light of the facts of this case.  In *Planned Parenthood I*, the South Carolina Supreme Court interpreted the right to privacy as more than merely a search or seizure related protection.  However, *Planned Parenthood I* was not directly overruled, but it was clearly supplanted by *Planned Parenthood II*.  The first case's two dissenting opinions viewed the right to privacy in a more limited fashion, with Justice James' opinion keeping the provision within the search and seizure framework.  *Planned Parenthood II* made it clear that while the majority

opinion ruled that the right to privacy encompassed more than the search and seizure context, it did so only for the purposes of that opinion.

> Second, *Planned Parenthood I* is a highly fragmented decision with five separate opinions. …we likewise decline to revisit the fragmented decision regarding the proper scope of the privacy provision. Rather, in the interest of unity, we will assume only for purposes of our analysis and decision **today** that the privacy provision reaches beyond the search and seizure context to include bodily autonomy. Accordingly, we go no further **today** than referencing *Singleton v. State*, which held that the interests protected by the privacy clause extend to bodily autonomy and integrity.

*Planned Parenthood S. Atl. v. State*, 440 S.C. 465, 481, 892 S.E.2d 121, 130 (2023), *reh'g denied* (Aug. 29, 2023) (emphasis added). The Supreme Court made clear that in that case they were not making a definitive ruling as to the interpretation of the history and meaning of the constitutional provision in question. *Id.* at 481 n.9 ("We elect not to address those threshold differences: for purposes of our analysis and decision today, we will cast aside a review of the history and relevance of the 1971 amendments to the state constitution that included the privacy provision, including the work of the West Committee.").

Courts will attempt to avoid making legal interpretations when they are unwarranted and superfluous to the ultimate decision. The judiciary is not in the business of creating business but rather tasked with the simple job of making decisions related to past conduct and stating rules for predictability of future conduct. It is often not necessary – and usually unproductive – to create more rules, more interpretations, and more disagreements on issues that are not directly impacted by the ultimate decision. However, because the standing of this Plaintiff hinges on whether or not her right to privacy could be violated, this Court must draw an interpretation as to what the constitutional provision means.

This trial court will never say what the law is or what it ought to be – but it will say what it believes the law is as promulgated by the South Carolina Supreme Court and the South Carolina General Assembly. Following along the lines of the several opinions in *Planned Parenthood I*, in conjunction with prior precedent, this Court does not believe that this provision is implicated with the sharing of election data. In his well-reasoned and thoroughly analyzed opinion, Justice James walks through the history and times of the constitutional amendments during the 1960s and 1970s, and particularly, how the right to privacy provision came about. Without quoting verbatim the

opinion, this Court notes several passages to explain why it believes the right to privacy does not encompass the voter election data at issue in this case.

First, in a letter from the attorney general to West Committee Staff Consultant Robert H. Stoudemire, the attorney general explains the reason why the right to privacy needed to be added to the constitutional protections:

> In the first paragraph, General McLeod acknowledged that the proposed privacy provision "relate[d] to interception of communication which is generally done by electronic means." Letter from Daniel R. McLeod, S.C. Att'y Gen., to Robert H. Stoudemire, Staff Consultant, Comm. to Make a Study of the S.C. Const. (Oct. 2, 1967), 1967 WL 12658, at *1. He then noted an "additional factor [that] may be taken into consideration" is the "protection of privacy in areas such as information gotten through data processing." *Id.* The letter as a whole speaks solely in terms of "securing individual privacy in the field of data processing" and in terms of protecting against intrusions into privacy occasioned by (1) interception of communication and information by electronic means, (2) mass collection of data, (3) unguarded income tax and health information, and (4) unguarded information stored in computers. *Id.*

*Planned Parenthood S. Atl. v. State*, 438 S.C. 188, 339–40, 882 S.E.2d 770, 851–52 (2023), *reh'g denied* (Feb. 8, 2023).  Second, the final report related to this constitutional provision discusses the purpose of the added language:

> **Section J. Searches and seizures.** The Committee recommends that the historic provision on searches and seizures be retained. In addition, the Committee recommends that the citizen be given constitutional protection from an unreasonable invasion of privacy by the State. <u>This additional statement is designed to protect the citizen from improper use of electronic devices, computer databanks, etc.</u> Since it is almost impossible to describe all of the <u>devices</u> which exist or which may be perfected in the future, the Committee recommends only a broad statement on policy, leaving the details to be regulated by law and court decisions.

*Planned Parenthood S. Atl. v. State*, 438 S.C. 188, 338, 882 S.E.2d 770, 850–51 (2023), *reh'g denied* (Feb. 8, 2023).

