**ABHA KHANNA**
WA Bar No. 42612
**TYLER L. BISHOP**
WA Bar No. 63821
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
tbishop@elias.law
wmckusick@elias.law

*Attorneys for Proposed Intervenor-Defendant Common Power*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>STEVE HOBBS, in his official capacity as the Secretary of State of the State of Washington,<br><br>                    Defendant. | No. 3:25-cv-6078-SKV<br><br>COMMON POWER'S MOTION TO INTERVENE<br><br>NOTE ON MOTION CALENDAR: December 31, 2025 |

MOTION TO INTERVENE
No. 3:25-cv-6078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

I.  Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ............................................................... 2

II.  DOJ has embarked on an unprecedented campaign to collect personal voter registration data held by the states. ................................................................................ 4

III.  DOJ sued Washington to obtain its complete voter registration lists. .......................... 5

IV.  Common Power's core voter advocacy programs and the sensitive information of its constituents are threatened by DOJ's demands. ....................................................... 5

LEGAL STANDARD ................................................................................................................... 6

ARGUMENT ................................................................................................................................. 7

I.  Common Power is entitled to intervene as a matter of right. ........................................ 7

    A.  This motion is timely. ....................................................................................... 8

    B.  Common Power has substantial, protectable interests that are threatened by the relief sought by DOJ. ................................................................................... 8

    C.  Existing parties do not adequately represent Common Power. ........................ 11

II.  Common Power should, alternatively, be granted permissive intervention. ................ 14

CONCLUSION ............................................................................................................................ 15

ii

MOTION TO INTERVENE
No. 3:25-cv-6078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

# INTRODUCTION

The U.S. Department of Justice recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Washington's Secretary of State last week, seeking to compel the state to turn over all the personal information it has on all of its voters. This legal assault not only intrudes upon Washington's constitutional prerogative to maintain and protect its voter registration list, but also tramples the privacy rights of individual voters who have serious reasons to fear their personal information being handed over to the federal government.

Accordingly, Common Power (or "Proposed Intervenor") moves to intervene to defend against the federal government's overreach. Common Power is a civic engagement and voter mobilization organization in Seattle with volunteers throughout Washington. Common Power seeks to intervene to preserve the privacy rights of its constituents, including its staff and volunteers, prevent disclosure of sensitive personal information to DOJ, and protect its own mission-critical efforts to empower communities worried about retaliation and scrutiny by the federal government. Washington law only permits disclosure of certain enumerated information about registered voters, including name, address, and birth year. *See, e.g.,* RCW 29A.08.710(2)(a). "No other information"—including social security and drivers' license numbers—"is available for public inspection." *Id.* DOJ's requested relief would run roughshod over this and other privacy protections.

Common Power is entitled to intervene as a matter of right because it has significant interests that are at serious risk of impairment by the relief sought in this action, and the existing parties do not adequately represent those interests. Fed. R. Civ. P. 24(a). Most significantly,

1

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Common Power has an interest in ensuring its constituents' sensitive and personal information is not improperly disclosed to DOJ. While Washington's Secretary of State has thus far resisted disclosure, he does not adequately represent Proposed Intervenor: As a governmental defendant, he must consider broader public-policy implications of the issues presented in this suit, and thus cannot adequately represent Common Power's unique organizational interest or its interest in protecting the privacy and voting rights of its constituents.

Alternatively, Common Power should be granted permissive intervention under Rule 24(b). Doing so will ensure that Washington voters have a voice in this litigation—which ultimately concerns the disclosure of *their* sensitive and personal information. Multiple courts have allowed groups similarly situated to Proposed Intervenor to intervene as defendants in the other suits DOJ has brought seeking voter lists, and this Court should do the same. *See generally United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention of right); Opinion, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), Dkt. No. 45 (similar); Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70 (granting permissive intervention).

## BACKGROUND

### I. Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter

2

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

eligibility and maintaining lists of eligible voters. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter rolls, requiring them to create a "computerized statewide voter registration list" and "perform list maintenance" consistent with the NVRA. 52 U.S.C. § 21083(a)(1), (2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added).

