The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

UNITED STATES OF AMERICA

               Plaintiff,

    vs.

STEVE HOBBS, in his official capacity as the Secretary of State of the State of Washington,

               Defendant.

No. 3:25-cv-6078-KKE

**UNITED STATES' OPPOSITION TO COMMON CAUSE AND WASHINGTON CONSERVATION ACTION EDUCATION FUND'S, AND COMMON POWER AND WASHINGTON ALLIANCE FOR RETIRED AMERICANS' MOTIONS TO INTERVENE**

UNITED STATES' OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

Four advocacy groups move to intervene as defendants in this action. Their motions should be denied. They may not intervene by right because they lack a concrete interest in this action and because Defendant adequately represents their interests. Their request for permissive intervention fails because they have nothing unique to contribute to this case.

**BACKGROUND**

The United States brings this straightforward action to obtain records that Defendant Steve Hobbs, the Washington Secretary of State, is required to maintain and produce to the Attorney General upon his specific request. The Civil Rights Act of 1960 ("CRA") requires state election officials to retain and preserve "all" records related to voter registration,[1] and the National Voter Registration Act ("NVRA") and Help America Vote Act of 2002 ("HAVA") require states to record the specific voter registration information that the Attorney General now seeks. 52 U.S.C. § 20701 *et. seq.*; 52 U.S.C. § 20507; 52 U.S.C. § 20183; *Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir. 1962) ("All means all.").

The National Voter Registration Act of 1993 ("NVRA") mandates that responsible election officials "ensure that accurate and current voter registration rolls are maintained" for Federal elections. 52 U.S.C. § 20501(b)(4). To that end, Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant" or "a change in the residence of the registrant . . . ." 52 U.S.C. § 20507(a)(4). Section 8(i) of the NVRA provides that states shall make available "all records concerning the implementation of programs and

---

[1] While 52 U.S.C. § 20701 is sweeping in scope, it is time-barred to a period of twenty-two months from the date of a federal election.

1

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," with certain exceptions. *Id.* § 20507(i)

The purpose of the Help America Vote Act of 2002 ("HAVA") "is to improve our country's election system" by recognizing "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. No. 107- 329(I) at 31-32 (2001). HAVA imposes "minimum requirements" for the conduct of Federal elections. *Id.* at 35. Specifically, all states must implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level" that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State. . . ." 52 U.S.C. § 21083(a)(1)(A). Section 303 of HAVA provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," among other requirements. *Id*. § 21083(a)(4).

The CRA entitles the Attorney General to inspect all these records. *Lynd* at 226. This makes sense: the United States, acting through its Attorney General, must routinely investigate state compliance with the list maintenance requirements for Federal elections, and has brought actions against states when their efforts to maintain accurate voter rolls for Federal elections falls short of HAVA and NVRA requirements.[2] *See, e.g.,* 52 U.S.C.A. § 21111.

---

[2] A list of HAVA and NVRA enforcement actions brought by the U.S. Department of Justice's Voting Section is available at https://www.justice.gov/crt/voting-section-litigation

2

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

On September 8, 2025, the Attorney General sent a written demand to the Washington Secretary of State invoking her authority according to the CRA and stated that such an investigation was the reason for her request.  The Secretary refused.  The CRA, however, anticipates such a refusal and provides for a swift resolution to the matter by granting the United States district court jurisdiction to compel the production of records *only*. 52 U.S.C.A. § 20705. Accordingly, the United States filed this action on December 2, 2025.

On March 30, 2026, Common Power and Washington Alliance for Retired Americans ("Alliance") filed their motion to intervene as defendants.  Dkt. 23. Common Cause and Washington Conservation Action Education Fund ("Fund") filed their motion to intervene as defendants on the same day.  Dkt. 28.

Common Cause filed similar motions to intervene in multiple lawsuits brought by the United States in recent months to compel the production of records under the CRA. *See United States v. Fontes*, No. 2:26-cv-00066-SMB, Dkt. 14 (D. Ariz. Jan. 14 2026); *see also United States v. Nago*, No. 1:25-cv-00522-LEK-RT, Dkt. 24 (D. Haw. 2026). The United States opposes these motions and others after two Ninth Circuit courts denied similar motions in circumstances substantially the same as those before this Court.

