The Honorable Kimberly K. Evanson

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br> v.<br><br>STEVE HOBBS, in his official capacity as Secretary of State of the State of Washington,<br><br>        Defendant. | NO. 3:25-cv-06078-KKE<br><br>DEFENDANT SECRETARY OF STATE STEVE HOBBS'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL<br><br>NOTE ON MOTION CALENDAR: JUNE 8, 2026 |

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

**TABLE OF CONTENTS**

I.　INTRODUCTION ................................................................................................ 1

II.　FACTUAL BACKGROUND ............................................................................ 2

　　A.　States Have Substantial Discretion in Regulating Elections,
　　　　and Federal Law Provides Only a Limited Federal Role .......................... 2

　　B.　Washington' List Maintenance System Ensures Qualified
　　　　Citizens Can Register to Vote and That Unqualified Individuals
　　　　are Regularly and Promptly Removed From Its Voter Registration List ................. 4

　　C.　DOJ Demands Washington's Full, Unredacted Voter
　　　　Registration List Without Specifying Any Factual Basis
　　　　for Its Purported Investigation and Files an Invalid Complaint ................................ 5

III.　LEGAL STANDARD .................................................................................... 8

IV.　ARGUMENT ................................................................................................. 8

　　A.　DOJ Cannot Avoid Application of the Civil Rules For Its Demand
　　　　of Washington's Voter Registration List ....................................................... 8

　　B.　DOJ's Demand for Washington's Voter Registration List Is Not
　　　　Authorized by  Title III and Fails to State a Claim Under Title III ........................ 11

　　　　1.　Washington's voter registration list is not subject to demand by
　　　　　　DOJ under Title III ......................................................................... 11

　　　　2.　Title III does not require electronic production ............................................... 16

　　　　3.　DOJ failed to specify any basis for its document demand .............................. 16

　　　　4.　DOJ did not identify a proper purpose for its investigation under Title III ..... 19

　　C.　DOJ's Demand for Washington's Voter Registration List
　　　　Violates Federal Privacy Laws ...................................................................... 20

　　　　1.　DOJ's demand violates the Privacy Act .......................................................... 20

　　　　　　a.　The Privacy Act prohibits federal agencies from collecting or
　　　　　　　　maintaining records of an individual's First Amendment activity .......... 22

　　　　　　b.　The Privacy Act requires DOJ to issue a System of Records
　　　　　　　　Notice for collecting and maintaining information on individuals ........... 24

　　　　2.　DOJ's demand violates the E-Government Act ............................................... 26

DEFENDANT SECRETARY OF STATE　　　　　　　　i　　　ATTORNEY GENERAL OF WASHINGTON
STEVE HOBBS'S MOTION TO DISMISS　　　　　　　　　　　　　　　　1125 Washington Street SE
AND OPPOSITION TO PLAINTIFF'S　　　　　　　　　　　　　　　　　　　PO Box 40100
MOTION TO COMPEL　　　　　　　　　　　　　　　　　　　　　　Olympia, WA  98504-0100
NO. 3:25-cv-06078-KKE　　　　　　　　　　　　　　　　　　　　　　(360) 753-6500

3.    DOJ's demand violates the Driver's Privacy Protection Act ........................... 27

V.    CONCLUSION ..................................................................................................... 28

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013)..................................................................................................... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................. 8

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ................................................................................. 8

*Buckley v. Am. Const. L. Found., Inc.*,
525 U.S. 182 (1999)............................................................................................... 22

*Donaldson v. United States*,
400 U.S. 517 (1971)................................................................................... 9, 10, 15

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
266 F. Supp. 3d 297 (D.D.C. 2017)...................................................................... 26

*Garris v. FBI*,
937 F.3d 1284 (9th Cir. 2019) ................................................................. 21, 23, 24

*Greater Birmingham Ministries v. Sec. of State for Ala.*,
105 F.4th 1324 (11th Cir. 2024) .......................................................................... 16

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017)................................................................................................. 12

*Kennedy v. Bruce*,
298 F.2d 860 (5th Cir. 1962) ................................................................................ 18

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ................................................................. 9, 10, 17, 18

*MacPherson v. IRS*,
803 F.2d 479 (9th Cir. 1986) ................................................................................ 22

*McDonnell v. United States*,
579 U.S. 550 (2016)............................................................................................... 14

*Pub. Interest Legal Found., Inc. v. Nago* (*PILF*),
No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026)..................... 11, 15, 16

*Reno v. Condon*,
528 U.S. 141 (2000)............................................................................................... 27

*Rivera v. Peri & Sons Farms, Inc.*,
735 F.3d 892 (9th Cir. 2013) ................................................................................ 26

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ........................................................................................ 20

*Sandusky Cnty. Democratic Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) ............................................................................................ 4

*Smiley v. Holm*,
  285 U.S. 355 (1932)........................................................................................................... 2

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................................... 8

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)........................................................................................................... 13

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
  931 F.3d 966 (9th Cir. 2019) .......................................................................................... 20

*United States v. Amore*,
  No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ..................... passim

*United States v. Benson*,
  No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) .............................. passim

*United States v. Fontes*,
  No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ......... 8, 9, 13, 15

*United States v. Galvin*,
  No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) .................................... passim

*United States v. Kittson*,
  161 F.4th 619 (9th Cir. 2025) ......................................................................................... 15

*United States v. Oregon*,
  No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026),
  *appeal docketed*,
  No. 26-1232 (9th Cir. Mar. 3, 2026)............................................................................... passim

*United States v. Powell*,
  379 U.S. 48 (1964).......................................................................................................... 9, 10

*United States v. Weber*,
  816 F. Supp. 3d 1168 (C.D. Cal. Jan. 15, 2026).............................................................. passim

## **Constitutional Provisions**

U.S. Const. amend. I............................................................................................................ passim

U.S. Const. art. I, § 4, cl. 1 ......................................................................................................... 2

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

**Federal Statutes**

Civil Rights Act of 1960,
   Pub. L. No. 86-449, 74 Stat. 86 ................................................................................ passim

E-Government Act of 2022,
   Pub. L. No. 107-347, 116 Stat. 2899 ........................................................................ 26, 27

Help America Vote Act of 2002,
   Pub. L. No. 107-252, 116 Stat. 1666 ........................................................................ passim

National Voter Registration Act of 1993,
   Pub. L. No. 103-31, 107 Stat. 77 .............................................................................. passim

The Privacy Act of 1974,
   Pub. L. No. 93-579, 88 Stat. 1896
   (*codified at* 5 U.S.C. § 552a) ................................................................................. passim

5 U.S.C. § 552a(a)(3) ............................................................................................. 21, 22

5 U.S.C. § 552a(a)(4) ................................................................................................... 21

5 U.S.C. § 552a(a)(5) ............................................................................................. 21, 24

5 U.S.C. § 552a(e) ....................................................................................................... 24

5 U.S.C. § 552a(e)(4) ........................................................................................ 21, 24, 26

5 U.S.C. § 552a(e)(4)(D) .............................................................................................. 25

5 U.S.C. § 552a(e)(7) ................................................................................. 21, 22, 23, 26

5 U.S.C. § 552a(f) ........................................................................................................ 21

15 U.S.C. § 1312(a) ..................................................................................................... 14

18 U.S.C. § 1015(f) ....................................................................................................... 4

18 U.S.C. § 2721(a) ..................................................................................................... 27

18 U.S.C. § 2725(1) ..................................................................................................... 27

18 U.S.C. § 2725(3) ..................................................................................................... 27

18 U.S.C. § 2725(4) ..................................................................................................... 27

18 U.S.C.A. § 2721(b)(1) ............................................................................................. 27

31 U.S.C. § 3733(a)(1) ................................................................................................. 13

52 U.S. Code § 20510(a) .............................................................................................. 10

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

52 U.S.C § 20702 ............................................................................................................... 15

