The Honorable Kymberly K. Evanson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

STEVE HOBBS, in his official capacity as the Secretary of State of the State of Washington,

*Defendant.*

v.

COMMON CAUSE, and WASHINGTON CONSERVATION ACTION EDUCATION FUND (a/k/a WCAEF), and COMMON POWER, and WASHINGTON ALLIANCE FOR RETIRED AMERICANS (a/k/a WARA),

*Intervenor-Defendants.*

Case No. 3:25-cv-06078-KKE

INTERVENOR-DEFENDANTS COMMON CAUSE AND WASHINGTON CONSERVATION ACTION EDUCATION FUND'S COMBINED MOTION TO DISMISS AND RESPONSE IN OPPOSITION TO MOTION TO COMPEL

Note on Motion Calendar June 22, 2026

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

I.      Background and Procedural Posture .................................................................................2

II.     Statutory Background ........................................................................................................3

        A.      CRA ........................................................................................................................4

        B.      NVRA ......................................................................................................................5

        C.      HAVA ......................................................................................................................6

LEGAL STANDARD .....................................................................................................................6

ARGUMENT ..................................................................................................................................7

I.      Plaintiff fails to state a claim under Rule 12(b)(6) ...........................................................8

        A.      The Federal Rules of Civil Procedure apply ...........................................................9

        B.      Plaintiff has failed to state the basis and the purpose of its request ......................10

                1.      The CRA requires that Plaintiff state the basis and the purpose for
                        the request .................................................................................................11

                2.      Plaintiff failed to allege the basis for its demand .....................................12

                3.      Plaintiff failed to state the purpose for its demand ...................................14

                4.      Plaintiff's stated basis and purpose are not legitimate ..............................17

II.     Plaintiff's motion to compel is a procedurally improper dispositive motion ..............18

        A.      The CRA does not authorize a procedurally deficient motion to compel ..............19

        B.      In analogous situations, courts engage in meaningful judicial review .................20

        C.      Plaintiff's reliance on *Lynd* and *Donaldson* is unavailing ....................................21

D.    Plaintiff's request is pretextual ........................................................................23

E.    Plaintiff's request for unredacted voter rolls violates Washington law .................26

CONCLUSION.............................................................................................................................28

Motion to Dismiss and
Opposition to Motion to Compel                    ii                    Law office of Amanda Beane
No. 3:25-cv-06078-SKV                                              7724 35th Ave. NE, P.O. Box 15526
                                                                   Seattle Washington, 98115
                                                                   (206) 531-0224

## INTRODUCTION

Plaintiff, the United States, has undertaken a widespread effort to amass voters' sensitive data from almost every state in the country. Washington is one of 30 states, plus the District of Columbia, that Plaintiff has sued over their refusals to produce unredacted voter rolls, including driver's license numbers and social security numbers. Because Plaintiff did not state the basis and the purpose for its demand of Washington's unredacted voter rolls, as required by the Civil Rights Act (CRA), it fails to state a claim under Rule 12(b)(6).

To date, all courts to rule on these cases, including two in this Circuit, have agreed that Plaintiff's claims are deficient and have dismissed Plaintiff's parallel attempts to obtain unredacted voter rolls in other states. *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026); *United States v. Galvin*, No. 1:25-cv-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *cf. United States v. Raffensperger*, No. 5:25-cv-00548-CAR, 2026 WL 184233 (M.D. Ga. Jan. 23, 2026) (dismissing complaint without prejudice for lack of subject matter jurisdiction because the United States failed to comply with the CRA's requirement that suit be filed in the federal district court in which the demand for records is made or where the demanded records are located). Because Plaintiff's case in Washington suffers from the same legal flaws, this Court should similarly dismiss the Complaint.

Motion to Dismiss and
Opposition to Motion To Compel                    1
No. 3:25-cv-06078-KKE

Law office of Amanda Beane
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

Plaintiff has also filed a motion to compel, ECF No. 29, which is based on the same faulty legal premise as its Complaint and must therefore be denied. The motion to compel is an attempt to circumvent the traditional requirements of litigation and the Federal Rules of Civil Procedure (FRCP or Federal Rules) to obtain sensitive information about Washington voters. *See Weber*, 816 F. Supp. 3d at 1182 (denying motion to compel because "exercising 'appropriate process' under the FRCP allows this Court to determine that the DOJ has not met Title III of the CRA's statutory requirements"). The motion requests the entirety of Plaintiff's desired relief in this case: access to Washington's unredacted voter registration list. It is an attempted end-run around judicial review, because Plaintiff's demand under the CRA fails to state the basis and the purpose for obtaining the unredacted voter list. The motion therefore cannot be granted.

## BACKGROUND

### I.     Background and Procedural Posture

In the summer of 2025, Plaintiff sent letters to election officials in dozens of states, including Washington, demanding production of their statewide voter registration lists, including sensitive information that is not part of the public voter file. The United States Department of Justice (DOJ) wrote to Secretary of State Hobbs on September 8, 2025, demanding an electronic copy of Washington's statewide voter registration list containing "*all fields*, which . . . must include the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number[.]" ECF No. 30-1, Sep. 8, 2025 Letter (emphasis original); *see also* ECF No. 1, Compl. ¶ 18. The letter cited the CRA, Help America Vote Act (HAVA), and National Voter Registration Act (NVRA). ECF No. 30-1.

On September 23, 2025, Secretary Hobbs wrote back to DOJ explaining that DOJ's request

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE                    2          LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

"raises serious legal and privacy concerns" and that he has the "responsibility to safeguard highly personal voter information protected from disclosure under both Washington and federal law." ECF No. 30-2, Sep. 23, 2025, Letter (citing W.R.C. § 29A.08.720(3)(a)). Secretary Hobbs explained that none of the statutes DOJ cited "support production of such highly sensitive voter registration information" and "the CRA does not authorize collection of information for purposes not authorized under the statute." *Id.* The Secretary noted that although DOJ claimed it was seeking the unredacted voter rolls to assess Washington's compliance with the NVRA and HAVA, he had "significant concerns that this is not the real reason for [DOJ's] request" based on public reporting indicating "that DOJ intends to use these lists to create a national voter registration database, to share information with the Department of Homeland Security to assist in immigration enforcement efforts, and for other purposes not authorized by law." *Id.* Secretary Hobbs also explained how DOJ could request a copy of the publicly available voter registration list. *Id.*

Plaintiff filed suit on December 2, 2025, alleging only one claim: that Defendant has violated the CRA. ECF No. 1. Months later, Plaintiff moved to compel Washington to provide its full statewide voter registration list, without any additional process in this Court, pursuant to the same statute.[1] *See* ECF No. 29, Mem. in Supp. of Mot. to Compel (Br.).

## II.    Statutory Background

Although Plaintiff's lawsuit brings only one count under the CRA, the lawsuit invokes three statutes—the CRA, NVRA, and HAVA. Congress's intent in passing all three of the statutes

---

[1] The delay was due to Plaintiff's failure to properly serve the Complaint. *See* ECF Nos. 8, 16, 18, 22. After assessing Plaintiff's explanation for the failure to properly serve, the Court found that the case should not be dismissed. ECF No. 22.

"was clear—ensuring that all Americans, regardless of race, are able to vote without fear or distress." *Weber*, 816 F. Supp. 3d at 1175.

### A.    CRA

The Civil Rights Act of 1960 was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race." *Allen v. Milligan*, 599 U.S. 1, 47 (2023) (Thomas, J., dissenting). "Title III of the Civil Rights Act of 1960 was passed during the Jim Crow era, when persistent voter suppression was preventing Black Americans from voting." *Weber*, 816 F. Supp. 3d at 1175. "States were utilizing literacy tests, arbitrary registration tactics, voter ID laws, and poll taxes to keep minorities away from the ballot. Black Americans risked intimidation and violence every time they tried to access the polls." *Id.* "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). These efforts included rejecting "applicants for failing to calculate their age to the day" and "underlining Mr. when it should have been circled." *Id.* (citation modified). During this time "[t]o hide their complicity in voter suppression, state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register." *Weber*, 816 F. Supp. 3d at 1175.

Congress enacted the CRA "directly in response to these concerns, requiring states to retain and preserve all records pertaining to voter registration, voting applications, and payments of poll taxes." *Weber*, 816 F. Supp. 3d at 1175. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special, or primary

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

4

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

election. 52 U.S.C. § 20701. Section 303 requires that a state make any of these retained records available for inspection, reproduction, and copying "upon [a] demand in writing by the Attorney General" that contains "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

**B.     NVRA**

Congress passed the NVRA in 1993 to establish "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," making "it possible for Federal, State, and local governments to implement this [Act] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," protecting "the integrity of the electoral process," and ensuring "that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). Similar to the CRA, the NVRA was enacted "to combat the effects of discriminatory and unfair registration laws that cheapened the right to vote." *Weber*, 816 F. Supp. 3d at 1175 (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012)).

Each section of the NVRA works to balance these objectives. Section 8 of the NVRA regulates the way that states update and maintain their voter registration lists—often referred to as list maintenance—and provides a disclosure mechanism by which any party may seek certain information regarding those lists. 52 U.S.C. § 20507(b). Section 8 requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant . . . or a change in the residence of the registrant," but does not require states to conduct programs to remove voters for other reasons. 52 U.S.C. § 20507(a)(4).

**C.    HAVA**

Against the backdrop of the NVRA, and following the 2000 general election, Congress enacted HAVA. Pub. L. No. 107-252, 116 Stat. 1666 (2002) (52 U.S.C. §§ 20901-21145). HAVA requires that each state maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list," which "shall serve as the single system for storing and managing the official list of registered voters throughout the State." 52 U.S.C. § 21083(a)(1)(A), (a)(1)(A)(i). HAVA charges states with "conducting a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible because of a change of address [or death]." *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019); *see also* 52 U.S.C. § 21083(a)(2)(A)(ii). Although the statute repeatedly refers to other provisions of the NVRA, *see, e.g.*, 52 U.S.C. § 21083(a)(2)(A)(i), it neither contains nor incorporates a disclosure provision of any kind.

### LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Garza v. Woods*, 150 F.4th 1118, 1126-27 (9th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although factual allegations contained in the complaint are assumed to be true, this rule does not extend to legal conclusions. "[E]ven 'well-pleaded facts' are not sufficient if they are

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

6

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

accompanied only by '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

Plaintiff's Complaint fails to state a claim because it does not allege sufficient facts or legal authority to establish that Plaintiff is entitled to production of Washington voters' sensitive data. Plaintiff's motion to compel, in turn, attempts to bypass the normal rules of civil procedure and escape judicial review of its Complaint, to avoid dismissal and force Washington to turn over its unredacted voter rolls. But such an end-run around this Court's review is impermissible. Rather, the Federal Rules apply and counsel for dismissal of the case under Rule 12(b)(6).

