**ABHA KHANNA**
WA Bar No. 42612
**TYLER L. BISHOP**
WA Bar No. 63821
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law
tbishop@elias.law
wmckusick@elias.law

*Attorneys for Intervenor-Defendants*
*Common Power and Washington State*
*Alliance for Retired Americans*

The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

STEVE HOBBS, in his official capacity
as the Secretary of State of the State of
Washington,

      Defendant,

COMMON POWER, WASHINGTON STATE
ALLIANCE FOR RETIRED AMERICANS,
COMMON CAUSE, and WASHINGTON
CONSERVATION ACTION EDUCATION
FUND,

      Intervenor-Defendants.

No. 3:25-cv-6078-KKE

COMMON POWER AND
WASHINGTON STATE ALLIANCE
FOR RETIRED AMERICANS'
COMBINED MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL

NOTE ON MOTION CALENDAR:
June 22, 2026

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

I.    Federal law has long made voter list maintenance a state responsibility. .................... 2

II.   DOJ has undertaken an unprecedented effort to collect personal voter registration data held by the states. ................................................................................. 4

III.  DOJ demanded Washington's complete, unredacted voter registration list. ................. 6

IV.   DOJ filed this lawsuit and demanded "summary" final relief. ..................................... 7

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ............................................................................................................ 8

I.    The Federal Rules of Civil Procedure govern DOJ's claim. ........................................ 8

      A.    DOJ's demand is not exempt from the Federal Rules. ..................................... 9

      B.    The Court must conduct meaningful review of DOJ's demand. ......................... 11

II.   DOJ failed to plead a cognizable claim. ...................................................................... 12

      A.    Title III does not cover Washington's statewide voter list. ............................... 13

      B.    DOJ failed to satisfy Title III's threshold requirements. .................................. 15

      C.    Title III does not prohibit redaction of sensitive voter information.................... 22

III.  DOJ's demand is incompatible with federal privacy law. ............................................ 24

      A.    DOJ failed to comply with the Privacy Act's procedural mandates. ................. 26

      B.    DOJ failed to satisfy the Privacy Act's substantive safeguards......................... 29

      C.    DOJ lacks "authority" to "match" voter lists to federal databases. ................... 31

IV.   If the complaint survives dismissal, discovery is appropriate. ..................................... 32

CONCLUSION ......................................................................................................... 33

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) ............................................................... 19

*All. for Retired Ams. v. Bessent*,
  770 F. Supp. 3d 79 (D.D.C. 2025) ................................................................ 24

*Allstate v. Samsung*,
  No. 23-cv-1447-MJP, 2023 WL 8433118 (W.D. Wash. Dec. 5, 2023) .......................... 24, 26

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017) ...................................................................... 22

*Arizona v. Inter Tribal Council of Ariz.*,
  570 U.S. 1 (2013) ......................................................................... 2, 3, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 8

*Becker v. United States*,
  451 U.S. 1306 (1981) ............................................................................ 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 8

*Biden v. Nebraska*,
  600 U.S. 477 (2023) .............................................................................. 17

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes*,
  323 F.3d 767 (9th Cir. 2003) ..................................................................... 33

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F.3d 683, 689-90 (D.C. Cir. 2017) .................................................... *passim*

*CFPB v. Source for Pub. Data*,
  903 F.3d 456 (5th Cir. 2018) ......................................................... 3, 12, 15, 17

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*,
  963 F.3d 982 (9th Cir. 2020) ..................................................................... 16

*Crystal v. United States*,
  172 F.3d 1141 (9th Cir. 1999) ................................................................... 21

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   532 F. Supp. 3d 846 (D. Ariz. 2021) ................................................................................. 8

*Doe v. Stephens*,
   851 F.2d 1457 (D.C. Cir. 1988) .................................................................................. 25, 29

*Donaldson v. United States*,
   400 U.S. 517 (1971) .............................................................................................................. 12

*EEOC v. Karuk Tribe Hous. Auth.*,
   260 F.3d 1071 (9th Cir. 2001) ............................................................................................. 12

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) .............................................................................................................. 14

*EPIC v. Presidential Advisory Comm'n on Election Integrity*,
   878 F.3d 371, 378 (D.C. Cir. 2017) ................................................................................... 30

*Foster v. Love*,
   522 U.S. 67 (1997) ................................................................................................................. 2

*Gahagan v. USCIS*,
   911 F.3d 298 (5th Cir. 2018) ............................................................................................... 10

*Gelbard v. United States*,
   408 U.S. 41 (1972) ............................................................................................................... 24

*Hirsch v. AZ Auto. Corp.*,
   No. 07-10887, 2008 WL 115532 (E.D. Mich. Jan. 10, 2008) ........................................... 21

*Honeycutt v. United States*,
   581 U.S. 443 (2017) .............................................................................................................. 15

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018) ........................................................................................................... 3, 4

*In re Coleman*,
   208 F. Supp. 199 (S.D. Miss. 1962) .................................................................................. 16

*In re OPM Data Sec. Breach*,
   928 F.3d 42 (D.C. Cir. 2019) ........................................................................................ 30, 31

*In re Subpoena Duces Tecum No. 25-1431-016*
   No. 2:25-MC-00041-JHC, 2025 WL 3562151 (W.D. Wash. Sep. 3, 2025) ...................... 20

iv

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*In re Subpoena Duces Tecum*,
  228 F.3d 341 (4th Cir. 2000)...............................................................................................20

*Kennedy v. Bruce*,
  298 F.2d 860 (5th Cir. 1962).......................................................................................... 16, 23

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962)..........................................................................................passim

*Knox v. Brnovich*,
  907 F.3d 1167 (9th Cir. 2018)...........................................................................................23

*League of Women Voters v. DHS*,
  No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) .................................25, 26, 31

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004) ..............................................................................................................15

*Loc. 174, Int'l Bhd. of Teamsters v. United States*,
  240 F.2d 387 (9th Cir. 1956)...............................................................................................11

*Londrigan v. FBI*,
  670 F.2d 1164 (D.C. Cir. 1981) ....................................................................................24, 26

*LULAC v. EOP*,
  No. 25-cv-0946, 2026 WL 252420 (D.D.C. Jan. 30, 2026).....................................25, 27, 29

*Ma v. Ashcroft*,
  361 F.3d 553 (9th Cir. 2004)...............................................................................................15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008)................................................................................................8

*NLRB v. Int'l Medication Sys., Ltd.*,
  640 F.2d 1110 (9th Cir. 1981)..............................................................................................20

*Peters v. United States*,
  853 F.2d 692 (9th Cir. 1988)...............................................................................................12

*PILF v. Bellows*,
  92 F.4th 36, 56 (1st Cir. 2024) ............................................................................................19

*PILF v. N.C. State Bd. of Elections*,
  996 F.3d 257 (4th Cir. 2021)...............................................................................................19

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*PILF v. Nago*,
No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026) ............................................passim

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012)...................................................................................... 19

*QueerDoc, PLLC v. DOJ*,
807 F. Supp. 3d 1295 (W.D. Wash. 2025) ................................................................. 21

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .................................................................................................... 19

*Rivera v. Peri & Sons Farms*,
735 F.3d 892 (9th Cir. 2013)...................................................................................... 24

*RNC v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024)....................................................................................... 3

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) .................................................................................................... 18

*Rotkiske v. Klemm*,
589 U.S. 8 (2019) ....................................................................................................... 10

*Schwier v. Cox*,
412 F. Supp. 2d 1266 (N.D. Ga. 2005) ..................................................................... 27

*Swenson v. USPS*,
890 F.2d 1075 (9th Cir. 1989)............................................................................... 25, 29

*United States v. Adams*,
777 F. Supp. 3d 185 (S.D.N.Y. 2025)........................................................................ 21

*United States v. Amore*,
No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026).....................................passim

*United States v. Bd. of Comm'rs of Sheffield*,
435 U.S. 110 (1978) .................................................................................................... 16

*United States v. Benson*,
No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ........................ 1, 8, 10, 15

*United States v. Fontes*,
No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ...............................passim

vi

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*United States v. Galvin*,
No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ...................................... 2, 17

*United States v. Golden Valley Elec. Ass'n*,
689 F.3d 1108 (9th Cir. 2012) ................................................................................. 12

*United States v. LaSalle Nat'l Bank*,
437 U.S. 298 (1978) ............................................................................................. 21

*United States v. Markwood*,
48 F.3d 969 (6th Cir. 1995) ................................................................................... 21

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ............................................................................................. 11

*United States v. Oregon*,
No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ..................................... *passim*

*United States v. Powell*,
379 U.S. 48 (1964) .............................................................................................. *passim*

*United States v. Union Oil Co. of Cal.*,
343 F.2d 29 (9th Cir. 1965) ................................................................................... 12

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) ................................................................... *passim*

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302, 321 (2014) ...................................................................................... 18

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) ............................................................................. 19

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ............................................................................................. 18

**STATUTES**

18 U.S.C. § 2721 .................................................................................................. 24

26 U.S.C. § 7605(b) .............................................................................................. 10

26 U.S.C. § 7604(a) ............................................................................................... 9

29 U.S.C. § 161(2) ................................................................................................. 9

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

44 U.S.C. § 3554(a) ........................................................................................ 30, 31

44 U.S.C. § 3558 ..................................................................................................... 25

5 U.S.C. § 552a ................................................................................................. *passim*

5 U.S.C. § 555 ......................................................................................................... 25

52 U.S.C. § 20501(b) ................................................................................................. 3

52 U.S.C. § 20507 ............................................................................................ *passim*

52 U.S.C. § 20701 .............................................................................................. 13, 15

52 U.S.C. § 20702 ................................................................................................... 13

52 U.S.C. § 20703 .................................................................................................. 8, 16

