THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVE HOBBS, in his official capacity as Secretary of State of the State of Washington,<br><br>    Defendant. | Case No. 3:25-cv-06078-KKE<br><br>**AMICUS CURIAE DEMOCRATIC NATIONAL COMMITTEE'S BRIEF AS AMICUS CURIAE** |

DNC'S BRIEF AS AMICUS CURIAE
(No. 3:25-cv-06078-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**INTRODUCTION**

Federal law authorizes the Attorney General to demand voter registration records, but he cannot do so based on a misrepresentation.  Rather than disclosing "the purpose" for its demand for the complete, unredacted Washington voter file—as Title III of the Civil Rights Act of 1960 ("Title III"), 52 U.S.C. § 20703, requires—the U.S. Department of Justice ("DOJ") told state officials it was engaged in routine enforcement of civil rights laws.  Yet DOJ has now confirmed that it intends to transfer the personally identifying information of every registered voter in Washington to the Department of Homeland Security ("DHS")—making each voter the subject of a criminal law enforcement investigation—and is demanding voter purges beyond the requirements of federal law.  This deception invalidates the Title III demand.  The Democratic National Committee ("DNC") submits this amicus brief to protect the privacy of its members and the interests of its candidates and campaigns and respectfully requests that this Court deny DOJ's Motion to Compel and grant Secretary Hobbs's Motion to Dismiss.[1]

**INTEREST OF AMICUS CURIAE**

The DNC is the oldest continuing party committee in the United States.  Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register to vote and to cast ballots in favor of Democratic candidates.  The DNC represents millions of voters, including more than 750,000 voters who participated in the 2024 Washington Democratic presidential primary.

DOJ has demanded a copy of Washington's complete, unredacted voter registration list and has labeled all voters on that list "[s]ubjects of investigations … within the scope of [an] investigation into voter fraud." *Authority to Obtain and Share Statewide Voter Roll Data* ("OLC Mem."), 50 Op. O.L.C. ___, slip op. 27 (May 12, 2026), https://perma.cc/U3AZ-MSWN.  This

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed money to fund the preparation or submission of this brief.

DNC'S BRIEF AS AMICUS CURIAE – 1
(No. 3:25-cv-06078-KKE)

demand forces Democrats to choose between participating in elections and the privacy and security of their personal information.  Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).  In turn, the DNC has a significant protectable interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the rolls would impose an intolerable burden on that interest.  *Cf. Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 76–80 (2026).

## **BACKGROUND**

In June 2025, DOJ began sending letters demanding complete, unredacted copies of state voter files, and a senior official eventually acknowledged that DOJ was demanding voter files from all fifty states—ostensibly in relation to enforcement of the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA").  *See* Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline (Aug. 1, 2025), https://perma.cc/526V-97C3.  But DOJ intends to share voter lists with DHS, including for criminal investigatory purposes.  *See, e.g.*, OLC Mem. 1, 5–6; Tr. 65:1–6 ("*Amore* Tr."), *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026), ECF No. 50-2 ("THE COURT: What I'm saying is can you take this list and send it to Homeland Security ….  MR. NEFF: In compliance with all federal laws, yes, and we intend to do so.").  DOJ has also claimed authority to "confirm that … voter rolls are composed solely of individuals who are eligible to vote," Mot. to Expedite 14, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), ECF No. 6-1, and to use voter files for purposes unrelated to NVRA and HAVA compliance, *see* Okla. Agreement ¶ 2 (Mar. 24, 2026), https://perma.cc/FEW7-JCKG (authorizing use for "other purposes outlined in 28 C.F.R. §§ 0.50–.51").  Collectively, these assertions cast "serious doubt as to the true purposes for which [DOJ] is seeking voter registration lists in this and other cases." *United States v. Oregon*, No. 6:25-cv-1666, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026).

DNC'S BRIEF AS AMICUS CURIAE – 2
(No. 3:25-cv-06078-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

On September 8, 2025, DOJ sent a letter to Secretary Hobbs, demanding Washington's computerized statewide voter registration list and asserting that "the purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA." Sept. 8 Ltr. 2, ECF No. 30-1. The letter specifically demanded "*all fields*," including each registrant's "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's [S]ocial [S]ecurity number." *Id.* at 1. On September 23, Secretary Hobbs declined to provide the complete, unredacted Washington voter file and requested clarification of the DOJ demand. Sept. 23 Ltr., ECF No. 30-2.

