The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVE HOBBS, *in his official capacity as Secretary of State of the State of Washington,*

Defendant.

No. 3:25-CV-06078-KKE

**BRIEF OF AMICI CURIAE MARYLAND, MINNESOTA, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAI'I, MAINE, MICHIGAN, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND VIRGINIA**

NOTE ON MOTION CALENDAR: JUNE 8, 2026

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF AUTHORITIES

**Page**

### Cases

*California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025) ...................................................... 16

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ............................................ 15

*Hannah v. Plumer*, 380 U.S. 460 (1965) ................................................................................ 12

*Husted v. A. Philip Randolph Inst.*, 584 U.S. 756 (2018) ........................................................ 15

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ...................................................................... 13

*League of United Am. Citizens v. Executive Off. of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ........................................................................................................... 16

*Moore v. Kobach*, 359 F. Supp. 3d 1029 (D. Kan. 2019) ........................................................ 16

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) ........................................ 16

*Public Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ............................................ 15

*Public Int. Legal Found. v. North Carolina State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) .............................................................................................................. 16

*Donaldson v. United States*, 400 U.S. 517 (1971) .................................................................. 13

*Smiley v. Holm*, 285 U.S. 355 (1932). ................................................................................... 15

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986) ................................................. 15

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2013) ........................................ 16

*United States v. Amore*, ___ F. Supp. 3d ___, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ........................................................................................... 8

*United States v. Bellows*, ___ F. Supp. 3d ___, No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026) .......................................................................................... 8

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026) ........................................... 7

*United States v. Clarke*, 573 U.S. 248 (2014) ........................................................................ 15

*United States v. Classic*, 313 U.S. 299 (1941) ....................................................................... 15

*United States v. Fontes*, ___ F. Supp. 3d ___, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) .......................................................................................... 8

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*United States v. Galvin*, ___ F. Supp. 3d ___, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ................................................................. 8

*United States v. Oregon*, ___ F. Supp. 3d ___, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026).................................................................. 8

*United States v. Powell*, 379 U.S. 48 (1964) ................................................ 14

*United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026)...................... 7

*United States v. Wisconsin Elec. Comm'n*, ___ F. Supp. 3d ___, No. 25-cv-001036, 2026 WL 1430354 (W.D. Wisc. May 21, 2026) ....................................... 8

## Constitutional Provisions

U.S. Const. art. I, § 4.............................................................................. 16

## Statutes

52 U.S.C. § 20507 .................................................................................. 11

52 U.S.C. § 20703 .................................................................................. 17

52 U.S.C. § 20705 .................................................................................. 13

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002) ................... 8

Paperwork Reduction Act of 1995, Pub. L. No. 104-13, 109 Stat. 163 (1995) ............ 8

Privacy Act of 1974, Pub L. No. 93-579, 88 Stat. 1896 (1974) ............................ 8

Ala. Code § 17-3-53 ................................................................................. 16

Alaska Stat. § 15.07.195 ............................................................................ 16

Ariz. Rev. Stat. Ann. § 16-152..................................................................... 11

Ariz. Rev. Stat. Ann. § 16-153..................................................................... 16

Cal. Election Code § 2166 .......................................................................... 16

Civil Rights Act of 1957, § 101(a), Pub. L. No. 85-315, 71 Stat. 634 (Sept. 9, 1957)................................................................................. 17

Colo. Rev. Stat. § 1-2-302 .......................................................................... 16

Conn. Gen. Stat. § 9-23h............................................................................. 16

D.C. Mun. Regs. tit. 3, § 510.5 .................................................................... 16

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Del. Code Ann. tit. 15, § 1305 ...................................................................................................... 16

Fla. Stat. § 97.0585 ...................................................................................................................... 16

Ga. Code Ann. § 21-2-220............................................................................................................ 11

Ga. Code Ann. § 21-2-225............................................................................................................ 16

Haw. Rev. Stat. § 11-14 ............................................................................................................... 16

Ida. Code § 34-437....................................................................................................................... 16

10 Ill. Rev. Stat. 5A/1A-25 ......................................................................................................... 16

Ind. Code §§ 3-7-26.4-8 ............................................................................................................... 16

Iowa Code §§ 48A.38 .................................................................................................................. 16

Kan. Stat. Ann. §§ 25-2320 ......................................................................................................... 16

Ky. Rev. Stat. Ann. § 116.095 ..................................................................................................... 16

La. Stat. Ann. § 18:104 ................................................................................................................ 11

La. Stat. Ann. § 18:154 ................................................................................................................ 16

