The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

UNITED STATES OF AMERICA,

                    Plaintiff,

    v.

STEVE HOBBS, in his official capacity as Secretary of State of the State of Washington,

                    Defendant.

NO. 3:25-cv-06078-KKE

DEFENDANT SECRETARY OF STATE STEVE HOBBS'S REPLY IN SUPPORT OF MOTION TO DISMISS

NOTE ON MOTION CALENDAR: JUNE 22, 2026

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 1

    A.   The Federal Rules of Civil Procedure Apply to DOJ's Demand
        for Records...................................................................................................... 2

    B.   Title III Does Not Authorize DOJ's Demand for Washington's
        Voter Registration List................................................................................... 4

        1.   Washington's voter registration list is not subject to demand
            by DOJ under Title III................................................................... 5

        2.   Title III does not require electronic production ............................. 9

        3.   DOJ failed to specify any basis for its document demand ............ 9

        4.   DOJ does not have a cognizable purpose for its demands ............ 10

    C.   DOJ's Demand Violates Federal Privacy Laws ......................................... 13

        1.   DOJ's demand violates the Privacy Act...................................... 13

        2.   DOJ's demand violates the E-Government Act ........................... 15

        3.   DOJ's demand violates the Driver's Privacy Protection Act......... 16

III.    CONCLUSION.......................................................................................................16

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
NO. 3:25-cv-06078

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

# TABLE OF AUTHORITIES

## Cases

*AFSCME v. Soc. Sec. Admin.*,
771 F. Supp. 3d 717 (D. Md. 2025)......................................................................... 14

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ................................................................................. 13

*Cell Assocs., Inc. v. Nat'l Insts. of Health*,
579 F.2d 1155 (9th Cir. 1978) ............................................................................... 14

*Donaldson v. United States*,
400 U.S. 517 (1971)................................................................................................. 2

*Garris v. FBI*,
937 F.3d 1284 (9th Cir. 2019) ............................................................................... 14

*Hester v. Comm'r of Soc. Sec.*,
No. C21-0228-SKV, 2021 WL 4476867 (W.D. Wash. Sept. 30, 2021) ................. 7

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
821 F.3d 935 (7th Cir. 2016) ................................................................................. 14

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ................................................................................... 9

*McComb v. Hunt Foods, Inc.*,
167 F.2d 905 (9th Cir. 1948) ................................................................................... 2

*Milchtein v. Milwaukee County*,
42 F.4th 814 (7th Cir. 2022) .................................................................................. 14

*Pub. Interest Legal Found., Inc. v. Nago*,
174 F.4th 664 (9th Cir. 2026) ................................................................................ 11

*SEC v. McCarthy*,
322 F.3d 650 (9th Cir. 2003) ................................................................................... 3

*Senne v. Vill. of Palatine*,
695 F.3d 597 (7th Cir. 2012) .................................................................................. 16

*Stewart v. Kahn*,
78 U.S. 493 (1870)................................................................................................. 11

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001)................................................................................................... 8

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
NO. 3:25-cv-06078

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
  931 F.3d 966 (9th Cir. 2019) ........................................................................................... 13

*United States v. Amore*,
  No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026),
  *appeal filed*, No. 26-1665 (1st Cir. June 9, 2026) ........................................................... 10

*United States v. Bellows*,
  No. 1:25-cv-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026),
  *appeal filed*, No. 26-1676 (1st Cir. June 15, 2026) ...................................................... passim

*United States v. Benson*,
  819 F. Supp. 3d 753 (W.D. Mich. 2026) ........................................................................ 8, 9

*United States v. Fontes*,
  No. CV-26-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ................................. 8, 9, 10

*United States v. Galvin*,
  No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026),
  *appeal filed*, No. 26-1657 (1st Cir. June 9, 2026) ............................................................ 9

*United States v. Oregon*,
  No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026)...................................... 10

*United States v. Powell*,
  379 U.S. 48 (1964)........................................................................................................ 2, 3, 4

*United States v. State of Texas*,
  252 F. Supp. 234 (W.D. Tex.), *aff'd*,
  384 U.S. 155 (1966)......................................................................................................... 8

*United States v. Weber*,
  816 F. Supp. 3d 1168 (C.D. Cal. 2026) .......................................................... 10, 13, 15, 16

*United States v. Wis. Elections Comm'n*,
  No. 25-cv-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026).......................... passim

## Constitutional Provisions

U.S. Const. amend. I.............................................................................................................. 14

## Statutes

E-Government Act of 2022,
  Pub. L. No. 107-347, § 208, 116 Stat. 2899 .................................................................... 15

