**ABHA KHANNA**
WA Bar No. 42612
**TYLER L. BISHOP**
WA Bar No. 63821
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law
tbishop@elias.law
wmckusick@elias.law

*Attorneys for Intervenor-Defendants*
*Common Power and Washington State*
*Alliance for Retired Americans*

The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

STEVE HOBBS, in his official capacity as the Secretary of State of the State of Washington,

        Defendant,

COMMON POWER, WASHINGTON STATE ALLIANCE FOR RETIRED AMERICANS, COMMON CAUSE, and WASHINGTON CONSERVATION ACTION EDUCATION FUND,

        Intervenor-Defendants.

No. 3:25-cv-6078-KKE

COMMON POWER AND WASHINGTON STATE ALLIANCE FOR RETIRED AMERICANS' REPLY IN SUPPORT OF MOTION TO DISMISS

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    Title III does not displace the Federal Rules of Civil Procedure. ................................. 2

II.   Title III does not cover Washington's entire statewide voter list. ............................... 5

      A.    The plain text does not cover the list because the Secretary created it and the
            list did not "come into his possession." ............................................................ 5

      B.    The legislative history confirms that Congress intended Title III to cover
            records created by voters, not the state. ............................................................ 7

III.  DOJ provided neither a factual basis nor a proper purpose for its demand. ................. 9

IV.   DOJ fails to show that Title III preempts Washington's privacy law............................ 11

V.    DOJ's demand is incompatible with federal privacy law. ............................................ 13

      A.    DOJ's demand violates the Privacy Act. ........................................................... 14

      B.    DOJ's failure to comply with the Privacy Act is grounds for dismissal............ 15

CONCLUSION................................................................................................................... 16

REPLY IN SUPPORT OF MOTION TO DISMISS          ELIAS LAW GROUP LLP
No. 3:25-cv-6078-KKE                            1700 Seventh Avenue, Suite 2100
                                               Seattle, WA 98101
                                               (206) 656-0177

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*ACA Connects v. Bonta*,
   24 F.4th 1233 (9th Cir. 2022)..............................................................................................13

*Allstate v. Samsung*,
   2023 WL 8433118 (W.D. Wash. Dec. 5, 2023)..................................................................16

*Bifferato v. States Marine Corp. of Del.* .........................................................................................6
   11 F.R.D. 44, 46 (S.D.N.Y. 1951)

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012)..........................................................................................15, 16

*CFPB v. Source for Pub. Data*,
   903 F.3d 456, 460 (5th Cir. 2018)........................................................................................9

*Cotham v. Shinn*,
   2025 WL 1379098 (9th Cir. May 13, 2025) .........................................................................4

*Crystal v. United States*,
   172 F.3d 1141 (9th Cir. 1999)..............................................................................................9

*DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) ..............................................................................................................6

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990) ..............................................................................................................12

*Hannah v. Larche*,
   363 U.S. 420 (1960) ..............................................................................................................3

*In re Wallace*,
   170 F. Supp. 63 (M.D. Ala. 1959).......................................................................................8

*Keams v. Tempe Tech. Inst., Inc.*,
   39 F.3d 222 (9th Cir. 1994).................................................................................................13

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962).......................................................................................3, 7, 10

*Knox v. Brnovich*,
   907 F.3d 1167 (9th Cir. 2018).............................................................................................12

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-6078-KKE                                                    ELIAS LAW GROUP LLP
                                                                       1700 Seventh Avenue, Suite 2100
                                                                       Seattle, WA 98101
                                                                       (206) 656-0177

*League of Women Voters v. DHS*,
  2026 WL 1784297, at *27 (D.D.C. June 22, 2026) ..............................................................13, 14

*MacPherson v. IRS*,
  803 F.2d 479 (9th Cir. 1986)...............................................................................................15

*PILF v. Bellows*,
  92 F.4th 36, 56 (1st Cir. 2024) ............................................................................................12

*PILF v. N.C. State Bd. of Elections*,
  996 F.3d 257, 265 (4th Cir. 2021).......................................................................................13

*PILF v. Nago*,
  174 F.4th 664, 683 (9th Cir. 2026)..............................................................................2, 12, 13

*RadLAX Gateway Hotel v. Amalgamated Bank*,
  566 U.S. 639 (2012) .............................................................................................................11

*Rivera v. Peri & Sons Farms*,
  735 F.3d 892 (9th Cir. 2013)................................................................................................16

*SEC v. McCarthy*,
  322 F.3d 650 (9th Cir. 2003)...............................................................................................1, 4

*State of Ala. ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) .......................................................................................8

*United States v. Ajudua*,
  2013 WL 2284960 (D.N.M. May 22, 2013) ..........................................................................6

*United States v. Amore*,
  No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026).....................................1, 2, 9, 10

*United States v. Bellows*,
  No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026).................................1, 2, 5, 11

*United States v. Benson*,
  819 F. Supp. 3d 753 (W.D. Mich. 2026).....................................................................1, 3, 5, 10

*United States v. DeMarinis*,
  No. 1:25-cv-3934, 2026 WL 1780586 (D. Md. June 18, 2026)...........................................1, 3, 5

*United States v. Fontes*,
  No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) .......................................1, 2, 5