But even as expanded in *Singleton v. State*, 313 S.C. 75, 89, 437 S.E.2d 53, 61 (1993), article I, section 10 still does not reach the sharing of the voter registration list. That case holds no more than that this provision might extend to "bodily autonomy and integrity." *Planned Parenthood S. Atl. v. State*, 440 S.C. 465, 481, 892 S.E.2d 121, 130 (2023). This Court would thus break new ground by applying article I, section 10 to the voter registration list—and with no way

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

to reconcile that conclusion with the "intent of [article I, section 10's] framers and the people who adopted it." *State v. Long*, 406 S.C. 511, 514, 753 S.E.2d 425, 426 (2014).

And of course, article I, section 10 "draws the line at *unreasonable* invasions of privacy." *Planned Parenthood S. Atl.*, 440 S.C. at 482, 892 S.E.2d at 131 (emphasis added). So even if this provision were implicated by the sharing of voter registration lists, this provision would be violated only if the Commission would act unreasonably to provide information to the federal government. This Court does not believe there would be an unreasonable invasion of privacy for the Election Commission to turn over its data to the DOJ.

### Separation of Powers

Plaintiff seeks an injunction preventing the Election Commission from sharing any such information absent an "adequate" MOU, subject to review by this Court. This Court cannot supersede the Election Commission's discretion to enter such agreements specifically conferred by statute. In a similar vein, in the first instance, the Election Commission alone is charged with ensuring that an MOU "adequately protects" the rights of the South Carolina electorate, including Plaintiff. Requesting this Court to mandate an MOU and to assess its adequacy would improperly entangle the judiciary in the routine operations of the Election Commission. Such involvement would offend foundational separation of powers principles (article 1, section 8 of the South Carolina Constitution) and undermine the independence of the executive agency by inserting judicial oversight into the Election Commission's discharge of its statutory duties and responsibilities. *State ex rel. McLeod v. McInnis*, 278 S.C. 307, 312, 295 S.E.2d 633, 636 (1982) ("One of the prime reasons for separation of powers is the desirability of spreading out the authority for the operation of the government. It prevents the concentration of power in the hands of too few, and provides a system of checks and balances. The legislative department makes the laws; the executive department carries the laws into effect; and the judicial department interprets and declares the laws.").

### Federal law

Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III alone is sufficient to reach that conclusion. Title III requires that, for

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

22 months after a federal election, a state election official "retain and preserve" "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id*. § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id*.

DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework. For starters, the voter registration list from the 2024 election is a "record" in a state election official's possession "relating to" the "registration" of voters for the 2024 election. *Id*. § 20701. And that registration now includes either a driver's license number or the last four digits of a Social Security number. *Id*. § 21083(a)(5)(A). DOJ made this request "in writing" and explained its "basis" and "purpose" of ensuring that the State was complying with HAVA and the NVRA. *Id*. § 20703; *see* Compl. Exs. 1 & 2 (DOJ letters).

## Conclusion

### *State Sovereignty*

This Court finds that federal law likely preempts state law in this area simply because of how this Court has to frame the issue. This case is about whether a citizen can likely succeed on the merits of challenging a State action in compliance with its own interpretation of federal law. And the State at this point has interpreted the law as requiring compliance with the federal request. It is not framed as the State *challenging* the federal request to a state agency. This Court has grave concerns about federal overreach and encroachment over this State's sovereignty. However, because this Court rules on the issue at hand, it does not discuss this issue further. As stated by Chief Justice John Roberts of the United States Supreme Court:

> Outside the strictures of the Supremacy Clause, States retain broad autonomy in structuring their governments and pursuing legislative objectives. Indeed, the

Constitution provides that all powers not specifically granted to the Federal
Government are reserved to the States or citizens. Amdt. 10. This "allocation of
powers in our federal system preserves the integrity, dignity, and residual
sovereignty of the States." *Bond v. United States,* 564 U.S. ——, ——, 131 S.Ct.
2355, 2364, 180 L.Ed.2d 269 (2011). But the federal balance "is not just an end in
itself: Rather, federalism secures to citizens the liberties that derive from the
diffusion of sovereign power." *Ibid.* (internal quotation marks omitted). More
specifically, " 'the Framers of the Constitution intended the States to keep for
themselves, as provided in the Tenth Amendment, the power to regulate elections.'
" *Gregory v. Ashcroft,* 501 U.S. 452, 461–462, 111 S.Ct. 2395, 115 L.Ed.2d 410
(1991)

*Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 543, 133 S. Ct. 2612, 2623, 186 L. Ed. 2d 651 (2013).

For the reasons stated above, the Motion for Temporary Injunction is **DENIED**. The
Governor's Motion to Dismiss is continued.

**AND IT IS SO ORDERED.**

_____

The Honorable Daniel McLeod Coble

October 1, 2025

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539



Richland Common Pleas

**Case Caption:**   Anne  Crook vs   South Carolina Election Commission , defendant, et al

**Case Number:**   2025CP4006539

**Type:**   Order/Other

So Ordered

s/ Daniel Coble, 2774

Electronically signed on 2025-10-01 11:10:17    page 13 of 13

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539