Neither the NVRA nor HAVA tasks the *federal government* with compiling a federal voter registration list. Instead, Congress has "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the

3
MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

## II. DOJ has embarked on an unprecedented campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent demands to more than forty states, with plans to make similar demands on all fifty.[1] It seeks to use the data to create a national voter database that will, in turn, be used to try to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* n.1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ sent Secretary Hobbs a letter on September 8, 2025, demanding Washington's entire "statewide voter registration list" within 14 days. Dkt. No. 1-5 at 6. DOJ insisted that the voter list "[c]ontain[] *all fields*," including driver's license numbers, birthdates, and last four digits social security numbers. *Id.* at 7 n.3 (emphasis original). Secretary Hobbs responded

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice, https://perma.cc/W66R-UJXN; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* n.1 (so far, two states—Indiana and Wyoming—have given DOJ everything it sought).

4

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

1  on September 23, expressing privacy concerns and requesting additional information about
2  compliance with federal laws. *Id.* at 10–13. DOJ did not respond to the Secretary's questions.

3  **III.   DOJ sued Washington to obtain its complete voter registration lists.**

4  DOJ filed suit on December 2, seeking to compel Washington to provide its full
5  statewide voter registration list. Dkt. No. 1 at 8. DOJ brings a single cause of action under one
6  statute: the Civil Rights Act of 1960. *Id.* at 7. This landmark anti-discrimination legislation
7  does not, however, support DOJ's quixotic attempts at list maintenance. Congress enacted the
8  law to preserve "the right of all qualified citizens to vote without discrimination on account of
9  race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of
10 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R.
11 Rep. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed
12 to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*,
13 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General*, 285 F.2d
14 430 (5th Cir. 1961). But that is not DOJ's purpose here; instead, it claims to be evaluating
15 Washington's list-maintenance efforts under NVRA and HAVA. *See* Dkt. No. 1 at 4. The Civil
16 Rights Act is thus inapplicable.[3]

17 **IV.   Common Power's core voter advocacy programs and the sensitive
18         information of its constituents are threatened by DOJ's demands.**

19 Proposed Intervenor Common Power works in Washington and other states to advance
20 the fundamental civil rights of voters. Ex. B, Decl. of Charles Douglas III ("Douglas Decl.")

---

[3] Even if Section 303 of the Civil Rights Act did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, as permitted under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

¶¶ 4–5, 7. Its mission is to increase civic engagement, especially in communities that have traditionally been sidelined by burdens to the ballot box. *Id.* ¶ 7. The group has approximately 5,400 volunteers and 16 staff members based in Washington. *Id.* ¶ 4. Because Common Power's core mission is closely tethered to voting, its staff and volunteers regularly conduct voter registration and door-knocking campaigns to empower their constituents. *Id.* ¶¶ 5–6. Efforts to increase their impact ahead of the 2026 elections are already underway in Washington and elsewhere. *See id.*

DOJ's effort to obtain sensitive information on all registered voters in Washington poses serious risks for Common Power and the communities it serves. *Id.* ¶¶ 8–11. Common Power has an interest in preserving the privacy and voting rights of its staff, volunteers, and constituents. *Id.* Further, serious concerns about DOJ's haphazard or disingenuous use of this information, including to spread allegations of voter fraud, directly impacts Common Power's mission-critical voter engagement programs. *See id.* If successful, DOJ's lawsuit will undermine Common Power's mission-critical work. *Id.* ¶ 14.

## LEGAL STANDARD

A party may intervene pursuant to Federal Rule of Civil Procedure 24 either as a matter of right, or with permission of the Court. A party seeking to intervene as a matter of right must satisfy four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

6

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

The Ninth Circuit has adopted a policy of "interpret[ing] these requirements broadly in favor of intervention," guided by "practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). Courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). A party who satisfies each of these requirements must be permitted to intervene. *Arakaki*, 324 F.3d at 1083.