All four groups (collectively, "Proposed Intervenors") have failed to establish sufficient grounds for intervention, lack standing under controlling authority, and have not made the necessary showing of inadequate representation by governmental entities. Proposed Intervenors offer only a speculative basis for intervention that fails to articulate any concrete grievance or interest that has been or may be violated. Proposed Intervenors have failed to meet their burden of demonstrating that they meet the standard for intervention of right, as set forth in Rule 24(a), or

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

for permissive intervention, as set forth in Rule 24(b).  For the reasons specified below, the Proposed Intervenors' motion should be denied.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 24 authorizes both intervention of right and permissive intervention.  As relevant here, an applicant may intervene of right under Rule 24(a)(2) if "(1) the intervention is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties [do] not adequately represent the applicant's interest." *Gonzalez v. Arizona*, 485 F.3d 1041, 1051 (9th Cir. 2007) (quotation marks omitted).  Although "the requirements for intervention are broadly interpreted in favor of intervention," the applicant "seeking to intervene has the burden of showing that *all* the requirements for intervention have been met."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Under Rule 23(b)(1), "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(2).  A court has "broad discretion" when ruling on a motion for permissive intervention, *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011), and can deny the motion even if "an applicant satisfies [the] threshold requirements," *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  In assessing a motion for permissive intervention, courts may "balance the rights of the parties against the need to keep the litigation from becoming unmanageable." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987).

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

**ARGUMENT**

**I.    Proposed Intervenors are not entitled to intervene as a matter of right**

This Court should deny Proposed Intervenors' motions to intervene as a matter of right. They have no concrete interest in this action, and to the extent that the Court finds they do, Secretary Hobbs adequately represents their stated interests.

**A.  Proposed Intervenors do not have a protectable interest relating to this action**

A "private party" may intervene to defend a state's interest only if it has a "judicially cognizable interest in the … defense." *Diamond v. Charles*, 476 U.S. 54, 56 (1986).  In other words, the proposed intervenor must have "a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  A "would be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021).  Proposed Intervenors lack the requisite "significantly protectable interest" to intervene in this case because both HAVA and the CRA impose duties and obligations only on states, municipalities, and their officials, not on private entities.  For example, HAVA requires *"each State, acting through the chief State election official*, [to] implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list…")* (emphasis added).  52 U.S.C. § 21083(a)(1)(A).  The CRA likewise instructs "*[e]very officer of election*" to "maintain and preserve … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (emphasis added).

It follows that the Attorney General cannot sue private entities under either statute.  HAVA allows the "Attorney General [to] bring a civil action against any State or jurisdiction." 52 U.S.C.

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

§ 21111.  And the CRA allows the Attorney General to demand certain election-related records from state officials.  *Id.* §§ 20701, 20703.

Proposed Intervenors do not contend, nor could they, that they are state officials or otherwise are involved in the creation, maintenance, or storage of the voter lists that the Attorney General seeks.  Thus, HAVA and the CRA do not regulate them, and any relief ordered by this Court in this lawsuit would not require them to take or refrain from taking any action.  As such, they have no "interest … protected by law."  *Cooper*, 13 F.4th at 865

Unable to assert any rights under HAVA or the CRA themselves, Proposed Intervenors argue that "the relief DOJ seeks threatens to impair" tangentially related "interests."  Dkt. 23 at 11.  First, they emphasize their "keen interest in the privacy rights of [their] members."  *Id.* at 14.  Their fears of data disclosure are not "concrete" enough to "trigger a right to intervene."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  The Alliance fears that its members who "have experienced costly data breaches [are] rightfully concerned about DOJ's attempt to hoover up their sensitive information."  Dkt. 23 at 12.  The Alliance appears afraid that hackers might steal their data from the United States government, but the "mere risk of future harm, standing alone, cannot qualify as a concrete harm."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021); *see also Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 148 (3d Cir. 2024) (no standing where party fails to demonstrate a "likelihood" that a data recipient would "intentionally or accidentally release [her] information").  So, the Alliance's asserted, speculative injury "does not rise to the level required for intervention as a matter of right."  *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the

6

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

kind of protectable interest … necessary to support intervention as of right.'")