52 U.S.C. § 20501(b) ........................................................................................................... 3

52 U.S.C. § 20504 ........................................................................................................ 13, 27

52 U.S.C. § 20506 ............................................................................................................. 13

52 U.S.C. § 20507(a)(3) ....................................................................................................... 3

52 U.S.C. § 20507(a)(4) .......................................................................................... 3, 15, 23

52 U.S.C. § 20507(i) .......................................................................................................... 15

52 U.S.C. § 20507(i)(1) ........................................................................................................ 3

52 U.S.C. § 20510(a) ............................................................................................................ 3

52 U.S.C. § 20701 ....................................................................................... 3, 12, 13, 14

52 U.S.C. § 20703 ...................................................................................................... passim

52 U.S.C. § 20705 ......................................................................................................... 3, 8

52 U.S.C. § 21083(a)(1)(A) ........................................................................................... 4, 13

52 U.S.C. § 21083(a)(2) ..................................................................................................... 23

52 U.S.C. § 21083(a)(2)(A) ........................................................................................... 4, 15

52 U.S.C. § 21083(a)(4) ..................................................................................................... 23

52 U.S.C. § 21085 ................................................................................................................ 4

52 U.S.C. § 21111 ........................................................................................................... 4, 10

8 U.S.C. § 1227(a)(3)(D)(i) .................................................................................................. 4

**State Statutes**

Wash. Rev. Code § 29A.04.230 ........................................................................................ 13

Wash. Rev. Code § 29A.08.010(1)(f) ................................................................................... 4

Wash. Rev. Code § 29A.08.010(1)(d) ................................................................................... 4

Wash. Rev. Code § 29A.08.105 ...................................................................................... 5, 13

Wash. Rev. Code § 29A.08.107 ........................................................................................... 4

Wash. Rev. Code § 29A.08.110(2) .................................................................................... 13

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

Wash. Rev. Code § 29A.08.125(1) ................................................................. 13

Wash. Rev. Code § 29A.08.315 ..................................................................... 27

Wash. Rev. Code § 29A.08.340 ..................................................................... 27

Wash. Rev. Code § 29A.08.350 ..................................................................... 27

Wash. Rev. Code § 29A.08.355 ..................................................................... 27

Wash. Rev. Code § 29A.08.510 ....................................................................... 5

Wash. Rev. Code § 29A.08.520 ....................................................................... 5

Wash. Rev. Code § 29A.08.610 ....................................................................... 5

Wash. Rev. Code § 29A.08.620-.635 ............................................................... 5

Wash. Rev. Code § 29A.08.710 ................................................................ 21, 22

Wash. Rev. Code § 29A.08.710(2) ................................................................... 4

Wash. Rev. Code § 29A.08.710(2)(a) ............................................................. 22

Wash. Rev. Code § 29A.08.720 ................................................................ 21, 22

Wash. Rev. Code § 29A.08.720(3) ................................................................... 4

Wash. Rev. Code § 29A.84.130(2) ................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b) ..................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ................................................................................... 8

Fed. R. Civ. P. 81(a)(5) ................................................................................. 10

**Other Authorities**

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ........................................................ 25

70 Fed. Reg. 43904-01 (July 29, 2005) ......................................................... 25

82 Fed. Reg. 24147-01 (May 25, 2017) ......................................................... 25

Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information*
(updated May 4, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information ............................................. 7

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

vii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

Hr'g Tr., *United States v. Amore*, No. 25-cv-639 (D.R.I. Mar. 26, 2026), https://www.brennancenter.org/media/15517/download/ri-hearing-transcript-2026-03-26.pdf?inline=1 .................................................................................................... 7

Memo. of Understanding from Eric Neff, Acting Chief, Voting Section, Civil Rights Division, U.S. Dep't of Justice to Adam Bitter, General Counsel, Office of the Texas Secretary of State (Dec. 2025), https://perma.cc/2EDA-RF7H .............................................. 6

Memo. of Understanding from Harmeet K. Dhillon, Assistant Attorney General, Civil Rights Division, U.S. Dep't of Justice to the Carol Beecher, Director, Alaska Division of Elections (Dec. 2025), https://perma.cc/Q5CQ-LELB ...................................................... 6

Off. of Mgmt. & Budget, Exec. Off. of the President, M-03-22, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002 (Sep. 26, 2003) ...................................................................................................................... 27

U.S. Department of Justice, Office of Public Affairs, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026), https://www.justice.gov/opa/pr/justice-department-sues-idaho-failure-produce-voter-rolls ...................................................... 7

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

viii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

## I.    INTRODUCTION

The Department of Justice has sued election officials in Washington and dozens of other states demanding each state's complete, unredacted voter registration list, which encompasses confidential information of hundreds of millions of voters. While initially claiming to be verifying states' compliance with the Help America Vote Act and the National Voter Registration Act, DOJ has since revealed its true plan: to create a shadow national voter registration list and usurp states' constitutional authority over voter registration. DOJ is currently zero for six in its lawsuits. Every federal court to consider DOJ's claims has dismissed its unprecedented complaint and denied its motion to compel as lacking authority and conflicting with federal law. This Court should do the same and reject DOJ's efforts to turn a critical civil rights tool for eliminating election discrimination into a weapon of mass voter suppression.

DOJ's lawsuit conflicts with federal law at least three times over. First, Washington's voter registration list does not fall within the scope of records that DOJ is authorized to demand under Title III of the Civil Rights Act. Based on its text, history, and purpose, Title III applies only to voter registration records that "come into [the Secretary of State's] possession," not voter registration lists created by the Secretary, which contain information about all voters registered in the state. Second, DOJ failed to specify any "basis" or legally cognizable "purpose" for its demand as explicitly required by Title III. These requirements demand both a genuine factual basis for DOJ's investigation, not the rote reference to federal laws DOJ provided here, and a purpose related to investigating election discrimination, which DOJ is admittedly not attempting to do. And finally, DOJ's demand for records violates federal statutes protecting individual privacy rights, including the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.

This Court should reject DOJ's lawless demand for Washington's unredacted voter registration lists containing confidential information of over 5 million Washington registered voters and dismiss its complaint without leave to amend.

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

1

## II.    FACTUAL BACKGROUND

A.    **States Have Substantial Discretion in Regulating Elections, and Federal Law Provides Only a Limited Federal Role**

The Constitution is clear: States are responsible for regulating "[t]he Times, Places and Manner" of federal elections, subject only to alteration by Congress. U.S. Const. art. I, § 4, cl. 1. Except where Congress directs otherwise, states have substantial discretion in regulating elections. *See Arizona v. Inter Tribal Council of Arizona, Inc*., 570 U.S. 1, 8-9 (2013). This includes the authority to oversee "notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Smiley v. Holm*, 285 U.S. 355, 366 (1932).

Congress enacted the three statutes at issue in this case to provide a limited federal role in regulating voter registration while continuing to preserve states' authority and discretion over registering voters and administering state and federal elections. Congress enacted the Civil Rights Act of 1960 (CRA) in an era of Jim Crow laws to "make real the promise of the Fourteenth and Fifteenth Amendments" and "end the scourge of racial discrimination in elections." *United States v. Galvin*, No. 25-13816-LTS, 2026 WL 972129, at *1 (D. Mass. Apr. 9, 2026). During this time, states were using "literacy tests, arbitrary registration tactics, voter ID laws, and poll taxes to keep minorities away from the ballot. Black Americans risked intimidation and violence every time they tried to access the polls." *United States v. Weber*, 816 F. Supp. 3d 1168, 1175 (C.D. Cal. Jan. 15, 2026). To hide the complicity of state and local elections officials in such rank voter suppression, "state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register." *Id.* Congress enacted Title III in the face of these actions, providing DOJ a tool for proving that "voters had been denied the right to vote because of racial discrimination." *Id.*

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

2

Title III requires every "officer of election" to "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into [the officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. These records must be "made available for inspection, reproduction, and copying" by the United States Attorney General (or representative) if the Attorney General makes a "demand in writing" for such a production. 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id*. If a dispute over the demand arises, Title III grants the district court in which the records reside the authority to "compel . . . production" of the records "by appropriate process." 52 U.S.C. § 20705.