Although the Complaint broadly gestures to enforcing the NVRA and HAVA, it is limited to a single CRA claim. Plaintiff's authority under the CRA is not unbounded—any demand for records "shall contain a statement of the basis and the purpose therefore." 52 U.S.C. § 20703. Plaintiff does not meet the CRA's "basis" requirement because its demand in the September 2025 letter did not state any facts that indicate Washington is not in compliance with the NVRA or HAVA. Plaintiff's Complaint similarly fails to allege such facts. And Plaintiff does not meet the CRA's "purpose" requirement because a single snapshot of Washington's unredacted voter file cannot be used to determine the State's compliance with those statutes, demonstrating that Plaintiff's purported purpose is insufficient and, rather, evinces federal overreach into election functions delegated to the states.[2]

---

[2] Indeed, just as Plaintiff sent its September 8 letter to Secretary Hobbs, it settled a HAVA enforcement action against North Carolina that it brought without demanding North Carolina's

Plaintiff's justifications for its demand are pretextual. Plaintiff has requested sensitive voter data from at least 48 states and Washington, D.C. and has sued 29 other states and Washington, D.C. for refusing to comply with its unlawful demands. Plaintiff has not attempted to show that it believes all of these jurisdictions are violating federal law regarding list maintenance. This remarkable lack of justification demonstrates that Plaintiff improperly seeks to use the CRA as an unlimited tool to consolidate voter data and to expand its own power over elections, rather than to protect the right to vote.

DOJ, like any other agency, must abide by statutory requirements when seeking documents. *See In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041-JHC, 2026 WL 1102159, at *5 (W.D. Wash. Apr. 23, 2026) (holding "the DOJ must establish a prima facie case" to issue a subpoena and denying DOJ's motion to alter or amend decision finding DOJ subpoenas unenforceable); *see also Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (requiring compliance with statute that controls the CFPB's investigative demands). Because Plaintiff fails to meet the statement-of-basis-and-purpose requirements necessary to state a claim under the CRA, the Court must dismiss its Complaint.

## I.      Plaintiff fails to state a claim under Rule 12(b)(6).

Plaintiff has initiated civil litigation through filing a complaint, and the Federal Rules of Civil Procedure apply here as they do in almost every civil action. Under the CRA, Plaintiff must

---

unredacted voter rolls. *See* Consent Judgment and Order at 10-11, *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-00283-M-RJ (E.D.N.C. Sep. 8, 2025), https://www.brennancenter.org/media/14474/download/072-09.08.2025-entry-of-stipulated-consent-judgment.pdf?inline=1.

state the basis and the purpose for its demand for Washington's unredacted voter rolls. Its failure to state the basis and a lawful purpose in its demand letter is fatal to its claim.

### A.    The Federal Rules of Civil Procedure apply.

Plaintiff brought this claim under the CRA, which requires applying "appropriate process," including application of the Federal Rules. *See Weber*, 816 F. Supp. 3d at 1182 ("[E]xercising 'appropriate process' under the FRCP allows this Court to determine that the DOJ has not met Title III of the CRA's"). Only four years after Congress enacted the CRA, the Supreme Court held that a statute using the same phrase—"appropriate process"—required application of the Federal Rules. *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) ("Because § 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). *Powell* held that "appropriate process" required courts to apply standard civil procedure rules and to ensure the relevant agency satisfied statutory prerequisites to compel the production of records.[3] *Id.* at 57-58 & n.18. Courts in this Circuit have applied *Powell* to other federal agency's demands for records. *See, e.g.*, *Crystal v. United States*, 172 F.3d 1141, 1143-44 (9th Cir. 1999) (citing *Powell*, 379 U.S. at 57-58). Applying the same meaning to the identical text of the CRA accords with how courts generally interpret federal statutes. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes."). Other courts that have decided parallel litigation, two of which are in this Circuit, have applied *Powell*. *See*

---

[3] The statute at issue in *Powell* provided the IRS with authority to issue administrative summonses and demand records as part of its prelitigation investigatory powers. It provided that federal courts had jurisdiction "*by appropriate process* to compel such attendance, testimony, or production of books, papers, or other data." 379 U.S. at 52 n.10 (emphasis added).

*Weber*, 816 F. Supp. 3d at 1182 n.15; *Oregon*, 2026 WL 318402, at *7-8; *see also Amore*, 2026 WL 1040637, at *4.

The Federal Rules "govern the procedure in *all civil actions* and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added); *see also* 28 U.S.C. § 2072(b) (authorizing FRCP and providing that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect"). The FRCP were promulgated to "secure the just, speedy, and inexpensive determination of *every action*," Fed. R. Civ. P. 1 (emphasis added), "consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Plaintiff chose to initiate this civil action and file a motion to compel—a discovery motion governed by the FRCP. *See* Fed. R. Civ. P. 37(a). The FRCP should therefore apply to Plaintiff's suit. *See Weber*, 816 F. Supp. 3d at 1182; *Oregon*, 2026 WL 318402, at *8; *Amore*, 2026 WL 1040637, at *4.

At a minimum, Plaintiff's demand under the CRA must satisfy the basic administrative requirements outlined in the statute to obtain records by stating the basis and the purpose of its demand. Plaintiff has not met the statutory prerequisites under the CRA, because it has not provided the statement of the basis and the purpose for its demand, *see infra* Section I(B), and should not be allowed to abuse this procedural device to circumvent judicial analysis of that failure.

**B.      Plaintiff has failed to state the basis and the purpose of its request.**

Plaintiff failed to state the basis for accessing Washington's unredacted voter rolls because it has failed to provide any factual reason for its request. Rather than provide a tailored request based on Washington's purported violations of federal law, DOJ has requested the same exact information from 48 states and Washington, D.C., and sued 30 states plus Washington, D.C. for

this information, demonstrating that Plaintiff has no valid basis for requesting this data. The failure to state a basis alone is sufficient to grant this motion to dismiss. Plaintiff also fails to meet the purpose requirement because its purported purpose is untethered to the information sought and, instead, represents unlawful federal overreach into list maintenance procedures.

          **1.**       **The CRA requires that Plaintiff state the basis and the purpose for the request.**

The CRA requires the Attorney General "to offer a written statement of *both* the purpose and basis for its demands to" Washington. *Weber*, 816 F. Supp. 3d at 1182; 52 U.S.C. § 20703 (requiring "a statement of the basis and the purpose" for any records requested). "The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law," and "purpose" is "the rationale for the request[.]" *Weber*, 816 F. Supp. 3d at 1184; *see also Basis*, Black's Law Dictionary 161 (8th ed. 2004) ("an underlying condition"); *Purpose*, Black's Law Dictionary 161 (8th ed. 2004) ("An objective, goal, or end"). At a minimum, the "basis" requirement compels DOJ to describe factual information in its possession that tends to show the law has been violated. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *Amore*, 2026 WL 1040637, at *5.

These CRA requirements are meaningful safeguards that Plaintiff may not flout. *See Weber*, 816 F. Supp. 3d at 1184; *Oregon*, 2026 WL 318402, at *8. The requirements ensure that the federal government uses the CRA as a tool to conduct properly predicated investigations rather than a blank check to get wide swaths of documents about voters beyond its statutory authority. *See In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL          11          LAW OFFICE OF AMANDA BEANE
No. 3:25-cv-06078-KKE          7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

in such Federal elections after May 6, 1960."). Even *Kennedy v. Lynd*, a case on which Plaintiff extensively relies, recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor." 306 F.2d 222, 225 (5th Cir. 1962) (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)); *see also United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) ("[A] district court is not a 'rubber stamp' for agency demands for the production of information."); *Weber*, 816 F. Supp. 3d at 1182 (holding that "appropriate process" requires application of FRCP which allows the Court to determine whether Plaintiff has met the CRA's statutory requirements).

The CRA's safeguards accord with those that courts apply in analogous situations. In the administrative subpoena context, courts have found that the test for judicial enforcement of an administrative subpoena requires evaluating whether the investigation is "conducted for a legitimate purpose." *See Crystal*, 172 F.3d at 1143-44. In the IRS summons context, the Ninth Circuit has laid out criteria the government must establish to obtain judicial enforcement, including "legitimate purpose," "relevan[ce] to that purpose," and that the government followed the requisite process. *See id.* In analyzing such demands, courts should inquire into allegations that an agency is using an administrative subpoena for an improper purpose, particularly when the government fails to provide any evidence of an offense that the party under investigation has committed. *See In re Subpoena Duces Tecum No. 25-1431-016*, 2026 WL 1102159, at *5.

### 2. Plaintiff failed to allege the basis for its demand.

Plaintiff's September 8, 2025, demand for Washington's voter list contained no description of the factual basis for its request, merely a bare citation to the CRA. ECF No. 30-1.

The letter demanded Washington's sensitive voter data "[p]ursuant to the foregoing authorities [of the NVRA and HAVA], including the CRA." ECF No. 30-1 at 3. Plaintiff argues

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

12

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

that such a reference to the statutory basis for making the demand, namely the CRA, suffices. Br. at 9-10. However, Plaintiff cites nothing to support this proposition, because it cannot possibly be accurate. The CRA requires that the Attorney General provide both the basis *and* the purpose alongside any CRA demand, but Plaintiff's argument collapses these two distinct requirements, which would eliminate a requirement Congress imposed. *See Oregon*, 2026 WL 318402, at *9 ("If the purpose is to investigate violations of a statute, the basis must be something else; the statute underlying the investigation is nothing more than a component of the purpose."); *Galvin*, 2026 WL 972129, at *6 (dismissing case for failing to state basis); *Amore*, at *5 (rejecting Plaintiff's argument and finding "Congress could not have intended Title III to be interpreted in this redundant and circular manner."). In order to give meaning to both terms, "the basis" must "mean a factual basis for investigating a violation of a federal statute." *Oregon*, 2026 WL 318402, at *9; *see also Galvin*, 2026 WL 972129, at *6; *Amore*, 2026 WL 1040637, at *5. Because Plaintiff provided no factual predicate for its September 2025 demand, the motion fails.[4]

Nor can Plaintiff belatedly supply a post-hoc justification for its demands as it attempts to do through the declaration of Eric Neff. The CRA requires that the written demand itself contains the statement of basis and purpose. *See Galvin*, 2026 WL 972129, at *5. This Court should not consider Plaintiff's post-hoc rationale to save its deficient Complaint; but even if this Court could do so, the Neff Declaration would still fail to satisfy the CRA's requirements. The Declaration

---

[4] Even in *Lynd*, a case on which Plaintiff relies, the Attorney General's letter made a "statement of the basis" when explaining the demand was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6; *see also* Part II.C. (discussing *Lynd*).