52 U.S.C. § 21083 ............................................................................................ *passim*

52 U.S.C. § 21085 ........................................................................................... 3, 17, 20

Pub. L. No. 93-579, 88 Stat. 1896 ........................................................................... 24

Pub. L. No. 100-503, 102 Stat. 2507 ....................................................................... 25

Pub. L. No. 107-347, 116 Stat. 2899 .................................................................. 25, 29

Pub. L. No. 113-283, 128 Stat. 3073 ....................................................................... 25

RCW 29A.08.710 ....................................................................................... 2, 7, 22, 24

U.S. Const. art. I, § 4, cl. 1 ....................................................................................... 2

**RULES**

Fed. R. Civ. P. 1 ................................................................................................... 9, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 8

Fed. R. Civ. P. 81(a) .................................................................................................. 9

**REGULATIONS**

70 Fed. Reg. 43904-01 (July 29, 2005) .............................................................. 28, 29

82 Fed. Reg. 24147-01 (May 25, 2017) ................................................................... 28

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

90 Fed. Reg. 48948–51 (Oct. 31, 2025)................................................................32

**OTHER AUTHORITIES**

Assistant Attorney General Harmeet Dhillon (@AAGHarmeetDhillon),
  X (Dec. 18, 2025, at 9:24 AM ET), https://perma.cc/GDU7-AKVG ....................................5

Citation of Supp. Authority, *United States v. Weber*,
  No. 26-1232 (9th Cir. May 19, 2026), Dkt. No. 104..................................................6, 21, 33

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
  Voter Roll,* N.Y. Times (Sep. 9, 2025),
  https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html...........4

"DOJ Voter Data Access," Court Cases, Democracy Docket,
  https://www.democracydocket.com/cases/topic/doj-voter-data-access/
  (last accessed May 11, 2026) ...............................................................................4

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026)...................................................6

H.R. Rep. No. 107-329 (2001)...................................................................................3

H.R. Rep. No. 86-956 (1959)................................................................................17, 19

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department
  Requests for Voter Information,* Brennan Ctr. for Just. (last updated May 4, 2026),
  https://perma.cc/P7AZ-F8B4 .............................................................................4, 17

Michelle Stoddart, Emily Chang, and Alexandra Hutzler, *Trump doubles down on
  suggesting federal government 'get involved' in state elections,*
  ABC News (Feb. 3, 2026), https://perma.cc/P4LY-A65C......................................................6

Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?,*
  N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-
  trump-voter-rolls.html .......................................................................................5

Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to
  Nationalize Elections,* N.Y. Times (Feb. 2, 2026),
  https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html .............6

Sarah N. Lynch, *Justice Dept. close to finalizing deal to hand over states' voter roll data to
  Homeland Security, sources say,*
  CBS News (Mar. 26, 2026), https://perma.cc/T62F-J3ZF .....................................................5

Tierney Sneed, *Trump and GOP Test Precedent With Aggressive Voter Roll Purges,*
  CNN (May 4, 2026), https://perma.cc/8HAF-S84C .............................................................6

ix

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## **INTRODUCTION**

The U.S. Department of Justice ("DOJ") has embarked on an unprecedented and extraordinary quest to amass a broad array of sensitive voter information for use by the federal government—an effort that is not only *not* authorized by Congress, but *contrary* to federal laws that assign the *States* the responsibility for maintaining voter registration lists and protect private information. When Washington refused to turn over protected sensitive voter information, DOJ sued, asserting a single claim alleging it is entitled to compel the State's full, unredacted voter file in "summary" fashion—with little or no judicial scrutiny—under Title III of the Civil Rights Act of 1960 ("CRA"). *See* Compl. ¶¶ 1–4, Dkt. No. 1. DOJ is wrong.

DOJ served its "demand" on Secretary Steve Hobbs in September 2025 and filed suit in December 2025, but the case sat dormant for months as DOJ failed to properly effect service under the Federal Rules and this Court's local rules. Having finally navigated that fundamental procedural requirement, DOJ asks the Court to disregard the Federal Rules and Supreme Court precedent entirely, and grant it the relief it seeks at the outset, without first considering whether DOJ asserts a cognizable claim. To this end, DOJ asks that the Court grant its "Motion to Compel Production of Election Records" by issuing a "summary" order that would provide DOJ the final relief it seeks. *See* Dkt. No. 29 ("Mot. to Compel"). But Secretary Hobbs has already made clear that he intends to file a motion to dismiss, *see* Dkt. No. 45 ("Stipulated Mot."), and for the reasons set forth below, CP-Alliance Intervenors submit that dismissal is proper.

Indeed, already, six of the 30 federal courts that are considering similar actions initiated by DOJ seeking the same relief against as many states have already granted motions to dismiss DOJ's complaints. That includes three district courts in this Circuit alone. *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 1:25-cv-1148, 2026

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026). This Court should follow suit, dismiss the case with prejudice, and deny DOJ's motion to compel.

Under the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), the Federal Rules apply and this Court has not only the duty but the obligation to consider whether DOJ's demand here is proper. It is not. *First*, under Circuit precedent, the plain text of Title III of the CRA cannot reasonably be read to extend to the State's voter registration list. *Second*, even if it could, Title III expressly requires DOJ to provide the "basis and the purpose" for its demand. But DOJ failed to provide *any* "basis," and its purported "purpose"—to determine whether Washington is complying with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is not a permissible purpose under Title III. *Third*, DOJ acknowledges that, for it to succeed, Title III would have to specifically preempt Washington's careful guardrails for the sensitive voter data contained in its voter file, *see, e.g.*, RCW 29A.08.710, yet DOJ offers no reason—in its Motion to Compel or otherwise—to conclude that it does, *see* Dkt. No. 29 at 21. *Finally*, DOJ's failure to comply with the federal Privacy Act—a prerequisite for collecting any of the information it seeks here—is apparent from the face of its pleading.

## BACKGROUND

### I.    Federal law has long made voter list maintenance a state responsibility.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns States the responsibility for determining voter eligibility and maintaining lists of eligible voters. *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 17 (2013) ("*ITCA*").

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

The laws Congress has enacted governing existing "state voter-registration systems," *id.* at 5, confirm that states are the custodians of voter registration data. Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges states—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

Congress enacted HAVA "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). It requires States to create a "computerized statewide voter registration list," 52 U.S.C. § 21083(a)(1)(A), and to "perform list maintenance" consistent with the NVRA "on a regular basis." *Id.* § 21083(a)(2)(A). Specifically, "[a]ll voter registration information obtained by" election officials must "be electronically entered into the computerized list on an expedited basis." *Id.* § 21083(a)(1)(A)(vi). HAVA is abundantly clear that the list is to be "defined, maintained, and administered at the State level," *id.* § 21083(a)(1)(A), and commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State," *id.* § 21085. Indeed, HAVA's history stresses the importance of our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. **This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.** This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001) (emphasis added).

Consistent with that principle, neither the NVRA nor HAVA authorizes the federal government to compile voter registration information at the national level, nor to conduct its own maintenance of states' voter rolls. Instead, Congress has "left it up to the States to maintain

3

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the requirements of the NVRA and HAVA, which operate through the States themselves.

## II.     DOJ has undertaken an unprecedented effort to collect personal voter registration data held by the states.

In the spring of 2025, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each voter. It has reportedly sent demands to at least 48 states and D.C.[1] The vast majority have declined to turn over sensitive personal information protected by state law.[2] DOJ has since filed lawsuits against 30 states and D.C. seeking to force their production.[3] The first eight cases DOJ filed in September 2025 alleged claims under the NVRA, HAVA, and CRA[4]; however, the 23 subsequent cases filed, including this one, allege only a claim under the CRA.[5]

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (last updated May 4, 2026), https://perma.cc/P7AZ-F8B4; *see also* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1.

[3] *See* "DOJ Voter Data Access," Court Cases, Democracy Docket, https://www.democracydocket.com/cases/topic/doj-voter-data-access/ (collecting materials from all parallel cases) (last accessed May 11, 2026).

[4] *See* Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 0:25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 2:25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[5] *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Toulouse Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00629 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); Compl., *United States v. D.C. Bd. of Elec.*, No. 1:25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-01036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. Jan. 6, 2026);

4

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

DOJ has repeatedly claimed it need not offer any justification for its demands, but the public record shows that it seeks to use the data for purposes far afield from the CRA, the NVRA, and HAVA, including to force the removal of hundreds of thousands of voters from the rolls.[6] As detailed in briefs filed by several states (including Washington) in DOJ's parallel suits, DOJ has sought not just "read-only" access, but "materials that define or explain how a voter record is coded" into the database, likely because such information "assist[s] in transferring data" into "other federal databases."[7] Recent reporting also indicates that DOJ and the U.S. Department of Homeland Security ("DHS") "are close to finalizing an agreement that will allow the federal government to use sensitive voter registration data for immigration and criminal investigations."[8] This followed a letter sent by the Attorney General to the Minnesota Governor attempting to justify the presence of federal immigration-enforcement officials in the city and demanding unrelated concessions, including—among other things—access to the State's unredacted voter rolls.[9]

President Trump's own statements and actions provide more reason to doubt that DOJ's plans for this data will be limited to purported investigations into "list-maintenance" compliance. Not only has he repeatedly stated he believes the federal government should "take over" elections

---

Compl., *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 3:26-cv-00042 (E.D. Va. Jan. 16, 2026); Compl., *United States v. Caldwell*, Compl., No. 3:26-cv-02025 (D.N.J. Feb. 26, 2026); *United States v. Adams*, No. 3:26-cv-00019 (E.D. Ky. Feb. 26, 2026); Compl., *United States v. Ziriax*, No. 5:26-cv-00361 (W.D. Okla. Feb. 26, 2026); Compl., *United States v. Henderson*, No. 2:26-cv-00166 (D. Utah Feb. 26, 2026); Compl., *United States v. Warner*, No. 2:26-cv-00156 (S.D. W. Va. Feb. 26, 2026); *United States v. McGrane*, No. 1:26-cv-00197 (D. Idaho Apr. 1, 2026).