On December 2, 2025, DOJ filed suit against Secretary Hobbs, demanding production of the complete, unredacted Washington voter file, solely pursuant to Title III. Compl. ¶¶ 26–28, ECF No. 1. DOJ has now filed a Motion to Compel, DOJ Mot., ECF No. 29, and Secretary Hobbs has moved to dismiss, Def. Mot., ECF No. 53.[2]

## **LEGAL STANDARD**

Title III of the Civil Rights Act of 1960, 52 U.S.C. §§ 20701–20706, mandates that "every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election] … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" or transfer them to another officer of election or designated custodian, *id.* § 20701. In turn,

> [a]ny record or paper required by [Title III] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative.

*Id.* § 20703. "This demand shall contain a statement of the basis and the purpose therefor." *Id.* "The United States district court for the district in which a demand is made pursuant to [Title III],

---

[2] To date, DOJ has sued thirty states and the District of Columbia for unredacted voter files. *See* Press Release, DOJ, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026), https://perma.cc/YR7Q-W6AZ.

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

**ARGUMENT**

DOJ cannot obtain the complete, unredacted Washington voter file—including voters' Social Security numbers, driver's license numbers, and dates of birth—based on a facially deficient Title III demand. By offering pretext rather than an honest statement of "the purpose" for the demand, the Attorney General has forfeited Title III authority. 52 U.S.C. § 20703. Title III requests are subject to "appropriate process," *id.* § 20705, scrutiny the demand cannot bear.

**I.    DOJ has obscured the true purpose for its Title III demand.**

DOJ's Title III claim should be dismissed because the demand did not accurately state "the purpose therefor." 52 U.S.C. § 20703; *see also* Def. Mot. 19–20 (addressing sufficiency of asserted purpose). Title III requires candor between federal officials and election administrators. Thus, DOJ cannot use Title III to obtain records "under the guise of a pretextual investigative purpose." *United States v. Weber*, 816 F. Supp. 3d 1168, 1186 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *see also CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing validity of investigative demand "is measured by the purposes stated," making notification "an important statutory requirement"). Yet DOJ has provided less than a half-truth. DOJ has demanded the records ostensibly to ascertain "compliance with the list maintenance requirements of the NVRA and HAVA." Sept. 8 Ltr. 2. "[B]ehind this screening, there appears to be a different purpose." *Weber*, 816 F. Supp. 3d at 1185. DOJ is sharing voter files with DHS and searching for individual voters it suspects of ineligibility. *See, e.g., Amore* Tr. 65:1–6; Okla. Agreement ¶ 2; *see also Weber*, 816 F. Supp. 3d at 1184–85. Neither action is related to NVRA or HAVA enforcement. *See Oregon*, 2026 WL 318402, at *10 nn.4–5, *13 (addressing parallel litigation).

Title III demands a statement of "*the* purpose" for the demand, not merely *a* purpose. 52 U.S.C. § 20703 (emphasis added). By using the definite article, Title III requires the Attorney

DNC'S BRIEF AS AMICUS CURIAE – 4
(No. 3:25-cv-06078-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

General to offer "a discrete thing":  the complete purpose of the request and not merely one purpose among many.  *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also* OLC Mem. 20 (conceding DOJ must offer the particular purpose of a Title III demand); *but see id.* (claiming without support that DOJ may withhold a "secondary purpose").  Without a complete statement of purpose, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of [DOJ] and whether the information sought is reasonably relevant."  *ACICS*, 854 F.3d at 691.  Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be … misrepresentations."  *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016); *cf. Dep't of Com. v. New York*, 588 U.S. 752, 781–85 (2019) (remanding agency action due to pretextual invocation of the Voting Rights Act).  Thus, DOJ's failure to be forthright is fatal.  *Cf. United States v. Galvin*, No. 25-cv-13816, 2026 WL 972129, at *3–6 (D. Mass. Apr. 9, 2026) (dismissing Title III litigation for failure to provide the factual basis for the demand); *United States v. Amore*, No. 25-cv-639, 2026 WL 1040637, at *5 (D.R.I. Apr. 17, 2026) (same).

DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA or HAVA enforcement.  *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority); *see also* OLC Mem. 34–35 (recognizing Title III demands were made "solely for list-maintenance purposes").  Even if DOJ were only interested in comparing voter files with DHS data to identify voters who may not meet state eligibility requirements—which might not require transferring the voter files to DHS custody—such database matching would not advance NVRA or HAVA enforcement.  The NVRA's list maintenance mandate concerns only deceased registrants and those who are no longer eligible based on a change of address.  *See* 52 U.S.C. § 20507(a)(4); *see also, e.g.*, *Am. C.R. Union v. Phila. City Comm'rs* ("*ACRU*"), 872 F.3d 175, 182 (3d Cir. 2017).  HAVA specifies that appropriate officials must remove voters from voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from