Mass. Gen. Laws ch. 51, § 47C ............................................................................................. 11, 16

Md. Code Ann., Elec. Law § 3-506 .............................................................................................. 16

Me. Stat. tit. 21-A, § 96A............................................................................................................. 16

Mich. Comp. Laws § 169.168.509................................................................................................ 16

Minn. Stat. § 201.091................................................................................................................... 16

Miss. Code R. pt. 10, R. 7.2.......................................................................................................... 16

Mo. Rev. Stat. § 115.157 ....................................................................................................... 11, 16

Mont. Admin. R. 44.3.1102 ......................................................................................................... 16

Mont. Code Ann. § 13-2-110........................................................................................................ 11

Mont. Code Ann. § 13-2-122........................................................................................................ 16

N.C. Gen. Stat. § 163-82.10......................................................................................................... 16

N.D. Cent. Code § 16.1-02-15 ..................................................................................................... 16

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N.H. Rev. Stat. Ann. § 659:13-b ................................................................................................ 11

N.H. Rev. Stat. Ann. § 654:31 ................................................................................................... 16

N.J. Stat. Ann. § 19:31-18.1 ...................................................................................................... 16

N.J. Stat. Ann. § 19:31-6.4 ........................................................................................................ 12

N.M. Stat. Ann. § 1-4-5.4 .......................................................................................................... 16

N.Y. Elec. Law § 3-103 ............................................................................................................. 16

N.Y. Elec. Law § 8-303 ............................................................................................................. 12

Neb. Rev. Stat. § 32-330 ........................................................................................................... 16

Nev. Rev. Stat. § 293.440 .......................................................................................................... 16

Ohio Rev. Code Ann. § 3503.13 ............................................................................................... 16

Okla. Stat. tit. 26, §§ 4-112 ....................................................................................................... 16

Or. Rev. Stat. § 247.948 ............................................................................................................. 16

25 Pa. Cons. Stat. § 1404 ........................................................................................................... 16

17 R.I. Gen. Laws § 17-9.1-21 .................................................................................................. 16

S.C. Code Ann. § 7-5-170 .......................................................................................................... 16

S.D. Codified Laws § 12-4-9 ..................................................................................................... 16

Tenn. Code Ann. § 2-2-116 ........................................................................................................ 12

Tex. Elec. Code Ann. § 18.009 .................................................................................................. 16

Utah Code Ann. § 20A-2-104 .................................................................................................... 16

Va. Code Ann. § 24.2-407 .......................................................................................................... 16

Vt. Stat. Ann. tit. 17, § 2154 ...................................................................................................... 16

W. Va. Code 3-2-30 ................................................................................................................... 16

Wash. Rev. Code § 29A.08.710 ................................................................................................. 16

Wis. Stat. § 6.34 ......................................................................................................................... 12

Wis. Stat. § 6.36 ......................................................................................................................... 16

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 5

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Wyo. Stat. Ann. 22-2-113 ..................................................................................................... 16

**Regulations**

Md. Code Regs. 33.05.02.02 ................................................................................................. 16

**Rules**

Fed. R. Civ. P. 1 ..................................................................................................................... 12

Fed. R. Civ. P. 2 ..................................................................................................................... 12

Fed. R. Civ. P. 3 ..................................................................................................................... 12

Fed. R. Civ. P. 81 ................................................................................................................... 12

Fed. R. Civ. P. 64 ................................................................................................................... 12

Fed. R. Civ. P. 65 ................................................................................................................... 12

**Miscellaneous**

86 Cong. Rec. 5450 (1960) .................................................................................................... 18

Ballotpedia, *Partisan Affiliations of Registered Voters* (Aug. 31, 2025) .................................. 11

Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (May 22, 2026) ...................................................................................... 11

Executive Order No. 14,243, *Stopping Waste, Fraud, and Abuse by Eliminating Information Silos*, § 3(a), 90 Fed. Reg. 13,681 (Mar. 20, 2025) ............................................ 8

Executive Order No. 14,248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005 (Mar. 25, 2025) ...................................................................... 9

Priscilla Alvarez et al., *DOGE Is Building a Master Database for Immigration Enforcement, Sources Say*, CNN (Apr. 25, 2025) ..................................................................... 9

*Report of the United States Commission on Civil Rights* (Sept. 9, 1959) .................................. 17

*Report of the United States Commission on Civil Rights* (Sept. 30, 1963) ................................ 19

*Selected Speeches of Dwight D. Eisenhower,* 91 Cong. Rec 2d, Vol. 2-3 ................................ 18