5 U.S.C. § 552a(e)(7)............................................................................................................ 14

15 U.S.C. § 78u(e) ................................................................................................................ 3

52 U.S.C. §§ 10101 *et seq.* ................................................................................................ 11

52 U.S.C. § 20507(a) ..................................................................................................... 12

52 U.S.C. § 20701 ................................................................................................. 5, 8, 11

52 U.S.C. § 20705 ........................................................................................................... 3

52 U.S.C. § 21111 ......................................................................................................... 11

**Rules**

Fed R. Civ. P. 1 ............................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 14

**Other Authorities**

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ...................................................................... 15

*Come into*,
  Webster's New World Dictionary of the American Language (1960) .......................... 7

*Possession*,
  Webster's New International Dictionary of the English Language (1960) .................... 7

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S MOTION TO DISMISS
NO. 3:25-cv-06078

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

## I. INTRODUCTION

Despite losing nine consecutive lawsuits over its unprecedented demands for the confidential information of tens of millions of registered voters, DOJ doubles down on its argument that this Court has no choice but to rubber-stamp its demand for Washington's full unredacted voter registration list. DOJ does not even bother denying that its true purpose in seeking Washington's voter registration list is to usurp the State's constitutional authority over election administration and to coerce the State into removing registered voters from its voter rolls based solely on DOJ's say-so. Unsurprisingly, every court to consider DOJ's ploy to warp an important civil rights tool into a weapon of voter suppression has repudiated it.

While DOJ tries to cloak its actions in the righteous purpose of the Civil Rights Act, the National Voter Registration Act (NVRA), and the Help America Vote Act (HAVA), none of these statutes authorize DOJ's demand. On the contrary, neither HAVA nor the NVRA requires production of the State's voter registration list, exposing DOJ's continued insistence that it *needs* the State's complete voter registration list to enforce those statutes as pure subterfuge. Nor does the Civil Rights Act require production of the State's voter registration list. DOJ's interpretation of the Civil Rights Act conflicts with the statute's plain text and legislative purpose, U.S. Supreme Court authority, and DOJ's own historical practice in litigating Civil Rights Act claims. This Court should reject DOJ's demand for the State's voter registration list and dismiss its complaint.

## II. ARGUMENT

Since Secretary Hobbs filed his motion to dismiss, three additional federal district courts have dismissed DOJ's Civil Rights Act complaints, adding to a growing judicial consensus that DOJ lacks any legal basis for its demand for states' unredacted voter registration lists. *See United States v. Bellows*, No. 1:25-cv-00468-LEW, 2026 WL 1430481, at *5 (D. Me. May 21, 2026), *appeal filed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036-JDP, 2026 WL 1430354, at *1 (W.D. Wis. May 21, 2026); Mem. Op., *United*

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

1

*States v. DeMarinis*, No. 25-cv-3934-SAG, (D. Md. June 22, 2026), ECF No. 91. "[T]his uniformity of judicial expression in the district courts is significant and impressive." *McComb v. Hunt Foods, Inc.*, 167 F.2d 905, 908 (9th Cir. 1948). DOJ offers anemic objections to this wall of authority, but none of its arguments can overcome its patent abuse of three voter protection statutes to obtain state voter registration lists Congress never authorized DOJ to demand.

**A.      The Federal Rules of Civil Procedure Apply to DOJ's Demand for Records**

At the threshold, the Federal Rules of Civil Procedure apply to DOJ's demand for the State's complete voter registration list. DOJ does not even attempt to dispute most of the Secretary's arguments supporting application of the federal rules here, including that (1) the Civil Rights Act does not explicitly provide for a summary proceeding; (2) DOJ's own cited case, *Donaldson v. United States*, 400 U.S. 517, 528-29 (1971), undermines its arguments; and (3) HAVA and the NVRA—the stated purpose for DOJ's demand—do not provide for summary proceedings. *Compare* Dkt. 53 at 17-20, *with* Dkt. 76 at 6-12. Based on these implied concessions alone, this Court should find that the federal rules apply.