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

*United States v. Galvin*,
    No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ...................................1, 3, 9, 10

*United States v. Lynd*,
    301 F.2d 818 (5th Cir. 1962)....................................................................................................8

*United States v. Oregon*,
    No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) .................................................1, 2, 9

*United States v. Powell*,
    379 U.S. 48 (1964) ................................................................................................................1, 3, 4

*United States v. Weber*,
    816 F. Supp. 3d 1168 (C.D. Cal. 2026)............................................................................. *passim*

*United States v. Wis. Elections Comm'n*,
    No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026) ......................................1, 3, 5

*Vicars v. Cal. Dep't, Corrs.*,
    2019 WL 2433453 (E.D. Cal. June 11, 2019)..........................................................................11

*Voter Reference Found., LLC v. Torrez*,
    160 F.4th 1068 (10th Cir. 2025)...............................................................................................12

**Statutes**

5 U.S.C. § 552a...........................................................................................................................14, 15

5 U.S.C. § 555(c) ............................................................................................................................15

52 U.S.C. § 20701.................................................................................................................2, 5, 6, 8

52 U.S.C. § 20703.................................................................................................................2, 5, 13

52 U.S.C. § 20705.............................................................................................................................3

52 U.S.C. § 20507(i)(1) .................................................................................................................13

Ala. Acts 2003-313, p. 733, § 2; § 17-4-210 .................................................................................9

Ala. Acts 1989, No. 89-649, p. 1279, §1 .......................................................................................9

**Rules**

Fed. R. Civ. P. 8...............................................................................................................................4

Fed. R. Civ. P. 34.............................................................................................................................6

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-6078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

## INTRODUCTION

DOJ brought this case seeking to compel production of Washington's detailed and unredacted statewide voter registration list under Title III of the Civil Rights Act ("CRA"). Its complaint must be dismissed for multiple, independent reasons. First, DOJ demanded records that fall outside the CRA's scope. Second, even if the records could be within the reach of the CRA, DOJ did not comply with the basic requirements of the CRA. Third, DOJ's demand cannot be squared with state and federal privacy laws. Unable to defend its demand on the merits, DOJ resorts to arguing that courts have no substantive role in reviewing its "investigative" demands, even while it seeks judicial imprimatur to enforce them. On every point, statutory text requires rejection of DOJ's position. Indeed, nine federal courts have already dismissed DOJ's complaints in parallel cases against other States, and not a single court has found DOJ to have stated a valid claim.[1] DOJ provides no reason for this Court to break with that universal consensus.

As a threshold matter, the Federal Rules of Civil Procedure apply under the plain terms of the CRA. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). Studiously avoiding *Powell*'s construction of identical statutory language as that at issue here, DOJ instead relies on cases construing entirely different language in entirely different contexts. *See* Consol. Resp. to Defs.' Mots. to Dismiss and Opp'n to Mot. to Compel 7, Dkt. 76 ("Resp.") (citing *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)). But even that authority rejects DOJ's radical theory in this case, confirming that so-called "summary proceedings," too, require careful judicial scrutiny. *McCarthy*, 322 F.3d at 656. Under any framework, this Court must "not permit its process to be abused" by an "improper" request. *Powell*, 379 U.S. at 58.

---

[1] *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026), *argued*, No. 26-1225 (6th Cir. May 13, 2026); *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026); *United States v. Bellows*, No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. DeMarinis*, No. 1:25-cv-3934, 2026 WL 1780586 (D. Md. June 18, 2026).

1

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

DOJ's arguments on the merits fare no better. Each of the examples that DOJ cites using the phrase "come into possession" only *reinforces* the conclusion that Washington's voter registration list ("VRL") must fall outside the scope of the CRA, because it is a dynamic digital file that never *came into* the Secretary's possession. 52 U.S.C. § 20701. And the legislative history confirms that Congress intended Title III to cover records "requisite to voting" that were submitted by voters, not lists developed by officials. *Id.* Further, the CRA required DOJ to state "the basis and the purpose" for its demand, 52 U.S.C. § 20703, yet DOJ admits it provided no factual "basis" whatsoever. Resp. 10. Nor did DOJ state a lawful purpose. Indeed, it claims it seeks to investigate "compliance" with separate statutes—the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA")—as part of its "oversight," yet DOJ disregards that the Ninth Circuit held just weeks ago that such "oversight does not require disclosure of every registrant's personal information." *PILF v. Nago*, 174 F.4th 664, 683 (9th Cir. 2026). Finally, DOJ fails to meet its formidable burden of showing that Title III preempts state voter-privacy protections, and it fails to show that the federal Privacy Act's mandatory prohibitions do not bar its demand.

For any or all of these reasons, and those detailed in CP-Alliance's Motion to Dismiss, Dkt. No. 63 ("CP-Alliance MTD"), the Court should dismiss DOJ's complaint with prejudice.