"A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1100 (9th Cir. 1999). Only two factors must be satisfied where, as here, the intervening party does not assert additional "new claims" for relief: (1) the motion must be timely and (2) the applicant's claim or defense must have a question of law or fact in common with the main action. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).[4]

## ARGUMENT

### I. Common Power is entitled to intervene as a matter of right.

Common Power satisfies the standards for intervention as a matter of right because its motion is timely, the prospect of an adverse ruling threatens to impair its constituents' fundamental privacy and voting rights—as well as its own mission-critical voter-engagement

---

[4] Proposed Intervenors submit a Proposed Answer as required by Rule 24, *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

7

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

programs—and none of the existing government parties adequately represent their distinct, privately held interests.

### A. This motion is timely.

Common Power's Motion is indisputably timely. To make this determination, courts consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *W. Watersheds Project,* 22 F.4th at 835–36. Here, DOJ filed suit on December 2, and this motion follows just eight days later—before any schedule has been set, before Defendant has answered, and before any substantive proceedings. *Washington v. U.S. Dep't of Transportation*, No. 25-CV-00848-TL, 2025 WL 3023041, at *8 (W.D. Wash. Oct. 29, 2025) (motion timely where defendants had not answered and no dispositive motions filed).

### B. Common Power has substantial, protectable interests that are threatened by the relief sought by DOJ.

Common Power also satisfies the "closely related" second and third requirements for intervention because it has significant protectable interests in this lawsuit, and the relief DOJ seeks threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989); *see Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

Under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the

8

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting Moore's Federal Practice § 24.03[2][c] (3d ed. 2008)).

Once an applicant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" that interest. *Lockyer*, 450 F.3d at 442. Applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). In other words, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (cleaned up).

Common Power has significant and protectable interests in preserving the privacy rights of its staff and volunteers—many of whom are Washington voters. Douglas Decl. ¶¶ 4, 8–10. Common Power also has distinct and independent interests in preserving its own ability to accomplish its core mission of activating voters free from fears of intimidation or harassment. *Id.* ¶¶ 10–11. Common Power's voter registration and engagement efforts include working with communities that already face significant barriers to voting. *Id.* ¶ 7. In view of the current administration's harsh treatment of those it disagrees with, many voters in these groups may reasonably be hesitant to engage in the political process if it means inviting federal

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

9

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

scrutiny and retaliation. *Id.* ¶¶ 9, 11. Indeed, Common Power has already had staffers and volunteers leave their ranks out of fear of the current administration's hostility. *Id.* ¶ 9. The fear and distrust sown by DOJ's aggressive demands for personal information directly frustrates Common Power's mission-critical work. *Id.* ¶¶ 13–14.

Courts regularly grant intervention to allow organizations to protect their own mission-critical organizational activities, particularly when it comes to ensuring their members and constituents' ability to vote. *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *see also, e.g.*, *Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 827 (D. Mont. 2020) (holding organization had "representational [and] direct organizational standing" based on threatened harm to voters); *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (political party organization has "legally protectable interest" because they spend "resources in the recruiting and training of volunteers").

In fact, courts have routinely found these interests to satisfy even the "more stringent" requirements for establishing an Article III injury. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see Chiles*, 865 F.2d at 1212–14 & n.16 (cautioning there is "less reason to be as finicky" in assessing an intervenor's interests than a plaintiff's asserted injury (citation omitted)); *see also, e.g.*, *All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 101–03 (D.D.C. 2025); *DNC v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (concluding organization had injury sufficient to confer standing where challenged law would require it "to retool [its] [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. DNC*

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

10

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*v. Hobbs,* 948 F.3d 989 (9th Cir. 2020) (en banc); *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 983–87 (D. Ariz. 2024) (finding organizations had standing to protect members' voting rights), *aff'd in relevant part* 129 F.4th 691 (9th Cir. 2025); *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1039 (D. Idaho 2023) (similar); *cf. Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096–97 (9th Cir. 2021). That the threat to Common Power satisfies the more demanding Article III injury standard "compels the conclusion that they have an adequate interest" for purposes of Rule 24(a)(2). *Yniguez*, 939 F.2d at 735.

### C. Existing parties do not adequately represent Common Power.

Common Power cannot be assured adequate representation of its distinct interests in this matter if it is denied intervention. "[T]he burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Courts are "liberal in finding" this requirement satisfied, recognizing "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024).