Common Cause and the Fund advance the more generalized and nebulous claim that their "[m]embers have a privacy interest in preventing the disclosure of their sensitive personal data" to DOJ. Dkt. 28 at 10. This too is not a concrete injury. Much of the information sought by the United States is not sensitive. *See Greenstein v. Noblr Reciprocal Exchange*, 2024 WL 3886977, at \*3 (9th Cir. Aug. 21, 2024) (no standing to challenge "the disclosure of driver's license numbers," which is not "offensive and objectionable to the reasonable person"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (no standing to challenge disclosure of date of birth). In any event, Common Cause and the Fund do not explain how sharing addresses and partial Social Security numbers actually harms their members' privacy, and "nothing in the precedent of the Ninth Circuit or other appellate courts confers standing on a party … based on nothing more than the unauthorized disclosure of personal information." *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at \*5 (N.D. Cal. Dec. 28, 2012).

Also, the Privacy Act, 5 U.S.C. § 552a, already prohibits DOJ from disclosing information about individual voters unless narrow, enumerated exceptions apply. Proposed Intervenor's shared interest that the federal government observe federal privacy laws amounts to an "abstract . . . 'right' to have the Executive observe the procedures required by law." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 (1992). That general right, "possessed by every citizen, to require that the Government be administered according to law . . . . does not state an Article III case or controversy." *Id.* at 573–74 (quoting *Fairchild v. Hughes,* 258 U.S. 126, 129–130, (1922)). That is why the Eastern District of North Carolina rightfully rejected the North Carolina chapter of the Alliance's effort to intervene in an identical HAVA and CRA case brought by the Attorney General. *United States of America v. North Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ, Dkt. 87 at

7

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

7-8 (E.D.N.C. Jan. 12, 2026) (The "Alliance's claimed interest under Rule 24(a)(2)—protecting the privacy of [its] members' identifying information" is "speculative and premature" because a consent decree requires that data "will be kept securely and treated consistently with the Privacy Act").

Second, Proposed Intervenors generally speculate that civic engagement will decrease as a result of DOJ's enforcement of HAVA and the CRA.  Common Cause and the Fund "are concerned that Washington residents will be more hesitant to engage in the political process" and "less likely to register to vote."  Dkt. 28 at 9-11.  Common Power raises similar concerns that those in "communities that already face significant barriers to voting … may reasonably be hesitant to engage in the political process,"  Dkt. 23 at 12.  These are generalized grievances "based on what [Proposed Intervenors] regard[] as enlightened public policy," not concrete injures.  *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) (denying intervention of right where proposed intervenor's interest did not differ from those of "a substantial portion of the population").

Third, Proposed Intervenors assert an interest in protecting their "mission-critical work."  Dkt. 23 at 12.  Common Power's "core mission" is to "activat[e] voters free from fears of intimidation and harassment."  *Id.*  It argues that "DOJ's aggressive demands for personal information frustrates [this] work."  *Id.*  Common Cause and the Fund similarly claim "that their efforts to encourage civic participation will be frustrated if Washingtonians' sensitive private information is disclosed." Dkt. 28 at 9.  These concerns are little more than repackaged generalized grievances.  Proposed Intervenors do not argue that DOJ's lawsuit prevents them from communicating with voters or encouraging people to vote.

Fourth, Common Power and the Alliance claim that "[i]f successful, DOJ's lawsuit will

8

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

undermine Proposed Intervenors' missions and force them to expend limited resources overcoming a new burden on voters: the threat to their privacy." Dkt. 23 at 8. The North Carolina court rejected the exact same argument, explaining that the Alliance's assertion of an "organizational interest in preserving its own resources … fails to explain or identify how it or its members are unduly burdened by" providing voter lists to DOJ. No. 5:25-cv-00283-M-RJ, Dkt. 87 at 4 (E.D.N.C. Jan. 12, 2026). Indeed, "the expenditure of resources on advocacy is not a cognizable Article III injury." *Turlock v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015); *see also Center for Law and Educ. v. Dep't of Educ.,* 396 F.3d 1152, 1162 n. 4 (D.C. Cir. 2005) ("[T]o hold that a lobbyist/advocacy group had standing to challenge government policy with no injury other than injury to its advocacy would eviscerate standing doctrine's actual injury requirement.").

Proposed Intervenors therefore lack a judicially cognizable interest and may not intervene by right. Because they lack an interest, they also fail to satisfy the requirement that "disposition of [this] action may, as a practical matter, impair or impede[their] ability to protect [their] interest." *Gonzalez v. Arizona*, 485 F.3d at 1051.