Decades later, Congress enacted the National Voter Registration Act (NVRA) of 1993, Pub. L. No. 103-31, 107 Stat. 77, with four stated purposes: (1) to "increase the number of eligible citizens who register to vote" in federal elections, (2) to "enhance[ ] the participation of eligible citizens as voters[,]" (3) "to protect the integrity of the electoral process[,]" and (4) "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). With respect to voter list maintenance, the NVRA directs states to "conduct a general program that makes a reasonable effort" to remove ineligible voters from the states' official voter lists due to death of the registrant or change of address, while respecting states' authority and discretion over voter registration. 52 U.S.C. § 20507(a)(3)-(4). The NVRA also requires states to maintain records concerning their list-maintenance activities for two years, and to make such records available for public inspection. 52 U.S.C. § 20507(i)(1). The NVRA provides for civil enforcement actions by the Attorney General. 52 U.S.C. § 20510(a).

Congress later passed the Help America Vote Act (HAVA) of 2002, Pub. L. No. 107-252, 116 Stat. 1666, in the wake of the 2000 federal election. Congress intended HAVA "to alleviate a 'significant problem voters experience' " of arriving at a " 'polling place believing that they are eligible to vote, and then to be turned away because the election workers cannot

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

find their names on the list of qualified voters.'" *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 569 (6th Cir. 2004) (quoting H.R. Rep. No. 107-329, at 38 (2001)). HAVA requires states to implement a centralized computerized statewide voter registration list, and to maintain that list by removing ineligible voters. 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). But HAVA has no public disclosure requirements and provides DOJ with no subpoena authority. *See* 52 U.S.C. § 21111. And, again, Congress deferred to the states in implementing HAVA, with "[t]he specific choices on the methods of complying with the requirements . . . left to the discretion of the State." 52 U.S.C. § 21085.

**B.     Washington' List Maintenance System Ensures Qualified Citizens Can Register to Vote and That Unqualified Individuals are Regularly and Promptly Removed From Its Voter Registration List**

In compliance with HAVA and the NVRA, Washington has adopted a system that makes voter registration easy and accessible for qualified citizens, prevents participation by noncitizens, and ensures that voters who become ineligible to vote are promptly removed from its voter registration list.

To register to vote in Washington, an applicant must attest under penalty of perjury to their name, address, birthdate, and that they are a United States citizen. Wash. Rev. Code § 29A.08.010(1)(d), (f). Both federal and state law prohibit registering to vote as a non-citizen. 8 U.S.C. § 1227(a)(3)(D)(i) (deportation); 18 U.S.C. § 1015(f) (up to five years' imprisonment); Wash. Rev. Code § 29A.84.130(2) (same). Before a registration is finalized, Washington also confirms each applicant's identity, generally through a driver's license number or the last four digits of the person's social security number. Wash. Rev. Code § 29A.08.107. Washington's voter registration list, excluding voters' confidential information, is available for public review. Wash. Rev. Code § 29A.08.720(3). The excluded confidential information includes sensitive information such as a voter's date and month of birth, social security number, and driver's license number. Wash. Rev. Code § 29A.08.710(2).

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

4

The Secretary of State maintains a centralized statewide voter registration list as the official list of all registered voters in the state. Wash. Rev. Code § 29A.08.105. Washington has also adopted a general list maintenance program designed to promptly remove ineligible voters from its voter rolls when voters die, change their address, become disqualified from voting under state law, or have duplicate registrations. *See, e.g.*, Wash. Rev. Code § 29A.08.510 (deceased individuals); § 29A.08.620-.635 (change of addresses); § 29A.08.520 (felony convictions); § 29A.08.610 (dual registrations).

**C.     DOJ Demands Washington's Full, Unredacted Voter Registration List Without Specifying Any Factual Basis for Its Purported Investigation and Files an Invalid Complaint**

DOJ sent a letter to Secretary Hobbs in September 2025, demanding a copy of Washinton's statewide voter registration list within fourteen days. Dkt. #30-1. DOJ demanded the list include "*all fields*" including "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]" *Id.* According to DOJ's letter, "[t]he purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* The letter did not provide any basis for its demand. *Id.* As of March 2026, the Department had made similar demands of at least 48 states and the District of Columbia.

Secretary Hobbs responded to DOJ's letter by offering to produce a public version of Washington's voter registration list, excluding confidential and sensitive information protected under state law. Dkt. #30-2. Secretary Hobbs also sought clarification of DOJ's authority to demand such sensitive voter information, noting that neither the cited provisions of HAVA nor the NVRA authorized DOJ's demands. Additionally, Secretary Hobbs raised concerns that DOJ's true purpose was to create a national voter registration database and that DOJ would share the state's information with the Department of Homeland Security for purposes of immigration enforcement. Given the significant privacy interests implicated and Secretary Hobbs's duty to protect the confidential information of Washington state's registered voters, Secretary Hobbs

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

also requested specific information to confirm DOJ's compliance with the requirements of the federal Privacy Act. *Id.*

DOJ never responded to Secretary Hobbs's request for information. But DOJ confirmed Secretary Hobbs's suspicions about its ulterior motives for seeking full, unredacted voter registration lists when it entered into memorandums of understanding with various states, revealing its true purpose to usurp state authority over voter registration and to superintend states' administration of voter registration. *See* Memo. of Understanding from Harmeet K. Dhillon, Assistant Attorney General, Civil Rights Division, U.S. Dep't of Justice to the Carol Beecher, Director, Alaska Division of Elections (Dec. 2025), https://perma.cc/Q5CQ-LELB; Memo. of Understanding from Eric Neff, Acting Chief, Voting Section, Civil Rights Division, U.S. Dep't of Justice to Adam Bitter, General Counsel, Office of the Texas Secretary of State (Dec. 2025), https://perma.cc/2EDA-RF7H. These MOUs specifically provide that DOJ will analyze and assess the participating state's voter registration list, after which DOJ will notify the state of "any voter list maintenance issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, the Justice Department found when testing, assessing, and analyzing [the] state's VRL for NVRA and HAVA compliance, i.e., that [the] state's VRL only includes eligible voters." *Id*. at 5. The memorandum seeks the state's agreement that, within 45 days of receiving notice from DOJ "of any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns," the state "will clean its VRL/Data *by removing ineligible voters* and resubmit the updated VRL/Data to the Civil Rights Division of the Justice Department to verify proper list maintenance has occurred by [the] state pursuant to the NVRA and HAVA." *Id*. (emphasis added). Since issuing its demands on states, DOJ attorneys have also confirmed on the record that DOJ will share sensitive voter registration information with the Department of Homeland

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

6

Security (DHS) and intends to run states' entire confidential voter lists through DHS's flawed Systematic Alien Verification for Entitlements (SAVE) system to verify U.S. citizenship.[1]

Instead of responding to Secretary Hobbs's request for clarification of DOJ's basis and purpose and the Secretary's concerns about DOJ's true purpose in seeking Washington's unredacted voter rolls, DOJ filed suit in early December 2025. Dkt. #1.