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

provides only discussions of prior matters related to the NVRA, HAVA, and the CRA, but no basis to argue that Washington is currently violating federal voting laws. *See* ECF No. 30. Plaintiff's failure to provide a basis for its request that is specific to Washington becomes clearer within the broader context: it has demanded unredacted voter rolls from almost every state and sued 30 states and the District of Columbia without providing individualized reasons showing a good-faith belief that every one of these jurisdictions is violating federal voting law.

### 3.    Plaintiff failed to state the purpose for its demand.

Plaintiff has likewise failed to identify a legitimate purpose for its demand, which is fatal to its Complaint. Although not articulated in its actual demand letter, Plaintiff now claims that the nonpublic information it seeks "is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections." ECF No. 30 at 2; *but see* ECF No. 30-1. But the Constitution and relevant statutes Plaintiff invokes establish that the states, not the federal government, are in charge of maintaining voter rolls and the process of removing and adding individual voters. *See* U.S. Const. art. I, § 4, cl. 1; 52 U.S.C. § 20507(a)(4); 52 U.S.C. § 21083(a)(1)(A); 52 U.S.C. § 21085 (delegating expressly to the states the methods of complying with HAVA's substantive list-maintenance provisions); *see also Amore*, 2026 WL 1040637, at *2. Washington controls its own state list maintenance procedures, as contemplated by HAVA and the NVRA. *See, e.g.*, Wash. Rev. Code § 29A.08.105, *et seq.* Plaintiff's purported purpose would supplant Washington's role in list maintenance by substituting its own judgment and process, which violates the constitutional and statutory assignments of election administration duties. *See infra* Section II(D). Usurpation of these duties cannot serve as a legitimate purpose for Plaintiff's demands. *See Weber*, 816 F. Supp.

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL                    14
No. 3:25-cv-06078-KKE

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

3d at 1175 ("The DOJ cannot go beyond the boundaries provided by Congress and use these legislative tools in a manner that wholly disregards the separation of powers provided for in the Constitution.").

Plaintiff's arguments related to purpose are also insufficient because an unredacted voter file is not necessary for the United States to assess Washington's compliance with its statutory responsibilities under the NVRA or HAVA. *See Weber*, 816 F. Supp. 3d at 1184; *but see* Br. at 1. The NVRA requires states to implement "a *general program* that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or a change in residence. 52 U.S.C. § 20507(a)(4) (emphasis added). The Supreme Court has recognized that "States take a variety of approaches" in complying with the NVRA's requirements, and states are able to take a variety of approaches because the term "reasonable effort" gives states room to delineate the program they wish to implement. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761-62 (2018).

Here, the Attorney General failed to state the purpose for his request because he failed to explain why he needs access to driver's license numbers and social security numbers to evaluate whether Washington's general list-maintenance programs meet the standard of "reasonable effort." Plaintiff argues that it needs this information to ensure "Washington's statewide voter registration list is accurate." *See* Br. at 2. But such a level of specificity falls outside the scope of the federal government's duty to evaluate a state's general list-maintenance procedures. It is an attempt to usurp the State's role of deciding how to implement its general program, which cannot be a valid purpose under the CRA. Moreover, a static, unredacted copy of Washington's voter registration list is not necessary to determine whether Washington is complying with HAVA's and the

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

15

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

NVRA's list maintenance requirements, because a static list does not explain the procedures by which Washington maintains the list. Therefore, Plaintiff's stated purpose—to conduct its own list maintenance under the NVRA and HAVA—is not sufficient under the CRA.

Plaintiff cites only two instances from the last fifty years in which the DOJ used the CRA to seek states' unredacted voter files. *See* ECF Nos. 30-4, 30-5, 30-6.[5] Neither of these approximately 20-year-old agreements helps its case. Both instances—a memorandum of understanding with Texas and a consent decree involving Georgia—are negotiated agreements between parties. Neither is helpful in determining the scope of Plaintiff's authority under the CRA or whether DOJ followed proper procedure. The memorandum of understanding is the result of a state's independent decision to turn over its voter rolls without any decision by a court. *See* ECF No. 30-4. Similarly, the consent decree "embodies an agreement of the parties[.]" *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citation omitted). Although the decree involving Georgia reflects an expectation that the agreement "will be reflected in, and be enforceable as, a judicial decree," *id.*, the court that issued that consent decree did not make any express finding as to the Attorney General's power under the CRA or the processes DOJ must follow to obtain documents. *See* ECF Nos. 30-5, 30-6.

Moreover, both agreements provide much greater protection for the data than Plaintiff has indicated would occur here. For example, in its memorandum of understanding with Texas, DOJ agreed to give the state notice before disclosing any of the information received outside of DOJ and to destroy the information after its use. ECF No. 30-4 at 2. Similarly, in the Georgia consent

---

[5] *United States v. North Carolina State Board of Elections* was not brought under the CRA. ECF No. 30-3.

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

decree, the court limited DOJ's use of the data received and similarly prohibited its disclosure except to Congress, a court, or grand jury, and required DOJ to eventually destroy the records. ECF No. 30-6 at 4-5. Plaintiff provides no such assurances here, and its recent public statements indicate that it will not abide by such limitations and that its true purpose is something other than what is described in the Complaint. *See infra* Section III. That Plaintiff is only able to cite the Texas and Georgia examples demonstrates that Plaintiff's current use of the CRA to sweep up sensitive data from across the country is far outside normal bounds.

### 4.     Plaintiff's stated basis and purpose are not legitimate.

Plaintiff's purported justification for seeking this data is entirely pretextual. The executive branch's public statements and actions demonstrate that the true purpose of this request is not to assess a suspected violation of the NVRA or HAVA, or otherwise enforce federal law, but to amass the data of tens of millions of voters so it can expand its own role into election administration beyond constitutional limits. *See Oregon*, 2026 WL 318402, at *13 ("Plaintiff's claims here represent an overreach and misuse of those limited constitutional exceptions designed to ensure decentralized election regulation" and could be used in "unprecedented ways . . . [and] may very well lead to an erosion of voting rights and voter participation."); *Weber*, 816 F. Supp. 3d at 1184 ("It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database."). In stark contrast to previous, targeted demands under the CRA, DOJ has made the same request for sensitive voter data to at least 48 states and Washington, D.C., and thus far sued 30 of those states and Washington, D.C. DOJ has not attempted to show that there is any reason to think that all of these jurisdictions may be violating the NVRA's and HAVA's list-maintenance provisions. Rather, documents obtained

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

17

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

through Freedom of Information Act requests make clear that DOJ "mass produced" these letters without considering whether there was any potential violation of the NVRA or HAVA. *See infra* Section III.

The question of pretext goes directly to whether the requirements of the CRA were met—whether DOJ stated *the* basis and *the* purpose for its demand, as required by the statute. In this way, this case is very similar to a court's decision to deny a subpoena after making "a pretext finding based on the record presented." *See In re Subpoena Duces Tecum No. 25-1431-016*, 2026 WL 1102159, at *9. Like the subpoena power afforded to DOJ, the CRA's particular language requiring Plaintiff to state the basis and the purpose is important. "[T]he DOJ's administrative subpoena power is not a loophole for achieving policy goals not authorized by Congress. Congress sets the bounds of the DOJ's administrative subpoena power—not the Administration or its policy goals." *Id.* at *8. Here, Plaintiff seeks to exceed the bounds Congress has set in the CRA. The pleadings and public record compel the conclusion that DOJ's invocation of the NVRA and HAVA is pretextual and is not *the* purpose for the demand.

**II.      Plaintiff's motion to compel is a procedurally improper dispositive motion.**

As Plaintiff has not alleged—either in its demand nor in its Complaint—"the basis and the purpose" required by the CRA, the case should be dismissed and the Court need not address the motion to compel, which fails for the same reasons. Plaintiff's motion is functionally dispositive, unlike a true motion to compel, which is a mechanism normally reserved for discovery disputes, not addressing the merits of the case. Plaintiff's motion to compel does not afford either the Court

or the parties the opportunity to develop the legal and factual issues in this case.[6] Instead, Plaintiff's motion asks the Court to forgo judicial review under the Federal Rules and merely rubber-stamp its request. The CRA does not authorize this shortcut, but rather requires "appropriate process," which includes judicial review and application of the Federal Rules. Even if this Court were not to dismiss the Complaint, it should deny Plaintiff's extraordinary request to forgo the protections of judicial review and grant the entirety of the requested relief without the benefit of discovery or an assessment of the sufficiency of its demand. *Cf.* Br. at 7.

## A.    The CRA does not authorize a procedurally deficient motion to compel.

The CRA does not permit a rushed motion to compel outside the bounds of judicial review and the Federal Rules. The CRA provides that a district court "shall have jurisdiction by *appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added); *see also supra* Section I(A). "Appropriate process" does not include bypassing the normal process of civil litigation through a motion to compel. *See Weber*, 816 F. Supp. 3d at 1182 ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures"); *Oregon*, 2026 WL 318402, at *8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations"); *Amore*, 2026 WL 1040637, at *4 ("[T]he Federal Rules of Civil Procedure govern

---

[6] The motion is also internally inconsistent. While captioned as "United States' Motion for Order to Compel Federal Election Records Demanded Pursuant to the Civil Rights Act of 1960 and Memorandum in Support Thereof," the relief requested is an order to show cause. ECF No. 29 at 1. Plaintiff refers to a "Motion to Show Cause" on the same page. *Id.* This is not mere formalism— the CRA requires appropriate process, but Plaintiff does not seem sure of what that process could be.

Motion to Dismiss and
Opposition to Motion To Compel     19     Law office of Amanda Beane
No. 3:25-cv-06078-KKE                        7724 35th Ave. NE, P.O. Box 15526
                                             Seattle Washington, 98115
                                             (206) 531-0224

this case, and [] DOJ is not entitled to any sort of summary or abbreviated procedures for obtaining the information it seeks."). As the motion is not proper under the CRA, it should be denied.