[6] *See* Assistant Attorney General Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://perma.cc/GDU7-AKVG (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some states being removed from the voter rolls.").

[7] Br. of Amici Curiae N.M. et al. at 7, *United States v. Albence*, No. 25-cv-1453 (D. Del. Feb. 20, 2026), Dkt. No. 53-1; *see also, e.g.*, Br. of Amici Curiae Md. et al. at 7, *United States v. Oregon*, No. 25-cv-1666 (D. Or. Dec. 5, 2025).

[8] *See* Sarah N. Lynch, *Justice Dept. close to finalizing deal to hand over states' voter roll data to Homeland Security, sources say*, CBS News (Mar. 26, 2026), https://perma.cc/T62F-J3ZF.

[9] *See* Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html. Minnesota has been resisting an essentially identical demand for its voters' sensitive information. *See United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Sep. 25, 2025).

5

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

from the States, he issued an Executive Order on March 31, 2026 that mandates that DHS, with the help of other agencies, create "State Citizenship Lists," cataloguing "confirmed" "eligible" citizens from "relevant Federal databases," and directing the Postal Service not to deliver ballots unless the voter is on newly created federal lists of "eligible" mail voters. Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026).[10] It is difficult to believe that the data that DOJ demands from Washington (and dozens of other states) will not be used for this purpose. Recent reporting also indicates DOJ has been purposefully vague with the States and courts about what it intends for this data.[11] And DOJ's own recent submission to courts in several of these cases contradicts what it previously told the states and the courts about its purpose. Specifically, it reveals that DOJ sought guidance from its Office of Legal Counsel in or before September 2025 to inform these efforts, which DOJ launched specifically "to seek statewide voter lists and then" "share the lists with" DHS, "[i]n response to" an Executive Order issued by the President in early 2025, "for the purpose of identifying illegal aliens who are ineligible to vote." Citation of Supp. Authority, *United States v. Weber*, *argued*, No. 26-1232 (9th Cir. May 19, 2026) ("OLC Op."), Dkt. No. 104 at 1.

---

[10] *See also* Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to Nationalize Elections*, N.Y. Times (Feb. 2, 2026) https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html; Michelle Stoddart, Emily Chang, and Alexandra Hutzler, *Trump doubles down on suggesting federal government 'get involved' in state elections*, ABC News (Feb. 3, 2026), https://perma.cc/P4LY-A65C.

[11] *See* Notice of Suppl. Authority, *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Apr. 30, 2026), Dkt. No. 78-2 (DOJ emails show that, one day before DOJ sent its first voter-roll demand letter, a deputy assistant attorney general emailed AAG Dhillon describing a plan to "compare th[e] SAVE database against states' voter rolls" to identify potential noncitizens, explaining the division "will get [the voter rolls] directly from states under the NVRA" and in November 2025 the Acting Chief of the Voting Section advised: "I believe our reply should always be, 'We will use the data in a manner consistent with Federal law' and say nothing more. HAVA, NVRA, CRA—none of them require [us] to give the states information about what we are going to do with the data. No judge will have authority to limit us beyond a promise of Federal law compliance."); *see also* Doug Clark & Jen Fifield, *Inside Trump's Effort to "Take Over" the Midterm Elections*, ProPublica (Apr. 13, 2026), https://perma.cc/VNY7-XAUC (reporting a team of agents at "DHS, DOJ and the White House" are "seeking to carry out Trump's executive orders and are unlikely to push back against his false claims that American elections" are rife with fraud); Tierney Sneed, *Trump and GOP Test Precedent With Aggressive Voter Roll Purges*, CNN (May 4, 2026), https://perma.cc/8HAF-S84C (reporting DHS added "150 employees" to its SAVE review team in preparation for mass "data-matching" of voter rolls in 2026).

6

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**III.    DOJ demanded Washington's complete, unredacted voter registration list.**

DOJ's campaign first arrived in Washington on September 8, 2025, when DOJ sent Secretary Hobbs a letter demanding demanded Washington's full voter registration list ("VRL") containing "*all fields*," including "full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." Compl. ¶ 22; *see also* Neff Decl., Ex. 1, Dkt. No. 30-1 ("September 8 Letter"). "The purpose of this request," DOJ wrote, "is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA." September 8 Letter at 2. The letter offered to provide the Secretary with "a template" for a "data sharing agreement," invited further clarification, and provided a DOJ contact. *Id.* at 2–3.

Secretary Hobbs responded with concerns and requested additional information in a letter dated September 23. Compl. ¶ 21; *see also* Neff Decl., Ex. 2, Dkt. No. 30-2 ("September 23 Letter"). The Secretary explained that Washington law forbids releasing certain voter information including driver's license and social security numbers. September 23 Letter at 1–2 (citing RCW 29A.08.710). He asked why this sensitive data was needed to assess list-maintenance programs. *Id.* at 2. Finally, he questioned DOJ's compliance with certain federal laws, including the Privacy Act. *Id.* at 3. Two months passed without a response. DOJ never did respond or provide the clarification it initially claimed it would; instead, it sued.

**IV.    DOJ filed this lawsuit and demanded "summary" final relief.**

DOJ filed its complaint on December 2, bringing only one claim under Title III of the CRA; it does not bring any claims under either the NVRA or HAVA, despite its claim that investigation into the State's compliance with those laws is its purpose for the demand. *See* Compl. ¶¶ 26–28. It subsequently filed a "Motion to Compel Production of Records," seeking an order compelling the Secretary to disclose Washington's VRL, including confidential voter information—the ultimate relief its complaint requests in this case. Dkt. No. 29; Compl. at 8.

7

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**LEGAL STANDARD**

"[T]he Federal Rules of Civil Procedure appl[y] to this action" brought by the Attorney General under Title III of the CRA. *Fontes*, 2026 WL 1177244, at *1 (citing *Powell*, 379 U.S. at 57-58 (1964)); *Weber*, 816 F. Supp. 3d at 1182; *Oregon*, 2026 WL 318402, at *8; *Amore*, 2026 WL 1040637, at *4; and *Benson*, 2026 WL 362789, at *7). Accordingly, DOJ's complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (holding dismissal required "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory"). Courts "accept as true all of the allegations contained in a complaint" but need not accept conclusory assertions or "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id.*, or mere "labels and conclusions," are insufficient, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is dismissed for failure to state a claim, other pending motions are properly denied as moot. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 532 F. Supp. 3d 846, 856 (D. Ariz. 2021), *aff'd*, 80 F.4th 943 (9th Cir. 2023).

**ARGUMENT**

**I.     The Federal Rules of Civil Procedure govern DOJ's claim.**

DOJ's complaint and subsequent Motion to Compel are premised on DOJ's novel assertion that this Court cannot evaluate the "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in" its Title III demand and this Court accordingly *must* grant the relief DOJ seeks in a "summary" manner. Compl. ¶¶ 1–4 (citing 52 U.S.C. § 20703); Mot. to Compel at 1–2, 8–9 (similar). That premise is contrary to the Federal Rules and longstanding Supreme Court precedent, which make clear that federal document demands *are* subject to judicial review for compliance with law. It is thus not surprising that the

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

8

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

three district courts in this Circuit that have addressed the question so far have each rejected DOJ's contrary position and concluded that the Federal Rules apply and that courts may evaluate DOJ's demands for compliance with the law. *See Weber*, 816 F. Supp. 3d at 1182 (citing *Powell*, 379 U.S. at 58 n.18); *Oregon*, 2026 WL 318402, at *8 (similar); *Fontes*, 2026 WL 1177244, at *1 (similar); *see also Amore*, 2026 WL 1040637, at *4.[12] This Court should do the same.

### A.    DOJ's demand is not exempt from the Federal Rules.

The Federal Rules of Civil Procedure "govern . . . in *all* civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—and *none* involve the CRA. *See* Fed. R. Civ. P. 81(a). Further, Rule 81(a)(5) states that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if a Title III demand could be characterized as akin to a subpoena, as DOJ implies, it would still be subject to the Federal Rules, as none of the sources listed in Rule 81(a)(5) provide an exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings for that circumstance, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in Title III.

The Supreme Court rejected the argument that the Rules are inapplicable to actions to enforce government demands under a statute that uses the exact language found in Title III. In *Powell*, the Court held that, where a tax summons statute "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply" and courts can evaluate the request. 379 U.S. at 58 n.18. The relevant text in the statute at

---

[12] DOJ cannot keep its own story straight as to the applicability of the Federal Rules: In its pending appeal in *Weber*, DOJ abandoned its view that the Rules do not apply, while in its parallel appeal in *Oregon*, DOJ maintains this contention. *Compare* Br. of United States at 16, *Weber*, No. 26-1232 (9th Cir. Mar. 18, 2026), *with* Br. of United States at 15, *Oregon*, No. 26-1231 (9th Cir. Mar. 18, 2026).

9

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

issue was identical to that of Title III, which provides courts "shall have jurisdiction by appropriate process to compel" compliance. *See* 52 U.S.C. §20705; 26 U.S.C. §7604(a); *Powell*, 379 U.S. at 57–58 & n.18. *Powell* thus compels the same conclusion here.

In arguing otherwise, DOJ suggests that *Powell* required application of the Federal Rules and a meaningful "judicial inquiry" only because of the particulars of the statute at issue. Mot. to Compel at 8–10 (citing 26 U.S.C. § 7605(b)). That is wrong. The Court's holding turned on absence of statutory language "specifying [alternative] procedure[s] to be followed in invoking the court's jurisdiction," *Powell*, 379 U.S. at 58 n.18, leaving the Federal Rules as the default, *see* Fed. R. Civ. P. 1 (governing "all civil actions"); *cf. Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" (alteration in original) (quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)). Here, Title III—just like § 7604(a)—specifies no alternative procedures, thus the Federal Rules apply, *Weber*, 816 F. Supp. 3d at 1182 ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures.").