DNC'S BRIEF AS AMICUS CURIAE – 5
(No. 3:25-cv-06078-KKE)

the official list of eligible voters … consistent with the [NVRA]," 52 U.S.C. § 21083(a)(4)(A), and this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *see also ACRU*, 872 F.3d at 184–85; 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA); *but see* Neff Decl. ¶ 2, ECF No. 30 (unsupported contrary claim). Federal data concerning deaths and changes of address are held by the Social Security Administration and the U.S. Postal Service respectively, not DHS. *See* 42 U.S.C. § 1306c(d); 52 U.S.C. § 20507(c)(1); *see also* 39 C.F.R. § 122.2(b); Exec. Order No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025). Thus, DHS data is not relevant to NVRA and HAVA enforcement.

Even if Title III required the Attorney General's representative to provide only "a purpose" and not "the purpose" of a demand—and it does not—DOJ's demand for the complete, unredacted Washington voter file is unrelated to "compliance with the list maintenance requirements of the NVRA and HAVA." Sept. 8 Ltr. 2. For nearly two decades, DOJ neither demanded nor required complete, unredacted voter files to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, DOJ, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZ-UUA5 (describing 2017 investigations). And with good reason: As noted above, the NVRA's affirmative list maintenance mandate requires only a "reasonable effort" to remove deceased registrants and movers. 52 U.S.C. § 20507(a)(4). DOJ has recognized this flexible standard since the act's passage. *See, e.g.*, DOJ, *The National Voter Registration Act of 1993* (Nov. 1, 2024), https://perma.cc/D8YZ-F9AM; DOJ, *NVRA List Maintenance Guidance* (Sept. 2024), https://perma.cc/J3C2-WSSE. Thus, state and local procedures establish compliance; voter files that result from those procedures do not. *See Pub. Int. Legal Found. v. Benson* ("*PILF*"), 136 F.4th 613, 624–26 (6th Cir. 2025) (defining "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting any "quantifiable, objective standard"); *Bellitto*, 935 F.3d at 1205 (finding a "reasonable effort" based on safe harbor procedures alone). Even if

DNC'S BRIEF AS AMICUS CURIAE – 6
(No. 3:25-cv-06078-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

DOJ could use unredacted voter data to find deceased voters on the rolls, this would not indicate that state actions to remove such voters did not meet the "reasonable effort" requirement. *See PILF*, 136 F.4th at 626–27 (rejecting identification of "27,000 'potentially deceased' voters" as evidence of NVRA violation); 52 U.S.C. § 20507(d)(1) (limiting removal of movers). Ultimately, the NVRA places responsibility for voter registration list maintenance with the states and does not authorize DOJ to search for individual registrants whom federal officials suspect may not meet state eligibility requirements.[3]

HAVA enforcement also does not require or use complete, unredacted voter files. Although HAVA requires that statewide voter registration databases have specific list maintenance capabilities, *see* 52 U.S.C. § 21083(a)(2), (4), these requirements are implemented pursuant to state discretion, *id.* § 21085. DOJ previously recognized as much when it entered a consent decree requiring New Jersey to undertake "reasonable steps" to identify possible duplicate registrations and movers and "review" of registrants previously identified "as potentially deceased"—not to perform perfect removal of ineligible registrants and consolidation of duplicate records. Consent Decree ¶¶ 4, 8–9, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006), https://perma.cc/TF6V-NUY4; *see also* U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11–14 (July 2005), https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure that eligible voters are not removed in error"). And once a HAVA-compliant system was in place, the decree required reporting of list maintenance statistics but did not demand copies of complete, unredacted voter files. *See* N.J. Consent Decree ¶ 11.[4] Ultimately, the notion that it would be

---

[3] In 2006 and 2008, DOJ sought and obtained two state voter registration files, including Social Security numbers, for the ostensible purpose of assessing NVRA compliance. *See* Ga. Compl. ¶ 9, ECF No. 30-5; Ga. Consent Decree, ECF No. 30-6; Tex. MOU, ECF No. 30-4. DOJ did not pursue an enforcement action based on either file, *see* DOJ, *Cases Raising Claims Under the National Voter Registration Act*, https://perma.cc/A3JG-CNZA, and for the next seventeen years abandoned any attempt to use voter files to identify NVRA violations.

[4] DOJ points to recent litigation in North Carolina to argue that it needs voter files to enforce Section 303(a)(5) of HAVA, 52 U.S.C. § 21083(a)(5), which requires states to collect

DNC'S BRIEF AS AMICUS CURIAE – 7
(No. 3:25-cv-06078-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

"nearly impossible … to carry out the duties assigned to [the Attorney General] by Congress" without access "to anything other than *all records*," DOJ Mot. 20, is belied by decades of successful enforcement work. *See* DOJ, *Voting Section Litigation* (Mar. 27, 2025), https://perma.cc/5E5K-295B.