U.S. Election Assistance Comm'n, *Election Administration and Voting Survey: 2024 Comprehensive Report* (June 2025) ................................................................................ 11

U.S. Election Assistance Comm'n, *Voter Roll Privacy* (Mar. 15, 2024) .................................. 10

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**STATEMENT OF INTEREST**

Amici curiae the States of Maryland, Minnesota, Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Maine, Michigan, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Virginia, and the District of Columbia ("the Amici States") submit this brief supporting the pending motions to dismiss.  The Amici States have a strong interest in this case because the federal government's demands for States' voter data are not limited to Washington.  Each of the Amici States has received similar sweeping demands, and the United States has already sued 29 jurisdictions, including all of the Amici States, in addition to Washington.  As set forth more fully below, the Constitution guarantees to the Amici States primary authority over election procedures.  In addition to this constitutional interest, the Amici States have strong statutory and policy interests in safeguarding the privacy of their residents' most sensitive data and ensuring their residents' confidence, trust, and participation in the electoral process.

**ARGUMENT**

For over a year, the federal government has engaged in an unprecedented campaign to sweep up significant volumes of sensitive personal data on those living within its borders, including data collected and possessed by States.  The United States has now come for States' voter registration databases, under the guise of checking for compliance with federal list-maintenance laws.  But the federal government is not charged with maintaining voter registration lists, and the information sought does not aid the federal government's limited compliance-enforcement role.  Because the Constitution and federal statutes preclude the United States' demands, the Complaint should be dismissed.  *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026);  *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *United States*

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 8

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*v. Oregon*, ___ F. Supp. 3d ___, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Galvin*, ___ F. Supp. 3d ___, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, ___ F. Supp. 3d ___, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, ___ F. Supp. 3d ___, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Bellows*, ___ F. Supp. 3d ___, No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Wisconsin Elec. Comm'n*, ___ F. Supp. 3d ___, No. 25-cv-001036, 2026 WL 1430354 (W.D. Wisc. May 21, 2026).

## I.    THE GOVERNMENT'S DEMAND FOR UNREDACTED VOTER REGISTRATION DATABASES WOULD COLLECT UNPRECEDENTED AMOUNTS OF PERSONAL INFORMATION.

Multiple layers of federal law limit how the Executive Branch can gather, aggregate, and share personal information. *See, e.g.*, Privacy Act of 1974, Pub L. No. 93-579, 88 Stat. 1896 (1974); E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Paperwork Reduction Act of 1995, Pub. L. No. 104-13, 109 Stat. 163 (1995). Still, in March 2025, the President issued two executive orders directing federal officials to undertake novel efforts to aggregate federal and state records containing millions of individuals' personal information. Governmental efforts undertaken in accordance with those orders have been challenged and, for the most part, have been enjoined as unconstitutional or unlawful.

The first executive order, issued on March 20, 2025, commanded federal officials across agencies to synthesize "agency records, data, software systems, and information technology systems" to pursue "Administration priorities" related to "waste, fraud, and abuse." Executive Order No. 14,243, *Stopping Waste, Fraud, and Abuse by Eliminating Information Silos*, § 3(a), 90 Fed. Reg. 13,681 (Mar. 20, 2025). The order further directed federal officials to establish "unfettered access to comprehensive data *from all State programs* that receive federal funding." *Id*. § 3(b) (emphasis added).

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 9

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

A second executive order, issued on March 25, 2025, sought to impose new requirements on the conduct of federal elections. Executive Order No. 14,248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005 (Mar. 25, 2025). The President directed the Department of Homeland Security and Administrator of the Department of Government Efficiency to "review each State's publicly available voter registration list and available records concerning voter list maintenance activities," and to compare the publicly available data to "Federal immigration databases and State records requested" to ensure "consistency with Federal requirements." *Id.* § 2(b)(iii).

Subsequent to these orders, the federal government began taking unprecedented steps to collect and pool Americans' personal data and to pressure States into assisting with this effort. The federal government enlisted technology company Palantir to build a massive repository of data pulled from federal agencies, including the Internal Revenue Service, the Social Security Administration, and the Department of Health and Human Services ("HHS"), to facilitate immigration enforcement and deportations.[1] At the same time, federal agencies have pressed States to turn over sensitive, personal data collected in administering vital programs like the Supplemental Nutrition Assistance Program ("SNAP").[2] Seeking to preserve their residents' privacy and the integrity of these programs, the Amici States have repeatedly challenged these unlawful demands.