DOJ now asserts new arguments, but they cannot surmount the strong presumption in favor of applying the federal rules. *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) (where an authorizing statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply"); *Martin v. Chandis Sec. Co.*, 128 F.2d 731, 734 (9th Cir. 1942) (same); Fed R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."). Instead of pointing to statutory text authorizing a summary proceeding, DOJ cites Title III's legislative history indicating that Congress intended Title III to provide DOJ access to state registration records as a tool for preventing racial discrimination in elections. Dkt. 76 at 7-8. But no one disputes this point: *of course* Title III grants DOJ access to covered voter registration records. The central issues here are what records DOJ is authorized to obtain, and what process applies to ensure that DOJ meets the statutory requirements for obtaining such

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

records and does not abuse Title III's process to subvert its underlying purpose. The legislative history cited by DOJ says nothing about these questions. But even if the legislative history supported DOJ's point, legislative history alone cannot overcome the presumption that, absent explicit statutory language specifying an alternative procedure, the Federal Rules of Civil Procedure apply in all district court civil actions. *Powell*, 379 U.S. at 58 n.18

DOJ's reliance on *SEC v. McCarthy*, 322 F.3d 650 (9th Cir. 2003), and its attempts to distinguish *Powell*, go nowhere. The text and structure of Title III are nothing like the statute at issue in *McCarthy*. In *McCarthy*, the relevant statute, 15 U.S.C. § 78u(e), provided that "[u]pon application of the Commission," district courts have "jurisdiction to issue writs of mandamus, injunctions, and orders commanding" compliance with the rules of the national securities exchange or registered securities association against those organizations' members. *Id*. at 654. In holding that the statute authorized a summary proceeding to enforce a sanctions order, the court in *McCarthy* relied on the statute's use of the term "application"—a legal term of art referring to a "motion" rather than an "action"—*and* the fact that the statutory scheme separately provided defendants a full opportunity to litigate the merits of the sanctions order. *Id.* at 658. Because the defendants in *McCarthy* already had "four different opportunities to litigate the merits of this case," the court concluded that "[i]t would be redundant and a waste of judicial resources to provide Appellants with a fifth round of litigation on the substantive issues relating to this action." *Id*. at 658.

But Title III contains no similar language specifying a summary proceeding, nor similar opportunity to ensure DOJ's compliance with Title III's requirements or prevent its abuse of Title III's process. Unlike *McCarthy*, Title III states only that the district court in which the demand is made or where the record is located has jurisdiction "by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. This is virtually identical to the statutory language at issue in *Powell,* providing that the district court would have jurisdiction " 'by appropriate process to compel such . . . production of books, papers, or other data.' " *Powell*,

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

379 U.S. at 52 n.10 (quoting I.R.C. § 7402(b) (1954)). Contrary to DOJ's argument, the *Powell* Court did not focus only on the term "appropriate process" to conclude that the federal rules applied—it found most significant the statute's failure to "specify[ ] the procedure to be followed in invoking the court's jurisdiction[.]" *Id.*

But even if this Court ultimately decided the federal rules are inapplicable, this does not mean this Court is limited to the pro forma review DOJ advocates. *Powell* unambiguously rejected DOJ's argument that this Court's only role in enforcing document requests is to rubberstamp the federal government's demands. There, the Court explained that whenever a litigant invokes the court's jurisdiction to enforce its document demands, the "court may not permit its process to be abused[,]" such as by enforcing a "summons [that] had been issued for an improper purpose[.]" *Powell*, 379 U.S. at 58. While this does not mean that every document request triggers a full trial—a strawman that DOJ concocts (Dkt. 76 at 12)—it *does* mean that courts always have authority to determine whether a litigant is complying with statutory requirements, seeking records for an improper purpose, or otherwise violating the law. Thus, even if this Court were to conclude a summary proceeding applied to demands under Title III, this Court can and should consider each of the challenges raised by the State. *See, e.g.*, *Wis. Elections Comm'n*, 2026 WL 1430354, at *2 (holding that, whether federal rules apply or not, the court must consider the State's arguments challenging DOJ's demand, including whether Title III authorizes DOJ's demands and DOJ complied with Title III's statutory requirements).

**B.    Title III Does Not Authorize DOJ's Demand for Washington's Voter Registration List**

This Court should dismiss its complaint because the Civil Rights Act does not authorize DOJ's demand. The State's voter registration list is not a "record" that DOJ is entitled to demand in the first instance. Moreover, DOJ failed to specify a factual basis and does not have a legitimate purpose for its demand.

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

**1.    Washington's voter registration list is not subject to demand by DOJ under Title III**

DOJ completely fails to address the State's argument that Title III only authorizes demands for documents that must "be retained and preserved" by states under 52 U.S.C. § 20701 for the 22-month period following any federal primary, general, or special election (52 U.S.C. § 20703), and that this retention obligation cannot apply to states' voter registration lists. Washington's full voter registration list contains confidential information for *all* of Washington's over five million registered voters, including voters who registered many years and even decades ago, not just in the 22 months after the last primary, general or special election. Indeed, it is not even possible to apply a 22-month retention and preservation period to the State's entire voter registration list because, as DOJ concedes, the list is constantly evolving, as required by HAVA and the NVRA. *See* Dkt. 53 at 24; Dkt. 76 at 29, 35, 36 n.9. To apply the retention requirement to state voter registration lists would mean that each time a state makes a change to its voter registration list, it would be required to retain every iteration of the list. But no court or state has ever interpreted Title III's document retention requirements this way. For this reason alone, Title III does not cover the State's voter registration list.