## ARGUMENT

### I.  Title III does not displace the Federal Rules of Civil Procedure.

DOJ does "not dispute" that it faces an uphill battle in overcoming the presumption that the Federal Rules apply to this proceeding. Resp. 6. Indeed, all of the courts to resolve this issue have agreed that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *Weber*, 816 F. Supp. 3d at 1182; *see Oregon*, 2026 WL 318402, at *8; *Amore*, 2026 WL 1040637, at *3; *Fontes*, 2026 WL 1177244, at *1 n.1; *Bellows*, 2026 WL

2

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

1430481, at *5; *DeMarinis*, 2026 WL 1780586, at *3.[2] DOJ ignores this and simply reiterates its contrary view that the Fifth Circuit's off-hand statements in *Kennedy v. Lynd* should control. Resp. 4 (citing 306 F.2d 222, 225 (5th Cir. 1962)). As CP-Alliance Intervenors have explained, *Lynd* is inapposite and lacks precedential force anywhere, CP-Alliance MTD 8–12, but DOJ offers no meaningful response.

Instead, DOJ relies on irrelevant authorities. For example, it perplexingly quotes at length from a statement by President Eisenhower that simply endorsed a view that some process should be enacted for DOJ to obtain "registration records" relevant to "racial discrimination" in elections. Resp. 4 (quoting D. Eisenhower, *Pub. Papers of the Presidents* 165–66 (Feb. 5, 1959)). Nothing in his statement suggested the Federal Rules in such a "proceeding" would not suffice, nor does it have anything to say about what Congress intended in enacting Title III. *See infra* Argument § II.B.

Equally perplexing is DOJ's reliance on *Hannah v. Larche*, 363 U.S. 420 (1960), which interpreted provisions of the Civil Rights Act of 1957 requiring the Civil Rights Commission to hold administrative hearings to investigate racial discrimination. The Supreme Court's observation that this "investigative process" might be "disrupted if investigative hearings were transformed into trial-like proceedings," 363 U.S. at 443, was based expressly on provisions detailing procedures governing the Commission's ability to compel compliance, *see id.* at 440–43; *see also id.* at 431(further noting the statute "list[ed] a number of procedural rights intended to safeguard witnesses from potential abuses"). In other words, Congress "specif[ied] the procedure to be followed" in those hearings, *Powell*, 379 U.S. at 57–58 & n. 18, which are distinct from "trial-like proceedings" in court, *Hannah*, 363 U.S. at 443.

In marked contrast, Congress provided in Title III that federal courts "shall have jurisdiction by appropriate process to compel the production" of documents, 52 U.S.C. § 20705,

---

[2] No court has endorsed DOJ's view. *See Benson*, 819 F. Supp. 3d at 766 (applying Rule 12(b)(6) "to evaluate the [DOJ's] claim" because [it] filed "a traditional civil complaint"); *Galvin*, 2026 WL 972129, at *4, *6 (dismissing complaint); *Wis. Elections Comm'n*, 2026 WL 1430354, at *2, *5 (same).

3

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

using the same language the Supreme Court has already held requires application of the Rules, *Powell*, 379 U.S. at 57–58; *see* CP-Alliance MTD 11–12. DOJ's only remaining retort to *Powell* is that its holding should not be read to mean what it says because it appears in a footnote. Resp. 6.[3] But even this suggestion is false. The Court's core holding that the subject of a demand is "entitled" to process through the Rules "before enforcement is ordered" is in the body of the opinion, 379 U.S. at 58, and the footnote simply elaborates on this holding, *id.* at 58 n.18.

Finally, the Ninth Circuit's decision in *SEC v. McCarthy*, 322 F.3d at 656, does not support DOJ's view. Far from it. That case held that SEC enforcement provisions allowing the agency to file "application[s]" in district court required only a "summary proceeding." *Id.* (citing 15 U.S.C. § 78u(e)). In concluding that the statutory language overcame the presumption in favor of the Rules, the Ninth Circuit relied on the specific usage and definition of the word "application" in the statute at issue in that case and noted that "[s]ummary proceedings are particularly appropriate where the merits of the dispute have already been litigated." *Id.* at 657.

Title III does not use the word "application," nor have the merits of DOJ's demand been litigated. *McCarthy* was thus interpreting entirely different statutory language in an entirely different context. It does not mention *Powell* precisely for that reason. *Id.* at 656 ("Congress's explicit decision to use one word over another in drafting a statute is material."). And, notably, *McCarthy* affirmed that careful judicial scrutiny of agency demands is required even in so-called "summary proceedings." *See id.* at 659 ("The denial of this opportunity renders a court's ensuing judgment void." (citing *Klapprott v. United States*, 335 U.S. 601, 609 (1949))).

In short, the Federal Rules apply and this Court must determine if DOJ has "state[d] a claim for relief." Fed. R. Civ. P. 8.

---

[3] DOJ's suggestion that the Court cannot issue a holding in a footnote is incorrect. *E.g.*, *Cotham v. Shinn*, 2025 WL 1379098, at *1 (9th Cir. May 13, 2025) (relying on Supreme Court "holding" that was included "in a footnote").

4

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

**II.    Title III does not cover Washington's entire statewide voter list.**

As CP-Alliance Intervenors detailed in their motion, DOJ's complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim that DOJ is entitled to compel production of any record that "c[ame] into [the Secretary's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §§ 20701, 20703; *see* CP-Alliance MTD. 12–15. DOJ fails to rebut each of the deficiencies that require this conclusion and thus fails to offer this Court any reason to permit its suit to proceed under the sole statute invoked.