Here, DOJ naturally does not represent Common Power's interests, as it seeks to forcibly compel production of Washington's unredacted voter registration list. And while Washington's Secretary of State, to date, has resisted that demand, he too does not adequately represent Common Power's distinct private interests. Federal courts have "often concluded

11

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). A government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Common Power—seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 195–96 (quoting *Trbovich*, 404 U.S. at 538 n.10). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if Secretary Hobbs's *objective* is to oppose the relief that DOJ seeks, it does not follow that the Secretary shares the same *interests* as private organizations committed to voter engagement and turnout. *See Berger,* 597 U.S. at 196.

12

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Indeed, the NVRA specifically requires Defendant to "balance *competing objectives*"—maintaining accurate and current rolls while promoting access to the ballot box. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (emphasis added). Common Power is focused entirely on maintaining the privacy of sensitive personal information, voting rights, and its mission-critical voter-engagement programs. Douglas Decl. ¶¶ 7–8, 10, 13–14. Accordingly, its interests are not adequately represented. *See, e.g.*, *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented" (quoting *Arakaki*, 324 F.3d at 1087)); *Barke v. Banks*, No. 8:20-cv-00358, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases). Further still, government defendants—including in disputes over voter roll issues—sometimes settle due to competing interests. Courts routinely find inadequate representation where there is a possibility that an existing defendant will resolve a case on terms that proposed intervenors would not agree to. *E.g.*, *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024); *see also City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999).

Indeed, multiple courts have very recently granted intervention to other advocacy groups in identical litigation brought by the DOJ against other states based on this very logic. *Oregon*, 2025 WL 3496571, at *2; *Benson*, No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), Dkt. No. 45 (granting intervention as of right); *Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70 (permissive intervention). As the court in Oregon explained, state

13

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

"Defendants have obligations under the NVRA and HAVA that Proposed Intervenor[] do[es] not share and have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenor[] would not make." *Oregon*, 2025 WL 3496571, at *2.

At bottom, Defendant does not stand in the same shoes as Common Power and thus does not sufficiently represent its interests.

## II. Common Power should, alternatively, be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Common Power asserts a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). There can be no delay or prejudice: Common Power has moved promptly, *supra* Argument § I.A, and agrees to abide by any schedule set by the Court or agreed by the original parties. Common Power's defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. A (Proposed Answer).

The Ninth Circuit has identified additional considerations the Court can consider in weighing permissive intervention. *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). They buttress the case for intervention here. *First*, Common Power seeks to defend organizational interests unique to civic organizations. *See supra* Argument § I.B. *Second*, these parochial interests are not identical to the public interests of the existing defendant, and may not be fully advanced absent its intervention. *See supra* Argument § I.C. *Finally*, the harms vulnerable voters face and the arguments they advance will certainly

14

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Given that this action threatens to compel disclosure of personal data of millions of Washington voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing parties who specifically represent the interests *of those voters* to participate. *See, e.g.*, *Relman Colfax v. Fair Housing Council*, 19-cv-8612 PSG (JCX), 2020 WL 9460652, at *1 (C.D. Cal. Apr. 20, 2020). For similar reasons, courts routinely grant permissive intervention to civic organizations to ensure their voices are heard when litigation implicates the rights and privacy of all voters. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020); *Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70; *see also League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting voters to intervene).

In short, because Rule 24 is liberally construed to protect Common Power's rights and interests, and because its participation will assist rather than prejudice efficient development and resolution of this matter, the Court should grant permissive intervention in the event it does not find that Common Power may intervene as a matter of right.

## CONCLUSION

Common Power respectfully requests that this Court grant its motion to intervene.

Dated: December 10, 2025                    Respectfully submitted,

                                            */s/ Abha Khanna*

15

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**ABHA KHANNA**
WA Bar No. 42612
**TYLER L. BISHOP**
WA Bar No. 63821
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
tbishop@elias.law
wmckusick@elias.law

*Counsel for Proposed Intervenor-Defendant Common Power*

16

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendant Common Power certifies that this motion contains 4,196 words, which complies with the limit of Local Rule 7(e)(4).

Dated: December 10, 2025         /s/ Abha Khanna
                                 Abha Khanna

17

MOTION TO INTERVENE
No. 3:25-cv-06078-SKV

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177