**B. Defendant adequately represents Proposed Intervenors' interests**

Proposed Intervenors may not intervene by right for the additional reason that Defendant adequately represents their interests. There is a strong presumption that Defendant's representation is adequate. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted). This presumption also arises "[w]here the government is acting on behalf of a constituency it represents, as it is here." … In order to overcome this presumption, the would-be intervenor must make a very compelling showing that

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

the government will not adequately represent its interest." *Gonzalez*, 485 F.3d at 1052 (quotation marks omitted).

Proposed Intervenors cannot make this showing. Courts must "consider[] three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. Each factor weighs against a finding of adequacy here.

Defendant indisputably is "capable and willing" to litigate this case. He is represented by sophisticated counsel in the Washington Attorney General's Office, and as Common Power and the Alliance note, he "has thus far resisted disclosure." Dkt. 23 at 1. His public statements display his "intention to mount a full and vigorous defense."[3] *Perry v. Proposition 8 Official Proponents*, 587 F.3d. 947, 954 (9th Cir. 2009). Any "differences in litigation strategy do not normally justify intervention." *Arakaki*, 587 F.3d at 1086.

Third, Proposed Intervenors do not "offer any necessary elements to the proceeding that [Defendant] would neglect" because they "share the same ultimate objective as the State," namely, preventing disclosure of the voter rolls to DOJ. *Arakaki*, 324 F.3d at 1087. This is the only factor that Proposed Intervenors meaningfully discuss. They claim that Defendant has a different "ultimate objective," but their arguments fall short. Common Cause and the Fund argue that they

---

[3] On February 6, 2026, Secretary Hobbs published an op-ed in the Seattle Times raising identical concerns as proposed intervenors regarding the protection of "sensitive" voter information against so-called "bogus lawsuits" brought by DOJ. *As election access and security are tested, WA keeps data safe*. The Seattle Times. (Feb. 6, 2026) https://www.seattletimes.com/opinion/as-election-access-and-security-is-tested-wa-keeps-data-safe/. Secretary Hobbs has repeatedly and publicly stated that he "does not plan on releasing any information" to DOJ. *See, e.g., DOJ Requests Voter Registration List Including Private Information*. Washington Secretary of State. (Sep. 10, 2025) https://www.sos.wa.gov/about-office/news/2025/doj-requests-voter-registration-list-including-private-information.

10

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

"have a personal stake in the litigation that Defendant, and the State more generally, does not." Dkt. 28 at 12-13. As discussed above, any stake they have lacks the requisite concreteness needed to intervene. They further argue that "Defendant has statutorily imposed objectives and obligations that diverge from those of Proposed Intervenor-Defendants and their members." *Id.* at 13. Common Power and the Alliance echo this contention. Dkt. 23 at 14-15. The fact that Defendant also is responsible for "maintaining accurate and current rolls," *id.*, does not somehow make him an inadequate representative of Proposed Intervenors.

Other district courts in this circuit and across the country have denied motions to intervene by right in identical lawsuits brought by the Attorney General, concluding that the proposed intervenors failed to demonstrate inadequate representation.

In *United States v. Fontes*, the District of Arizona, the district court denied Common Cause and the Alliance's motion to intervene by right because the "adequate government representation presumption plainly applies here." No. 2:26-cv-00066-SMB, Dkt. 32 at 4 (D. Ariz. Mar. 9, 2026). The court held that the defendant secretary of state was "representing his constituency" and wanted the "same outcome" as Common Cause and the Alliance: "preventing the Attorney General from accessing" voter lists. *Id.* The court also rejected the Alliance's argument, which it also raises here, that the secretary's interest in "maintaining accurate and current voter rolls" destroys adequacy of representation. *Id.* at 6. It noted that the secretary's "broader concerns do[] not necessarily lead it to stake out an undesirably legal position." *Id.* (quotation marks omitted). Further, Common Cause did "little to show that [it had] materially different interests" from the secretary." *Id.* at 7. Even though the secretary "might not be acting exclusively to protect the Proposed Intervenors' privacy interests, his arguments necessarily encompass those interests." *Id.* at 8.