DOJ has demanded confidential, sensitive voter information from at least 48 states and the District of Columbia in its quest to create a single, shadow voter list.[2] Most states have refused to turn over unredacted voter registration lists. So, in addition to its suit against Washington, DOJ has sued at least 29 other states and the District of Columbia for their lists.[3] DOJ's legal rationale for its document demands and lawsuits has shifted over time. In its first round of lawsuits, DOJ claimed to be demanding unredacted voter registration lists under Title III, the NVRA, and HAVA. *See Weber*, 816 F. Supp. 3d 1168; *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *cf.* Dkt. #30-1 (reflecting that DOJ's September 2025 letter to Secretary Hobbs claimed authority under the NVRA, HAVA, and Title III). In subsequent lawsuits, DOJ claimed to be seeking information only under Title III. In its lawsuit against Washington, DOJ now claims to be seeking information under Title III to ensure the State's compliance with HAVA. Dkt. #29 at 2.

The six district courts that have decided DOJ's demand for unredacted voter rolls from California, Oregon, Michigan, Massachusetts, Rhode Island, and Arizona have all denied DOJ's motion to compel and dismissed its lawsuits as lacking authority and violating federal law. *See,*

---

[1] Hr'g Tr. at 50:22-23, *United States v. Amore*, No. 25-cv-639 (D.R.I. Mar. 26, 2026), https://www.brennancenter.org/media/15517/download/ri-hearing-transcript-2026-03-26.pdf?inline=1.

[2] *See* Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (updated May 4, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[3] U.S. Department of Justice, Office of Public Affairs, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026), https://www.justice.gov/opa/pr/justice-department-sues-idaho-failure-produce-voter-rolls (announcing 30 lawsuits against states and the District of Columbia).

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

*e.g.*, *Weber*, 816 F. Supp. 3d 1168; *Oregon*, 2026 WL 318402; *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026); *Galvin*, 2026 WL 972129; *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026).

## III.    LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under Rule 12(b)(6), dismissal may be based either on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Courts need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-79. When ruling on motions to dismiss, "courts must consider the complaint in its entirety, as well as other sources . . ., in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## IV.    ARGUMENT

### A.    DOJ Cannot Avoid Application of the Civil Rules For Its Demand of Washington's Voter Registration List

DOJ is not entitled to a pro forma summary proceeding to enforce its demand for a copy of Washington's unredacted voter registration list. Title III does not explicitly provide for a summary proceeding. 52 U.S.C. § 20705. And four district courts have rejected DOJ's argument that a court's inquiry under Title III is "severely limited" to rubber-stamping whether DOJ has issued a written demand to a state officer who has refused that demand. *Contra* Dkt. #29 at 6; *see Weber*, 816 F. Supp. 3d at 1182 ("Contrary to the position the DOJ takes, Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause."); *Oregon*, 2026 WL 318402, at *8 ("There

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place."); *Amore*, 2026 WL 1040637, at *3 ("DOJ is not entitled to any sort of summary or abbreviated procedures for obtaining the information it seeks"); *Fontes*, 2026 WL 1177244, at *1 (applying the Federal Rules of Civil Procedure to DOJ's action against Arizona).

DOJ relies primarily on the Fifth Circuit's nonbinding decision in *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962), and its progeny to argue for a purely perfunctory role for courts in enforcing DOJ's document demands under Title III. Dkt. #29 at 6. But two years after *Lynd*, the Supreme Court decided *United States v. Powell*, 379 U.S. 48, 50 (1964), rejecting DOJ's argument that courts have no substantive role in evaluating a document demand under an authorizing statute with substantially similar language as Title III. The Court held that, while the agency can issue a document demand, only a court can enforce the demand and "may not permit its process to be abused." *Id*. at 58. Contrary to DOJ's argument, this holding was not predicated on statutory language prohibiting DOJ from abusing statutory processes. Rather, the Court held that in any judicial enforcement proceeding, the individual from whom records are sought may challenge the demand for records on "'any appropriate ground'" including whether "the administrative steps required by the Code have been followed" and whether the government was acting with an improper purpose. *Id*. (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). *Powell* further recognized that where a statute "contain[s] no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply[.]" *Id.* at 58 n.18.

Subsequent Supreme Court authority confirms *Powell*'s holding. While DOJ argues the Supreme Court's later decision in *Donaldson v. United States*, 400 U.S. 517, 528-29 (1971), limited *Powell*, *Donaldson* actually supports Secretary Hobbs's argument that courts serve an

DEFENDANT SECRETARY OF STATE STEVE HOBBS'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL NO. 3:25-cv-06078-KKE

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

important gatekeeping function. *Donaldson* explicitly acknowledged that the Federal Rules of Civil Procedure "of course, do have an application to a summons proceeding" as provided in Federal Rule of Civil Procedure 81(a)(5). That rule provides that the Federal Rules of Civil Procedure apply to all proceedings to compel "the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). *Donaldson* simply noted that the federal rules were not "inflexible" in this regard and granted the district court discretion to allow intervention by a taxpayer in the appropriate case without mandating such intervention. 400 U.S. at 528-29. The Court went on to analyze the taxpayer's specific interest in the property at issue to determine that intervention under Rule 24 was not warranted, discrediting DOJ's arguments that the federal rules do not apply at all, or that courts have no authority but to rubber-stamp the enforcement of DOJ's document demands. *Id.* at 530. Both *Powell* and *Donaldson* control over *Lynd* and recognize a broader role for courts to assess DOJ's legal authority for its document demand and whether DOJ has an improper purpose.[4]

Moreover, the fact that DOJ relies on HAVA and the NVRA as providing the purpose for its document demand also counsels against a summary proceeding here. Neither HAVA nor the NVRA provides for an expedited summary proceeding: both statutes instead authorize the Attorney General to bring an ordinary "civil action" for such "declaratory and injunctive relief" as necessary to enforce the statutes. *See* 52 U.S.C. § 21111; 52 U.S. Code § 20510(a). And as detailed below, neither HAVA nor the NVRA grant DOJ authority to obtain a state's unredacted voter registration list. HAVA does not provide DOJ subpoena authority at all. And as detailed below, the Ninth Circuit has held that the NVRA's records provision does not apply to

---

[4] Courts applying the Federal Rules of Civil Procedure to parallel actions brought by DOJ have also expressed doubt that *Lynd* could be applicable where—unlike *Lynd*, which "appears to contemplate an application directly to the court for the records"—DOJ "made an affirmative choice to file a complaint and proceed through ordinary litigation." *Oregon*, 2026 WL 318402, at *8 n.1 (citing *Lynd*, 306 F.2d at 225), *Amore*, 2026 WL 1040637, at *4 n.1 (similar); *see also Benson*, 2026 WL 362789, at *7 (DOJ's complaint "takes the form of a traditional civil complaint, not a petition for summary enforcement").

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

10

voter registration lists. *Pub. Interest Legal Found., Inc. v. Nago* (*PILF*), No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026). Indeed, every court to consider the issue has held that the NVRA does not authorize disclosure of confidential voter information, such as social security numbers and drivers' license numbers. *See, e.g.*, *Benson*, 2026 WL 362789, at *3 (collecting cases). DOJ cannot end-run these limitations in the enforcement of HAVA and the NVRA by invoking an unrelated civil rights law. DOJ is not entitled to a summary proceeding, and this Court should apply Federal Rule of Civil Procedure 12(b) to Secretary Hobbs's motion to dismiss.

**B.     DOJ's Demand for Washington's Voter Registration List Is Not Authorized by Title III and Fails to State a Claim Under Title III**

This Court should dismiss DOJ's lawsuit and deny its motion to compel because Title III does not authorize DOJ's demand for Washington's voter registration list. The plain text of Title III authorizes demands for records that "come into [the Secretary's] possession," not records that Washington's election officials create. Washington's voter registration list is created and maintained by state officials using information derived from voters' registration and voting-related activities but is separate from the records that voters themselves submit. Construing Title III to include state voter registration lists would conflict with this plain text, as well as Title III's purpose and history. It would also create conflicting obligations on state election officials to both preserve every iteration of a state's voter registration list without change under Title III, while continuously and promptly updating that voter registration list under the NVRA and HAVA. This Court should reject DOJ's atextual, ahistorical, and utterly implausible interpretation of Title III and deny DOJ's motion to compel and dismiss its complaint on this ground alone.