**B.        In analogous situations, courts engage in meaningful judicial review.**

As the Supreme Court has made clear, "[t]o protect against mistaken or arbitrary orders" by administrative officials, "judicial review is provided." *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950). Following the established principle that judicial review applies to protect against arbitrary orders, courts have extended *Powell* to other prelitigation agency requests for data, regardless of the issuing agency. *See, e.g.*, *Crystal*, 172 F.3d at 1143.

Plaintiff's attempts to put daylight between *Powell* and its own demands are unavailing. It claims that *Powell* is distinguishable because the statute at issue in that case explicitly "prohibited the Government from subjecting a taxpayer to unnecessary examination," and the CRA contains no such prohibition. ECF No. 29 at 10 (internal quotations omitted). First, this is not the statutory language that the Supreme Court relied upon to conclude that the Federal Rules apply and judicial review attaches. Rather, the Court relied upon the "appropriate process" language common to both the CRA and the Internal Revenue Code. *Powell*, 379 U.S. at 58 n.18. Second, Plaintiff's suggestion that the absence of a limiting statement implies that Congress meant to give the Department of Justice unbounded power to collect sensitive data from states with no review by a court is absurd on its face and flies in the face of ordinary judicial review.

To the contrary, in various contexts, courts engage in meaningful review of federal agency records demands, assessing whether the government has established a "legitimate purpose," that the investigation is "relevant to that purpose," and that the government followed the requisite process in seeking to access records. *See, e.g.*, *Crystal*, 172 F.3d at 1143-44; *In re Subpoena Duces*

*Tecum No. 25-1431-016*, 2026 WL 1102159, at *8. Such judicial review is consistent with other federal statutes allowing federal agencies to obtain records in service of investigations, where courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted for a legitimate purpose." *Crystal*, 172 F.3d at 1143.

### C.  Plaintiff's reliance on *Lynd* and *Donaldson* is unavailing.

Plaintiff asks the Court to overlook the case law requiring application of the FRCP and judicial review primarily based on its reading of *Kennedy v. Lynd*, a Fifth Circuit opinion from 1962 that is not binding on this Court. *See* ECF No. 29 at 7-9. Courts have rejected Plaintiff's reliance on *Lynd* in parallel cases. *See Weber*, 816 F. Supp. 3d at 1183; *Oregon*, 2026 WL 1040637, at *8; *Galvin*, 2026 WL 972129, at *5; *Amore*, 2026 WL 1040637, at *5; *Fontes*, 2026 WL 1177244, at *5. And with good reason. *Lynd* contains a single line suggesting that the CRA authorizes a special statutory proceeding "*comparable to* the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." 306 F.2d 222, 225 (5th Cir. 1962) (emphasis added). But *Lynd* does not suggest that even such a "comparable" proceeding is warranted in all CRA cases, including where there is no administrative order. *See id.* And *Lynd* was the product of a different era, shortly after the enactment of the CRA, during which "States were utilizing literacy tests, arbitrary registration tactics, voter ID laws, and poll taxes to keep minorities away from the ballot," and some "state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register." *Weber*, 816 F.Supp.3d at 1173. In the intervening 60 years, the Supreme Court has clarified that typical procedure attaches when a federal agency seeks to compel the production of records. *See Becker v. United States*, 451 U.S. 1306, 1307-08 (1981); *Powell*, 379 U.S. at 57-58; *see also, e.g., United*

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

21

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

*States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (allowing summons recipient opportunity to rebut government's prima facie case); *In re Subpoena Duces Tecum No. 25-1431-016*, 2026 WL 1102159, at *5 (holding "the DOJ must establish a prima facie case" to issue a subpoena and denying DOJ's motion to alter or amend decision finding DOJ subpoenas unenforceable).

Plaintiff's discussion of *Lynd* is tellingly selective. For example, Plaintiff never addresses the Court's statement that "Title III provides 'an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to *constitutional* principles.'" *Lynd*, 306 F.2d at 225 (emphasis added) (internal citation omitted). Plaintiff does not argue that it is attempting to use *Lynd*'s process to effectuate the Constitution's guarantee of voting rights but, rather, that it needs the documents to engage in list maintenance required by federal statute.

Plaintiff's reliance on *Donaldson v. United States*, 400 U.S. 517 (1971), is also misplaced. In *Donaldson*, the central issue was whether a third party could mandatorily intervene in a proceeding to enforce an IRS summons. The third party conceded that there were no constitutional issues at play and that the requests were not directed at his records. *Id.* at 522-23. Thus, no right of the third party who sought mandatory intervention was at issue. The Court in *Donaldson* simply held that an unharmed third party had no role in the proceeding. That is not the case here, where this Court is not considering a motion to intervene, but rather *Plaintiff*'s motion to compel. The motion raises the exact concern as in *Powell*: the process necessary to protect those subject to prelitigation information requests. *Powell*, 379 U.S. at 58 ("It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused.").

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL                    22                    LAW OFFICE OF AMANDA BEANE
No. 3:25-cv-06078-KKE                                                          7724 35th Ave. NE, P.O. Box 15526
                                                                                             Seattle Washington, 98115
                                                                                                      (206) 531-0224

Even if the Court were inclined to treat this matter differently than other civil cases, it should exercise its judicial authority to ensure the demand is proper and legally supported. *Lynd* recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor.'" 306 F.2d at 225 (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)). That judgment includes an analysis of whether the agency made the request for an improper purpose or in bad faith. *See Matter of Does*, 688 F.2d 144, 147-48 (2d Cir. 1982) (holding in the IRS summons context, Government must establish "legitimate purpose," "relevan[ce] to that purpose," and that the Government followed the requisite process) (citation modified); *see also Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (explaining court's role is to ensure the government is using its authority "in good faith and in compliance with the law") (internal citation omitted); *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986) ("[I]f a subpoena is issued for an improper purpose . . . its enforcement constitutes an abuse of the court's process."). Given the extraordinary nature and breadth of Plaintiff's demands in this case and across the country, the Court should exercise its judgment to ensure that Plaintiff is complying with the law and that its requests are made in good faith.[7]

### D.  Plaintiff's request is pretextual.

The widespread lack of justification demonstrates again that DOJ seeks to misuse the CRA as an unlimited tool to compile and consolidate voter data, and to interfere with the states' rights

---

[7] *Lynd* also directs that "if the respondent-custodian opposes the grant of such relief," the Court should set a "suitable hearing" on the matter. 306 F.2d at 226. Thus, at minimum, this Court should decline Plaintiff's request to decide this matter based on Plaintiff's motion to compel, without the benefit of discovery, and set an evidentiary hearing for the motion. The Court should not wholly dispense with the process otherwise applicable under the Federal Rules. *See* Fed. R. Civ. P. 1.

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL                    23                    LAW OFFICE OF AMANDA BEANE
No. 3:25-cv-06078-KKE                                                   7724 35th Ave. NE, P.O. Box 15526
                                                                       Seattle Washington, 98115
                                                                       (206) 531-0224

to administer their own elections, rather than to protect the right to vote. *See Weber*, 816 F. Supp. 3d at 1186 ("If the DOJ wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose."); *In re Gordon*, 218 F. Supp. at 826-27 ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960.").

Plaintiff's plans for this sensitive data appear nowhere in the Complaint, but have emerged from other sources, including President Trump's most recent Executive Order on elections, the memorandum of understanding that DOJ has signed with at least two states, and other DOJ statements and documents.[8] On March 31, 2026, President Trump issued Executive Order 14399, titled "Ensuring Citizenship Verification and Integrity in Federal Elections." The Order purports to enforce federal laws "prohibit[ing] non-citizens from registering to vote or voting in Federal elections," and to "enhance election integrity via the United States Mail." The Order directs the creation of a "State Citizenship List," which would require using Social Security records and other sensitive voter data—*i.e.*, the data that DOJ seeks through its unprecedented data-collection effort in Washington. In addition, the MOU describes DOJ's attempted takeover of states' exclusive

---

[8] *See* "Confidential Memorandum of Understanding" executed with Texas, https://www.brennancenter.org/media/15082/download/texas_12.09.2025_executed-mou.pdf?inline=1; "Confidential Memorandum of Understanding" executed with Alaska, https://www.brennancenter.org/media/15064/download/alaska_12.22.2025_executed-mou.pdf?inline=1. DOJ has apparently asked other states to sign the same MOU. *See* Proposed "Confidential Memorandum of Understanding" sent to Colorado, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/; *see also* Jonathan Shorman, *Trumps's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

24

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

authority to maintain their voter rolls and determine who should be removed from the rolls due to ineligibility. It provides that DOJ will conduct an analysis and assessment of the state's voter rolls and instruct the state to remove voters DOJ identifies.[9] Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026).

DOJ's public statements and documents obtained from DOJ through Freedom of Information Act requests confirm its goal was not to review list-maintenance procedures, but to expand federal control over elections and target voters for removal.[10] *See* Ex. A at 1220 (ordering that DOJ "mass produce" letters to states). From at least November 2025, Voting Section Chief Eric Neff instructed that DOJ should not provide information about its intended purpose for the data to the states, stating that neither HAVA, the NVRA, or the CRA "require [us] to give the states information about what we are going to do with the data." Ex. B. In one email obtained through a Freedom of Information Act request, a DOJ official responded to Privacy Act concerns by stating that DOJ wanted to "conduct searches that assess the List Maintenance of voter registration lists." Ex. C at 724. But this federal takeover of list maintenance would run contrary to the constitutional and the statutory frameworks for elections, which provide that Congress and the states make the law, and state and local governments run elections, including registering voters

---

[9] The MOU provides that removals must take place within 45 days of notification from DOJ, which—for any voters flagged for removal based on having moved—would violate Section 8(d) of the NVRA. 52 U.S.C. § 20507(d).

[10] These documents were obtained through Freedom of Information Act requests submitted by Citizens for Responsibility and Ethics in Washington (CREW), which are publicly available on CREW's website. *See CREW sues DOJ for failing to produce records on voter data collection*, CREW (Dec. 19, 2025), https://www.citizensforethics.org/legal-action/lawsuits/crew-sues-doj-for-failing-to-produce-records-on-voter-data-collection/.

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL                    25
No. 3:25-cv-06078-KKE

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

and maintaining voter rolls. 52 U.S.C. § 20507(a)(4); 52 U.S.C. § 21083(a)(1)(A); 52 U.S.C. § 21085.[11] At the same time, DOJ intentionally limited the information it provided to the states and to courts. Plaintiff disclosed to courts only recently that it was planning to run the lists through SAVE, *see* Ex. D at 50:17-23, even though it has been planning to do so since 2025. *See* Ex. E at 756.