DOJ relies heavily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), an out-of-circuit decision from 1962. Compl. ¶ 1; Mot. to Compel at 7–11. But *Lynd* was never binding in this Circuit and is irreconcilable with *Powell*, which was decided two years later. *See, e.g.*, *Oregon*, 2026 WL 318402 at *8 ("The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention."); *Weber*, 816 F. Supp. 3d at 1182 & n.15 (similar). Thus, *Lynd*'s holding that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules," 306 F.2d at 225–26, is not even good law in the Fifth Circuit—and hasn't been for 62 years, *see Powell*, 379 U.S. at 58 n.18 (holding "the Federal Rules of Civil Procedure apply," and "proceedings are instituted by filing a complaint, followed by answer and hearing"); *see also Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) (explaining "Fifth Circuit precedent is implicitly overruled" by a subsequent "inconsistent" Supreme Court opinion).

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

DOJ suggests incorrectly that *Benson* "followed [DOJ's proposed] approach," Mot. to Compel at 9, but that court, too, applied "the Rule 12(b)(6) standard to evaluate"—and dismiss— DOJ's CRA claim, because (as here) DOJ filed "a traditional civil complaint." 2026 WL 362789, at \*7; *see id.* (recognizing that the Rules "generally apply to proceedings to compel" the "production of documents through a subpoena issued by a United States officer or agency under a federal statute") (quotation omitted). Although the court indicated it might have come to a different conclusion had DOJ pled that case differently, its suggestion that the Federal Rules may not apply to a CRA demand is dicta and cannot be reconciled with *Powell*. In short, this Court should reject DOJ's procedural argument and adjudicate the motions to dismiss.

**B.    The Court must conduct meaningful review of DOJ's demand.**

DOJ's remaining assertions do little to support its contention that the Court can—or should—convert this civil action into a "summary proceeding." *See* Mot. to Compel at 10–11. *Powell* explained that, to invoke the powers of a federal court to compel production, the government must show, at minimum, that its investigation is for "a legitimate purpose" and "the inquiry may be relevant to the purpose." 79 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce [a] summons and a court may not permit its process to be abused," and such "abuse would take place if the summons had been issued for an improper purpose." *Id.*

Following these basic principles of judicial review, the Ninth Circuit and other federal courts have long repudiated suggestions that they may grant "imprimatur of approval" to a government document demand without meaningful inquiry. *Loc. 174, Int'l Bhd. of Teamsters v. United States*, 240 F.2d 387, 391 (9th Cir. 1956); *see United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding courts must quash demands that "exceed the investigatory power" of a federal agency); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689-90 (D.C. Cir. 2017) ("*ACICS*") (concluding federal agencies are "not afforded unfettered authority to cast about for potential wrongdoing"). Thus, as the Ninth Circuit has explained, far from acting as

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

a mere "rubber stamp," *Loc. 174*, 240 F.2d at 391, courts must, at minimum, assess "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) (quotation omitted).[13] And a Rule 12 motion is the initial device available to raise such issues. *Fontes*, 2026 WL 1177244, at *1 & n.1 (rejecting DOJ's effort to distinguish *Powell*; collecting cases).

Neither *Donaldson v. United States*, 400 U.S. 517 (1971), nor *Becker v. United States*, 451 U.S. 1306 (1981), support DOJ's theory, *see* Mot. to Compel at 7, 10. To the contrary, those cases expressly *confirm* the "Civil Rules, of course . . . have an application to" suits to enforce governmental demands, *Donaldson*, 400 U.S. at 528, and they say nothing about whether and when a proceeding under a federal statute is rendered "summary" or exempt from the Rules. They note that *even in* such "summary enforcement proceeding[s] . . . the rights of the party summoned [must be] protected." *Id.*; *see Becker*, 451 U.S. at 1308 (same). Here, that only *reinforces* the need for carefully judicial scrutiny: while *Donaldson*, for example, implicated one taxpayer's returns, DOJ demands sensitive records of every registered voter. Compl. at 8; Mot. to Compel at 2.

Ultimately, none of the authorities cited by DOJ stand for the untenable proposition that the CRA neuters this Court's review of DOJ's Title III demand. This Court should follow *Powell,* the Federal Rules, and every court to have addressed the issue and reject DOJ's demand for a "summary proceeding" and toothless judicial review of its complaint.

## II.    DOJ failed to plead a cognizable claim.

On the merits, several insurmountable hurdles stand in the way of granting relief to DOJ as a matter of law: (A) Washington's VRL is not covered by Title III, (B) DOJ failed to state any

---

[13] The Ninth Circuit and other federal courts of appeals have emphasized that such review has teeth in a wide variety of contexts. *E.g.*, *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1082 (9th Cir. 2001) (EEOC administrative subpoena); *Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988) (immigration-related subpoena); *United States v. Union Oil Co. of Cal.*, 343 F.2d 29, 31 (9th Cir. 1965) (antitrust civil demand); *see also, e.g.*, *CFPB v. Source for Pub. Data*, 903 F.3d 456, 458-60 (5th Cir. 2018) (reversing order to enforce consumer protection civil investigative demand after inquiry into the basis and purpose of demand); *ACICS*, 854 F.3d at 689-91 (similar).

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

valid basis or purpose for its demand, and (C) DOJ has not—and cannot—show that Washington's privacy laws are preempted by the CRA. Dismissal is warranted.

### A.    Title III does not cover Washington's statewide voter list.

DOJ's demand fails at the outset because Washington's VRL is not a "record" or "paper" under the plain text of the CRA. 52 U.S.C. § 20701. Title III's text covers only static records that must be "retained," "preserved," and not "altered." HAVA-required VRLs are not encompassed by that language, because they are dynamic databases that federal law *requires* be continuously updated. *Id*. § 21083(a)(4). Further, Title III only applies to records that "come into [the] possession" of election officials relating to a voter's "application, registration, payment of poll tax, or other act requisite to voting in [federal] election[s]." *Id*. § 20701. And because Washington's VRL is a continually updated digital file created by election officials, it is not a record that "came into" those officials' possession.

Title III, for its part, requires state officials to "retain and preserve," for 22 months "from the date of any [federal] election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" *Id.* Title III prohibits (and indeed criminalizes) willful "alter[ing]" of any record subject to the "retain and preserve" requirement. *Id.* § 20702 (providing criminal penalties for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved"). Thus, if a record cannot be "retain[ed] and preserv[ed]," or if it may be "alter[ed]," it falls outside of the scope of Title III.

Under a straightforward application of these provisions, Washington's VRL is not a record subject to the CRA, because HAVA and the NVRA require it to be continually updated. To find otherwise would create "conflict[] with the very purpose of VRLs and would place Title III in conflict with . . . HAVA." *Fontes*, 2026 WL 1177244, at *4. This same concern was identified by the Ninth Circuit just a few weeks ago in interpreting the scope of the NVRA in *PILF v. Nago*,

13

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026). Like the NVRA, the CRA requires States to *maintain* covered records for a certain period of time, a requirement that *Nago* found inconsistent with an interpretation that VRLs were within the reach of the statute, because the NVRA and HAVA *require* VRLs to "constantly evolve," making it unworkable and implausible for states to preserve each iteration. *Id.* at \*13; *see also, e.g.*, 52 U.S.C. § 21083(a)(1)(A)(vi) (HAVA requiring "[a]ll voter registration information obtained by" election officials "be electronically entered into the computerized list on an expedited basis"); *id.* § 21083(a)(2)(A) (requiring officials to "perform list maintenance with respect to the computerized list on a regular basis"); *id.* § 21083(a)(4) (requiring officials to "ensure that voter registration records in the State are accurate and are updated regularly"). Election officials cannot discharge these obligations while simultaneously "retain[ing] and preserv[ing]" the VRL. 52 U.S.C. § 20701. And the ramifications of this conflict are even more severe in the CRA context, which imposes *criminal* liability on election officials who fail to preserve or willfully alter a covered record. 52 U.S.C. §§ 20701, 20702. The maxim that courts must "interpret Congress's statutes as a harmonious whole rather than at war with one another," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018), thus requires excluding the dynamic VRL from Title III.

Practical considerations also compel the conclusion that the VRL cannot be subject to Title III. If it were, and even if one ignored the CRA's prohibition on "alter[ing]" the list, Washington would be required to "retain and preserve" every iteration of the list whenever it changes. *Cf. Nago*, 2026 WL 1144703, at \*13 (observing that if VRLs were subject to the NVRA, "states would be obliged to preserve every interim version of the ever-changing lists for two years"). That is unworkable. To do so, Washington would need to save the prior list whenever a name is removed (*e.g.*, when someone moves out of state or dies) or added (*e.g.*, when someone moves into the state or reaches voting age and registers), or any time Washington updates data in the list to reflect new information about any individual (*e.g.*, a change of address, updated driver's license number, or a

14

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

person's vote history). In a state like Washington with a population of around eight million people, there will be enormous numbers of such changes every year. Requiring officials to "preserve" every instance of the list when it is subject to such a vast number of changes would lead to "a plainly unworkable and implausible result that [the Court] must avoid." *Nago*, 2026 WL 1144703, at *13 (citing *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004)).

Further, Washington's VRL is a digital record created and maintained by state and local officials—it thus does not "come into the possession" of the Secretary. The phrase "come into his possession" "naturally refers to a process by which someone acquires an item from an external source." *Benson*, 2026 WL 362789, at *9; *see also Fontes*, 2026 WL 1177244, at *3 (quoting *Benson*). This follows from the "natural" and "ordinary" meaning of "come into possession." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *see* Receive, Black's Law Dictionary (12th ed. 2024) (defining "receive" as "to come into possession of or get from some outside source"); *Honeycutt v. United States*, 581 U.S. 443, 450 (2017) (defining "obtain" as "to come into possession of" (quoting Random House Dictionary of the English Language 995 (1966)).