## II.    Title III requests are subject to ordinary judicial oversight.

DOJ cannot avoid scrutiny of the purpose for its Title III demand by claiming that the Civil Rights Act of 1960 authorizes a "special statutory proceeding." Compl. ¶ 3; DOJ Mot. 8–9; *see also* The Independent Institute, *Harmeet Dhillon | Trump DOJ: Ensuring Election Integrity and Fixing Immigration*, at 2:41 (YouTube, Dec. 9, 2025), https://www.youtube.com/watch?v=FLtqQqt2FwA ("The 1960 Civil Rights Act is actually very clear. The Attorney General doesn't have to show her homework as to what she is going to do with it, and I am her designee. So, I get to ask for that information and they have to give it."). In fact, Title III requires an honest statement of "the purpose" of the request. 52 U.S.C. § 20703. Thus, this Court's role "is not so limited." *Oregon*, 2026 WL 318402, at *8. The grave issues at stake require this Court to subject the demand to exacting scrutiny required by the Federal Rules and due process. *See* Def. Mot. 8–11.

Title III does not authorize the "special statutory proceeding" DOJ demands. DOJ relies on the 1962 Fifth Circuit opinion in *Kennedy v. Lynd*, 306 F.2d 222, to make this claim, citing the decision on nearly every page of its brief, *see* DOJ Mot. 5–9, 11–17, 20–22. To be sure, *Lynd* indicated that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226 (quoting former 42 U.S.C. § 1974b). But *Lynd* was decided

driver's license or partial Social Security numbers from most registrants, *see* Neff Decl. ¶¶ 14–15 (citing *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-4403 (E.D.N.C.)); *see also* N.C. Consent Decree, ECF No. 30-3. However, litigation over North Carolina's HAVA compliance predated the DOJ suit. *See Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 398–99 (4th Cir. 2024). In any case, assessing Section 303(a)(5) compliance at most requires voter records *lacking* numerical identifiers, along with registration dates.

DNC'S BRIEF AS AMICUS CURIAE – 8
(No. 3:25-cv-06078-KKE)

in the early 1960s, an era of racist disenfranchisement and resistance to civil rights, even within the federal judiciary. *See, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962) (reversing dismissal in conflict with controlling law). Yet "history did not end in 1965." *Shelby County v. Holder*, 570 U.S. 529, 552 (2013). In 1965, the Voting Rights Act removed exigency that might have justified paltry process by suspending disenfranchising tests and devices and imposing preclearance on states that had used them. *See South Carolina v. Katzenbach*, 383 U.S. 301, 313, 333–34 (1966). Six decades since DOJ last litigated a Title III action, federal law requires judicial oversight.

Federal Rule of Civil Procedure 81(a)(5) now establishes that the Rules "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." These rules protect the rights of recipients and guarantee that "an adversary hearing, if requested, is made available." *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (citation modified). Indeed, just two years after *Lynd*, the Supreme Court decided *United States v. Powell*, which required the government to establish statutory requirements before a tax subpoena may be enforced. 379 U.S. 47, 57–58 (1964). The *Powell* standard now "govern[s] judicial enforcement" of administrative subpoenas and civil investigative demands across subject areas. *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741–42 (1984); *see also EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc); DOJ Mot. 8 (conceding a Title III demand "functions much like an administrative summons"); OLC Mem. 21 (similar). Even after a federal official has met their burden, the recipient of a summons or subpoena has the opportunity to rebut the prima facie case or establish abuse of process. *See, e.g.*, *United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993). Such due process is the prerequisite to judicial enforcement of a records request issued by a coordinate branch of government. *See, e.g.*, *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862–63 (2020) (addressing whether a subpoena was "related to, and in furtherance of, a legitimate task of the

DNC'S BRIEF AS AMICUS CURIAE – 9
(No. 3:25-cv-06078-KKE)

Congress" (citation modified)).  Ultimately, the "Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd*." *Oregon*, 2026 WL 318402, at \*8.