The federal government has initiated this litigation (and numerous parallel lawsuits against other States) seeking a full, electronic copy of a State's computerized voter-registration database,

---

[1] Priscilla Alvarez et al., *DOGE Is Building a Master Database for Immigration Enforcement, Sources Say*, CNN (Apr. 25, 2025), https://tinyurl.com/4bcurxw4.

[2] Press Release, *Secretary Rollins Requires States to Provide Records on SNAP Benefits, Ensure Lawful Use of Federal Funds* (May 6, 2025), https://tinyurl.com/5yvbdwxt.

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

including "all fields" within the database. (ECF 1 ¶ 22.) For every State, the requested data would include personally identifying information used to verify voters' identities, including the last four digits of voters' Social Security and driver's license numbers. *See* 52 U.S.C. § 21083(a)(5)(A)(i). It would also include information whose disclosure federal law expressly restricts—specifically, the voter registration agencies (such as agencies that provide public assistance) through which voters registered to vote. *Id.* § 20507(i)(1). The requested data is not only of the type that raises general concerns regarding identity theft, privacy, and government overreach; it could also unmask specific voters enrolled in programs that protect the home addresses of victims of domestic and sexual violence, law enforcement officers, and judicial officials. *See* U.S. Election Assistance Comm'n, *Voter Roll Privacy* (Mar. 15, 2024), https://tinyurl.com/48r7skn3.

In the same demands, the federal government also has sought information *about* States' voter registration databases. The Department of Justice has directed States to disclose "materials that define or explain how a voter record is coded into the statewide voter registration list and reported in the electronic copy" of the list. *See United States v. Weber*, No. 2:25-CV-09149, Dkt. No. 37-2, at 148 (Nov. 7, 2025) (collecting demand letters sent to 30 States). It has included examples of such materials, including a "database user manual" or "coding list." *Id.* The federal government has not clarified *why* it needed those materials. But it seemingly sought to obtain more than read-only access to the computerized database files, potentially because additional information about the database coding would assist in transferring data from State voter registries into other federal databases. To the Amici States' knowledge, the federal government has demanded voter database information from 48 States; only 15 have provided complete, unredacted information in response. Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (May 22, 2026), https://tinyurl.com/532npb34.

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

By its very nature, a voter registration database is a unique repository of information. As of the 2024 general election, 86.6% of the estimated national citizen voting-age population was registered to vote. U.S. Election Assistance Comm'n, *Election Administration and Voting Survey: 2024 Comprehensive Report* 132, 156-60 (June 2025). Most States reported rates greater than 80%, with sixteen reporting more than 90%. *See id.* at 156-60. Moreover, 32 States and the District of Columbia permit pre-registration, i.e., registration by an underage applicant, which becomes active when the applicant turns 18. *Id.* at 173-74. Those jurisdictions reported recording 1.18 million pre-registrations between 2022 and 2024. *Id.* at 174.

In addition to the personal information that election officials must collect to verify voter identity and eligibility, voter registration databases may contain information about a voter's electoral participation necessary to administering the State's elections. In all States, this includes information on whether a voter actually participated in an election, because federal law requires States to remove inactive voters who move out of a jurisdiction. *See* 52 U.S.C. § 20507(d)(1)(ii). And in 30 States and the District of Columbia, this includes information about party affiliation. Ballotpedia, *Partisan Affiliations of Registered Voters* (Aug. 31, 2025), https://tinyurl.com/yx2aec8b. Additionally, voter registration databases may contain sensitive information used to assist with voting or verify residency (such as information about disability, religious beliefs, occupation, parents' names, and criminal history), along with documents that include sensitive information, such as paychecks and bank statements.[3] Obliging a demand for unredacted voter registration database information could reveal large swaths of information that voters never

---

[3] *See, e.g.*, Ariz. Rev. Stat. Ann. § 16-152(A)(9), (11); Ga. Code Ann. §§ 21-2-220(c), -417(c); La. Stat. Ann. § 18:104(B)(5), (8); Mass. Gen. Laws ch. 51, § 47C; Mo. Rev. Stat. § 115.157(1); Mont. Code Ann. § 13-2-110(5)(b)(ii); N.H. Rev. Stat. Ann. § 659:13-b; N.J. Stat. Ann. § 19:31-6.4; N.Y. Elec. Law § 8-303(3)(a)(2); Tenn. Code Ann. § 2-2-116; Wis. Stat. § 6.34(3)(a)(8)-(9).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

intended to share with law enforcement or other federal agencies, potentially chilling their willingness to continue participating in the electoral process.