DOJ ignores this retention obligation and focuses only on Title III's criminal penalties, arguing that the penalties apply only to willful destruction or alterations of voter registration materials. But states' retention obligations are not limited in this way. And states cannot retain a document they are required by law to constantly update; nor does it make sense to apply a finite retention period to a list that states cannot destroy after expiration of the retention period because of how vital the list is to ongoing election administration. Title III simply does not apply to states' voter registration lists. *Wis. Elections Comm'n*, 2026 WL 1430354, at *5 (finding that state voter registration list is not a record under Title III in part because "government has provided no explanation of what it means to 'retain' and 'preserve' a document like a voter registration that is updated on a near-constant basis").

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

5

On top of this, for the reasons stated in the Secretary's Motion to Dismiss, Title III's retention obligations do not apply to documents created by states. Dkt. 53 at 20-25. DOJ barely addresses the Secretary's statutory analysis and instead cites a host of inapposite cases interpreting terms in different, much broader statutes and rules. Dkt. 76 at 21-23 (citing *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989) (interpreting the term "control" to "mean that the materials have come into the agency's possession in the legitimate conduct of its official duties"); *United States v. David Ajudua*, No. CR 12-1702 JB, 2013 WL 2284960, at *8 (D.N.M. May 22, 2013) (interpreting a document request seeking a laundry list of broad categories of tax documents and documents that "come into possession of the [IRS]" within 90 days of an order); *Bifferato v. States Marine Corp. of Del.*, 11 F.R.D. 44, 45 (S.D.N.Y. 1951) (interpreting the propriety of a request under FRCP 34 that makes no mention of the term "come into possession"); *United States v. Art Metal-U. S. A., Inc.*, 484 F. Supp. 884, 887 (D.N.J. 1980) (holding that confidentiality provisions protecting tax returns apply only after the IRS "comes into possession" of tax returns received from the taxpayer); *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004) (interpreting whether documents created by IRS were subject to FOIA, which requires disclosure of documents "(1) created or obtained by an agency, and (2) in the agency's control" and never mentioning the term "come into possession"); *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 68 (D.D.C. 2006) (considering whether White House visitor logs should be processed in an expedited fashion under FOIA and never mentioning the term "come into possession")).

None of these cases are relevant here. Title III does not use the words "be in possession," "control," "possessed," "created," "obtained," or "under agency control." Indeed, most of the cases cited by DOJ do not even mention the term "come into his possession." DOJ instead appears to rely on the characterization of these cases in secondary sources—a remarkably weak basis to argue about the meaning of "come into possession" and one with little force given the broader statutory language analyzed in each of the cited cases. Dkt. 76 at 21. DOJ also falls prey

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

to a basic logical fallacy, the fallacy of the converse: just because the term "control" includes documents that come into one's possession does not mean that "come into one's possession" includes all documents in one's control. Dkt. 76 at 22. And DOJ's half-baked criticism that the State's statutory analysis failed to cite contemporaneous dictionary definitions of Title III's terms also misses the mark given that DOJ also fails to cite such definitions. Contemporaneous definitions would not aid DOJ in any event because they largely mirror modern definitions of the key statutory terms. *See, e.g.*, *Come into*, Webster's New World Dictionary of the American Language 291 (1960) (defining "come into" as "to get," "acquire," or "to inherit"); *see also Possession*, Webster's New International Dictionary of the English Language 1140 (1960) (defining "possession" as "own," "keep control over," or "maintain."). And DOJ's citation to an Office of Legal Counsel opinion is not binding on this Court, nor particularly persuasive given the wall of authority against it. *Hester v. Comm'r of Soc. Sec.*, No. C21-0228-SKV, 2021 WL 4476867, at *2 (W.D. Wash. Sept. 30, 2021); Mem. Op., *DeMarinis*, ECF No. 91 at 9 (refusing to grant deference to OLC's interpretation of the Civil Rights Act as contrary to the statute's text).