**A.    The plain text does not cover the list because the Secretary created it and the list did not "come into his possession."**

To start, DOJ's claim fails because DOJ cannot show that Washington's VRL is a "record" or "paper" within the meaning of the CRA. 52 U.S.C. § 20701. The CRA covers only static records that must be "retained," "preserved," and not "altered," and further limits "records" to those that "come into [the] possession" of election officials. *Id.* There is no way to read the text to include Washington's digital VRL, which is created by and continually updated by election officials. CP-Alliance MTD 12–13. In response, DOJ first insists that "one can both create something and therefore *be* in possession of it." Resp. 18 (emphasis added). That is true—but Title III does not cover records "*in* the election official's possession." It covers "records and papers which *come into* his possession." 52 U.S.C. § 20701 (emphasis added). This distinction from records officials *create* helps explain why Congress chose the term "*come into*" possession, rather than "in [their] possession." *Bellows*, 2026 WL 1430481, at *6; *accord Wis. Elections Comm'n*, 2026 WL 1430354, at *3–4; *Fontes*, 2026 WL 1177244, at *3; *Benson*, 819 F. Supp. 3d at 768; *DeMarinis*, 2026 WL 1780586, at *4.

DOJ's other "textual" arguments fall flat. *See* Resp. 18–20. Rather than focus on the meaning of "come into possession" in the context of the CRA, DOJ canvasses several other

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

purported uses of the phrase in different contexts. Resp. 18–19. But each of DOJ's examples undermine its position. In *Bifferato v. States Marine Corp. of Del.*, a district court in New York construed Federal Rule of Civil Procedure 34, which requires production of documents "in the responding party's possession, custody, or control." 11 F.R.D. 44, 46 (S.D.N.Y. 1951) (quoting Fed. R. Civ. P. 34). That court uncontroversially held that this language includes witness statements collected by the party's attorney. *Id.* The case says nothing about the phrase "come into possession" at all, *contra* Resp. 18, and if anything illustrates the distinction between that phrase and the term "in possession."

DOJ's remaining examples likewise fail. An individual who "opens" a bank account "comes into [its] possession" because the bank created it and then provided it to the individual. Resp. 18 (citing *Smith v. Cahill*, 182 So. 3d 557, 559 (Ala. Civ. App. 2014)). Similarly, the IRS might "create" tax forms, Resp. 19, but an individual's "certified copies" of such "materials" are necessarily provided to the agency, *see United States v. Ajudua*, 2013 WL 2284960, at *8 (D.N.M. May 22, 2013). DOJ's comparison to *DOJ v. Tax Analysts*, 492 U.S. 136 (1989), further proves the point. There, the Supreme Court observed that a record could be subject to disclosure under the Freedom of Information Act ("FOIA") if it is "create[d] or obtain[ed]" by an agency. 492 U.S. at 144 (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)). Under that directive, the Court refused to limit FOIA to documents created by the agency because the statute covers material generated internally *or* obtained. *See id.*[4] The CRA contains no such inclusive language. 52 U.S.C. § 20701.

---

[4] *Tax Analysts* used the phrase to make a point not at issue here: "[b]y control, [the Court] mean[t] that the materials have come into the agency's possession in the legitimate conduct of its official duties." 492 U.S. at 145. In other words, the Court used the phrase "come into the agency's possession," to distinguish *how*—"in the legitimate conduct of its official duties"—an agency must acquire the records for the records to be within the agency's "control" for the purposes of FOIA. *Id.* Thus, "the term 'agency records' is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency." *Id.* The location of the relevant records here is not disputed or relevant.

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Finally, DOJ again clings to *Lynd*, which DOJ claims endorsed its interpretation of "come into possession," Resp. 23 (citing 306 F.2d at 229), but DOJ is wrong again. *Lynd* offered no holding on this issue because no party contested the meaning of that phrase, as the parties do here. *See* 306 F.2d at 228–30. DOJ argues that *Lynd's* use of the phrase "prepared or compiled" is synonymous with "created by election officials" but offers no support for this assumption. *See id.* (citing Second Neff Decl. Ex. 13). Instead, DOJ grafts a subject onto these verbs that is not there: The relevant voter-registration application records in *Lynd* were likely "prepared" by voters, not local officials, as DOJ suggests, and "compile" when read in context does not mean the records at issue were created by an election official, either. *See Compile*, Webster's New World Dictionary (1st ed. 1960) ("to gather and put together").[5] DOJ has no reply to the natural and ordinary meaning of the phrase, *see* CP-Alliance MTD 15, and in fact DOJ's own Office of Legal Counsel agrees that "comes into possession" is equivalent to "receives." *See* Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. __ (May 12, 2026) at 9. DOJ cannot rewrite the words of the statute for its own ends.

## B. The legislative history confirms that Congress intended Title III to cover records created by voters, not the state.

DOJ also baselessly suggests that, unless Title III is read to cover VRLs, DOJ could not have investigated the denial of voting rights to Black citizens in the 1960s. Resp. 24. That unsupported claim is belied by the actual evidentiary problem Congress sought to address by enacting Title III.