11

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

In *United States v. Nago*, the District of Hawaii determined that the state's chief elections officer "is presumed to adequately represent" his "constituency" of "voters." No. 1-25-cv-00522, Dkt. 51 at 3 (Feb. 17, 2026). The court held that Common Cause "failed to overcome that presumption." *Id.* And in *United States v. Galvin*, the District of Massachusetts noted that Common Cause and other "intervenor -defendants advance[d] substantially similar arguments," as the Defendant Secretary of State. No. 1:25-cv-13816-LTS, Dkt. 92 at 5 (D. Mass. Apr. 9, 2026). Proposed-Intervenor's arguments here are no different, and this Court should find the same.

In *North Carolina*, the Alliance argued that the state and the United States were "on the same team" and that the state's agreement to turn over the voter lists meant that the defendant "failed to fight to protect the interests of voters." No. 5:25-cv-00283-M-RJ, Dkt. 87 at 5 (E.D.N.C. Jan. 12, 2026). Even that alleged cooperation between the United States and the defendant failed to establish inadequate representation, so the same result should follow here, where Defendant is resisting the United States's requests for data.

The Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), does not require this Court to grant Proposed Intervenors' motions. *Contra* Dkt. 22 at 14. In *Berger*, the Supreme Court held that two members of the North Carolina legislature could intervene by right to defend a state statute. The presumption of adequate representation did not apply because "North Carolina has authorized different agents to defend its practical interests precisely because, thanks to how it has structured its government, each may be expected to vindicate different points of view on the State's behalf." *Id.* at 197. The Supreme Court did "not decide" a key issue here: "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

or in any other circumstance." *Id.* The Ninth Circuit recognized such a presumption in *Arakaki*, and Proposed Intervenors have failed to rebut it here.

The United States is aware, of course, that other district courts have taken a different approach and allowed the Alliance and other advocacy groups to intervene in identical cases. *See* Dkt. 23 at 2 n1. The United States respectfully disagrees with these rulings, which are wrongly decided and now irreconcilable with Ninth Circuit precedent. That precedent confirms that Proposed Intervenors have failed to overcome the presumption of adequate representation, so they are not entitled to intervene of right.

**II.      Proposed Intervenors should not be granted permissive intervention**

This Court should exercise its "broad discretion" and deny Proposed Intervenors' request for permissive intervention. *Perry*, 630 F.3d at 905. In exercising this discretion, this Court may consider factors including "their standing to raise relevant legal issues, … whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). These factors counsel against permissive intervention. As discussed above, Proposed Intervenors lack a concrete interest in this lawsuit. Their interests are adequately represented by Defendant, "which cuts against permissive intervention." *Fontes*, No. 2:26-cv-00066-SMB, Dkt. 32 at 10 (D. Ariz. Mar. 9, 2026); *see also Proposition 8 Off. Proponents*, 587 F.3d at 955. They will not "significantly contribute to full development of the underlying factual issues" because they have no information about voter rolls that Defendant does not already possess.

13

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

Nor will their presence further "just and equitable adjudication of the legal questions" because they fail to identify any arguments they will raise that Defendant will not.

Proposed Intervenors argue that they should be permitted to intervene because "this action threatens to compel disclosure of personal data of millions of Washington voters," Dkt. 23 at 16; *see also* Dkt. 28 at 14 (similar). In other words, they have a general grievance about a lawsuit that (theoretically) affects every voter in Washington. If they want to speak on behalf of these voters, they should seek leave to do so as *amici*. They have nothing novel to add as parties, and their participation would be superfluous.

## CONCLUSION

For the reasons discussed above, Proposed Intervenors' motions to intervene should be denied.

//

//

//

//

//

//

DATED this 13th day of April, 2026.

14

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087

KRSITIN B. JOHNSON
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Fax: 206-553-4067
Email:  krsitin.b.johnson@usdoj.gov

*Local Attorney for the United States*

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Rights Section
Civil Rights Division

*s/ John R. Casali*
JOHN R. CASALI
RAYMOND YANG
Trial Attorneys, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street NE, Room 8.135
Washington, D.C. 20002
Phone: (202) 316-8087
Email:  john.casali@usdoj.gov

*Attorneys for the United States*

I certify that this memorandum contains 4,151 words, in compliance with the Local Rules.

15

UNITED STATES' CONSOLIDATED OPPOSITION TO
MOTIONS TO INTERVENE
No. 3:25-cv-06078-KKE

U.S. Department of Justice
4 Constitution Square
150 M Street NE
Washington, D.C. 20002
(202) 316-8087