**1.     Washington's voter registration list is not subject to demand by DOJ under Title III**

DOJ is not entitled to Washington's voter registration list because that list is not a document covered by Title III. Title III does not create a right for DOJ to demand *any and all*

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

voting records from States, and DOJ's argument that it is entitled to "*all records*[,]" Dkt. #29 at 20, is simply wrong. By Title III's plain text, DOJ may demand only a "record or paper required by [52 U.S.C. §] 20701 . . . to be retained and preserved[,]" 52 U.S.C. § 20703, and records and papers covered by 52 U.S.C. § 20701 are limited to "records and papers which come into [the election officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[,]" 52 U.S.C. § 20701. States are only required to retain possession of such records for "a period of twenty-two months" from the date of any federal "general, special, or primary election[.]" *Id.*

DOJ's demand exceeds its authority under the plain text of Title III because Washington's voter registration list does not "come into [Secretary Hobbs's] possession[.]" 52 U.S.C. § 20701. Instead, that list is a document the Secretary of State's Office compiles, updates, and maintains. While the records on which the Secretary and local election officials rely to create the voter registration list may well be subject to Title III, the list itself is not, and DOJ's demand here is exclusively for the list, Dkt. #30-1 at 2 ("Please provide a copy of Washington's statewide voter registration list . . . ."). The conclusion that the list is not covered by Title III follows directly from the text and structure of Title III and other federal election laws.

Starting with text, Title III requires Secretary Hobbs to retain and produce only those records that "come into his possession." 52 U.S.C. § 20701. " '[C]ome into the possession' " means to get something—to obtain or acquire it. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("defining 'obtain' as '[t]o come into the possession or enjoyment of (something)' " (quoting 10 Oxford English Dictionary 669 (2d ed. 1989))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.' " (quoting Webster's New International Dictionary (3d ed. 1966))). The phrase "come into [an official's] possession," 52 U.S.C. § 20701, "naturally refers to a process by which someone *acquires* an item from an external source" and thus

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

"refer[s] to only those documents that state election officials *receive* from prospective voters," *Benson*, 2026 WL 362789, at *9 (second emphasis added).

The Secretary of State does not receive the voter registration list; the Secretary creates it in conjunction with local election officials. *See, e.g.*, Wash. Rev. Code §§ 29A.08.105, .110(2), .125(1). HAVA requires "each State, acting through the chief State election official" to implement a statewide voter list. 52 U.S.C. § 21083(a)(1)(A). Washington law makes the Secretary of State the State's "chief election officer[.]" Wash. Rev. Code § 29A.04.230. The Secretary maintains Washington's voter registration list, as well as the database that compiles information for the list, including individual voter registration forms processed by local election authorities and information from numerous other sources. *See, e.g.*, 52 U.S.C. §§ 20504, 20506 (NVRA provisions requiring States to accept information from motor vehicle offices and other state agencies); Wash. Rev. Code § 29A.08.105; *supra* Section II.B (describing Washington's process). The result is that Washington's voter registration list is a dynamic document that is constantly updated by the Secretary's Office and county election officials with information about, for example, voters' address changes and voter registration cancelations based on death or incarceration for a felony.

DOJ's proposed interpretation, on the other hand, would render statutory language in Title III superfluous. *See Fontes*, 2026 WL 1177244, at *3 (citing *Benson*, 2026 WL 362789, at *9). DOJ's interpretation re-writes 52 U.S.C. § 20701 to apply to "all records and papers ~~which come into his possession~~ relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" But a statue should be construed so that " 'no clause, sentence, or word shall be superfluous, void, or insignificant.' " *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167 (2001)). DOJ's reading would assign no meaning to the phrase "which come into his possession[.]" Congress knows how to craft a broader statute when it so desires. *See, e.g.*, 31 U.S.C. § 3733(a)(1) (broadly authorizing the Attorney General to demand "documentary material" relevant to false claims law investigations

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

13

in a person's "possession, custody, or control"); 15 U.S.C. § 1312(a) (same for antitrust investigations); *Benson*, 2026 WL 362789, at *9 (collecting numerous other statutes). Congress's deliberate decision to limit the statute in this way makes sense where it was concerned about racial discrimination in voting and sought to reach records revealing such discrimination, like voter registration forms provided by voters that election officials refused to process. By declining to give DOJ expansive authority to reach *all* records possessed, Congress reasonably balanced DOJ's interest in preventing discrimination in voting with the State's interest in regulating its elections efficiently and without federal interference.

Two other provisions of Title III further confirm that Title III does not apply to Washington's voter registration list. First, as the *Benson* court recognized, the conclusion that DOJ cannot demand state voter rolls "is bolstered by the next words in the sentence: 'relating to any application, registration, payment of any poll tax, or other acts requisite to voting in such election.'" 2026 WL 362789, at *9 (quoting 52 U.S.C. § 20701). The items in that list "refer[] to something that the voter submits or does as part of the registration process[,]" *id.*; they are all instances of something that is "requisite to voting." Washington's state-created voter registration list is not akin to these voter-submitted documents. Concluding otherwise runs afoul of the principle that words in a statute must be interpreted together; "a word is known by the company it keeps." *McDonnell v. United States*, 579 U.S. 550, 569 (2016) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). Such a conclusion also risks "'the giving of unintended breadth to the Acts of Congress[,]'" which this statutory construction principle was designed to avoid. *Id.* That concern is particularly resonant here, where DOJ seeks to expand a civil rights law intended to prevent racial discrimination in voter registration into a tool for federal control over *all* aspects of state voter registration maintenance and risks serious disenfranchisement.

Second, Title III only authorizes demands for documents that must "be retained and preserved" by states under 52 U.S.C. § 20701 for the 22-month period following any federal primary, general or special election. 52 U.S.C. § 20703. But Washington's full voter registration

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

list contains confidential information for *all* of Washington's over five million registered voters, including voters who registered many years and even decades ago. Applying Title III to Washington's entire voter registration list would read the 22-month retention period completely out of Title III, further rendering this key statutory limitation on DOJ's authority superfluous.

Other statutes confirm that Title III does not apply to Washington's voter registration list. If Title III did apply to voter registration lists, it would create a conflict with at least two other federal laws about whether the Secretary could alter the voter registration list. When a record or paper is covered by Title III, it is a crime to "alter[ ]" that record or paper. 52 U.S.C § 20702. But other federal laws expressly *require* election officers to alter state voter registration lists. *See, e.g.*, 52 U.S.C. § 20507(a)(4) (requiring that States "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters"); 52 U.S.C. § 21083(a)(2)(A) (requiring that States "perform list maintenance . . . on a regular basis"). As the *Fontes* court recognized, DOJ's interpretation of the scope of Title III's retention requirements "would place Title III in conflict with the NVRA and . . . HAVA." *Fontes*, 2026 WL 1177244, at *4. That would be contrary to the long-recognized requirement " 'to understand the statute[s] as a symmetrical and coherent regulatory scheme and to fit, if possible, all parts into a harmonious whole.' " *United States v. Kittson*, 161 F.4th 619, 627 (9th Cir. 2025) (quoting *United States v. Wing*, 682 F.3d 861, 867 (9th Cir. 2012)).

Finally, the Ninth Circuit's recent decision in *PILF* validates that Washington's voter registration list is not a record or paper subject to Title III. In *PILF*, the Ninth Circuit interpreted the NVRA's disclosure provision, 52 U.S.C. § 20507(i), and specifically whether a state's voter registration list was a record subject to disclosure. 2026 WL 1144703, at *13. The Court recognized that if the voter registration list were subject to disclosure, "states would be obliged to preserve every interim version of the ever-changing lists for two years—a plainly unworkable and implausible result that we must avoid." *Id.* The same is equally true here. Neither the NVRA nor Title III is a "sprawling voter-data-preservation mandate"; just as the NVRA is "a

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

transparency provision targeted at list-maintenance activities[,]" *id.*, so too is Title III a civil rights law targeted at making voter eligibility information received by state and local election officials available to DOJ.