**E.    Plaintiff's request for unredacted voter rolls violates Washington law.**

Even if Plaintiff sufficiently stated a basis and purpose for seeking the unredacted voter file under the CRA for potential violations of the NVRA's or HAVA's list-maintenance requirements, Washington's voter protection laws prevent disclosure of the personally identifying information at issue, and nothing in federal law preempts those protections. Wash. Rev. Code. §§ 29A.08.72(3)(A), .710. Washington law provides that a very limited set of voter information is available for public inspection, and that information does not include full date of birth, driver's license number, and the last for digits of social security numbers. *Id.*

Secretary Hobbs specifically invoked Washington laws that protect voter information in his response to Plaintiff's September 8 letter, explaining that "many of the data fields you have requested—including the registrant's full date of birth, driver's license number, and the last four digits of their social security number—are protected from disclosure under Washington law." ECF No. 30-2 at 2-3. Secretary Hobbs asked "[w]hy highly sensitive information, including voters' drivers' license numbers and social security numbers, is necessary to assess Washington's general program for voter list maintenance, how precisely DOJ would use such information to assess the

---

[11] Further, the proposed MOU does not limit DOJ's ability to use states' data and expressly permits DOJ to provide the data to contractors. MOU at 6-7; *but see* 52 U.S.C. § 20704.

State's list maintenance processes, and why that evaluation cannot be accomplished with voter's names, addresses, and years of birth." ECF No. 30-2 at 4. Rather than respond, Plaintiff filed this lawsuit.

Plaintiff does not argue that HAVA preempts state privacy, nor could it: HAVA lacks a public disclosure provision. And courts have recognized that the NVRA and state privacy laws operate together where such state privacy laws require minimal redaction of sensitive personal identifiers, while still requiring disclosure of the underlying records. *See Weber*, 816 F. Supp. 3d at 1185-86*.* The NVRA's coexistence with state privacy laws is another way that the law balances its objectives of encouraging participation and protecting the integrity of the electoral system. Instead of displacing state protections, those laws operate in concert with the NVRA as a "single procedural scheme," ensuring that the Attorney General and private litigants have the data required to enforce the Act, while simultaneously protecting voters' privacy interests. *See Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). Finally, even *Lynd*, on which Plaintiff relies, indicates that the CRA compliance mechanism is not intended to reach private information: "We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. Washington has made those records available to Plaintiff by providing its publicly available voter registration list.

Washington laws preventing disclosure of sensitive information do not frustrate the NVRA's purpose. Instead, those privacy laws reinforce the boundaries of public inspection articulated by the courts and the Attorney General. *See id.*; Brief for the United States as Amicus Curiae, *Public Interest Legal Foundation, Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397, at *28 (1st Cir. July 25, 2023) (arguing that state law limits on voter information are not preempted when

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL
No. 3:25-cv-06078-KKE

27

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

they affect uses that "would not further the NVRA's purposes," including "bans on disseminating personal data"). Thus, Washington's privacy laws are not preempted by the NVRA and, because Plaintiff's purported need for the unredacted voter file is to assess NVRA compliance, Washington laws prevent Plaintiff from accessing the sensitive voter information it seeks through this litigation. *See Weber*, 816 F. Supp. 3d at 1189 ("The NVRA and California's privacy protections can coexist because the latter does not obstruct the former. Nothing in the NVRA prevents redaction of sensitive voter information as California law requires.").

## CONCLUSION

For the foregoing reasons, Intervenor-Defendants Common Cause and Washington Conservation Action Education Fund respectfully request that this Court dismiss Plaintiff's Complaint and deny Plaintiff's motion to compel as moot.

For the reasons stated above, Intervenor Defendants Common Cause and WCAEF respectfully request that this Court accepts for filing the attached Motion to Dismiss and Response in Opposition to the Motion to Compel.

Date: May 20, 2026                    Respectfully Submitted,
                                       */s/Amanda Beane*

                                       Amanda Beane
                                       Law Office of Amanda Beane
                                       7724 35th Ave NE, P.O. Box 15526
                                       Seattle, WA 98115
                                       Tel: (206) 531-0224
                                       amanda@amandabeanelaw.com

                                       Brent Ferguson*
                                       Daniel S. Lenz*
                                       Sejal Jhaveri*

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL                28                LAW OFFICE OF AMANDA BEANE
No. 3:25-cv-06078-KKE                                           7724 35th Ave. NE, P.O. Box 15526
                                                               Seattle Washington, 98115
                                                               (206) 531-0224

Renata O'Donnell*
Kate Hamilton*
Alexis Grady*

Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
agrady@campaignlegalcenter.org

Maura Eileen O'Connor*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Patrick Berry*
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
Tel: (646) 292-8310
Fax: (212) 463-7308
berryp@brennan.law.nyu.edu
*Admitted Pro Hac Vice

Counsel for Intervenor-Defendants Common
Cause and Washington Conservation Action
Education Fund

MOTION TO DISMISS AND
OPPOSITION TO MOTION TO COMPEL                29
No. 3:25-cv-06078-KKE

LAW OFFICE OF AMANDA BEANE
7724 35th Ave. NE, P.O. Box 15526
Seattle Washington, 98115
(206) 531-0224

**CERTIFICATE OF SERVICE**

I, Amanda Beane, do hereby certify that on this 20th day of May 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Date: May 20, 2026                                    Signature : _/s/ Amanda Beane_

# EXHIBIT A

For both of these letters, I propose [_____ (b)(5) _____]
[____ (b)(5) ____] Let me know if you have any concerns with my proposed edits.  Thanks,

Tim

---

**From:** Gates, Michael (CRT) <[_____ (b)(6) _____]>
**Sent:** Wednesday, August 13, 2025 5:07 PM
**To:** Mellett, Timothy F (CRT) <[____ (b)(6) ____]>
**Cc:** Riordan, Maureen (CRT) [____ (b)(6) ____] Cumbee, Deborah (CRT) <[____ (b)(6) ____]>
**Subject:** RE: Letters

One more time… who knew the footnote margins did not track the body margins 😊  All set now.  I think this is my final answer.

**Michael E. Gates**
Deputy Assistant Attorney General
Civil Rights Division, U.S. Department of Justice
Cell: [____ (b)(6) ____]

---

**From:** Gates, Michael (CRT)
**Sent:** Wednesday, August 13, 2025 5:02 PM
**To:** Mellett, Timothy F (CRT) <[____ (b)(6) ____]>
**Cc:** Riordan, Maureen (CRT) [____ (b)(6) ____]; Cumbee, Deborah (CRT) [____ (b)(6) ____]
**Subject:** RE: Letters

Tim, let's try this again – attached has the proper letterhead!!!

**Michael E. Gates**
Deputy Assistant Attorney General
Civil Rights Division, U.S. Department of Justice
Cell: [____ (b)(6) ____]

---

**From:** Gates, Michael (CRT)
**Sent:** Wednesday, August 13, 2025 4:53 PM
**To:** Mellett, Timothy F (CRT) <[____ (b)(6) ____]>
**Cc:** Riordan, Maureen (CRT) <[____ (b)(6) ____]>; Cumbee, Deborah (CRT) [____ (b)(6) ____]
**Subject:** RE: Letters

By the way, we can never check our citations and references too much.  So if anyone has time to check them again, that would be great.  I did earlier today and found some bad references.  Just FYI

**Michael E. Gates**
Deputy Assistant Attorney General
Civil Rights Division, U.S. Department of Justice
Cell: [____ (b)(6) ____]

---

**From:** Gates, Michael (CRT)
**Sent:** Wednesday, August 13, 2025 4:51 PM
**To:** Mellett, Timothy F (CRT) <[____ (b)(6) ____]>

**Cc:** Riordan, Maureen (CRT) ┆        (b)(6)        ┆; Cumbee, Deborah (CRT) ┆              (b)(6)              ┆
**Subject:** Letters
**Importance:** High

Tim, the attached templates are approved and ready to go.  Please mass produce these tomorrow AM as early as possible and send to me the letters for each state.  I will then review, make any final edits, and then send to Deborah for signature.  Once she sends back PDFs with signatures, I will send out to each state.  So, plan to frontload your day tomorrow, unless you are able to get some done tonight.  In any event, we will get these done.

BTW, letters to CA and MN are approved and Deborah will send to me shortly and I will get those out.  I have included those letters here to in case upon another review, you find any nits that could be fixed.  If there are, we can send CA and MN out tomorrow too.  THANK YOU!!!!

**Michael E. Gates**
Deputy Assistant Attorney General
Civil Rights Division, U.S. Department of Justice
Cell: ┆    (b)(6)    ┆

CREW v. DOJ – CRT – 001220

# EXHIBIT B

| From: | Neff, Eric (CRT) | (b)(6) |
|---|---|---|
| | | (b)(6) |
| Sent: | 11/18/2025 11:01:54 PM | |
| To: | Osete, Jesus (CRT) [ (b)(6) ]; Riordan, Maureen (CRT) [ (b)(6) @usdoj.gov] | |
| CC: | Zandi, Matt (CRT) [ (b)(6) ] | |
| Subject: | RE: Letters from Secretaries of State to DOJ and DHS | |

This is likely fishing to try to trap us with contradictory statements later (or tomorrow, as CA is one of the states) in court. The claim that data has been shared with DHS has no citation and is too vague to even know what they are referring to.

I believe our reply should always be: "We will use the data in a manner consistent with Federal law" and say nothing more. HAVA, NVRA, CRA – none of them require to give the states information about what we are going to do with the data. No judge will have authority to limit us beyond a promise of Federal law compliance.

**duplicated in**

CREW v. DOJ - CRT - 001155-001158

# EXHIBIT C

**To:**    Bryce, Amanda (CRT) [_____(b)(6)_____]
**CC:**    Okwesa, Carolyn (CRT) [_____(b)(6)_____]
**Subject:**    RE: Voting Section -- Privacy Act Questions
**Attachments:**    Template for States Privacy Act 2025 08 27 1030am draft.docx

Hi Amanda,

I have attached a draft template for our letter to states that have raised the issues I mentioned below.  I pulled this information from our website and the Privacy Impact Assessment for JEFS.  We want to make sure what we are including here is accurate, so any guidance or edits that you have would be appreciated.  Thanks,

Tim

---

**From:** Mellett, Timothy F (CRT)
**Sent:** Tuesday, August 26, 2025 5:35 PM
**To:** Bryce, Amanda (CRT) < _____(b)(6)_____ >
**Cc:** Okwesa, Carolyn (CRT) [_____(b)(6)_____]
**Subject:** RE: Voting Section -- Privacy Act Questions

Hi Amanda,

Thanks for looking at this.  I think we were hoping to get a letter out later this week.
Yes, tomorrow afternoon would be fine to meet.  Brittany Wake and Nadine Jones also should be invited.