Additional textual indicators in the CRA reinforce the conclusion that Title III extends only to materials *submitted to* election officials. Within the very same section of Title III, Congress used a different word—"delivered"—to describe the transmittal and acquisition of internal election records. 52 U.S.C. § 20701 ("such records and papers may be delivered to another officer of election"). Washington's VRL, by contrast, is accessible to and maintained by all state and local election officials. *See id.* § 21083(a)(1)(A)(v); *id.* § 21083(a)(1)(A)(vi)–(vi). Whereas static documents that follow a chain-of-custody from one official to another may need to be preserved under the CRA's terms, Washington's interactive VRL falls outside that scope.

**B.      DOJ failed to satisfy Title III's threshold requirements.**

Even if Title III could be read to cover VRLs, DOJ has failed to satisfy that statute in its demand here. DOJ is "not afforded unfettered authority to cast about for potential wrongdoing."

COMBINED MOTION AND OPPOSITION                    ELIAS LAW GROUP LLP
No. 3:25-cv-06078-KKE                             1700 Seventh Avenue, Suite 2100
                                                  Seattle, WA 98101
                                                  (206) 656-0177

*ACICS*, 854 F.3d at 689 (citation modified). Its authority to demand documents and information "is [itself] a creature of statute," *Source for Pub. Data*, 903 F.3d at 458, which "must comply with statutory requirements," *id.* at 460. And courts must refuse to enforce demands that do not satisfy statutory prerequisites. *See, e.g.*, *ACICS*, 854 F.3d at 690; *Weber*, 816 F. Supp. 3d at 1184. DOJ's failure to adequately allege *either* a sufficient basis or purpose under the CRA—where the plain language of the statute expressly requires both—is reason alone why its claim must be dismissed.

As previously noted, the text of the CRA expressly requires that a Title III demand be accompanied by "a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added); *see also Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (explaining "when 'and' is used to join two concepts, it is usually interpreted to require not one or the other, but both"). The legislative and early enforcement history of Title III show that these were long recognized as meaningful limits on such demands. *See, e.g.*, Amici Curiae Br. of Historians at 20–24, *United States v. Weber*, No. 26-1232 (9th Cir. Apr. 24, 2026), Dkt. No. 79 (cataloguing legislative record, intent, and origin of "basis" and "purpose" requirements). Indeed, even in DOJ's principal authority, *Kennedy v. Lynd*, the government provided an explicit statement of *both* "the basis" *and* "the purpose" of its demand:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d 222, 229 n.6 (5th Cir. 1962) (quotation marks omitted) (emphases added). Other Title III cases from that period likewise discuss—consistent with the statute's requirements—an explicit statement of both a "basis" and a "purpose" for a demand. *See, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

This "contemporaneous administrative construction" of Title III is "persuasive evidence" of its meaning, especially because the Attorney General played an "extensive role . . . in drafting the statute." *United States v. Bd. of Comm'rs of Sheffield*, 435 U.S. 110, 131 (1978); *see* H.R. Rep. No. 86-956, at 11, 38 (1959) (documenting Attorney General's request for preservation and inspection provisions); *cf. Biden v. Nebraska*, 600 U.S. 477, 509, 511–12, 515 (2023) (courts look to "context" surrounding enactment).

### 1.    DOJ did not provide any "basis" for its demand.

DOJ failed to articulate *any* "basis" for its demand in the letter it sent Secretary Hobbs. *Galvin*, 2026 WL 972129, at *4 (explaining basis means "factual basis"); *Weber*, 816 F. Supp. 3d at 1184 (similar). The letter stated only, "[t]he purpose of the request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 22 (emphasis added); September 8 Letter at 2. But nowhere does it identify any basis for suspecting that Washington is out of compliance with the NVRA or HAVA (even if one were to assume the CRA can be used to demand information for that purpose). *See generally* September 8 Letter; *but see infra* at Argument § II.B.2 (explaining the CRA does not entitle DOJ to demand data to investigate violations of NVRA or HAVA).

Moreover, all that the NVRA and HAVA require is that the State have a program that makes "reasonable efforts" to remove ineligible voters. *See* 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(4). And Congress expressly gave the *States* the power to decide what steps they need take in order to satisfy that standard. *See, e.g.*, *id.* § 21085 (committing the "specific choices on the methods of complying with" HAVA "to the discretion of the State"). DOJ's failure to "identify what conduct, it believes, constitute[d] an alleged violation," *Source for Pub. Data*, 903 F.3d at 458–59, justifying an investigation into Washington's compliance with these highly deferential statutes is reason itself to find the demand improper. *See also Weber*, 816 F. Supp. 3d at 1184; *Galvin*, 2026 WL 972129, at *4; *Oregon*, 2026 WL 318402, at *9.

17

COMBINED MOTION AND OPPOSITION                                    ELIAS LAW GROUP LLP
No. 3:25-cv-06078-KKE                                             1700 Seventh Avenue, Suite 2100
                                                                 Seattle, WA 98101
                                                                 (206) 656-0177

That DOJ failed to state any factual basis for its investigation of Washington is less surprising when one considers the larger context. DOJ has made carbon copy demands to at least 40 States and has sued 30 based on boilerplate claims and allegations. *See* Martinez-Ochoa et al., *supra* note 1. This nationwide effort to collect states' VRLs seriously undermines any notion that DOJ has a "basis" for investigating Washington specifically. And, as in those other states, DOJ's demand is similarly facially inadequate based on its failure to allege a basis in its demand letter.

### 2. DOJ's "purpose" is legally inadequate.

DOJ's complaint also must be dismissed because its stated purpose for its demand—"to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 22 (quotation marks omitted) (quoting September 8 Letter); *see id.* ¶ 9—is not a permissible purpose under *Title III*, which Congress enacted to aid DOJ in addressing civil rights violations. In interpreting the "purpose" requirement, as with the basis requirement, courts should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Title III does not grant expansive federal power to demand state VRLs at any time and for any reason unrelated to the objectives of the CRA. Not only does Congress not "hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *see Amore*, 2026 WL 1040637, at *6 ("Congress cannot have intended Title III as permitting such a demand based on a statement of *any* purpose."), the drafters and proponents of the CRA were clear that "[i]t is not the purpose of title III to supervise State elections." *Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary*, 86th Cong. 212, 700 (1959) (statement of Rep. William M. McCulloch, a principal drafter of Title III). Instead, the "purpose of Title III" is to preserve records for cases where "reasonable cause is thought to exist that any person qualified to vote has been improperly denied that right." *Id.*

18

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

This conclusion is also mandated by Title III's context, including its statutory place within the CRA itself. There can be no serious dispute that Congress enacted Title III to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant Southern state and local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 7. This history "leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote," that is, "regardless of color, race, religion, or national origin." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853–54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Accordingly, Title III's "purpose is to enable the Attorney General to determine whether [§10101] suits or similar actions should be instituted." *Lynd*, 306 F.2d at 228.

If Congress wanted to grant DOJ broad access to voter files to investigate potential violations of the NVRA and HAVA, it would have done so in those statutes. But HAVA has no disclosure requirements at all. Nor is it any response to say Congress assumed the CRA would provide the inspection provision, where Congress *did* include a *very different* inspection provision in NVRA, expressly allowing for inspection of records relating to the implementation of programs and activities related to list maintenance. *See* 52 U.S.C. § 20507(i)(1).[14] DOJ cannot circumvent the strictures of statutes *specifically designed to address list maintenance* by invoking the general disclosure provision of the CRA. To hold otherwise would violate the "well established canon of statutory interpretation" that "the specific governs the general." *RadLAX Gateway Hotel, LLC v.*

---

[14] The Ninth Circuit recently held that this inspection provision is limited to its terms—the inspection of records related to the implementation of programs and activities related to list maintenance—and does not include the VRL itself. *Nago*, 2026 WL 1144703, at *13. As noted *supra* at Argument § II.A, the reasoning that underlies this conclusion in *Nago* about the NVRA applies with even greater force to the CRA given its criminal provisions. Further, even other circuits that have either held that the NVRA can reach VRLs or have declined to decide the issue have concluded that the private data DOJ seeks here can be redacted consistent with the NVRA, even if they are "records" under the Act. *See PILF v. N.C. State Bd. of Elections*, 996 F.3d 257, 265 (4th Cir. 2021) (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *PILF v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

19

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citations omitted). DOJ must be limited to the investigatory tools Congress granted.

In short, DOJ's stated purpose "lack[s] any reference or relation to the purposes for which Title III was enacted," *Oregon*, 2026 WL 318402, at *10; *see Amore*, 2026 WL 1040637, at *6 (same), and it is, in fact, antithetical to Title III's purpose, *see Weber*, 816 F. Supp. 3d at 1182–84. The Court should reject DOJ's efforts to justify its demands with a purpose so disconnected from the provision that DOJ claims purportedly authorizes it. *See In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-MC-00041-JHC, 2025 WL 3562151, at *9 n.6 (W.D. Wash. Sep. 3, 2025) ("'The requirement that subpoenas be used only for a legitimate and authorized governmental purpose prohibits the government from engaging in arbitrary fishing expeditions'" (quoting *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000))); *see also NLRB v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1114 (9th Cir. 1981).