The text of Title III does not insulate the demand from such judicial review. *See* 52 U.S.C. § 20703; *cf.* Fed. R. Civ. P. 81(a)(5) (allowing exclusion from the Federal Rules as "provided by statute").  Rather, Title III's jurisdictional provision authorizes only "appropriate process to compel the production" of documents.  52 U.S.C. § 20705; *see also Galvin*, 2026 WL 972129, at \*3 ("The Court's analysis starts and ends with the text of Title III.").  Where Congress authorizes alternatives to the Federal Rules, it does so explicitly and in detail. *See, e.g.*, 42 U.S.C. § 2000a-5 (procedures under Title II of the Civil Rights Act of 1964); *see also Katzenbach v. McClung*, 379 U.S. 294, 295–96 (1964) (describing these procedures as "a special statutory proceeding").  Moreover, the statutory requirement to offer "the purpose" for a Title III request would serve no end if—as DOJ contends—courts may adjudicate only whether a demand has been made and the custodian of documents has received notice of the proceeding. *See Oregon*, 2026 WL 318402, at \*9.  It remains possible that an "assertion that the demand was made for the purpose of investigating possible violations of a Federal statute" could meet the purpose requirement, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (citation modified), but only when the assertion is complete and accurate, *cf. SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.").  Here, DOJ suggested that it needs the complete, unredacted Washington voter file to investigate NVRA and HAVA compliance.  While DOJ might ordinarily be presumed to be acting in good faith, "appropriate process" requires an opportunity to prove otherwise. *See In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962).  Moreover, district courts have recently "identified serious defects in the government's explanations and representations … prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption." Ryan Goodman et al.,

DNC'S BRIEF AS AMICUS CURIAE – 10
(No. 3:25-cv-06078-KKE)

*The "Presumption of Regularity" in Trump Administration Litigation*, Just Sec. (Mar. 19, 2026), https://perma.cc/3ZQ3-NX6U; *see also Oregon*, 2026 WL 318402, at *11.[5]

Thus, the U.S. District Court for the Central District of California recently determined that "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 816 F. Supp. 3d at 1182 (confirming that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures" and that "appropriate process" allows courts to "determine that the DOJ has not met Title III['s] statutory requirements"). Soon thereafter, the District of Oregon applied the Federal Rules to a Title III claim and dismissed the suit for failure "to state an adequate basis and purpose." *Oregon*, 2026 WL 318402, at *8, *13 (describing the request as "chilling" "overreach"). In the months that followed, federal courts in Michigan, Massachusetts, Rhode Island, and Arizona have dismissed four more Title III suits. *See United States v. Benson*, No. 25-cv-1148, 2026 WL 362789, at *11 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *Galvin*, 2026 WL 972129, at *6; *Amore*, 2026 WL 1040637, at *6; *United States v. Fontes*, No. 26-cv-66, 2026 WL 1177244, at *7 (D. Ariz. Apr. 28, 2026). This Court should follow the emerging consensus, impose rigorous scrutiny, deny DOJ's Motion to Compel, and grant Secretary Hobbs's Motion to Dismiss.

## CONCLUSION

For the reasons set out above, this Court should deny DOJ's Motion to Compel and grant Secretary Hobbs's Motion to Dismiss.

---

[5] Another district court recently declined "to evaluate the substance of the DOJ's purported basis and purpose," but that decision led to avoidable error. *United States v. Benson*, No. 25-cv-1148, 2026 WL 362789, at *8 (W.D. Mich. Feb. 10, 2026) (citing *Lynd*, 306 F.2d at 226), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026). Even on a motion to dismiss, the court should have considered the plausibility of DOJ's alleged purpose. *See id.* at *2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Had the court done so, it might have recognized the incompatibility between data requested and the statutes DOJ purported to enforce and taken judicial notice of admissions contradicting the written demand. Certainly, this Court must consider the veracity of the stated purpose if it reaches DOJ's Motion to Compel.

DNC'S BRIEF AS AMICUS CURIAE – 11
(No. 3:25-cv-06078-KKE)

* * *

The undersigned certifies that this motion contains 4,137 words, in compliance with the Local Civil Rules.

The undersigned further certifies that the Democratic National Committee has no parent corporation, shareholder, member, or partner to identify as required by Local Rules W.D. Wash. LCR 7(o)(4) (incorporating Fed. R. App. P. 29(a)(4)(A)).

Dated: May 22, 2026

Daniel J. Freeman*
**DEMOCRATIC NATIONAL COMMITTEE**
430 South Capitol Street SE
Washington, D.C. 20003
Telephone: (202) 863-8000
freemand@dnc.org

*Pro hac vice forthcoming*

By: *s/ Kevin J. Hamilton*
Kevin J. Hamilton, WSBA No. 15648
Jonathan P. Hawley, WSBA No. 56297
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
KHamilton@perkinscoie.com
JHawley@perkinscoie.com

*Counsel for Amicus Curiae Democratic National Committee*

DNC'S BRIEF AS AMICUS CURIAE – 12
(No. 3:25-cv-06078-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000