## II.   THE UNITED STATES' DEMAND FOR UNREDACTED VOTER REGISTRATION DATABASES DOES NOT ENTITLE IT TO EXPEDITED PROCEEDINGS.

In most (but not all) of the United States' lawsuits demanding States' unredacted voter registration databases, it has sought to expedite proceedings, and thus to avoid scrutiny of its unprecedented demands, by filing motions to show cause or to compel production of the States' databases under Title III of the Civil Rights Act. (*See* ECF 29.)  In other words, the United States has filed a complaint seeking relief that could normally be obtained only after testing the legal sufficiency of its claims, then moving to discovery, summary judgment, and potentially a trial. The United States' approach is contrary to the Federal Rules of Civil Procedure and finds no support in the Civil Rights Act or relevant case law.

There is only one form of action: a "civil action."  Fed. R. Civ. P. 2.  It "is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, and, with limited exceptions inapplicable here,[4] its conduct is governed by the Federal Rules of Civil Procedure, Fed. R. Civ. P. 1; *see Hannah v. Plumer*, 380 U.S. 460, 465 (1965) (observing that a court must adhere to the Federal Rules of Civil Procedure).  A complainant may seek preliminary relief from a court as authorized by the Federal Rules.  *See* Fed. R. Civ. P. 64 (permitting seizure of a person or property "[a]t the commencement of and through an action"); *see also* Fed. R. Civ. P. 65 (providing for temporary restraining orders and preliminary injunctions).  The Federal Rules make no provision for immediate summary disposition that extinguishes a party's right to challenge a demand. *See Donaldson v. United States*, 400 U.S. 517, 529 (1971) (explaining that even a summary

---

[4] Federal Rule of Civil Procedure 81 lists the proceedings in which the Federal Rules are either supplanted or supplemented by other, statutorily provided procedures.  A proceeding under Title III of the Civil Rights Act for election records is not one of those proceedings.

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

enforcement proceeding requires that "the rights of the party summoned are protected and an adversary hearing, if requested, is made available").

Instead, the United States attempts to use the Civil Rights Act itself to justify its request for immediate summary disposition. But nothing in the Act suggests an intent to depart from the Federal Rules. The Civil Rights Act simply states that where an election officer does not comply with a Civil Rights Act demand made by the Department of Justice, the Department can seek a district court's intervention. More specifically, it provides that certain districts "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). That jurisdictional provision does not authorize courts to abandon the Federal Rules and grant the United States immediate relief without examining the propriety of its demands. To the contrary, it requires district courts to proceed "by appropriate process"—i.e., by adhering to the Federal Rules.

Finding no support in the text of the Civil Rights Act itself, the United States has repeatedly relied on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), in support of its position. *Lynd* addressed "the proper disposition of a Title III proceeding" to compel election records. 306 F.2d at 224. With little consideration of the statutory language, the Fifth Circuit held that Title III created a "special statutory proceeding" devoid of any formal pleading or adversarial factfinding. *Id.* at 225-26.

To the extent that *Lynd* suggests that a "special statutory proceeding" circumventing normal procedures may be appropriate in a case like this one, though, any such notion has been undermined by subsequent decisions of the Supreme Court. Just two years after *Lynd*, the Supreme Court decided *United States v. Powell*, 379 U.S. 48 (1964), which concerned judicial enforcement of an Internal Revenue Service administrative summons; that summons was issued under the

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

authority of federal statutes containing language nearly identical to the Civil Rights Act's provision for a district court's "jurisdiction by appropriate process to compel" the production of records. *Powell*, 379 U.S. at 51-52 & n.10. *Powell* explained that where a statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18; *see also* Fed. R. Civ. P. 1, 81. It thus rejected the central premise of *Lynd*.

The United States therefore is wrong to assert that the Civil Rights Act authorizes courts to summarily order States to provide their unredacted voter registration databases. Instead, adjudicating the legal sufficiency of the United States' claim through motions to dismiss is the appropriate and lawful initial procedure. If the claim avoids dismissal, the case should then proceed to discovery, so that the State and the Court can fairly evaluate the propriety of the United States' demand and its intended use of the State's voter registration database. *See* Fed. R. Civ. P. 16.