DOJ also makes a convoluted argument about the meaning of the word "receive," which it claims is relevant to the court's holding in *Bellows* that "come into possession" is synonymous with "receives." What the *Bellows* court actually held, however, is that the term "come into their possession naturally refers to a process by which someone *acquires* an item from an external source" and cited the definition of "receive" as a "*see also*" support for this conclusion. *Bellows*, 2026 WL 1430481, at *6 (citation modified). DOJ's entire analysis of the definition of "receive," and whether this Court should apply the series-qualifier canon versus the last antecedent rule, does not even focus on the right statutory term. Dkt. 76 at 23-24. In any event, it makes no sense to apply these statutory canons to a dictionary definition of a synonym of a statutory term.

Finally, DOJ argues that interpreting Title III to exclude documents created by the Secretary would have prevented DOJ's investigations into rampant registration discrimination

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

in the Jim Crow era and would have "nullified [statutory] coverage over the payment of poll taxes." Dkt. 76 at 27. But DOJ's own cited cases prove it wrong. DOJ cites *United States v. State of Texas*, 252 F. Supp. 234, 240 (W.D. Tex.), *aff'd*, 384 U.S. 155 (1966), but that case shows that Texas did not even have a voter registration list at the time of DOJ's earliest prosecutions under the Civil Rights Act and that voters' payment of poll taxes would have fallen within the Secretary's interpretation of "comes into possession." As explained in *Texas*, prospective voters paid their poll taxes to a third party, who compiled a list of qualified voters that were "ultimately transmitted to the precinct judges of elections." *Id*. at 240. As "officer[s] of election," under Title III, the precinct judges would be required to retain the list of individuals who had paid the poll tax that had "come into [their] possession" from an external source under Title III. *Id*.; *see also United States v. Benson*, 819 F. Supp. 3d 753, 767-69 (W.D. Mich. 2026) (observing that Congress had reason to focus Title III on records submitted by voters, because it was attempting to prevent states from engaging in the then-routine practice of destroying rejected voter registration applications to conceal discriminatory practices).

Ultimately, DOJ cannot explain how its proposed interpretation gives meaning to the term "come into his possession." *See United States v. Fontes*, No. CV-26-00066, 2026 WL 1177244, at *3 (D. Ariz. Apr. 28, 2026) (citing *Benson*, 819 F. Supp. 3d 753); *Bellows*, 2026 WL 1430481, at *6-7; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3-5; *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (court should avoid interpretations that render statutory terms superfluous). As detailed in the State's motion to dismiss, DOJ's interpretation re-writes 52 U.S.C. § 20701 to apply to "all records and papers ~~which come into his possession~~ relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" If Congress intended the interpretation that DOJ advocates, it would not have included the term "come into his possession" in the statute.

This Court should reach the same conclusion as the court in *Bellows* and numerous other courts—that "Title III's commands therefore pertain to records and papers that election officials

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to vote are registered." *Bellows*, 2026 WL 1430481, at *6-7; *see also Benson*, 819 F. Supp. 3d at 767-70; *Fontes*, 2026 WL 1177244, at *3-7; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3-5; Mem. Op., *DeMarinis*, ECF No. 91 at 7-8.

**2.      Title III does not require electronic production**

As detailed in the Secretary's Motion to Dismiss, Title III does not require electronic production of any documents—a point that DOJ does not even dispute. *Compare* Dkt. 53 at 25, *with* Dkt. 76 at 6-10. This is yet another basis to deny DOJ's demand for electronic production of the State's full voter registration list.

**3.      DOJ failed to specify any basis for its document demand**

This Court should also dismiss DOJ's complaint because DOJ failed to provide a factual basis for its demand. DOJ, again, does not dispute the Secretary's primary arguments on this point: that the contemporaneous definition of the term "basis"—meaning "foundation" or "chief supporting factor"—and the requirement for both a "basis" and a "purpose" shows that Congress intended to require a factual basis rather than a bare citation to the Civil Rights Act itself. *United States v. Galvin*, No. 25-13816-LTS, 2026 WL 972129, at *3 (D. Mass. Apr. 9, 2026), *appeal filed*, No. 26-1657 (1st Cir. June 9, 2026), (citing *Basis*, Webster's New World Dictionary of American Language 122 (college ed. 1959)). DOJ does not and cannot explain why Congress would require a "basis" at all if it only intended to require a citation to the Civil Rights Act—a requirement that would be met in every case without providing any information whatsoever.

Unable to dispute these points, DOJ again argues that the Fifth Circuit's nonbinding decision in *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962), precludes this Court from inquiring into the basis or purpose of DOJ's demand. But this Court should reject this argument for the same reasons it has been rejected by other courts. *Lynd's* reasoning has been superseded

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

by *Powell*, does not give meaning to Title III's explicit requirements, and would permit this Court's processes to be brazenly abused. *See, e.g.*, *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026); *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637, at *3 (D.R.I. Apr. 17, 2026), *appeal filed*, No. 26-1665 (1st Cir. June 9, 2026); *Fontes*, 2026 WL 1177244, at *1; *Bellows*, 2026 WL 1430481, at *5; Mem. Op., *DeMarinis*, ECF No. 91 at 7-8. If this Court accepted DOJ's interpretation, DOJ could have a basis and purpose of supporting a favored political party and this Court would be powerless to even question DOJ, let alone stop it. That is not the law.