At the time, there was rarely (if ever) any dispute about *whether* Black citizens had their voter registrations denied or accepted. That is because they were conspicuously absent from southern voter rolls. For example, DOJ cites a 1959 report from the Civil Rights Commission

---

[5] In fact, read in context, *Lynd* makes clear that "compiled" concerned whether an incumbent registrar had compiled the targeted records, as compared to inheriting them from a predecessor in office. *See id.* at 230 ("The District Court was likewise in error in refusing to require the Registrars to produce those records prepared or compiled prior to the incumbency of the present Registrar.").

7

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

(prior to Title III) that found an "official voting list" showed "only five registered Negroes in the county." *Report of the United States Commission on Civil Rights* 89 (1959); *see also* Resp. 22. And, even before DOJ was granted the records it sought under Title III in *Lynd*, it was able to establish that, although no white voter had been rejected, forty Black voters had applied with none having "been registered." *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962). Despite DOJ's suggestion to the contrary, the federal government could and did obtain voter lists without relying on Title III. *See* CP-Alliance MTD 14–18.

The issue brought before Congress was *why* Black voters' applications were denied, not *whether* their names appeared on rolls. *See id.* at 19 (citing H.R. Rep. No. 86-956, at 7). Southern states could—and did—shamelessly refuse, impound, and efface such applications to frustrate federal investigations. *See, e.g.*, *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 n.4 (M.D. Ala. 1960); *In re Wallace*, 170 F. Supp. 63, 65–66 (M.D. Ala. 1959); *see also* D. Eisenhower, *Pub. Papers of the Presidents* 166 ("Access to registration records is essential . . . [But] [s]tate or local authorities, in some instances, have refused to permit the inspection."); Amici Curiae Brief of Historians, *Weber*, No. 26-1232 (9th Cir. April 24, 2026), Dkt. 79 at 20–24 (explaining "federal officials needed to be able to compare documents that Black and white applicants for registration had filled out and provided to local registrars"). That is why Congress was focused on materials "requisite to voting," namely, those that "come into [an election official's] possession." 52 U.S.C. § 20701; *see* CP-Alliance MTD 13. Thus, contrary to DOJ's submissions, the CRA's history *confirms* that Congress *did* distinguish the types of records covered by Title III: those records "requisite to voting" that "come into possession" of the Secretary.

DOJ's argument also makes little sense in the present context because Washington—like nearly every other State—offered DOJ its publicly accessible VRL, which readily indicates *whether* a person is registered to vote. *See* Compl., Ex. 2 at 4, Dkt. No. 1-5 (providing instructions

8

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

to access VRL). The issue in this case is whether DOJ can compel production of a *completely unredacted* version of the VRL—*not* whether it can obtain sufficient information to determine who is registered. DOJ still cannot cite a single decision holding that the CRA reaches state VRLs.[6]

### III.   DOJ provided neither a factual basis nor a proper purpose for its demand.

This Court should also grant the motion to dismiss because DOJ did not comply with the basic, express requirements of the CRA. DOJ can only demand information pursuant to an authorizing statute where it shows it has complied with statutory requirements. *See, e.g.*, *Crystal v. United States*, 172 F.3d 1141, 1144 (9th Cir. 1999); *CFPB v. Source for Pub. Data*, 903 F.3d 456, 460 (5th Cir. 2018); CP-Alliance MTD 21. Thus, even under its warped view of the rules governing this proceeding, DOJ accepts that the Court must determine "whether the Attorney General made a written demand for federal election records stating the basis and purpose." Resp. 1, 10. But, as CP-Alliance Intervenors have already explained, DOJ did not provide *any* basis, and its stated purpose is facially improper under Title III. CP-Alliance MTD 16–21. Both failures are independently sufficient to warrant dismissal.

DOJ previously asserted that "the basis for the demand was Title III of the CRA," DOJ Mot. Compel 12, Dkt. No. 29, and now seeks to add "the NVRA and HAVA" to its list, Resp. 10. This invocation of statutes cannot be the "basis" for DOJ's demand. For one, to give meaning to each independent provision of Title III, the "basis" must be "a statement of the *factual* basis giving rise to the demand for records." *Galvin*, 2026 WL 972129, at *5 (emphasis added); *see also Weber*, 816 F. Supp. 3d at 1184; *Oregon*, 2026 WL 318402, at *9; *Amore*, 2026 WL 1040637, at *5; CP-Alliance MTD at 17–18. DOJ concedes it had no factual basis for its demand, so its response is that "*Amore* and *Galvin*," as well as *Weber* and *Oregon*, "are incorrect." Resp. 11. And its sole basis for that argument is that the opinions are inconsistent with *Lynd*, which DOJ claims required

---

[6] Indeed, it is implausible that Congress contemplated statewide VRLs at the time it enacted the CRA because few states, if any, had them at the time. CP-Alliance MTD 15. Alabama, for example, did not create a statewide list until 1989, *see* Ala. Acts 1989, No. 89-649, p. 1279, §1, and did not make it the "single, uniform, official" list until 2003 when HAVA compelled the creation of such a VRL, *see* Ala. Act 2003-313, p. 733, § 2; § 17-4-210.