### 2. Title III does not require electronic production

Even if the unredacted voter registration list were within the scope of Title III—which it is not—DOJ still could not compel production of an electronic copy of the list. Title III entitles the Attorney General to inspect and copy particular records "at the principal office of [the] custodian[.]" 52 U.S.C. § 20703. DOJ's demand letter did not ask for an in-person visit but instead expressly limited its demand to "an electronic copy." Dkt. #30-1 at 3. Inserting into the 1960 statute an implied requirement of electronic production, which is what DOJ seeks, is improper and unsupported. *See Greater Birmingham Ministries v. Sec. of State for Ala.*, 105 F.4th 1324, 1335 (11th Cir. 2024) (refusing to "read electronic production" into the disclosure requirements of the NVRA).

For all these reasons, the text of Title III does not require the State to acquiesce to DOJ's demand for an electronic version of the unredacted voter list.

### 3. DOJ failed to specify any basis for its document demand

This Court should also dismiss DOJ's complaint because its demand to Secretary Hobbs fails to meet the most basic requirements of Title III by failing to specify the "basis" of its demand for Washington's voter registration list. Indeed, four district courts have now dismissed DOJ's complaints for failure to provide the required "basis" for its demand. *See Weber*, 816 F. Supp. 3d at 1184 (dismissing DOJ's complaint for failure to identify "the reasoning" behind its investigation "and specific, articulable facts pointing to the violation [by California] of federal law"); *Oregon*, 2026 WL 318402, at *9 (dismissing DOJ's complaint for failing to specify "a factual basis for believing Oregon violated the NVRA or HAVA" and rejecting DOJ "post hoc effort to stitch together a legally sufficient 'statement of the basis'"); *Amore*, 2026 WL 1040637, *5 (holding that DOJ's failure to specify "any factual allegations suggesting that Rhode Island

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA" is "enough to foreclose judicial enforcement of the demand"); *Galvin*, 2026 WL 972129 (same). This Court should do the same. While DOJ's demand to Washington specified a purported "purpose," it entirely failed to state a "basis," Dkt. #30-1, nor did DOJ identify a basis even after Secretary Hobbs specifically requested "further explanation of the basis for [DOJ's] request," Dkt. #30-2 at 2.

This requirement to state the "basis" for the demand requires that DOJ state the *factual* basis, not merely provide a perfunctory citation to legal authority. *See Weber*, 816 F. Supp. 3d at 1184; *Oregon*, 2026 WL 318402, at *8-9; *Galvin*, 2026 WL 972129, at *4; *Amore*, 2026 WL 1040637, at *5. This reading is supported by contemporaneous definitions of the term, the statutory context, and DOJ's own historical practice.

The contemporaneous definitions of "basis" are "foundation" or "chief supporting factor." *Galvin*, 2026 WL 972129, at *4 (citing *Basis*, Webster's New World Dictionary of American Language 122 (college ed. 1959)). That foundation necessarily refers to the facts underlying the request. For example, the relevant "foundation" or "chief supporting factor" might be that the Attorney General has received reports of racial discrimination in voter registration in the target state. *See Lynd*, 306 F.2d at 229 n.6. DOJ's letter to Washington contains nothing of the kind.

Understanding "basis" to require a factual basis also follows from the structure of Title III. Title III explicitly requires that the Attorney General state both "the basis *and* the purpose[.]" 52 U.S.C. § 20703 (emphasis added). The use of "and" and the definite article "the" before "basis" and "purpose," supports reading these requirements as distinct, specific, and separate. *See Oregon*, 2026 WL 318402, at *9 (when the term " 'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.' " (citation omitted)); *Galvin*, 2026 WL 972129, at *4. Reading "basis" to mean legal basis would conflate these two distinct requirements. And construing "the basis and the purpose" as satisfied by "a statement of *either*

DEFENDANT SECRETARY OF STATE STEVE HOBBS'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL NO. 3:25-cv-06078-KKE

17

ATTORNEY GENERAL OF WASHINGTON 1125 Washington Street SE PO Box 40100 Olympia, WA 98504-0100 (360) 753-6500

the basis *or* the purpose would render part of the statutory text superfluous[,]" in conflict with basic canons of statutory construction. *Galvin*, 2026 WL 972129, at *4 (emphasis added). As explained in *Oregon*, "[i]f the purpose is to investigate violations of a statute, the basis must be something else; the statute underlying the investigation is nothing more than a component of the purpose." 2026 WL 318402, at *9.

DOJ's historical practice and understanding of Title III further supports the conclusion that Title III requires a statement of the *factual* basis. Under that historical practice and understanding, DOJ provided in writing its genuine factual basis for demanding records under Title III and only used the statute for the purpose of investigating possible violations of the Civil Rights Act's prohibitions on election discrimination. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6 (noting that DOJ's demand letter was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction" complied with Title III); *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (identifying similar factual basis).

DOJ's letter to Washington fails to state any basis for its request. It provides no factual reason underlying its request; there is no allegation that Washington is engaging in racial discrimination in the voter registration process or even that there is reason to believe that Washington is not complying with HAVA or the NVRA. In its motion to compel, DOJ claims that "the basis for the demand was Title III of the CRA[.]" Dkt. #29 at 12; *see also id.*at 13. But a bare citation to a legal authority is not a "basis." If Congress had intended to require specification of legal authority, requiring a "statement of the basis and the purpose therefor" would be a strange and implausible way to accomplish that goal. *Galvin*, 2026 WL 972129, at *5. As the *Galvin* court recognized, Congress knows how to require "'reference to the legal authority'" and did not do so in Title III. *See id.* at *5 (quoting 5 U.S.C. § 553(b)(2) (requiring notice to include "reference to the legal authority under which the rule is proposed");

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

8 U.S.C. § 1229(a)(1)(B) (requiring notice to "specify[] . . . [t]he legal authority under which the proceedings are conducted" (alterations in original)).

To be sure, Title III does not require that DOJ set forth a "factual basis *proving* a violation of federal law[.]" Dkt. #29 at 13. But it does require that DOJ state that basis in good faith. DOJ failed to clear even that low hurdle.

Requiring the basis to be both explicit and provided upfront in the written demand confirms that "the basis" must be the genuine foundation for DOJ's request, not a post hoc rationale. It also makes clear that Title III does not authorize a broad, unsupported fishing expedition without any factual basis. *Amore*, 2026 WL 1040637, at *5 (rejecting DOJ's argument that Title III authorizes a broad fishing expedition because "Congress could not have intended Title III to be interpreted in this redundant and circular manner"). The "basis and purpose" requirement "is mandatory, not a mere formality with which the federal government or this Court is free to dispense." *Galvin*, 2026 WL 972129, at *3.

Because DOJ fails to identify any basis in its demand for a copy of Washington's voter registration list, this Court should dismiss DOJ's complaint.

### 4. DOJ did not identify a proper purpose for its investigation under Title III

DOJ also fails to meet Title III's requirements because it fails to specify a legally valid "purpose" for its demand. DOJ's demand letter asserted that its purpose is to verify the State's compliance with the list maintenance requirements of the NVRA and HAVA. Dkt. #30-1; *see also* Dkt. #29 at 5-6, 12-13. But the courts in *Weber*, *Oregon*, and *Amore* agree that verifying compliance with either HAVA or the NVRA is not a legally valid "purpose" for demanding documents under Title III. Each of these courts held that "[r]eading Title III's text within its larger statutory and historical context, and consistent with . . . case law and legislative history . . . the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402, at *10; *see also Weber*, 816 F. Supp. 3d at 1182-84; *Amore*, 2026 WL 1040637, at *5-6. As explained in

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

*Oregon*, "[i]f *any* purpose—regardless of its relationship to the purposes of the statute itself— would suffice, then the requirement of stating the demand's purpose would serve no function." *Oregon*, 2026 WL 318402, at *9. Courts cannot construe the purpose requirement "so broadly that it would 'sap the interpreted provision of all practical significance.'" *Id.* (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1273 (9th Cir. 2025)).