Tim

---

**From:** Bryce, Amanda (CRT) [_____(b)(6)_____]
**Sent:** Tuesday, August 26, 2025 4:59 PM
**To:** Mellett, Timothy F (CRT) < _____(b)(6)_____ >
**Cc:** Okwesa, Carolyn (CRT) [_____(b)(6)_____]
**Subject:** RE: Voting Section -- Privacy Act Questions

Tim,

I hope to have some follow-up response to you by next week.  In the meantime, could we chat tomorrow about the discontinuance of FOIA express ?  If there is time, also discuss STAPS.

Let me know if I could schedule it for tomorrow and who to invite.

Amanda Bryce
Chief Information Officer
U.S. Department of Justice | Civil Rights Division
[____(b)(6)____]
[_____(b)(6)_____]



**From:** Mellett, Timothy F (CRT) < (b)(6) >
**Sent:** Monday, August 25, 2025 6:19 PM
**To:** Bryce, Amanda (CRT) (b)(6)
**Subject:** Voting Section -- Privacy Act Questions

Hi Amanda,

Thanks for discussing the Privacy Act/data sharing questions the other week. We have requested voter registration lists from states to conduct searches that assess the List Maintenance of voter registration lists under the National Voter Registration Act and the Help America Vote Act (statutes that the Voting Section enforces). Some states have asked us a few Privacy Act questions because the data contains PII. At the moment, we are looking to write a letter to states that have asked the following questions:

1. Please provide a citation within the Federal Register to the system of records under which DOJ intends to collect and maintain the records it has requested.
   (We are thinking that it would be CRT-1, but we wanted to be sure, and we did not know if there would be others).
2. Please describe how DOJ plans to store, maintain, and use the requested voter registration information.
   (We can answer the "use" question but we don't know what we should say about store and maintain. Lit Support has this on the P Drive.)
3. Please explain who will have access to the information contained in the Voter Registration List.
   (Lit Support has permissions limited to managers and those attorneys and analysts working on the matters. I did not know how big of scope there could be while complying with the Privacy Act. Voting only? CRT only? DOJ only?)

Ideally, we would like to send the letters out on Wednesday. Happy to chat if you have questions. Thanks,

Tim Mellett
Deputy Chief, Voting Section
(b)(6)

CREW v. DOJ – CRT – 000724

**DOCUMENT WITHHELD IN FULL UNDER FOIA EXEMPTION B(5).**

**Sent**:       8/25/2025 8:32:51 PM
**To**:        Bryce, Amanda (CRT) [ (b)(6) ]
**Subject**:    Voting Section -- Privacy Act Questions

Hi Amanda,

Thanks for discussing the Privacy Act/data sharing questions the other week.  We have requested voter registration lists from states to conduct searches that assess the List Maintenance of voter registration lists under the National Voter Registration Act and the Help America Vote Act (statutes that the Voting Section enforces).  Some states have asked us a few Privacy Act questions because the data contains PII.  At the moment, we are looking to write a letter to states that have asked the following questions:

1.  Please provide a citation within the Federal Register to the system of records under which DOJ intends to collect and maintain the records it has requested.
    (We are thinking that it would be CRT-1, but we wanted to be sure, and we did not know if there would be others).
2.  Please describe how DOJ plans to store, maintain, and use the requested voter registration information.
    (We can answer the "use" question but we don't know what we should say about store and maintain.  Lit Support has this on the P Drive.)
3.  Please explain who will have access to the information contained in the Voter Registration List.
    (Lit Support has permissions limited to managers and those attorneys and analysts working on the matters.  I did not know how big of scope there could be while complying with the Privacy Act.  Voting only? CRT only? DOJ only?)

Ideally, we would like to send the letters out on Wednesday.  Happy to chat if you have questions.  Thanks,

Tim Mellett
Deputy Chief, Voting Section

CREW v. DOJ – CRT – 000726

**Sent:**       8/26/2025 9:04:43 PM
**To:**         Bryce, Amanda (CRT)         (b)(6)
**CC:**         Okwesa, Carolyn (CRT)       (b)(6)
**Subject:**    RE: Voting Section -- Privacy Act Questions

Hi Amanda,

Thanks for looking at this.  I think we were hoping to get a letter out later this week.
Yes, tomorrow afternoon would be fine to meet.  Brittany Wake and Nadine Jones also should be invited.

Tim

**From:** Bryce, Amanda (CRT) <          (b)(6)          >
**Sent:** Tuesday, August 26, 2025 4:59 PM
**To:** Mellett, Timothy F (CRT) <          (b)(6)          >
**Cc:** Okwesa, Carolyn (CRT)       (b)(6)
**Subject:** RE: Voting Section -- Privacy Act Questions

Tim,

I hope to have some follow-up response to you by next week.  In the meantime, could we chat tomorrow about the discontinuance of FOIA express ?  If there is time, also discuss STAPS.

Let me know if I could schedule it for tomorrow and who to invite.

Amanda Bryce
Chief Information Officer
U.S. Department of Justice | Civil Rights Division
       (b)(6)
         (b)(6)



**From:** Mellett, Timothy F (CRT) <          (b)(6)          >
**Sent:** Monday, August 25, 2025 6:19 PM
**To:** Bryce, Amanda (CRT)       (b)(6)
**Subject:** Voting Section -- Privacy Act Questions

Hi Amanda,

Thanks for discussing the Privacy Act/data sharing questions the other week.  We have requested voter registration lists from states to conduct searches that assess the List Maintenance of voter registration lists under the National Voter Registration Act and the Help America Vote Act (statutes that the Voting Section enforces).  Some states have asked us a few Privacy Act questions because the data contains PII.  At the moment, we are looking to write a letter to states that have asked the following questions:

1.  Please provide a citation within the Federal Register to the system of records under which DOJ intends to collect and maintain the records it has requested.

CREW v. DOJ – CRT – 000727

(We are thinking that it would be CRT-1, but we wanted to be sure, and we did not know if there would be others).

2.  Please describe how DOJ plans to store, maintain, and use the requested voter registration information. (We can answer the "use" question but we don't know what we should say about store and maintain.  Lit Support has this on the P Drive.)

3.  Please explain who will have access to the information contained in the Voter Registration List. (Lit Support has permissions limited to managers and those attorneys and analysts working on the matters.  I did not know how big of scope there could be while complying with the Privacy  Act.  Voting only? CRT only? DOJ only?)

Ideally, we would like to send the letters out on Wednesday.  Happy to chat if you have questions.  Thanks,

Tim Mellett
Deputy Chief, Voting Section
(b)(6)

CREW v. DOJ – CRT – 000728

**Sent**:         1/13/2026 4:30:38 PM
**To**:            Neff, Eric (CRT) [     (b)(6)     ]; Gupta, Kamran (CRT) [    (b)(6)    ]; Wake, Brittany (CRT) [    (b)(6)    ]
**Subject**:    RE: Virginia rolls

1. I'll check VA periodically and update EOD.
2. Kam should handle
3. We received downloads from Mississippi, South Dakota and Tennessee (saved to network).  Leaving Louisiana and Ohio.

---

**From:** Neff, Eric (CRT) <   (b)(6)   >
**Sent:** Tuesday, January 13, 2026 10:55 AM
**To:** Gupta, Kamran (CRT) <   (b)(6)   >; Hayes, Chris (CRT) <   (b)(6)   >; Wake, Brittany (CRT) <   (b)(6)   >
**Subject:** RE: Virginia rolls

Fantastic. That leaves:
1. keep as close an eye on VA upload as we can so we have EOD updates every day for the rest of the week.

# (b)(5)

Much appreciated. These updates are being watched by the FO closely.

---

**From:** Gupta, Kamran (CRT) <   (b)(6)   >
**Sent:** Tuesday, January 13, 2026 10:46 AM
**To:** Neff, Eric (CRT) <   (b)(6)   >; Hayes, Chris (CRT) <   (b)(6)   > Wake, Brittany (CRT) <   (b)(6)   >
**Subject:** RE: Virginia rolls

## (b)(5)

Best,
Kam

---

**From:** Neff, Eric (CRT) <   (b)(6)   >
**Sent:** Tuesday, January 13, 2026 10:25 AM
**To:** Hayes, Chris (CRT)    (b)(6)    Wake, Brittany (CRT) <   (b)(6)   >
**Cc:** Gupta, Kamran (CRT)    (b)(6)   
**Subject:** RE: Virginia rolls

Probably easier Kam for me to just    (b)(5)   
### (b)(5)

---

**From:** Hayes, Chris (CRT)    (b)(6)   
**Sent:** Tuesday, January 13, 2026 10:12 AM

CREW v. DOJ – CRT – 000729

**To:** Neff, Eric (CRT) < (b)(6) >; Wake, Brittany (CRT) [ (b)(6) ]
**Cc:** Gupta, Kamran (CRT) [ (b)(6) ]
**Subject:** RE: Virginia rolls

Eric,
Virginia has not uploaded any data to our JEFs location.

As for (b)(5) the file is too large for me to open.  Kamran has better tools…I'll let him respond.

Thanks,
Chris

---

**From:** Neff, Eric (CRT) < (b)(6) >
**Sent:** Tuesday, January 13, 2026 9:06 AM
**To:** Hayes, Chris (CRT) [ (b)(6) ]; Wake, Brittany (CRT) [ (b)(6) ]
**Cc:** Gupta, Kamran (CRT) [ (b)(6) ]
**Subject:** RE: Virginia rolls

Can we confirm any progress on Virginia's end with the upload?

Also, got a question from the DHS/SAVE folks this morning. (b)(5)

(b)(5)

---

**From:** Hayes, Chris (CRT) [ (b)(6) ]
**Sent:** Monday, January 12, 2026 1:50 PM
**To:** Neff, Eric (CRT) < (b)(6) >; Wake, Brittany (CRT) [ (b)(6) ]
**Cc:** Gupta, Kamran (CRT) [ (b)(6) ]
**Subject:** RE: Virginia rolls

Eric,
I haven't received anything.  I'll send her a JEFs link shortly.