Finally, even if ascertaining compliance with the NVRA and HAVA were permissible grounds for invoking Title III generally, "DOJ states no reason why an *unredacted* version of" the VRL "is necessary" for its purpose. *Weber*, 816 F. Supp. 3d at 1183 (emphasis added); *see also Oregon*, 2026 WL 318402, at *10 n.4. VRLs are regularly updated by election officials, thus any single snapshot obtained by DOJ would become outdated immediately. Such a snapshot—with or without fields containing personal information—cannot tell DOJ anything about list-maintenance *procedures*. And, as noted, the NVRA and HAVA grant states broad discretion, requiring only that such procedures be "reasonable," 52 U.S.C. § 20507(a)(4), committing "specific choices . . . to the discretion of the State," *id.* § 21085. DOJ failed to explain why it requires the sensitive information it seeks: "neither Plaintiff's Title III demand nor any of its pleadings before this Court provide any reasonable explanation for why the Sensitive Voter Data in particular serves those purposes." *Oregon*, 2026 WL 318402, at *10 n.4.

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

### 3. DOJ's stated "purpose" is contrived and pretextual.

Finally, there is ample evidence that DOJ's stated purpose is not actually its true or full purpose, and DOJ is not entitled to the VRL "under the guise of a pretextual investigative purpose." *Weber*, 816 F. Supp. 3d at 1186. In the context of a government demand, "the dispositive question . . . is whether the [agency] is pursuing the authorized purposes in good faith." *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995) (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317–18 (1978)). A demand that has a "pretextual nature" cannot be made in "good faith." *QueerDoc, PLLC v. DOJ*, 807 F. Supp. 3d 1295, 1302–03 (W.D. Wash. 2025) (quoting *Crystal v. United States*, 172 F.3d 1141, 1144 (9th Cir. 1999); citing *Powell*, 379 U.S. at 51, 58); *see also United States v. Adams*, 777 F. Supp. 3d 185, 232 (S.D.N.Y. 2025) (similar). Thus, especially where there is an indication of pretext, courts "in this Circuit" have consistently held that the government's "say-so" is insufficient to sustain a document demand. *QueerDoc*, 807 F. Supp. 3d at 1301–02 (discussing cases); *see also, e.g.*, *Hirsch v. AZ Auto. Corp.*, No. 07-10887, 2008 WL 115532, at *4 n.6 (E.D. Mich. Jan. 10, 2008) ("Under federal law, pretext is established where a plaintiff shows the proffered reason is unworthy of belief.").

Here, there is ample reason not to believe DOJ seeks this information simply to ensure that Washington is complying with the list maintenance requirements of HAVA and the NVRA, and the Court is "not obliged to accept a contrived statement and purpose." *Weber*, 816 F. Supp. 3d at 1184–86; *see also ACICS*, 854 F.3d at 689–90. As noted, DOJ has made carbon-copy demands to at least 40 states and has sued 30 based on nearly identical boilerplate allegations. *See Weber*, 816 F. Supp. 3d at 1178 & nn.6–7; *Oregon*, 2026 WL 318402, at *11. This cookie-cutter approach to dozens upon dozens of states itself provides significant reason to doubt that DOJ's intention here truly is to investigate *Washington* specifically for compliance with the NVRA and HAVA.

Further, "[r]epresentations by the DOJ itself show that their requests to states for voter roll data go beyond their purported compliance check with the NVRA and into the territory of

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

comprehensive data collection." *Weber*, 816 F. Supp. 3d at 1184–85; *see also id.* at 1185 ("DOJ's relationship with DHS further confirms that voting roll data is being used to compile a national database with millions of voters' private information."); OLC Op. at 1 ("In response to the President's order to identify those who may be voting illegally (whether by reason of alienage or otherwise), [DOJ] proposed to seek statewide voter lists, and then to share the lists with Homeland Security Investigations ('HSI') or another unit within DHS."). This includes the fact that the Attorney General recently sent a letter to the Minnesota Governor complaining about immigration enforcement there and demanding, among other things, access to unredacted voter data. *Oregon*, 2026 WL 318402, at *11 ("The context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data.").[15] And, in recent appellate filings in parallel cases DOJ has repeatedly raised "the specter of noncitizen" voting in the 2026 elections as a reason to expedite the appeals. Emergency Mot. to Expedite at 16, *Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), Dkt. No. 12; Emergency Mot. to Expedite at 15, *Weber*, No. 26-1231 (9th Cir. Mar. 3, 2026), Dkt. No. 12. Notably, DOJ did not raise the issue of noncitizen voting before the district court in those cases—nor has it done so here. *See generally* Compl. And it later abandoned that argument in its merits briefing in those same appeals. *See* Br. of United States, *Oregon*, No. 26-1231 (9th Cir. Mar. 18, 2026), Dkt. No. 26; Br. of United States, *Weber*, No. 26-1232 (9th Cir. Mar. 18, 2026), Dkt. No. 39.[16]

### C.   Title III does not prohibit redaction of sensitive voter information.

DOJ's complaint also fails because the relief it seeks under Title III conflicts with Washington law's protections for sensitive voter information, RCW 29A.08.710, and DOJ cannot show that federal law preempts those protections. Indeed, from the outset, the Secretary expressed

---

[15] *See also supra* Background §§ II–IV.

[16] Neither the NVRA nor HAVA addresses removal of noncitizens. Instead, they are concerned with the removal of "registrants who have died or moved away." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017); *see also* 52 U.S.C. § 21083(a)(2)(A) (citing 52 U.S.C. § 20507).

22

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

concerns about the privacy implications of DOJ's demand, emphasizing that state law requires redaction of at least driver's license and social security numbers. Compl. ¶ 25; *see* September 23 Letter at 1 (citing RCW 29A.08.710, 720). In its Motion to Compel, DOJ recognizes that state law only yields to federal law in this arena where there is a "direct conflict" between the two, Mot. to Compel at 21 (citing *ITCA*, 570 U.S. at 15), yet it makes *no* attempt to explain why that is the case here, *see id.* Instead, DOJ broadly avers to the so-called "sweeping" obligation of "election officials to preserve and, on request, to produce registration records" upon demand, and DOJ's purported authority to ensure compliance with list-maintenance responsibilities under federal law. *Id.* (citing *Lynd*, 306 F.2d at 226). The argument comes up far short.

To start, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Knox v. Brnovich*, 907 F.3d 1167, 1173-74 (9th Cir. 2018) (quotation omitted), but there is nothing to suggest Congress would have intended to supplant state privacy law, and DOJ provides none. In fact, the Ninth Circuit in *Nago* just weeks ago concluded the NVRA reflects Congress's judgment that "[e]ffective oversight" of a State's list-maintenance obligations "does *not* require disclosure of every registrant's personal information," 2026 WL 1144703, at *15 (emphasis added). *Nago* thus shuts the door on DOJ's claim that personal information in Washington's voter file is *necessary* to achieve its stated "federal" goals. *See id.*

Nor does the CRA itself support DOJ's theory. Congress's purposes and objectives in enacting the CRA had nothing to do with list maintenance. *See supra* at Argument § II.B. Indeed, given that license numbers or partial social security numbers were not required on registration forms until 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), Congress's purpose in enacting the CRA *could not* have possibly extended to requiring disclosures of such information. *Cf. Bruce*, 298 F.2d at 863 n.2 (noting a jurisdiction's "failure[] to purge voters who have moved away or have died . . . does not bear any particular importance" to a Title III inquiry).

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Finally, the sole case cited in support of DOJ's contention here only further undermines its theory. In *Lynd*, the Fifth Circuit explained Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," but *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information DOJ seeks is simply not of the type ordinarily "open to legitimate reasonable inspection." *Id*. Rather, it is concededly sensitive information that enjoys strong privacy protection under federal *and* state law, *see, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; RCW 29A.08.710, 720. Because DOJ cannot show that Title III preempts state laws protecting the information it demands, its complaint fails to state a claim.

### III.    DOJ's demand is incompatible with federal privacy law.

Finally, even if DOJ could use Title III to compel the personal data of Washington's millions of registered voters, it would first need to satisfy the commands of the Privacy Act of 1974 and related federal law. DOJ's inability to do so—apparent from the face of its complaint— provides further reason its claim should be dismissed. *Weber*, 816 F. Supp. 3d at 1193 (dismissing on this basis, among others); *Allstate v. Samsung*, No. 23-cv-1447-MJP, 2023 WL 8433118, at *2 (W.D. Wash. Dec. 5, 2023) (explaining that an affirmative defense apparent from complaint, attachments, and "judicially noticeable materials" is a "basis for a motion to dismiss under Rule 12(b)(6)" (citing *Rivera v. Peri & Sons Farms*, 735 F.3d 892, 902 (9th Cir. 2013)); *see also, e.g.*, *Gelbard v. United States*, 408 U.S. 41, 52 & 60-61 (1972) (holding statutory prohibition on use of certain communications was properly invoked as a "defense" in action brought by DOJ to compel compliance with subpoena).

Congress enacted the Privacy Act in response to "growing awareness that governmental agencies were accumulating an ever-expanding stockpile of information about private individuals that was readily susceptible to both misuse and the perpetuation of inaccuracies." *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981); *Weber*, 816 F. Supp. 3d at 1192 (similar); *see* Pub. L. No. 93-579, 88 Stat. 1896, codified at 5 U.S.C. §552a note. The Act accordingly "offers substantial

24

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

protections regarding governmental use and retention of identifiable personal information" by "impos[ing] burdens on federal agencies and creat[ing] rights for individuals when agencies collect, maintain, use, and disseminate 'records.'" *All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 87 (D.D.C. 2025) (quoting 5 U.S.C. § 552a(a)(4)); *see also League of Women Voters v. DHS*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025) (similar).