That is exactly the course that *Powell* prescribed for analogous circumstances. *Powell* held that a "taxpayer may challenge the summons on any appropriate ground," and that the Commissioner of Internal Revenue "must show that the investigation will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." 379 U.S. at 57-58. *Powell* emphasized that courts may "inquire into the underlying reasons for the examination" of the sought-after records because "a court may not permit its process to be abused." *Id.* at 58. Such abuse takes place where—as the California court found in dismissing the United States' case—a demand has been made for an "improper purpose . . . or for any other purpose reflecting on the good faith of the particular investigation." *Id.*; *see United States v. Clarke*, 573 U.S. 248, 254-55 (2014) (reaffirming that a summoned party "may present argument and evidence on all matters

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 15

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

bearing on a summons's validity" and that circumstantial evidence can "give rise to a plausible inference of improper motive"). The United States has provided no reason for the Court to take a different approach here.

## III. THE CIVIL RIGHTS ACT DOES NOT PERMIT THE FEDERAL GOVERNMENT TO DEMAND UNREDACTED VOTER REGISTRATION DATABASES.

The United States cites one federal law as authority for its voter database requests: the Civil Rights Act of 1960. (ECF 1 ¶¶ 26-28.) The law, however, does not overcome the States' broad authority to decide the status of their own voter data, and does not require producing that sensitive personal data in response to the Department of Justice's sweeping demands.

### A. States Have Primary Authority over Elections, and the Department of Justice's Demands Are Unconstitutional Because They Exceed the Scope of Authorizing Statutes.

State legislatures have primary authority to decide the time, place, and manner of federal elections, subject to displacement only by Congress. U.S. Const. art. I, § 4. States' discretion to set election procedures is broad. *See, e.g.*, *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986); *United States v. Classic*, 313 U.S. 299, 311 (1941). The Constitution allows States "to provide a complete code for congressional elections." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). States' authority encompasses setting procedures for voter registration, maintaining voter rolls, and protecting voter data. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 774 (2018); *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013); *Smiley*, 285 U.S. at 366.

Collecting voter information implicates significant privacy interests. *See, e.g.*, *Public Int. Legal Found. v. Bellows*, 92 F.4th 36, 55 (1st Cir. 2024); *Public Int. Legal Found. v. North Carolina State Bd. of Elections*, 996 F.3d 257, 266-67 (4th Cir. 2021); *Moore v. Kobach*, 359 F. Supp. 3d 1029, 1049-50 (D. Kan. 2019); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 735 (S.D. Miss. 2013).

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Accordingly, States have exercised their broad powers to protect that information. States vary in their approaches, reflecting State legislatures' differing policy decisions. Most States, however, limit what data is public, who can access data, or how data may be used.[5]

The United States' demand for voter data runs roughshod over States' prerogative to set these limits. The President has no authority to displace States' election laws; only Congress may do so. U.S. Const. art. I, § 4. Thus, anything the President purports to do by executive order cannot override States' protections on voter data. *See also California v. Trump*, 786 F. Supp. 3d 359, 373 (D. Mass. 2025); *League of United Am. Citizens v. Executive Off. of the President*, 780 F. Supp. 3d 135, 159 (D.D.C. 2025) (observing that "Executive regulatory authority over federal elections does not appear to have crossed the Framers' minds"). Because Congress has not authorized the federal government to make the sweeping requests it has made here, the demands are unconstitutional.