While DOJ criticizes the decision in *Galvin* as "overly formalistic," it is DOJ's argument that elevates form over substance and renders meaningless Title III's requirement that DOJ specify a basis. Dkt. 76 at 14-15. And contrary to DOJ's argument, this is not a defect that DOJ can readily fix. DOJ issued cookie-cutter demands for complete voter registration lists to 48 states and D.C. around the same timeframe and does not even attempt to deny that its true purpose is to create a shadow national voter registration list to run the lists through the SAVE database and then demand states remove specific voters from their voter rolls. DOJ has never suggested that its demands to Washington were based on any specific factual concerns. If DOJ had a factual basis for its demand, it had more than sufficient opportunity to say what it was. Its failure to do so dooms its claim.

**4.    DOJ does not have a cognizable purpose for its demands**

This Court should also dismiss DOJ's complaint because DOJ's stated purpose of investigating the State's compliance with HAVA and the NVRA is not a legally valid purpose under the Civil Rights Act. Dkt. 53 at 25-28. It simply makes no sense to construe Title III's requirement that DOJ specify its "purpose" for demanding records under Title III as authorizing a purpose wholly unrelated to enforcing the Civil Rights Act.

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

A cardinal rule of statutory construction is that a remedial statute's provision should be construed in light of "the evils which existed, the remedy prescribed, the object to be accomplished, and the considerations by which the law-makers were governed—lights which every court must hold up for its guidance when seeking the meaning of a statute which requires construction[.]" *Stewart v. Kahn*, 78 U.S. 493, 505 (1870). Here, DOJ acknowledges the primary aim of the Civil Rights Act was to combat racial discrimination in voting and to eliminate all vestiges of Jim Crow laws, including racial barriers to voter registration, literacy tests, and poll taxes. *See* 52 U.S.C. §§ 10101 *et seq*. Title III itself underscores this purpose, requiring the retention of documents that come into an election official's possession that would prove such discrimination, including "any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" 52 U.S.C. § 20701. Thus, contrary to DOJ's argument, Title III *is* limited to documents that would be relevant to proving racial discrimination and enforcing the Civil Rights Act. Title III also makes clear that DOJ's purpose in seeking such records matters by explicitly requiring DOJ to state its purpose in any written demand to the election officials. In light of the "evil" that Congress intended to target through the Civil Rights Act, it only makes sense to require a purpose related to enforcing the Civil Rights Act, not any purpose whatsoever.

But even if this Court construed Title III more broadly, investigating list maintenance under HAVA and the NVRA still would not provide an authorized purpose under Title III—a conclusion that is clear from the text and purpose of HAVA and the NVRA. *See Bellows*, 2026 WL 1430481, at *7. DOJ never grapples with the fact that neither HAVA nor the NVRA authorize DOJ to obtain states' unredacted voter registration lists. *See Pub. Interest Legal Found., Inc. v. Nago*, 174 F.4th 664 (9th Cir. 2026) (holding that the NVRA's public disclosure provisions do not apply to state voter registration lists); 52 U.S.C. § 21111 (authorizing the Attorney General only to "bring a civil action against any State . . . for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title"). This puts the lie to DOJ's primary justification for its demand: that disclosure of the State's voter registration list is necessary for the DOJ to assess the State's compliance with these statutes' voter-list maintenance requirements.

The text and structure of HAVA and the NVRA also belie DOJ's argument that it has any supervisory role in list maintenance activities. Both statutes place primary responsibility over voter list maintenance with states, not the federal government. As explained in *Bellows*, HAVA "clearly specifies and repeatedly reiterates" that the voter registration list must be "'defined, maintained, and administered at the State level'—not by the federal government" and expressly leaves "to the discretion of the States" "[t]he specific choices on the methods of complying with" its "requirements". 2026 WL 1430481, at *7 (quoting 52 U.S.C. § 21083(a)(1)(A)). The NVRA similarly directs its commands for "the administration of voter registration for elections for Federal office"—including those pertaining to voter list maintenance—to "each State[.]" 52 U.S.C. § 20507(a), 20507(a)(4). The statutes "could not be clearer: each individual state, and not the U.S. Department of Justice, is the master of its voter list, entrusted with its administration and maintenance." *Bellows*, 2026 WL 1430481, at *7. Neither HAVA nor the NVRA "contemplate the line-by-line audit of each state's computerized [state voter registration list] by the federal government to assess compliance with those provisions," which is the reason DOJ "leans so heavily" on Title III in the first place. *Id.* at *8. But the specific must govern the general, particularly where "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)). As such, if DOJ "wants to enforce HAVA and the NVRA, it must use the pre-suit investigation and enforcement mechanisms that Congress provided in those statutes," not the Civil Rights Act. *Id.*