9

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

no factual basis at all. Resp. 11 (citing 306 F.2d at 229 n.6). That is wrong: Far from rejecting the notion that DOJ needed a factual basis, *Lynd* proceeded on the assumption that DOJ had such a basis. 306 F.2d at 226, 229; *see also Amore*, 2026 WL 1040637, at \*5 ("*Lynd* thus seems to contemplate a factual basis and a legal purpose under Title III.").

DOJ is also wrong that the demand at issue in *Benson* is "similar" to the one at issue in *Galvin* or here. Resp. 11. As the Court in *Galvin* observed, DOJ's demands "directed at some other jurisdictions" point to "anomalies" in state registration data, yet the demand here contains nothing of the sort. 2026 WL 972129, at \*4 (quoting *Benson*, 819 F. Supp. 3d at 766). DOJ's single letter to the Secretary made no mention of alleged defects with Washington's list maintenance practices, nor does it contain the word "basis." *See* Riordan Decl., Ex. 1 at 1–3, Dkt. No. 1–5. This letter stands in sharp contrast with the clear, albeit short, statement provided in DOJ's principal authority, *Lynd*, 306 F.2d at 229 n.6 ("This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction."). And DOJ altogether fails to address other authority, including those showing that the contemporaneous construction of the statute around the time of enactment rejects DOJ's preferred interpretation. *Compare* CP-Alliance MTD 16–17, *with* Resp. 10–12. DOJ thus offers no reason to depart from the sensible consensus that the "basis" requirement in Title III requires a factual foundation. And given that DOJ undisputedly has none, dismissal is warranted.

As for the second statutory condition, DOJ asserts that the "purpose" of its Title III demand is to "assess Washington's compliance" with the NVRA. Resp. 12. But it still has not explained why it is attempting to use the CRA to enforce totally separate statutes. *See* CP-Alliance MTD 13–15. Its claimed purpose—NVRA and HAVA "oversight," Resp. at 10—may be accomplished under the NVRA and HAVA, *not* the CRA, and without creating the statutory discord that DOJ's reading would impose. CP-Alliance MTD 14. DOJ hardly attempts to argue otherwise, likely

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

because the Ninth Circuit recently explained that oversight duties simply do not require production of the entire VRL. CP-Alliance MTD 13 (citing *Nago*, 174 F.4th at 683); *see also infra* Argument § IV. Indeed, DOJ makes no mention of *Nago* despite the obvious relevance to its demand for Washington's complete and unredacted VRL. *See generally* Resp.

Further still, as other courts have recently explained, those statutes create a "comprehensive scheme for the creation and upkeep of states' computerized" VRLs, and nothing in them (or any other federal law) authorizes DOJ to do what it has made clear it seeks to do with its current effort—i.e., conduct a "line-by-line audit of each state's computerized" VRL. *Bellows*, 2026 WL 1430481, at *8. "If [DOJ] wants to enforce HAVA and the NVRA, it must use the pre-suit investigation and enforcement mechanisms that Congress provided in those statutes." *Id.* (citing *RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).[7] Yet neither "contemplate[s] production of the unredacted computerized list to [DOJ] so that [it] might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list." *Bellows*, 2026 WL 1430481, at *8. Like its failure to supply a basis, DOJ's improper purpose here is sufficient grounds for dismissal.[8]

## IV.    DOJ fails to show that Title III preempts Washington's privacy law.

DOJ's complaint should also be dismissed because DOJ cannot show that Title III preempts Washington's privacy laws that prohibit disclosure of sensitive VRL information DOJ demands. CP-Alliance MTD 22–24. Because Title III does not expressly preempt any such law, DOJ concedes it must show it "conflict[s]" with the state-law protections. Resp. 32. This theory of

---

[7] DOJ's reference to its own self-serving memorandum is unavailing here as to HAVA and NVRA enforcement. *See* Resp. 16. The fact that Congress may have intended Title III to be used to enforce future voting statutes is irrelevant when Congress later "has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *RadLAX*, 566 U.S. at 645. DOJ thus has available to it the later tools provided in HAVA and the NVRA to enforce those same statutes.

[8] DOJ also fails to offer any meaningful response to CP-Alliance's showing that its demand is mere pretext, CP-Alliance MTD 21–22, forfeiting any response, *see, e.g.*, *Vicars v. Cal. Dep't Corrs.*, 2019 WL 2433453, at *23 (E.D. Cal. June 11, 2019) (noting it is "beyond dispute" in this Circuit that a party's failure to respond to an argument in briefing waives the issue (citing *Jones v. Wood*, 207 F.3d 557, 562 n.2 (9th Cir. 2000))).

11

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

preemption requires showing that "compliance with both state and federal law is impossible," or that "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the federal law. *Knox v. Brnovich*, 907 F.3d 1167, 1175 (9th Cir. 2018); *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (explaining that "state law is preempted to the extent that it actually conflicts with federal law").