DOJ's reading of the statute would allow DOJ "unfettered authority to demand voting records for *any* purpose"—even to undermine or weaken the election discrimination prohibitions of Title III or for immigration enforcement. *Id.* If Congress had intended to grant such unfettered, unreviewable authority, it is too hard to see why it would require a statement of "the basis and the purpose" in the first instance. This Court should likewise conclude that DOJ has not provided a legally cognizable purpose for its demand.

## C. DOJ's Demand for Washington's Voter Registration List Violates Federal Privacy Laws

DOJ demands that Secretary Hobbs produce an unredacted voter registration list with sensitive personal identifying information. Congress, however, has limited federal agencies in when and what information they may request and store. Compliance with DOJ's sweeping request would violate federal law; this Court should not order the Secretary to be complicit in those violations.[5] DOJ's complaint reveals at least three obvious privacy bars to relief: failure to comply with the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.

### 1. DOJ's demand violates the Privacy Act

The Privacy Act of 1974 (codified at 5 U.S.C. § 552a) bars DOJ's claim for Washington voters' data. "The Privacy Act serves as a protection for Americans against the disclosure of information collected by the government." *Weber*, 816 F. Supp. 3d at 1192 (citing *Ritter v.*

---

[5] If the Court determines that the Privacy Act or other privacy laws raised should be treated as an affirmative defense, it may consider them at the motion to dismiss phase. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Specifically, if the Court finds an "'obvious bar to securing relief on the face of the complaint,'" it can dismiss based on an affirmative defense. *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (citation omitted); *e.g.*, *Weber*, 816 F. Supp. 3d at 1192-96 (dismissing DOJ's complaint based, in part, on violations of federal privacy laws).

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

20

*United States*, 177 Fed. Cl. 84, 87 (2025)). "The passage of the Privacy Act was spurred by congressional concern in response to the explosion of computer technology, which allowed for compilation and storage of data in quantities not seen before, coupled with rightful and broad condemnation of government surveillance programs including Watergate and the FBI's COINTELPRO." *Garris v. FBI*, 937 F.3d 1284, 1295-96 (9th Cir. 2019) (citing Steven W. Becker, *Maintaining Secret Government Dossiers on the First Amendment Activities of American Citizens: The Law Enforcement Activity Exception to the Privacy Act*, 50 DePaul L. Rev. 675, 679 (2000)). "[T]he Act was 'designed to set in motion a long-overdue evaluation of the needs of the Federal government to acquire and retain personal information on Americans, by requiring stricter review within agencies of criteria for collection and retention' of such information." *Id.* at 1296 (emphasis omitted) (quoting S. Rep. No. 93-1183, at 2 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 6916, 6917). The law created "certain safeguards for an individual against an invasion of personal privacy[.]" Pub. L. No. 93-579, § 2(B), 88 Stat. 1896 (1974). Federal agencies are prohibited from collecting or maintaining records related to an individual's First Amendment activities (unless narrow exceptions apply), and they must follow specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual. 5 U.S.C. § 552a(a)(3), (a)(5), (e)(4), (e)(7), (f).

The Privacy Act applies to the detailed voter data requested by DOJ. A "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual[.]" 5 U.S.C. § 552a(a)(4). The requested voter registration list meets this definition. Even the voter registration records of files that are publicly available under Washington law contain personal information like a registrant's name, address, political jurisdiction, gender, year of birth, voting record, date of registration, and registration number. Wash. Rev. Code §§ 29A.08.710, 29A.08.720. The additional information demanded by DOJ contains even more sensitive personal identifying information protected as confidential under

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

21

Washington law, such as drivers' license numbers, social security numbers, and full birth dates. *See id.*; *see also* Dkt. #1 at ¶ 22 (requesting the statewide voter registration list with "all fields," including sensitive personal data). If DOJ collects these records through this suit, it will result in a covered collection of records under the Privacy Act. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

### a.    The Privacy Act prohibits federal agencies from collecting or maintaining records of an individual's First Amendment activity

The Privacy Act governs DOJ's request for voter records from Washington and precludes collection of this data. The Privacy Act bars federal agencies from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). DOJ's demand conflicts with this statutory bar.

Washington's voter registration list contains voter registration information and a voter's choice to participate or not in an election. *See* Wash. Rev. Code § 29A.08.710(2)(a) (providing that a voter's "voting record" is public information). This conduct by Washington voters is a form of political expression protected by the First Amendment. *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression"). The Ninth Circuit has "recognize[d] that even 'incidental' surveillance and recording of innocent people exercising their First Amendment rights may have the 'chilling effect' on those rights that section (e)(7) was intended to prohibit. . . . Blanket allowance of such 'incidental' surveillance and recording under the guise of general investigation could permit the exception to swallow the rule." *MacPherson v. IRS*, 803 F.2d 479, 484 (9th Cir. 1986); *see also Weber*, 816 F. Supp. 3d at 1176 ("DOJ's request for the sensitive information of Californians stands to have a chilling effect on American citizens like political minority groups and working-class immigrants who may consider not registering to vote or skip casting a ballot because they

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

22

are worried about how their information will be used."); *Oregon*, 2026 WL 318402, at \*13 ("Plaintiff's words and actions outside of the four corners of its Complaint in this case, including statements that it intends to create a nationwide database of confidential voter information and use it in unprecedented ways, including immigration enforcement efforts, is chilling.").

No exception to the Privacy Act applies here. No statute authorizes DOJ to maintain Washingtonians' full, unredacted voter registration records. DOJ does not allege, nor could it, that it has received the express authorization of the millions of voters whose records it seeks. The information must, therefore, be "pertinent to and within the scope of an authorized law enforcement activity" to allow its collection and maintenance. *See* 5 U.S.C. § 552a(e)(7); *Garris*, 937 F.3d at 1295 ("[A]n agency may not 'collect' a record describing any individual's protected First Amendment activity 'unless pertinent to and within the scope of an authorized law enforcement activity.'" (citation omitted)). Any law enforcement activity must be relevant at the time of collection of the records and at the time of maintaining any such record. *Garris*, 937 F.3d at 1295.

DOJ contends that its purpose in demanding the unredacted voter list is to investigate whether Secretary Hobbs is complying "'with the list maintenance requirements of the NVRA and HAVA.'" Dkt. #1 at ¶ 22 (quoting Dkt. #30-1). The First Amendment protected information in the voter lists demanded by DOJ is not pertinent to or within the scope of DOJ's purported investigation of Washington's program and practices for list maintenance under the NVRA and HAVA. *See* 52 U.S.C. § 20507(a)(4) (NVRA provision requiring states to "conduct a general program that makes a reasonable effort" to remove ineligible voters due to death or change in residence); 52 U.S.C. § 21083(a)(2), (a)(4) (similar provision in HAVA). DOJ does not allege that it is investigating any individual voter for any criminal or civil violation. And DOJ did not even ask the Secretary about the State's *program* for removing ineligible voters from the state's voter registration list, belying its argument that its purpose was to enforce the program-level requirements of the NVRA and HAVA. If a record "has at best only speculative relevance to an

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

unstated law enforcement purpose," this exception is not satisfied. *Garris*, 937 F.3d at 1299. Because no exception applies, the statutory bar on maintaining records on First Amendment activities prohibits DOJ from collecting the requested records. *See Weber*, 816 F. Supp. 3d at 1193 ("The Privacy Act bars DOJ's request for California's unredacted voter roll because fulfillment of that request would include information regarding previous election participation and party affiliation.").