-Chris

---

**From:** Neff, Eric (CRT) < (b)(6) >
**Sent:** Monday, January 12, 2026 1:47 PM
**To:** Hayes, Chris (CRT) [ (b)(6) ] Wake, Brittany (CRT) < (b)(6) >
**Cc:** Gupta, Kamran (CRT) [ (b)(6) ]
**Subject:** RE: Virginia rolls

Please do. I assume there has not been any acknowledgment or response that I am not aware of from Lindsay?

---

**From:** Hayes, Chris (CRT) [ (b)(6) ]
**Sent:** Monday, January 12, 2026 9:54 AM
**To:** Neff, Eric (CRT) < (b)(6) >; Wake, Brittany (CRT) [ (b)(6) ]
**Cc:** Gupta, Kamran (CRT) [ (b)(6) ]
**Subject:** RE: Virginia rolls

CREW v. DOJ – CRT – 000730

All,

I can send Lindsay a secure JEFS link that will allow her to upload the data without completing the JEFS user form. This would be a one-time link that only permits uploads.
Please let me know if you would like me to proceed.

Thanks,
Chris

---

**From:** Neff, Eric (CRT) <​(b)(6)​>
**Sent:** Monday, January 12, 2026 9:36 AM
**To:** Wake, Brittany (CRT) (b)(6)
**Cc:** Gupta, Kamran (CRT) (b)(6) Hayes, Chris (CRT) (b)(6)
**Subject:** RE: Virginia rolls

Yes let's start that way thanks for clarifying.

---

**From:** Wake, Brittany (CRT) (b)(6)
**Sent:** Monday, January 12, 2026 9:35 AM
**To:** Neff, Eric (CRT) <​(b)(6)​>
**Cc:** Gupta, Kamran (CRT) (b)(6); Hayes, Chris (CRT) (b)(6)
**Subject:** RE: Virginia rolls

Hi Eric,

Is Lindsay planning on transferring through JEFS?  If so, I can send the user agreement form.

Brittany

---

**From:** Neff, Eric (CRT) <​(b)(6)​>
**Sent:** Friday, January 9, 2026 4:57 PM
**To:** (b)(6)virginia.gov
**Cc:** Gupta, Kamran (CRT) (b)(6) Hayes, Chris (CRT) <(b)(6); Wake, Brittany (CRT) (b)(6)
**Subject:** Virginia rolls

All,

Introducing you to Lindsay Fisher, who is going to help with the transfer of Virginia's rolls.  Two things to note:

1. This transfer is top priority over all other projects.
2. Virginia will be providing two lists, as they do not have a list that has both registration information and the DL# in it.  We have already agreed that in this case, our office will expend the additional resources necessary to merge the lists as needed.

I would like to make all possible efforts to confirm that these lists get transferred by COB Monday.  Either way let's make sure to have a status check at that time.

Thanks,

Eric

**Eric Neff**
Acting Chief
Civil Rights Division, Voting Section
Department of Justice
150 M St. NE, Ste. 8-139
Washington, DC 20002
**(b)(6)**
Cell: (b)(6)



CREW v. DOJ – CRT – 000732

# EXHIBIT D

                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF RHODE ISLAND


* * * * * * * * * * * * * * * * *25-CV-639-MSM
                                 *
UNITED STATES OF AMERICA,        *
                                 *
               Plaintiff,        *
                                 *
          vs.                    *MARCH 26, 2026
                                 *
GREGG M. AMORE, in his official  *
capacity as Secretary of State   *
for the State of Rhode Island,   *
                                 *
               Defendant.        *Courtroom 2
                                 *PROVIDENCE, RI
* * * * * * * * * * * * * * * * *



              BEFORE THE HONORABLE MARY S. McELROY

                       DISTRICT JUDGE


                    (Motion to Compel)
                    (Motions to Dismiss)


**APPEARANCES**:

FOR THE PLAINTIFF:          ERIC NEFF
                            DOJ-Crt
                            Civil Rights Division
                            150 M St. NE, Ste 8-1807
                            Washington, DC  20002

FOR THE DEFENDANT:          JAMES J. ARGUIN
Gregg Amore                 RI Department of Attorney
                            General
                            150 South Main Street
                            Providence, RI  02903

MR. NEFF:  What we are saying is that we don't need to allege that.  We -- as the *Lynd* court said, the Attorney General's, quote, right to records does not require that the A.G. show that the A.G. could win without them.  We do not need to allege a violation of a specific statute.

I was only raising the lack of a particular audit and, again, this was self-reported by Rhode Island as a concern that the Voting Section had.

There are also certain numbers that raise concerns with the Voting Section, as Rhode Island self-reported having 60,000 inactive registrations. They reported having 60,000 duplicate registrations. This is out of about 800,000 registered voters.  That's also a 90 percent registration rate of the adult age voting population.

THE COURT:  I believe it's 700-and something thousand voters; but your point is taken.

But I guess what's the DOJ's, what horse do you have in this race?  Is it that you're trying to double-check the work of all of the states, or is it that you're trying to assert an outsized role for the federal government in the running of elections?

MR. NEFF:  Certainly not outsized role, your Honor.

THE COURT:  It seems that way from your filings in all of these states.  So what's your purpose?

MR. NEFF:  The United States is in a trust but verify mode as it relates to voter list maintenance countrywide.  It is --

THE COURT:  So let me ask a question then because I think 11 -- well, originally three jurisdictions just provided the list to DOJ: Texas; I don't know, North or South Carolina; somebody else.  What did you do with those lists?

MR. NEFF:  So we kept all the lists that we received -- at this point it's been 17 states have been kept in separate compartmentalized files that only very limited people have any access to.

THE COURT:  And what did you do to verify those lists?

MR. NEFF:  We've not done anything yet because we've not --

THE COURT:  Why not?  If you need to verify those lists, if you have an oversight role why haven't you taken -- some states have said here, here's all our data.  And you've gotten it, and by my understanding you got some of it back in the summer of last year.  Why haven't you done anything with those states' data?

MR. NEFF:  Well, we're talking as to the

non-public lists; correct?

THE COURT:  Right.

MR. NEFF:  Okay.  The United States is taking extra concern to make sure that we're complying with the Privacy Act in every conceivable way, and there are still a couple steps we have to go through before the United States is comfortable proceeding and comfortable representing to this Court that we're in full compliance with the Privacy Act.

THE COURT:  What steps have you taken and what steps need to be taken with those states that have complied?  Because to me, the states that have complied are traditionally more conservative states.  Texas just gave you their list, let's say.  Why not go through Texas's list to make sure that only eligible voters are on their list?

MR. NEFF:  I can only go into the United States delivery of process so much, you Honor, but what I can say is that the United States is evaluating, for one, an opinion out of the D.C. Circuit that analyzed DHS's SORN, and also the United States is -- we are certainly going to be proceeding with running this, our intention is to run this against DHS's SAVE database.

THE COURT:  Which database?

MR. NEFF:  The SAVE database that runs, that

essentially is a, it's called like a fetching system that seeks information from other databases to cross-check whether the data set on a roll is either a deceased person or a noncitizen.

THE COURT:  And what's the accuracy rate of data that you've run against that system?

MR. NEFF:  The accuracy rate we've been told --

THE COURT:  By whom?

MR. NEFF:  -- by DHS, and it's particularly the SAVE personnel that run the system is that it is in effect 100 percent accurate.

THE COURT:  That's not the reporting; right?  I mean isn't the reporting that people have been run through that SAVE Act and not for voting but for other things have been kicked out as noncitizens when they were, in fact, citizens?

MR. NEFF:  There's an important note that the SAVE database has been around, the SAVE Act, essentially states have been able to submit their information to SAVE for about 30 years.  But SAVE has also changed drastically in the last few months.  It's been I would call upgraded and the process they go through, we can go into that if your Honor wants to, but essentially when any flagged voter comes back, it's then run through a very comprehensive confirmation

process to make sure that the, quote, like problematic registration is, in fact, not just --

THE COURT:  What's the process?

MR. NEFF:  DHS has about 200-odd employees who are trained for a minimum of six months each and know various databases that are accessible to the federal government through use and shared agreements to be able to essentially access important naturalization files and other data that can establish whether the person is a citizen, because there are holes in the process.

THE COURT:  What are the holes?

MR. NEFF:  The holes, the most common hole would be when someone is -- someone who came to the United States is a parent and has children who are U.S. citizens and then naturalized; like the most common hole of that is that it's actually rather expensive to go through the full, quote, documentation process.  A common, cheaper shortcut that people will just do is just go get a passport.

THE COURT:  By "people," do you mean the children or the parent?

MR. NEFF:  The parents, your Honor.

THE COURT:  Because the children are derivative citizens under that scenario, so even if the children are born outside of the United States; correct?

# EXHIBIT E

Office of Public Affairs

# DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database

WASHINGTON – Homeland Security Secretary Kristi Noem, alongside USCIS and the Department of Government Efficiency (DOGE), announced a comprehensive optimization of the Systematic Alien Verification for Entitlements (SAVE) database to ensure a single, reliable source for verifying non-citizen status nationwide.

This overhaul eliminates fees for database searches, breaks down silos for accurate results, streamlines mass status checks, and integrates criminal records, immigration timelines, and addresses. Automatic status updates and a user-friendly interface will empower federal, state, local, territorial, and tribal agencies to prevent non-citizens from exploiting taxpayer benefits or voting illegally.

*"Illegal aliens have exploited outdated systems to defraud Americans and taint our elections,"* **said a spokesperson for DHS.** *"Under Secretary Noem's leadership, this revamped SAVE system will ensure government officials can swiftly verify legal status, halting entitlements and voter fraud."*

DHS will provide ongoing updates to stakeholders as the SAVE Optimization Plan progresses.

# # #

Rosemary Jenks
Policy Director
Immigration Accountability Project
Cell:      (b)(6)

LEGAL NOTICE: The information in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

--
You received this message because you are subscribed to the Google Groups "Election Integrity Leaders" group.
To unsubscribe from this group and stop receiving emails from it, send an email to

electionintegrityleaders+unsubscribe@cpi.org.
To view this discussion visit
https://groups.google.com/a/cpi.org/d/msgid/electionintegrityleaders/425A1F5B-6FC3-4950-8E69-438B49EEAAA5%40iaproject.org.

CREW v. DOJ – CRT – 000749

DUPLICATE.

F0000455

CREW v. DOJ – CRT – 000750

**From:** [_____(b)(6)_____] [[_____(b)(6)_____]]
**Sent:** 6/5/2025 5:37:33 PM
**To:** Gates, Michael (CRT) [_____(b)(6)_____]
**Subject:** Re: Request for access to DHS data base.