These restrictions include both procedural and substantive restrictions, and courts have consistently held that federal agencies *cannot* maintain or use records absent "strict" adherence to the Act's commands. *Swenson v. USPS*, 890 F.2d 1075, 1078 (9th Cir. 1989); *Weber*, 816 F. Supp. 3d at 1192; *see also Doe v. Stephens*, 851 F.2d 1457, 1466 (D.C. Cir. 1988) (describing the matter as "settled"); *LULAC v. EOP*, No. 25-cv-0946, 2026 WL 252420, at *51–55 (D.D.C. Jan. 30, 2026).[17] In doing so, courts have with increasing urgency emphasized that the concerns animating the Act are as present today as they ever have been. *See Weber*, 816 F. Supp. 3d at 1192; *see also LULAC*, 2026 WL 252420, at *55 & n.54 (declaring DHS's ignorance of certain "procedural protections" in carrying out recent expansion of SAVE database "flatly inconsistent" with the Act, expressing "grave concern" about recent disclosures of data among federal agencies). Recognizing the need for continued adherence to its core provisions, Congress has amended the Act several times to *strengthen* and *expand* its prohibitions.[18]

Against this backdrop, DOJ demands Washington's unredacted VRL without having complied with several of the Privacy Act's core mandates. DOJ alleges it sent one letter to the Secretary demanding immediate access, broadly promising adherence to that Act, and that letter

---

[17] Notably, in a section of the Code that specifically "applies" to the Privacy Act's prohibitions, 5 U.S.C. § 555(a), Congress provided that an "investigative act or demand may not be may not be issued, made, *or enforced except as authorized by law*," *id.* § 555(c) (emphasis added).

[18] *See* Computer Matching and Privacy Protection Act of 1988 ("CMPPA"), Pub. L. No. 100-503, 102 Stat. 2507 (1988); E-Government Act of 2002, Pub. L. No. 107–347, 116 Stat. 2899, 2921–22 (2002); Federal Information Security Modernization Act of 2014 ("FISMA"), Pub. L. No. 113-283, 128 Stat. 3073 (2014). Notably, Congress in FISMA specified that complying with FISMA did not replace any "protection[s] of personal information under [the Privacy Act]" itself, and expressly affirmed that meeting all of [its] requirements is prerequisite to any "disclosure" being "authorized." 44 U.S.C. § 3558.

25

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

in turn references an "template agreement" DOJ stated would govern its collection of the records. Compl. ¶ 24; *see* September 8 Letter at 3.[19] Yet the complaint, together with these incorporated materials, demonstrate that the demand—and the relief DOJ requests from this Court—facially *violates* the Privacy Act at least three times over: DOJ (1) failed to complete mandatory notice-and-comment requirements, (2) failed to satisfy mandatory privacy and security prerequisites, and (3) lacks required authorizations to "match" Washington's VRL to other federal databases. The relief DOJ seeks is therefore foreclosed under federal law, as the Court in *Weber* correctly held. 816 F. Supp. 3d at 1192.

CP-Alliance Intervenors—whose members include hundreds of thousands of "private individuals" of this state who are deeply disturbed by DOJ's actions and whose privacy interests are directly at stake, *Londrigan*, 670 F.2d at 1169; Boschok Decl. ¶¶ 2–4; Douglas Decl. ¶¶ 2–5, urge this Court to follow *Weber* and reject DOJ's attempt to "stockpile" "private information" about them, *Londrigan*, 670 F.2d at 1169; *Weber*, 816 F. Supp. 3d at 1194.

### A.    DOJ failed to comply with the Privacy Act's procedural mandates.

At the outset, DOJ failed to satisfy the Privacy Act's most basic procedural safeguards, prerequisites to any agency "maintain[ing]" any "system of records" with personally identifying information. 5 U.S.C. § 552a(e).[20] When an agency establishes or revises a system of records, it must publish in the Federal Register a "systems of records notice" detailing existence and character of the system—i.e., a System of Records Notice ("SORN"). *Id.*; *League of Women Voters*, 2025 WL 3198970, at *2. The SORN must include, among other things, the name and location of the

---

[19] The "template agreement" proposed by DOJ has been made public, *see* Confidential Memorandum of Understanding, https://perma.cc/C9GH-NX9L ("MOU"), and is thus subject to judicial notice given that DOJ cannot question its authenticity, *Samsung*, 2023 WL 8433118, at *2.

[20] The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). And a "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual").

26

COMBINED MOTION AND OPPOSITION                    ELIAS LAW GROUP LLP
No. 3:25-cv-06078-KKE                              1700 Seventh Avenue, Suite 2100
                                                  Seattle, WA 98101
                                                  (206) 656-0177

system, categories of individuals on whom records will be maintained, categories of records maintained in the system, and all "routine uses" to which the records in the system can be put as well as "categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4). A statutorily-compliant SORN must also provide at least 30-days *prior* "notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit" comments to the agency. *Id.* § 552a(e)(11). The agency must also provide *prior* notice to congressional committees and OMB to evaluate effects on privacy and other rights. *Id.* § 552a(r). Congress enacted these requirements to "permit an individual to determine what records pertaining to [the individual] are collected, maintained, used, or disseminated by [federal] agencies" and ensure "adequate safeguards are provided to prevent misuse." *Id.* § 552a note.

Washington's VRL, which contains the names of all registered voters as well as their voter registration identifiers and various other identifying information, qualifies as a "system of records." *Weber*, 816 F. Supp. 3d at 1193; *see also, e.g.*, *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1271–72 (N.D. Ga. 2005), *aff'd,* 439 F.3d 1285 (9th Cir. 2006).[21] Because DOJ's demand for Washington's VRL expressly seeks to collect, maintain, and use such data, Compl. at 7–8 (Prayer for Relief); *see generally* September 8 Letter, the obligations of § 552a(e) attach, *Weber*, 816 F. Supp. 3d at 1193; *LULAC*, 2026 WL 252420, at *51–55. Accordingly, *before* "collecting," "using," or "maintaining" Washington's VRL, DOJ must have completed each of the requirements of subsection (e). *Weber*, 816 F. Supp. 3d at 1193. It did not.

Although DOJ has suggested in parallel litigation that the Privacy Act's procedural protections are inapplicable to its collection of voter files, it acknowledges in its complaint here both that the Act *does* apply generally and that a statutorily compliant SORN is required. Compl.

---

[21] That HAVA exempts "[t]he last 4 digits of a social security number described in subsections (a)(5)(A)(i)(II) and (b)(3)(B)(i)(II)" from "section 7 of the Privacy Act of 1974," 52 U.S.C. § 21083(c), is not relevant here. *Contra* Compl. ¶ 28; Dkt. No. 20-4 at 2. Section 7 of the Privacy Act only provides that: "It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law *because of such individual's refusal to disclose* his social security account number." 5 U.S.C. § 552a note. DOJ's demand remains subject to all requirements for collecting, maintaining, or using the sensitive information it seeks.

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

¶ 24. In support of its conclusory allegation that its maintenance and use of Washington's voter list satisfy the Act's "protections," DOJ lists three SORNs it states provide the "full list of routine uses for this collection." *Id.* (citing 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)). None come even close to satisfying subsection (e), as the district court in *Weber* properly held. 816 F. Supp. 3d at 1193 ("If millions of Americans' private information is to be collected by the federal government, they deserve the ability to comment and voice their concerns before this collection occurs.").

The first SORN—68 Fed. Reg. 47610-01—merely notifies the public that the categories of individuals covered by the Civil Rights Department's general information system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other irrelevant categories. Applied here, DOJ's reliance on this SORN would implausibly mean every registered voter in Washington (or, given DOJ's near-nationwide demands, every registered voter in the country) is a subject under investigation, a victim, or a witness in some unnamed matter. *See id.* That SORN similarly describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* This language might cover run-of-the-mill files maintained for specific investigations and litigation matters, but it would be an extraordinary and startling construction of its terms to find they extend to a statewide (or nationwide) VRL, the likes of which have never before been compiled by the federal government. *Weber*, 816 F. Supp. 3d at 1193. "This SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity." *Id.*

The second and third SORNs cited by DOJ also plainly do not cover DOJ's maintenance or use of Washington's VRL. The first—from nearly a decade ago—adds a blanket "routine use" to all existing DOJ systems that is relevant only in the event of a data *breach*. *See* 82 Fed. Reg.

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

24147-48 (2017); *Weber*, 816 F. Supp. 3d at 1193 (holding this SORN "lack[s] relevance and specificity" to maintenance or use of a state voter roll). The other—from more than two decades ago—merely added an additional "routine use" noting that DOJ may make "disclosure[s] of information explaining [DOJ]'s decision to close a criminal matter to the local community or public," where certain conditions are met. *See* 70 Fed. Reg. 43904-01 (July 29, 2005); *see also Weber*, 816 F. Supp. 3d at 1193 (noting the SORN similarly fails to provide notice of what "private and sensitive information" in a VRL will be maintained or used). And even if DOJ could somehow shoehorn its collection of Washington's VRL into a past SORN, the agency would *still* have an obligation to comply with the mandatory prerequisites described above to specify the *new* categories of information being maintained and all *uses* of that specific data. *LULAC*, 2026 WL 252420, at *52, 55; *see also Weber*, 816 F. Supp. 3d at 1192.

To hold any of these SORNs—or that the general existence of SORNs published for other systems—are sufficient to allow DOJ to maintain sensitive information about every registered voter in Washington (and across the country) would effectively nullify the Privacy Act's procedural safeguards, which this Court cannot do. *Weber*, 816 F. Supp. 3d at 1194; *see also Doe*, 851 F.2d at 1466 ("It is by now well-established that agencies covered by the Privacy Act may not utilize the 'routine use' exception to circumvent the mandates of the Privacy Act." (collecting cases)).