---

[5] Ala. Code § 17-3-53; Alaska Stat. § 15.07.195; Ariz. Rev. Stat. Ann. §§ 16-153, -168(E); Cal. Election Code §§ 2166(b)(2), 2194(a)(2)-(3), (b)(1); Colo. Rev. Stat. § 1-2-302(8); Conn. Gen. Stat. § 9-23h; Del. Code Ann. tit. 15, § 1305; D.C. Mun. Regs. tit. 3, § 510.5; Fla. Stat. § 97.0585; Ga. Code Ann. § 21-2-225(c); Haw. Rev. Stat. §§ 11-14, -97(a); Ida. Code §§ 34-437(1), -437A(3); 10 Ill. Rev. Stat. 5A/1A-25; Ind. Code §§ 3-7-26.4-8, -6, -10; Iowa Code §§ 48A.38(1)(f), .39; Kan. Stat. Ann. §§ 25-2320(b), 2320a; Ky. Rev. Stat. Ann. § 116.095, 117.025(3)(i); La. Stat. Ann. § 18:154(C); Mass. Gen. Laws ch. 51, § 47C; Me. Stat. tit. 21-A, § 96A(1)(K)(2), (6); Md. Code Ann., Elec. Law § 3-506(a)(1); Md. Code Regs. 33.05.02.02(B)(4); Mich. Comp. Laws § 169.168.509gg; Minn. Stat. § 201.091, subds. 4(c), 5, 9; 1 Miss. Code R. pt. 10, R. 7.2; Mo. Rev. Stat. § 115.157(3); Mont. Code Ann. § 13-2-122(1); Mont. Admin. R. 44.3.1102(3); Neb. Rev. Stat. § 32-330(3)(b), (4); Nev. Rev. Stat. §§ 293.440 (6), .558(2); N.H. Rev. Stat. Ann. §§ 654:31(VI), :31-a; N.J. Stat. Ann. § 19:31-18.1(c); N.M. Stat. Ann. § 1-4-5.4(C), -5.5(B); N.Y. Elec. Law § 3-103(5); N.C. Gen. Stat. § 163-82.10(a1); N.D. Cent. Code § 16.1-02-15; Ohio Rev. Code Ann. § 3503.13(A)(2); Okla. Stat. tit. 26, §§ 4-112(H), 7-103.2(B)(1), (3); Or. Rev. Stat. § 247.948(2), .955; 25 Pa. Cons. Stat. § 1404(b)(3); 17 R.I. Gen. Laws § 17-9.1-21; S.C. Code Ann. § 7-5-170(1); S.D. Codified Laws § 12-4-9; Tenn. Code Ann. § 2-2-127, -138; Tex. Elec. Code Ann. § 18.009; Utah Code Ann. § 20A-2-104(4)(c), (d); Vt. Stat. Ann. tit. 17, § 2154(b)(1), (c)(1); Va. Code Ann. § 24.2-407, -407.1; Wash. Rev. Code § 29A.08.710(2)(a), .720(3)(a); W. Va. Code 3-2-30(a), (f); Wis. Stat. § 6.36(1)(b)(1)(a); Wyo. Stat. Ann. 22-2-113(a), (d).

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.    The Civil Rights Act of 1960 Does Not Authorize the Department of Justice's Demands for Voter Registration Data Unrelated to Civil Rights Violations.**

The record-inspection authority conferred by the Civil Rights Act of 1960, 52 U.S.C. § 20703, likewise does not support the Department of Justice's present demands. Congress created this inspection authority to enable the federal government to investigate and remedy racially discriminatory voting practices. The Department of Justice's present demands for records do not even purport to serve that objective.

The history of the record-inspection provision confirms its limited purpose. Significant opposition to sweeping civil rights legislation meant that the Civil Rights Act's voting protections were achieved incrementally, through years of revisions and expansions. The first round of legislation, adopted in 1957, did not yet require States to maintain voter registration records or make them available for inspection, but it created the bipartisan Commission on Civil Rights. Civil Rights Act of 1957, § 101(a), Pub. L. No. 85-315, 71 Stat. 634 (Sept. 9, 1957). The Commission's first report, issued in 1959, included over 120 pages of findings and recommendations on voting discrimination. *Report of the United States Commission on Civil Rights* (Sept. 9, 1959), https://tinyurl.com/y253324x. The Commission understood discrimination to be a central reason for its creation, writing that "[t]he primary concern of Congress in passing the Civil Rights Act of 1957, and the single specific field of study and investigation that it made mandatory for this Commission, was alleged denials of the right to vote." *Id.* at 40.

In the report, the Commission repeatedly bemoaned that its core purposes had often been thwarted by States' failure to retain or produce rejected voting applications and other registration records. *See, e.g.*, *id.* at 93 ("Rejected applications were destroyed approximately 30 days after being rejected, which fact made accurate statistical review of the records impossible."); *id.* at 137 (explaining that midway through the Commission's review of Alabama counties' records, the state

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 18

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

legislature authorized counties to destroy denied registrants' application forms even though the forms were "essential to any investigation of denials of the right to vote"). Even where responsive records had not been destroyed, the Commission described occasions on which States had denied the Commission access. *See id.* at 70 (recounting that "when the Commission's agents arrived at the courthouse . . . the Board of Registrars told them that, by order of [Alabama] Attorney General Patterson, the records would not be made available to the Commission on Civil Rights"); *see also id.* at 98 (describing Louisiana's refusal to permit inspection of voter records).

In light of these hurdles and other findings, the Commission recommended that Congress require States to preserve and retain all registration and voting records so they could be inspected. *Id.* at 138. And the Commission was not the only advocate for such a requirement. President Eisenhower urged Congress to adopt these provisions to strengthen the federal response to racially discriminatory voting practices and to counter States' efforts at obstruction. *Selected Speeches of Dwight D. Eisenhower,* 91 Cong. Rec 2d, Vol. 2-3, https://perma.cc/5KCX-3JT4, at 145. Similarly, as Congress considered the legislation that would become the Civil Rights Act of 1960, Representative Emanuel Celler remarked that inspection mechanisms were needed to prevent discriminatory application of voter qualification rules. *See* 86 Cong. Rec. 5450 (1960), https://tinyurl.com/yrya3xpb.