**C.      DOJ's Demand Violates Federal Privacy Laws**

This Court should also dismiss the complaint because complying with DOJ's demand would violate three federal privacy statutes: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.

**1.      DOJ's demand violates the Privacy Act**

DOJ's demand for Washington's voter registration list violates the Privacy Act in two ways: (1) it conflicts with the Act's statutory bar on collecting and maintaining records of an individual's First Amendment activity, and (2) it fails to identify a System of Records Notice (SORN) allowing it to collect this data. *See* Dkt. 53 at 29-35. DOJ's attempts to avoid the Privacy Act are unavailing.

DOJ first claims that the Privacy Act is an affirmative defense and not a basis for dismissing the complaint. Dkt. 76 at 30. But this argument ignores well-established Ninth Circuit precedent holding that a court "can consider an affirmative defense on a motion to dismiss when there is 'some obvious bar to securing relief on the face of the complaint.'" *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quoting *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 104 (9th Cir. 2014)). "In other words, dismissal based on affirmative defense is permitted when *the complaint* establishes the defense." *Id.* (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)). That is precisely the situation here, and dismissal is appropriate. *See Weber*, 816 F. Supp. 3d at 1195 (noting that because DOJ's request violates federal privacy laws, leave to amend would be futile, and dismissing the motions without leave to amend).

DOJ's reliance on the Seventh Circuit decision *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), does not compel a different conclusion. *See* Dkt. 76 at 30. Indeed, that case acknowledges that "when all relevant facts are presented, the court may properly dismiss a case before discovery" on the basis of an affirmative defense. *Brownmark Films, LLC*, 682 F.3d at 690. And more recent case law confirms that the Seventh Circuit

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6500

approves of Rule 12(b)(6) dismissals where the complaint itself establishes the affirmative defense. *See, e.g.*, *Milchtein v. Milwaukee County*, 42 F.4th 814, 822 (7th Cir. 2022) (noting that "dismissal for untimeliness is proper when the plaintiff's allegations establish that the statute of limitations bars recovery"); *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (recognizing that dismissal is appropriate when "the factual allegations in the complaint unambiguously establish all the elements of the defense").

Next, DOJ questions whether the Privacy Act provides Secretary Hobbs with a legal basis for his refusal to hand over Washington's voter registration list, arguing that "certain violations of the Privacy Act can only be remedied through damages[.]" Dkt. 76 at 30. DOJ cites two cases for this proposition, *Cell Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155 (9th Cir. 1978), and *AFSCME v. Soc. Sec. Admin.*, 771 F. Supp. 3d 717 (D. Md. 2025). But those cases involved plaintiffs seeking injunctive relief under the Privacy Act. *AFSCME*, 771 F. Supp. 3d at 783; *Cell Assocs., Inc.*, 579 F.2d at 1159. Here, in contrast, Secretary Hobbs is not suing under the Privacy Act, nor is he seeking an affirmative injunction. Rather, he is the *defendant* and is simply defending his refusal to comply with an unlawful request from DOJ because the request lies outside the boundaries of DOJ's statutory authority. Neither of these cases require a defendant to comply with an unlawful request.

And there is no question that DOJ's request is unlawful under the Privacy Act. Washington's voter registration list describes individuals' exercise of First Amendment rights, meaning the list belongs to a class of records that the Privacy Act bars agencies from maintaining by default. 5 U.S.C. § 552a(e)(7). DOJ claims the list falls under an exception for authorized law enforcement activity. Dkt. 76 at 31-32 (citing 5 U.S.C. § 552a(e)(7)). But DOJ's request is not authorized by Title III, HAVA, nor the NVRA. *See supra* Section II.B.4. Vague law-enforcement rationales that "could justify maintaining literally any record" are "precisely what the [Privacy] Act was meant to prevent." *Garris v. FBI*, 937 F.3d 1284, 1299 n.3 (9th Cir. 2019).