In DOJ's telling, allowing Washington to redact sensitive information in response to DOJ's Title III demand would "subordinate" its ability to conduct "oversight" related to NVRA and HAVA by depriving DOJ of information "necessary to verify compliance with the[se] laws." Resp. 33, 35. Even setting aside that the NVRA and HAVA did not exist when Congress enacted Title III, and also setting aside that the purpose of the CRA had nothing to do with "oversight" of "list maintenance" obligations, CP-Alliance MTD 23, DOJ remarkably fails to even acknowledge *Nago*, which held that NVRA "oversight does *not* require disclosure of every registrant's personal information." 174 F.4th at 683 (emphasis added). That decision, which is binding on this Court, reasoned that the NVRA carefully delineates the role of state officials, the public, and DOJ, and then concluded that "oversight" requires only "transparency about *how* list-maintenance programs are implemented," and not sensitive underlying data used in state systems. *Id.* As CP-Alliance Intervenors have explained, the same logic applies to so-called "oversight" of state HAVA obligations. CP-Alliance MTD 22–23. DOJ's failure to address *Nago* amounts to a concession that this binding precedent "shuts the door" on its preemption theory. *Id.* at 23; *see supra* n.8.

Further confirmation that Title III does not preempt Washington's privacy protections is found in the broader consensus that the NVRA's disclosure provision does not preempt state laws protecting the same highly sensitive categories of information DOJ seeks. *See, e.g.*, *PILF v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *PILF v. N.C. State Bd. of Elections*, 996 F.3d 257, 265 (4th Cir. 2021); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025). Given that Title III and the NVRA employ similar language to require disclosure of certain

12

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

records relating to voter registration, *compare* 52 U.S.C. § 20703, *with id.* § 20507(i)(1), it makes no sense to suggest that Congress intended Title III to preempt state privacy laws protecting highly sensitive voter data so that the federal government can assess compliance with voter list maintenance under the NVRA—especially when the NVRA reflects Congress's judgment *not* to preempt state privacy laws. *See Nago*, 174 F.4th at 683.

DOJ also briefly argues that Congress intended to fashion Title III as a broad "investigative tool" that gives DOJ discretion to displace state laws that protect voters as needed, so long as it is fulfilling its "investigative" role. Resp. 34–35. But that is simply not how Congress legislates, nor how Courts interpret statutes. As the Ninth Circuit has explained repeatedly, when Congress grants a broad "preemptive" power to a federal enforcement authority, it does so clearly and explicitly. *See, e.g.*, *ACA Connects v. Bonta*, 24 F.4th 1233, 1241-45 (9th Cir. 2022); *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 226 (9th Cir. 1994). It did not do so here.

**V.    DOJ's demand is incompatible with federal privacy law.**

Finally, DOJ fails to state a claim because the federal Privacy Act facially bars the relief it seeks. DOJ does not attempt to address most of the reasons its demand contravenes the Act. *See* CP-Alliance MTD 24–33. DOJ instead repeats a broad, atextual assertion that the Act limits only disclosure (not collection) of data by agencies, and suggests (without support) that it has power to collect sensitive information for "law enforcement activity" without regard for the Act. Resp. 27–30. DOJ's assertions might be consistent with the November 2025 guidance of the Acting Chief of the Voting Section, who advised (incorrectly) that "[n]o judge will have authority to limit us beyond a promise of Federal law compliance,"[9] but they are "flatly inconsistent" with the text of federal law, *League of Women Voters v. DHS*, 2026 WL 1784297, at *27 (D.D.C. June 22, 2026) (quoting *LULAC v. EOP*, 818 F. Supp. 3d 34, 110–17 (D.D.C. 2026)).

---

[9] CP-Alliance MTD 6 n.11 (quoting Notice of Suppl. Authority, *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Apr. 30, 2026), Dkt. No. 78-2).

13

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

### A.    DOJ's demand violates the Privacy Act.

CP-Alliance Intervenors detailed in their opening motion several violations of the Act embedded within DOJ's demand: DOJ cannot collect new categories of records before complying with prerequisites, DOJ cannot collect such records without satisfying data-privacy and security mandates, and DOJ's admitted uses for the records violate prohibitions on data-sharing and matching among federal agencies. CP-Alliance MTD 24–33. DOJ's efforts to immunize itself from these mandates runs headlong into the text of the Act and binding precedent construing it.

First, DOJ is wrong that the Act only "requires information to be securely stored and not be subject to unauthorized dissemination or use." Resp. 27; *Weber*, 816 F. Supp. 3d at 1192-93 (rejecting this argument). It states expressly that agencies, including DOJ, "shall" "maintain in [their] records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished," and defines "maintain" to include "collect, use, or disseminate." 5 U.S.C. § 552a(a)(3), (e)(1). It then sets forth other specific requirements that must be satisfied *before* the agency may collect data, and other restrictions on maintenance of data. *Id.* § 552a(e)(4), (6), (7); *see Weber*, 816 F. Supp. 3d at 1193; *see also League of Women Voters v. DHS*, 2026 WL 1784297, at *27. DOJ's brief fails to address any of these provisions. *See* Resp. 26–31.