        **b.**      **The Privacy Act requires DOJ to issue a System of Records Notice for collecting and maintaining information on individuals**

Even if DOJ were to meet the standard for collecting information related to First Amendment activity or limit its request to information that does not contain that information, heightened protections apply when an agency establishes or alters a "system of records" or "group of any records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier. 5 U.S.C. § 552a(a)(5), (e). The Privacy Act requires federal agencies to publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or revis[ing]" a "system of records." 5 U.S.C. § 552a(e)(4). "The Privacy Act's public notice and comment structure is an essential component of the Act and an essential piece of American democracy. Americans deserve to know the nature, scope, and routine uses of the records before they are collected by the federal government—especially given the federal government's subterfuge regarding why the data is being collected in the first place." *Weber*, 816 F. Supp. 3d at 1193.

The attempt to obtain unredacted voter records from multiple states is an example of a "system of records." *See* 5 U.S.C. § 552a(a)(5). DOJ's complaint identifies no SORN allowing it to collect this data, nor is the Secretary aware of any applicable SORN. DOJ alleges that the records requested would be collected and maintained under the "('SORN') titled, JUSTICE/CRT – 001, 'Central Civil Rights Division Index File and Associated Records,' 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

24

(May 25, 2017)." Dkt. #1 at ¶ 24. The SORN found at 68 Fed. Reg. 47610-01 (Aug. 11, 2003) states that it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. The regulation does not cover a voter list complete with names, addresses, party affiliation, and voting history, much less driver's license numbers, social security numbers, and full dates of birth. *See Weber*, 816 F. Supp. 3d at 1193-94 (explaining "[t]his SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity"). The other regulations cited in the complaint amended certain DOJ SORNs. The SORN found at 70 Fed. Reg. 43904-01 (July 29, 2005) adds a new routine use of records maintained under the SORN for disclosing information related to closed investigations of public concern. And the SORN found at 82 Fed. Reg. 24147-01 (May 25, 2017) modified all US DOJ SORNs related to responses to a breach of personally identifying information. 82 Fed. Reg. 24147.

DOJ cannot shoehorn collecting records of more than a hundred million registered voters under the existing 2023 SORN for maintaining investigatory files. DOJ's efforts to collect and maintain this data are barred under the Privacy Act. By requiring a SORN to be filed in the Federal Register, the Privacy Act requires DOJ to put any new system of records up for public notice and comment regarding the nature, scope, and routine uses of the records before the government collects Americans' data. 5 U.S.C. § 552a(e)(4)(D). The Privacy Act was meant to establish "safeguards for an individual against an invasion of personal privacy[.]" Pub. L. No. 93-579, § 2(B), 88 Stat. 1896 (1974). Allowing DOJ to collect and maintain the personal and First Amendment protected information in Washington's voter list without public notice and comment and full disclosure of what use and disclosure the data might be subjected to frustrates the purpose of the Privacy Act.

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

25

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

Because DOJ's demand for the unredacted voter list violates the Privacy Act, this Court should address this problem now. This Court may consider this Privacy Act issue on Secretary Hobbs' motion to dismiss because the violations "are apparent on the face of the complaint." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). DOJ seeks Privacy Act protected information but fails to include allegations explaining how this request for massive amounts of information on all voting Washingtonians would comply with that law. Nor can this deficiency be cured. DOJ is statutorily barred from collecting records, such as these, that describe individuals' protected First Amendment activity. *See* 5 U.S.C. § 552a(e)(7). And even if it could collect such records, no SORN satisfies DOJ's rigorous procedural duties under the Act. 5 U.S.C. § 552a(e)(4). DOJ cannot, therefore, make a cognizable legal claim for the sensitive, unredacted voting files of millions of Washingtonians, and this Court should dismiss the Complaint. Otherwise, "if the DOJ is given license to ignore the guardrails created by Congress in the Privacy Act[,]" "the very issues that animated Congress to pass the Privacy Act—threats to American democracy amidst erosion of public trust regarding the Executive's use of sensitive data—will play out again[.]" *Weber*, 816 F. Supp. 3d at 1194.

### 2. DOJ's demand violates the E-Government Act

The Court should also dismiss DOJ's complaint because it fails to comply with the E-Government Act of 2022, Pub. L. No. 107-347, § 208, 116 Stat. 2899. The E-Government Act requires federal agencies to conduct a "privacy impact assessment" (PIA) prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id.* § 208(b). The PIA and the E-Government Act's procedural requirements must be completed "*before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

DOJ seeks information covered by the E-Government Act without complying with its procedures. The names, addresses, and sensitive voter information contained in the data and

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

applications constitute personal information protected by the Act, triggering the PIA requirement. *See* Pub. L. No. 107-347, § 208(b)(1)(A)(ii)(II); Off. of Mgmt. & Budget, Exec. Off. of the President, M-03-22, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002 (Sep. 26, 2003). DOJ's complaint does not allege that DOJ completed a PIA applicable to this data on individual voters. *See generally* Dkt. #1. Because DOJ failed to comply with federal laws limiting its collection of sensitive data, the Court should dismiss the complaint. *See Weber*,816 F. Supp. 3d at 1196.

### 3.   DOJ's demand violates the Driver's Privacy Protection Act

The Driver's Privacy Protection Act (DPPA) prevents the disclosure of "personal information" that is obtained by the Washington Department of Licensing (DOL) in connection with a "motor vehicle record." 18 U.S.C. §§ 2721(a), 2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000). DOJ's demand for voter data implicates the DPPA because Washington's statewide voter registration database receives information directly from DOL. Secretary Hobbs receives information from DOL regarding whether a person has completed their voter registration, along with their completed voter registration when that person applies for a driver's license. Wash. Rev. Code § 29A.08.340; *see also* 52 U.S.C. § 20504. Or when someone applies for, renews, or updates an enhanced driver's license or enhanced ID, they are automatically registered to vote or have their information in the statewide voter registration database updated. *See* Wash. Rev. Code §§ 29A.08.315, .355. DOL thus regularly transmits driver's license numbers, among other information, to Secretary Hobbs and Washington's statewide voter registration system on a regular and ongoing basis. *See* Wash. Rev. Code § 29A.08.350.

An exception to the DPPA is when information is disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C.A. § 2721(b)(1). In other litigation seeking other states' voter data, DOJ has claimed that its demand for states' voter registration lists falls under this exception. *See, e.g.*,

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

27

Opposition to Motion to Dismiss at 28-29, *United States of America v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Nov. 18, 2025), ECF No. 63. But DOJ cannot "identif[y] how the use of millions of [Washingtonians]' driver's license numbers would help it understand whether [Washington] conducts a general program that makes a reasonable effort to remove persons from its voter rolls due to death or change in residence." *Weber*, 816 F. Supp. 3d at 1195. DOJ's demand for Washington's voter registration list thus violates the DPPA, warranting dismissal of its complaint.

## V.    CONCLUSION

This Court should grant Secretary Hobbs's motion to dismiss without leave to amend and deny the United States's motion to compel.

DATED this 11th day of May 2026.

I certify that this memorandum contains 9,810, in compliance with the Court's order (Dkt. 45).

NICHOLAS W. BROWN
  *Attorney General*

 *s/Tera M. Heintz*
TERA M. HEINTZ, WSBA 54921
CRISTINA SEPE, WSBA 53609
KARL D. SMITH, WSBA 41988
KELLY PARADIS, WSBA 47175
  *Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
360-753-6200
Tera.Heintz@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Karl.Smith@atg.wa.gov
Kelly.Paradis@atg.wa.gov

*Counsel for Secretary of State
Steve Hobbs*

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL
NO. 3:25-cv-06078-KKE

28

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500