Ok
Maureen Riordan
Senior Counsel
Acting Chief, Voting Section, Civil Rights Division
Maureen.riordan2@usdoj.gov
[_____(b)(6)_____]


On Jun 5, 2025, at 1:26 PM, Gates, Michael (CRT) <[_____(b)(6)_____]> wrote:


As expected, need a fully-developed ask.  Send when you can.

**Michael E. Gates**
**Deputy Assistant Attorney General**
**U.S. Department of Justice, Civil Rights Division**

---

**From:** Dhillon, Harmeet K. (CRT) <[_____(b)(6)_____]>
**Sent:** Thursday, June 5, 2025 1:24 PM
**To:** Gates, Michael (CRT) <[_____(b)(6)_____]>
**Cc:** Zandi, Matt (CRT) <[_____(b)(6)_____]>
**Subject:** Re: Request for access to DHS data base.

Write it up for me in a paragraph including any statutory restrictions on its sharing and I'll ask high up.

Matt can you find out who the GC is and what their contact info is ?

**Harmeet K. Dhillon**
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice


[_____(b)(6)_____]
Cell: [____(b)(6)____]
Desk: [____(b)(6)____]

CREW v. DOJ – CRT – 000751

On Jun 5, 2025, at 11:01 AM, Gates, Michael (CRT) <░░░░░░░░░(b)(6)░░░░░░░░░>
wrote:

Harmeet, we would like to contact DHS to see if we can get access to the SAVE
database.  We look to you for your recommendation on how to go about this.

**Michael E. Gates**
Deputy Assistant Attorney General
U.S. Department of Justice, Civil Rights Division

---

**From:** Riordan, Maureen (CRT) <░░░░░░░░(b)(6)░░░░░░░░>
**Sent:** Thursday, June 5, 2025 10:59 AM
**To:** Gates, Michael (CRT) <░░░░░░(b)(6)░░░░░░>
**Subject:** Request for access to DHS data base.

According to the DHS website, the SAVE database has been updated and integrated to
optimize stakeholders to determine the citizenship of voters and federal program
recipients.
The Voting Section at CRT would like access to this database. Additionally, we should
advise states of its availability and inform them that their voter lists should be run
against the database when available to them as part of their list maintenance
responsibilities under the NVRA and HAVA

Maureen S. Riordan
Senior Counsel
Acting Chief Voting Section Civil Rights Division
░░░░░░░░░(b)(6)░░░░░░░░░
░░░░(b)(6)░░░░

CREW v. DOJ – CRT – 000752

**From:** Zandi, Matt (CRT) [⬚⬚⬚⬚ (b)(6) ⬚⬚⬚]
**Sent:** 6/5/2025 5:26:56 PM
**To:** Dhillon, Harmeet K. (CRT) [⬚⬚⬚ (b)(6) ⬚⬚⬚]
**CC:** Gates, Michael (CRT) [⬚⬚⬚ (b)(6) ⬚⬚⬚]
**Subject:** Re: Request for access to DHS data base.

Will do
Sent from my iPhone

# duplicated in

CREW v. DOJ - CRT - 000751-000752

CREW v. DOJ – CRT – 000753

**duplicated in** CREW v. DOJ - CRT - 000751-000752

CREW v. DOJ – CRT – 000754

| | |
|---|---|
| **From:** | Riordan, Maureen (CRT) [_____(b)(6)_____] |
| | ([_____(b)(6)_____]) |
| **Sent**: | 6/5/2025 3:43:05 PM |
| **To**: | Gates, Michael (CRT) [_____(b)(6)_____] |
| **Subject**: | FW: Request for access to DHS data base. |

I meant to add this below.

DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database | Homeland Security

**From:** Riordan, Maureen (CRT)
**Sent:** Thursday, June 5, 2025 10:59 AM
**To:** Gates, Michael (CRT) <_____(b)(6)_____>
**Subject:** Request for access to DHS data base.

According to the DHS website, the SAVE database has been updated and integrated to optimize stakeholders to determine the citizenship of voters and federal program recipients.
The Voting Section at CRT would like access to this database. Additionally, we should advise states of its availability and inform them that their voter lists should be run against the database when available to them as part of their list maintenance responsibilities under the NVRA and HAVA

Maureen S. Riordan
Senior Counsel
Acting Chief Voting Section Civil Rights Division
[_____(b)(6)_____]
[_____(b)(6)_____]

| | |
|---|---|
| **From:** | Dhillon, Harmeet K. (CRT) [⬚ (b)(6) ⬚] |
| **Sent:** | 6/16/2025 2:58:37 PM |
| **To:** | Osete, Jesus (CRT) [⬚ (b)(6) ⬚] |
| **Subject:** | FW: Access to the SAVE database as requested |

**Harmeet K. Dhillon**
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice
Email: ⬚ **(b)(6)** ⬚
Cell: ⬚ **(b)(6)** ⬚
Desk: ⬚ **(b)(6)** ⬚

---

**From:** Gates, Michael (CRT) <⬚ (b)(6) ⬚>
**Sent:** Monday, June 16, 2025 10:43 AM
**To:** Dhillon, Harmeet K. (CRT) <⬚ (b)(6) ⬚>
**Cc:** Riordan, Maureen (CRT) <⬚ (b)(6) ⬚>
**Subject:** FW: Access to the SAVE database as requested

Harmeet, this is our request of DHS…

**We are requesting of DHS to give us (CRT/VOT) access to the SAVE database.** The Systematic Alien Verification for Entitlements (SAVE) database is an alien database. SAVE ensures a single, reliable source for verifying non-citizen status nationwide; the SAVE breaks down silos for accurate results, streamlines mass status checks, and integrates criminal records, immigration timelines, and addresses. This will be helpful to us because it will allow us to compare this SAVE database against states' voter rolls, which we will get directly from states under the NVRA. ⬚ **(b)(5)** ⬚

# (b)(5)

**Michael E. Gates**
Deputy Assistant Attorney General
Civil Rights Division, U.S. Department of Justice
Cell: ⬚ **(b)(6)** ⬚

---

**From:** Riordan, Maureen (CRT) <⬚ (b)(6) ⬚>
**Sent:** Monday, June 16, 2025 10:32 AM
**To:** Gates, Michael (CRT) <⬚ (b)(6) ⬚>
**Subject:** Access to the SAVE database as requested

Homeland Security Secretary Kristi Noem, alongside USCIS and the Department of Government Efficiency (DOGE), have completed a comprehensive optimization of the Systematic Alien Verification for Entitlements (SAVE) database to ensure a single, reliable source for verifying non-citizen status nationwide.
This overhaul eliminates fees for database searches, breaks down silos for accurate results, streamlines mass status checks, and integrates criminal records, immigration timelines, and addresses. Automatic status

CREW v. DOJ – CRT – 000756

updates and a user-friendly interface will empower federal, state, local, territorial, and tribal agencies to prevent non-citizens from exploiting taxpayer benefits or voting illegally.

Access to the new database is available to all states. My understanding is only Texas has utilized the new database. There is nothing in wither the NVRA or HAVA that requires states to specifically remove noncitizens from their voter rolls. But, they are required to remove non eligible voters, which obviously, noncitizens are non-eligible.

There are specific states that we intend to request their statewide voter rolls after the release of the EAC data on list maintenance. If we had access to this database, we could run their voter rolls against the database and notify them of noncitizens who appear to be improperly listed as eligible voters.

# (b)(5)

CREW v. DOJ – CRT – 000757

**From:**        Mellett, Timothy F (CRT) [⸤          (b)(6)          ⸥]
**Sent:**        6/24/2025 8:46:01 PM
**To:**          Lott, Jasmin (CRT) [⸤        (b)(6)        ⸥]
**Subject:**     RE: HAVA Letters


Thanks!

---

**From:** Lott, Jasmin (CRT) <⸤          (b)(6)          ⸥>
**Sent:** Tuesday, June 24, 2025 4:40 PM
**To:** Mellett, Timothy F (CRT) <⸤          (b)(6)          ⸥>
**Subject:** RE: HAVA Letters

Updated draft attached, adding language about secure transmission methods.

(b)(5)

Jasmin

---

**From:** Lott, Jasmin (CRT)
**Sent:** Tuesday, June 24, 2025 1:59 PM
**To:** Mellett, Timothy F (CRT) <⸤          (b)(6)          ⸥>
**Subject:** RE: HAVA Letters

Thanks, Tim. ⸤                                    (b)(5)                                    ⸥

(b)(5)

CREW v. DOJ – CRT – 000758



Jasmin

**From:** Mellett, Timothy F (CRT) < (b)(6) >
**Sent:** Tuesday, June 24, 2025 1:50 PM
**To:** Rameres, Jewel (CRT) < (b)(6) >; Lott, Jasmin (CRT) < (b)(6) >
**Cc:** Wake, Brittany (CRT) < (b)(6) >
**Subject:** RE: HAVA Letters

I have attached the revised letter.

**From:** Rameres, Jewel (CRT) < (b)(6) >
**Sent:** Tuesday, June 24, 2025 1:33 PM
**To:** Mellett, Timothy F (CRT) < (b)(6) >; Lott, Jasmin (CRT) < (b)(6) >
**Cc:** Wake, Brittany (CRT) < (b)(6) >
**Subject:** RE: HAVA Letters

Noted, thanks!

**From:** Mellett, Timothy F (CRT) < (b)(6) >
**Sent:** Tuesday, June 24, 2025 1:32 PM
**To:** Lott, Jasmin (CRT) < (b)(6) >; Rameres, Jewel (CRT) < (b)(6) >
**Cc:** Wake, Brittany (CRT) < (b)(6) >
**Subject:** RE: HAVA Letters

Stop printing letters if you are.  Maureen has a change.  Back to you shortly.

**From:** Mellett, Timothy F (CRT)
**Sent:** Tuesday, June 24, 2025 12:25 PM
**To:** Lott, Jasmin (CRT) < (b)(6) >; Rameres, Jewel (CRT) < (b)(6) >
**Cc:** Wake, Brittany (CRT) < (b)(6) >
**Subject:** HAVA Letters

All,

CREW v. DOJ – CRT – 000759

I have attached the draft HAVA letter that Maureen just approved.  Please assemble the letter for the following states to go out today:

Idaho
Minnesota
Nevada
New Hampshire
New York
Wyoming

Please let me know if you have any questions.  Thanks,

Tim

CREW v. DOJ – CRT – 000760