**B.      DOJ failed to satisfy the Privacy Act's substantive safeguards.**

DOJ's demand for Washington's unredacted VRL also flouts critical prerequisites on federal agencies' maintenance and use of records. Here, the Privacy Act provides that an agency must "establish appropriate . . . safeguards" to protect the privacy and security of personal data. 5 U.S.C. § 552a(e)(10); *see Swenson*, 890 F.2d at 1076–78. Congress has also enacted some specific, minimum mandates. In 2002, Congress enacted the E-Government Act, which requires agencies to conduct a "privacy impact assessment" ("PIA")_addressing various issues regarding the

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

suitability of the data before initiating a new collection of records. 116 Stat. 2899, 2921-22 (Dec. 17, 2002); *see EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (describing E-Government Act). Congress also enacted FISMA in 2014 to mandate data-security protections for any personal information agencies collect, with personal identifiers like SSNs and license numbers afforded the highest protection. *See* 44 U.S.C. § 3554(a); *see also In re OPM Data Sec. Breach*, 928 F.3d 42, 54-60 (D.C. Cir. 2019) (describing FISMA).

DOJ's demand here is, again, facially inadequate. Nothing in its complaint or the referenced correspondence with the Secretary suggests that DOJ complied with these requirements with respect to Washington's voter information, and DOJ has conceded in judicially noticeable briefs within this Circuit that it has not conducted a PIA as to state voter rolls. *See, e.g.*, Reply Br. at 31, *Weber*, No. 26-1232 (9th Cir. Apr. 24, 2026). And any suggestion that the privacy provisions of the E-Government Act do not apply to DOJ's collection of Washington's VRL would defy the text, which refers to any federal agency's *collection* of new personal information. *Weber*, 816 F. Supp. 3d at 1195 ("The information the DOJ seeks to collect . . . is personal information protected by the E-Government Act," and "the request made by the DOJ to [Washington] is a new one, thus initiating a new collection of data").

DOJ's pleadings similarly show that its demand would violate the Act's requirements for "administrative, technical, and physical safeguards to insure the security and confidentiality of records" and to "protect against any anticipated threats or hazards to their security or integrity." 5 U.S.C. § 552a(e)(10); *see also* 44 U.S.C. § 3554(a); *In re OPM Data Sec. Breach*, 928 F.3d at 5460 (looking to the requirements of FISMA when assessing agency's compliance with the Act's security requirements). Here, while DOJ states that any records will be housed under the "authority" of the Act, Compl. ¶ 24, the Act and FISMA *restrict* maintenance of data in ways that the "MOU" DOJ has proposed with Washington would violate, *see* 44 U.S.C. § 3554(a). That proposed agreement represents DOJ's own proposal to govern the collection and use of the VRL,

30

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

yet its bare provisions make clear that the mandates of § 3554 have not been satisfied as to Washington's VRL. *Compare* MOU at 2–8 (lacking specific security protocols), *with In re OPM Data Security Breach*, 928 F.3d at 54–56 (summarizing the requirements of FISMA). This is yet another basis to conclude that DOJ failed to satisfy the Privacy Act.

### C.   DOJ lacks "authority" to "match" voter lists to federal databases.

Further still, DOJ's demand facially violates stricter restrictions on the use of computerized "matching programs." 5 U.S.C. § 552a(o), (p), (q). Congress amended the Privacy Act in 1988 with the Computer Matching and Privacy Protection Act to specifically prohibit such matching, except in very limited circumstances. *Id.* § 552a(o), (p), (q). The Act, as relevant, defines such a program as a "computerized comparison of two or more automated systems of records or a system of records with non-Federal records." *Id.* § 552a(a)(8)(A)(i)(I). Subpart (o) of the Act prohibits federal agencies from disclosing records to other federal agencies, state or state or local government agencies, "for use in a computer matching program" without a written agreement detailing compliance with several enumerated requirements, including the specific "legal authority" for the program. *Id.* § 552a(o)(1); *see id.* § 552a(q) ("[n]otwithstanding any other provision of law," agencies may not share records with other agencies for use in a matching program unless subparts (o) and (p) are met). The prohibition expressly applies to federal agencies with respect to records provided by "any State or local government, or agency thereof." *Id.* § 552a(a)(11), (o)(1)(H); *League of Women Voters*, 2025 WL 3198970, at *3.[22]

DOJ's demand, yet again, fails muster. First, DOJ's complaint and letter indicate that DOJ intends to match sensitive voter information contained in Washington's VRL with other federal agency records, *see* Compl. ¶ 22 (demanding, among other things, full name, date of birth,

---

[22] Legal authority means *existing* legal authority—e.g., an act of Congress—not one concocted by the agency. Congress specifically noted that nothing in the Act "shall be construed to authorize (1) the establishment or maintenance by any agency of a national data bank that combines, merges, or links information on individuals maintained in systems of records by other Federal agencies; (2) the direct linking of computerized systems of records maintained by Federal agencies;" or "(3) the computer matching of records *not otherwise authorized by law*." 5 U.S.C. § 552a note (emphasis added).

31

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

residential address . . . driver's license number, or the last four digits of the registrant's social security number" to "ascertain Washington's compliance" with "list maintenance" requirements); September 8 Letter at 3 & n.3 (similar), triggering DOJ's obligations under § 552a(o). DOJ has further confirmed directly—in judicially noticeable hearings and filings—that it intends to run state voter lists through SAVE, a known, controversial DHS "matching" program. *See* Clarification of Record, *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 27, 2026), ECF No. 46 (DOJ sought voter rolls to run through the SAVE program after prior denials); Background § II & n.7; *see also* 90 Fed. Reg. 48948–51 (Oct. 31, 2025) (noting use of SAVE constitutes a "matching program" within the meaning of the Privacy Act). DOJ cannot rebut any of this.[23]

On the face of the complaint and judicially noticeable materials, § 552a(o) applies, yet DOJ *cannot* identify any "legal authority" to use the information contained in Washington's VRL in such a "matching program," meaning DOJ's intended use of the program is affirmatively prohibited. 5 U.S.C. § 552a(o)(1); *see also* 102 Stat. at 2514 (stating that nothing in the Act "shall be construed to authorize . . . the computer matching of records not otherwise authorized by law" (codified at 5 U.S.C. § 552a, note)). And even if DOJ *could* identify some legal authority to ground its matching program, it has not executed the required computer-matching agreements or satisfied any of the other procedural prerequisites for using data in such a program as described above, *see* 5 U.S.C. § 552a(e)(12), (o), (p), (q). Its demand for access to Washington's unredacted VRL is therefore unlawful on its face, supplying yet another independent basis for dismissal.

## IV.    If the complaint survives dismissal, discovery is appropriate.

Finally, even if the Court were to find that DOJ's complaint can survive a motion to dismiss (and for the reasons discussed, it should not), the next proper step would be discovery. DOJ's motion effectively seeks summary judgment. *Compare* Compl. at 8 (Prayer for Relief), *with* Mot.

---

[23] DOJ conceded on appeal in *Weber* that the Act's computer-matching provisions apply to its demand and asked only for remand as to this defense so that the district court could allow DOJ to attempt to satisfy its obligations. *See* Reply Br. at 30 n.11, *Weber*, No. 26-1232 (9th Cir. Apr. 17, 2026), Dkt. No. 91.

32

COMBINED MOTION AND OPPOSITION                                    ELIAS LAW GROUP LLP
No. 3:25-cv-06078-KKE                                             1700 Seventh Avenue, Suite 2100
                                                                 Seattle, WA 98101
                                                                 (206) 656-0177

to Compel at 3 (requesting same relief). But this Court cannot properly grant such relief at this early stage. *See, e.g.*, *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 773 (9th Cir. 2003) (final relief inappropriate "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case"). Thus, should this Court deny the motions to dismiss, Defendants are at minimum entitled to probe DOJ's claims through discovery, *before* DOJ can possibly be entitled to have the Court adjudicate its request for the final relief it seeks. This in and of itself provides another independent reason to deny DOJ's motion to compel. *Weber*, 816 F. Supp. 3d at 1182.

More specifically, DOJ asserts in this case that its purpose for seeking Washington's sensitive data is to ascertain if state officials are practicing "reasonable" list maintenance. *See generally* Compl. Yet those representations stand in sharp contrast to the alarming picture painted by public reporting and actions of this administration's own officials. *See* Background § II; Argument § II.C; *see also Oregon*, 2026 WL 318402, at *11 (concluding that the "context" of DOJ's complaint "casts serious doubt as to the true purposes for which [DOJ] is seeking" Oregon's VRL); *Weber*, 816 F. Supp. 3d at 1190 (similar). These developments suggest DOJ is, in fact, working with other agencies to—among other unlawful ends—create a national voter list (or something materially indistinguishable from it), and they validate concerns that DOJ's crusade is driven by ulterior motives. *See* OLC Op. at 1. Even if the complaint is not dismissed, then, discovery into the veracity of DOJ's stated purpose is necessary. As the Court in *Weber* explained, district courts are "not obliged to accept a contrived statement and purpose." 816 F. Supp. 3d at 1184.

## CONCLUSION

CP-Alliance Intervenors respectfully request that this Court grant their motion to dismiss and deny Plaintiff's motion to compel.

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Dated: May 20, 2026

Respectfully submitted,

*/s/ Abha Khanna*
**ABHA KHANNA**
WA Bar No. 42612
**TYLER L. BISHOP**
WA Bar No. 63821
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law
tbishop@elias.law
wmckusick@elias.law

*Attorneys for Intervenor-Defendants*
*Common Power and Washington State*
*Alliance for Retired Americans*

34

COMBINED MOTION AND OPPOSITION
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendants Common Power and Washington State Alliance for Retired Americans certifies that this motion contains 12,989 words, which complies with the limit imposed by the Court's April 13 Order, Dkt. No. 45 at 4.

Dated: May 20, 2026                    /s/ Abha Khanna
                                        Abha Khanna

COMBINED MOTION AND OPPOSITION                          ELIAS LAW GROUP LLP
No. 3:25-cv-06078-KKE                                   1700 Seventh Avenue, Suite 2100
                                                        Seattle, WA 98101
                                                        (206) 656-0177