It was against this backdrop that, in 1960, Congress required States to preserve all voter registration records and make them available to the Attorney General for inspection. After gaining this authority, the Commission on Civil Rights and the Department of Justice wielded that power in precisely the way Congress intended: gathering evidence to investigate complaints of racially discriminatory practices, evaluating whether there were patterns or practices disenfranchising Black voters, and seeking legal remedies in the federal courts where negotiations with voting

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 19

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

officials were ineffective. *See generally Report of the United States Commission on Civil Rights* (Sept. 30, 1963), https://tinyurl.com/58v3a84u (detailing investigations, negotiations, and lawsuits initiated by the Department of Justice based on the 1957 and 1960 Civil Rights Acts.)

Here, by contrast, the Department does not claim any civil rights-related purpose for its demands for voter registration records. Instead, it has claimed that it is entitled to inspect registration records to determine compliance with the National Voter Registration Act and the Help America Vote Act—statutes that did not exist when Congress enacted the Civil Rights Act's record retention provisions. Inspection for this purpose is unauthorized by statute.

**CONCLUSION**

The motions to dismiss should be granted.

Respectfully submitted,
MARYLAND OFFICE OF THE ATTORNEY GENERAL

ANTHONY G. BROWN
Attorney General of Maryland

By: *s/ Daniel Kobrin*
Daniel Kobrin*
Assistant Attorney General
Civil Division
200 Saint Paul Place
Baltimore, Maryland 21202
Tel.: 410-576-6472
dkobrin@oag.maryland.gov

*Admitted pro hac vice

KELLER ROHRBACK L.L.P.

By: *s/ William K. Dreher*
William K. Dreher, WSBA No. 61985
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: 206-623-1900
wdreher@kellerrohrback.com

***Attorneys for Proposed Amici Curiae State of Maryland, Eighteen States, and the District of Columbia***

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

ROB BONTA
Attorney General of California

1300 I Street, Suite 125
Sacramento, CA 95814


WILLIAM TONG
Attorney General of Connecticut

165 Capitol Avenue
Hartford, CT 06106


BRIAN L. SCHWALB
Attorney General
District of Columbia

400 6th Street NW
Washington, DC 20001


AARON M. FREY
Attorney General of Maine

6 State House Station
Augusta, ME 04333


KEITH ELLISON
Attorney General of Minnesota

445 Minnesota Street
St. Paul, Minnesota, 55101


JENNIFER DAVENPORT
Acting Attorney General of New Jersey

Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

PHILIP J. WEISER
Attorney General of Colorado

Office of the Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203


KATHLEEN JENNINGS
Attorney General of Delaware

Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801


ANNE E. LOPEZ
Attorney General of Hawai'i

Department of the Attorney General
425 Queen Street
Honolulu, Hawai'i 96813


DANA NESSEL
Attorney General of Michigan

P.O. Box 30212
Lansing, Michigan 48909


AARON D. FORD
Attorney General of Nevada

100 North Carson Street
Carson City, NV 89701


RAÚL TORREZ
Attorney General of New Mexico

New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 21

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

LETITIA JAMES
Attorney General of New York

28 Liberty St.
New York, NY 10005

PETER F. NERONHA
Attorney General of Rhode Island

150 South Main Street
Providence, RI 02903

DAN RAYFIELD
Attorney General of Oregon

1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
Attorney General of Vermont

109 State Street
Montpelier, VT 05609

KRISTIN K. MAYES
Attorney General of Arizona

2005 N. Central Ave.
Phoenix, AZ 85004

JAY JONES
Attorney General of Virginia

202 North Ninth Street
Richmond, VA 23219

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 22

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## CERTIFICATION

I hereby certify that this amicus brief contains 4,065 words, in compliance with Local Rule 7(o)(4).

By:  *s/ Daniel Kobrin*
Daniel Kobrin*
Assistant Attorney General
Civil Division
200 Saint Paul Place
Baltimore, Maryland 21202
Tel.: 410-576-6472
dkobrin@oag.maryland.gov

*Admitted pro hac vice

BRIEF OF AMICI CURIAE STATES AND
DISTRICT OF COLUMBIA
(No.: 3:25-CV-06078-KKE) - 23

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384