DOJ also fails to meaningfully grapple with the deficiencies in the 2003 SORN, 68 Fed. Reg. 47610-01 (Aug. 11, 2003), on which it relies. DOJ extols the 2003 SORN as broadly including routine enforcement of HAVA, the NVRA, and the Civil Rights Act, but these enforcement uses do not cover DOJ's request for the State's voter registration records. Indeed, DOJ admits that the purpose of its demand is not to enforce the Civil Rights Act, and neither the NVRA nor HAVA authorize DOJ to obtain unredacted state voter registration lists. *See supra* Section II.B.4. Moreover, DOJ fails to contend with the criticism from the court in *Weber* that the 2003 SORN "does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity[.]" *See Weber*, 816 F. Supp. 3d at 1193-94. DOJ does not dispute that the 2003 SORN does not cover a voter list complete with names, addresses, and voting history, much less driver's license numbers, social security numbers, and full dates of birth.

Lastly, DOJ's attempt to characterize the demands of the Privacy Act as a "judicially-imposed limit on Title III" makes no sense. Dkt. 76 at 32. When Congress enacted the Privacy Act, it did not carve out an exception for Title III. And given that Congress passed the Privacy Act over two decades after Title III was adopted, nothing in the text of Title III or its legislative history could demonstrate an exception to the Privacy Act. The Privacy Act addresses a particular concern arising after the passage of Title III due to the explosion of computer technology, allowing for unprecedented storage and collection of data and serious concerns about government surveillance. This Court should not permit further abuse of its enforcement processes by allowing DOJ to circumvent the Privacy Act's requirements.

### 2.    DOJ's demand violates the E-Government Act

DOJ's demand for Washington's voter registration list also violates the E-Government Act because DOJ did not conduct a Privacy Impact Assessment (PIA) prior to "initiating a new collection of information[.]" Pub. L. No. 107-347, § 208(a), (b), 116 Stat. 2899 (2002). DOJ

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

attempts to evade the PIA requirement by claiming that the Act is not applicable to DOJ's enforcement of HAVA or the NVRA. Dkt. 76 at 33. But this argument is "unpersuasive because the plain text of the [Act] includes the very information the DOJ is trying to collect." *Weber*, 816 F. Supp. 3d at 1194. DOJ next attempts to evade the PIA by claiming that it is "not initiating a new process whereby it is contacting individuals for information[,]" and that a PIA is only necessary "when a new system is established—not when each new data request is made[.]" Dkt. 76 at 33. But DOJ cites no authority to support this argument. Nor does DOJ explain how its interpretation is consistent with the language of the Act, which plainly applies to a new *collection* of information, not a new *method of storing* information. DOJ was required to conduct a PIA, and its failure to do so constitutes a violation of the E-Government Act.

### 3. DOJ's demand violates the Driver's Privacy Protection Act

Finally, DOJ's demand for Washington's voter registration list violates the Driver's Privacy Protection Act (DPPA) because it requires the disclosure of personal information obtained from the Washington Department of Licensing. DOJ claims that the DPPA "is not implicated" and cites an exception providing for disclosure "for use by any government agency . . . in carrying out its functions." Dkt. 76 at 33-34 (quoting 18 U.S.C. § 2721(b)(1)). But this bald assertion is insufficient. The critical inquiry is whether "the actual information disclosed . . . is *used* for the identified purpose." *Senne v. Vill. of Palatine*, 695 F.3d 597, 606 (7th Cir. 2012). When neither HAVA nor the NVRA authorizes DOJ to obtain unredacted state voter registration lists, these lists cannot be required by DOJ to "understand whether [Washington] conducts a general program that makes a reasonable effort to remove persons from its voter rolls due to death or change in residence." *Weber*, 816 F. Supp. 3d at 1195 (citing *Senne*, 695 F.3d at 606). This is fatal to DOJ's attempt to invoke the government use exception.

### III.    CONCLUSION

The Court should grant Secretary Hobbs's Motion to Dismiss.

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6500

DATED this 22nd day of June 2026.

I certify that this memorandum contains 5,844, in compliance with the Court's order (Dkt. 45).

NICHOLAS W. BROWN
  *Attorney General*

 *s/Tera M. Heintz*
TERA M. HEINTZ, WSBA 54921
KARL D. SMITH, WSBA 41988
CRISTINA SEPE, WSBA 53609
KELLY PARADIS, WSBA 47175
  *Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
360-753-6200
Tera.Heintz@atg.wa.gov
Karl.Smith@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Kelly.Paradis@atg.wa.gov
*Counsel for Secretary of State*
*Steve Hobbs*

DEFENDANT SECRETARY OF STATE
STEVE HOBBS'S REPLY IN SUPPORT
OF MOTION TO DISMISS
NO. 3:25-cv-06078

17