DOJ's other argument—that it has authority to conduct law-enforcement activity that sweeps up  personal information—fails to explain how collecting Washington's unredacted VRL falls within the scope of such an activity (it does not), and ignores that such a finding would not relieve DOJ of complying with most of the Act's relevant mandatory prerequisites in any event. Resp. 27–30; *see* 5 U.S.C. § 552a(j). Congress gave careful attention to law-enforcement activity in provisions DOJ ignores: The Act prescribes circumstances in which agencies are permitted to promulgate regulations exempting a narrow class of law-enforcement records from some of the Act's restrictions. More specifically, records in systems "maintained by an agency or component

14

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" may be exempted, but only if they fit into one of three categories, all of which pertain to "individual" criminal charges. 5 U.S.C. § 552a(j)(2)(A)-(C); *see also MacPherson v. IRS,* 803 F.2d 479, 482 (9th Cir. 1986) (holding "law enforcement activities" requires a narrow reading). Given that narrow focus, DOJ's demand for Washington's unredacted VRL to assess "list maintenance," Resp. 26–27, does not qualify, *see Weber*, 816 F. Supp. 3d at 1192.

But even if DOJ could classify its demand as exemptible law-enforcement activity, the relief it requests would still be foreclosed: The Act's prohibition of maintaining records without compliance with procedural safeguards applies to law-enforcement activity. *See* 5 U.S.C. § 552a(j) (not allowing exemptions from procedural prerequisites in § 552a(e) or disclosure restrictions in § 552a(b)). And, as already detailed, DOJ's pro forma invocation of generalized notices regarding collections and uses of information regarding "subjects [of] investigations" and "victims" does "nothing" to satisfy these prerequisites. *Weber*, 816 F. Supp. 3d at 1194 (alternatively dismissing on this basis); CP-Alliance MTD 26–27.

Finally, DOJ resorts to policy arguments, suggesting Congress did not intend the Act to serve as an obstacle to DOJ's attempted mass collection of voter information. That argument is again belied by the text, which repeatedly uses mandatory language, and states specifically that an "investigative act or demand may not be issued, made, or enforced except as authorized by law." 5 U.S.C. § 555(c). DOJ's argument also ignores the stated purpose of the Act, which was to prevent precisely the kind of "stockpiling" of personal information and "data banks" DOJ is working to amass at the President's behest. CP-Alliance MTD 24–25 & n.17 (citing authority).

**B.      DOJ's failure to comply with the Privacy Act is grounds for dismissal.**

DOJ's separate argument that "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" likewise comes up short. Resp. 27 (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). DOJ does not attempt to address

15

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

opinions of the Supreme Court, the Ninth Circuit, and district courts in Washington and elsewhere that held in similar circumstances that resolution of defenses at the dismissal was proper. CP-Alliance MTD 24 (citing *Gelbard v. United States*, 408 U.S. 41, 52 & 60-61 (1972); *Rivera v. Peri & Sons Farms*, 735 F.3d 892, 902 (9th Cir. 2013); *Allstate v. Samsung*, 2023 WL 8433118, at *2 (W.D. Wash. Dec. 5, 2023); and *Weber*, 816 F. Supp. 3d at 1193).

Nor does the out-of-circuit precedent DOJ cites stand for such a proposition; in the same paragraph quoted by DOJ, the Seventh Circuit held expressly that while "defenses *typically* turn on facts not before the court at [the dismissal] stage," "when all relevant facts are presented, the court may properly dismiss a case before discovery." *Brownmark Films*, 682 F.3d at 690-91 (emphasis added). That Court then held that courts may consider documents incorporated into the complaint, and affirmed the dismissal at issue. *Id.*

Finally, DOJ's suggestion that defenses are not available now contradicts its own theory of the case. DOJ seeks final relief *immediately*, resting on the contention that "[t]he Complaint, incorporating the demand, is in full compliance." Resp. 31, 35. Nowhere does DOJ argue further development might reveal that the relief it seeks would, in fact, comply. *See generally id.* In other words, "all relevant facts are presented" for this defense. *Brownmark Films*, 682 F.3d at 690.

## CONCLUSION

CP-Alliance Intervenors respectfully request that this Court grant their motion to dismiss and deny DOJ's motion to compel.

16

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Dated: June 22, 2026                    Respectfully submitted,

                                        */s/ Abha Khanna*
                                        **ABHA KHANNA**
                                        WA Bar No. 42612
                                        **TYLER L. BISHOP**
                                        WA Bar No. 63821
                                        **WALKER McKUSICK**
                                        WA Bar No. 63205
                                        ELIAS LAW GROUP LLP
                                        1700 Seventh Avenue, Suite 2100
                                        Seattle, WA 98101
                                        (206) 656-0177
                                        akhanna@elias.law
                                        tbishop@elias.law
                                        wmckusick@elias.law

                                        *Attorneys for Intervenor-Defendants*
                                        *Common Power and Washington State*
                                        *Alliance for Retired Americans*

17

REPLY IN SUPPORT OF MOTION TO DISMISS                    ELIAS LAW GROUP LLP
No. 3:25-cv-06078-KKE                                    1700 Seventh Avenue, Suite 2100
                                                         Seattle, WA 98101
                                                         (206) 656-0177

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendants Common Power and Washington State Alliance for Retired Americans certifies that this motion contains 6,000 words, which complies with the limit imposed by the Court's April 13 Order, Dkt. No. 45 at 4.

Dated: June 22, 2026

/s/ Abha Khanna
Abha Khanna

REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-06078-KKE

ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177