UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br>v.<br><br>STEVE HOBBS,<br><br>Defendant,<br>and<br><br>COMMON CAUSE, et al.,<br><br>Intervenor-Defendants. | CASE NO. C25-6078-KKE<br><br>ORDER GRANTING MOTIONS TO DISMISS |

About one year ago, the United States Department of Justice demanded that election officials in dozens of states, including Washington State, provide an unredacted statewide voter registration list ("the List"). When Washington's Secretary of State Steve Hobbs refused to do so, the Government[1] filed this lawsuit along with a motion to compel production of the List. Dkt. Nos. 1, 29.[2] Four organizations that advocate for voting rights and democracy moved to intervene, and the Court granted those motions. Dkt. Nos. 23, 28, 58. In response to the motion to compel,

[1] This order refers to Plaintiff United States of America as "the Government."

[2] This order refers to docket filings by CM/ECF page number.

Hobbs and Intervenor Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 53, 62, 63.

The Court concludes that the Government's demand for voter data violates federal law. This Court thus joins the many others that have dismissed essentially identical actions,[3] and will grant the motions to dismiss and deny the motion to compel as moot.

## I. BACKGROUND[4]

The United States Election Assistance Commission conducts a biennial Election Administration and Voting Survey. Dkt. No. 1 ¶ 16. After reviewing the 2024 survey report, the Attorney General sent a September 8, 2025 letter ("the Demand") requesting that Hobbs provide a current, unredacted electronic copy of the List by encrypted email or via a secure file-sharing system. *Id*. ¶¶ 19–20. The Demand, made under the Civil Rights Act of 1960 ("CRA"), states that

---

[3] At oral argument, the Government's counsel acknowledged that this case is factually indistinguishable from "all the other cases." Dkt. No. 93 at 6. These similar cases include: *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026) ("*Benson I*"), *aff'd,* 179 F.4th 470 (6th Cir. 2026) ("*Benson II*"); *United States v. Wis. Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wis. 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Hanzas*, No. 2:25-cv-00903, 2026 WL 2754349 (D. Vt. Sep. 17, 2026); *United States v. Simon*, No. 25-cv-3761 (KMM/EMB), 2026 WL 2389778 (D. Minn. Aug. 17, 2026); *United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB, 2026 WL 2364502 (D. Nev. Aug. 14, 2026); *United States v. Evans*, Civil No. 25-4403 (RDM), 2026 WL 2267774 (D.D.C. Aug. 6, 2026); *United States v. Griswold*, No. 25-cv-03967-PAB-TPO, 2026 WL 2235374 (D. Colo. Aug. 3, 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026); *United States v. Caldwell*, No. 26-2025 (ZNQ) (JTQ), 2026 WL 2186515 (D.N.J. July 29, 2026); *United States v. Adams*, No. 2:26-cv-00019-CHB-EBA, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 3:26-cv-21 (KAD), 2026 WL 2070437 (D. Conn. July 17, 2026); *United States v. Oliver*, No. 1:25-cv-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026); *United States v. Koski*, No. 3:26CV42 (RCY), 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 2:25-cv-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026); *United States v. Bd. of Elections of N.Y.*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. SAG-25-2934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Bellows*, No. 1:25-cv-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, Civil No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026).

[4] Except as otherwise indicated, this section is based on facts alleged in the Government's complaint. Because motions to dismiss should generally be resolved on the pleadings, the Court does not address the extrinsic evidence referenced by the Intervenor Defendants and argument based thereon in resolving the motions. *See, e.g.*, Dkt. No. 62 at 26–29, Dkt. No. 63 at 14–15.

the purpose of the request is to investigate Washington's compliance with federal election law, specifically the Help America Vote Act ("HAVA") and the National Voter Registration Act ("NVRA"). Dkt. No. 1 ¶ 22.

HAVA requires all states to maintain and administer "a single, uniform, official, centralized, interactive computerized statewide voter registration list" that "contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State[.]" 52 U.S.C. § 21083(a)(1)(A). HAVA further establishes a "[m]inimum standard for accuracy of State voter registration records" (*id.* § 21083(a)(4)) and prohibits States from processing voter-registration applications without obtaining and verifying certain identification information from the applicants (*id.* § 21083(a)(5)(A)).

The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death or change in address of the registrant. 52 U.S.C. § 20507(a)(4). The NVRA also requires states to maintain (with exceptions not relevant here) "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" *Id.* § 20507(i)(1). The NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA (*id.* § 20509), and Hobbs is that state officer for Washington (Dkt. No. 1 ¶ 11).

On September 23, 2025, Hobbs responded to the Demand with a letter refusing to provide the List, stating that disclosure of the List is prohibited by Washington law because it contains private information, including voters' birthdates, driver's license numbers, and the last four digits of Social Security numbers. Dkt. No. 1 ¶ 21; Dkt. No. 30-2. Hobbs offered to provide a redacted

version of the List that excluded voters' confidential information, noting that Washington law authorized the disclosure of only certain data fields of the List. Dkt. No. 30-2. Hobbs also asked for more information about the Government's authority to demand an unredacted List. *Id.* The Government did not respond but filed this action, asserting one claim for violation of the CRA, 52 U.S.C. § 20703. Dkt. No. 1 ¶¶ 26–28. The Government requests that the Court:

> (A) Declare that Defendants' refusal to provide the election records upon a demand by the Attorney General violates Title III of the [CRA] as required by 52 U.S.C. § 20703; [and]
>
> (B) Order Defendants to provide to the United States the current electronic copy of Washington's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number as required by 52 U.S.C. § 21083[.]

*Id.* at 8. The Government thereafter moved for an order compelling production of the List within five days. Dkt. No. 29 at 3.

Hobbs and the Intervenor Defendants filed motions to dismiss/oppositions to the Government's motion to compel. Dkt. Nos. 52, 62, 63. The motions argue that the Government's complaint fails to state a valid claim for violation of the CRA and, in the alternative, that requiring compliance with the Demand would violate state and federal law. *Id.* Several organizations or states also filed amicus briefs. Dkt. No. 70 (Democratic National Committee), 78 (State of Maryland and 19 other states), 79 (Former Employees of the U.S. Department of Justice). The Court heard oral argument on the motions to dismiss and the motion to compel on August 4, 2026. Dkt. No. 89.

For the reasons below, the Court agrees with Hobbs and the Intervenor Defendants[5] on a threshold argument—that the List is not subject to disclosure under Title III—and therefore need not address any alternative arguments to grant their motions to dismiss in full.

## II. ANALYSIS

### A. Legal Standards on a Motion to Dismiss

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[6] a court examines the complaint to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (*id.*), nor do "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

---

[5] The Court refers to Hobbs and the Intervenor Defendants collectively as "the Defendants" in this order, except where distinguished.

[6] The Government contends that the Federal Rules of Civil Procedure do not apply to this action because a demand under the CRA functions like administrative subpoena rather than standard civil proceedings. Dkt. No. 29 at 7–12. This argument is inconsistent with the text of Title III of the CRA, which states that the district court "shall have jurisdiction by appropriate process to compel … production" of records demanded. 26 U.S.C. § 7604(a). The Supreme Court has interpreted a similar statute's reference to an unspecified "appropriate process" to mean that the Federal Rules of Civil Procedure apply and that the court may "inquire into the underlying reasons for the examination [of records]." *United States v. Powell*, 379 U.S. 48, 58 & n.18 (1964). Because the Government has provided no persuasive reason why the Federal Rules of Civil Procedure do not afford appropriate process here, and because the Government here filed a standard civil complaint and a motion to compel (as opposed to an administrative subpoena), the Court, like other district courts who have considered this question, applies the Federal Rules here. *See, e.g.*, *Oregon*, 828 F. Supp. 3d at 1102–03; *Benson I*, 819 F. Supp. 3d at 765–66; *Weber*, 816 F. Supp. 3d at 1183 ("The Supreme Court has also affirmed that the federal government's demands for documents are governed by the Federal Rules of Civil Procedure[.]").

Other courts have also noted that even if the Federal Rules did not apply, the outcome would not change because the question for the Court is whether the List is subject to Title III, whatever the procedure. *See Adams*, 2026 WL 2123871, at *4 (collecting cases). In response to questioning on this issue at oral argument, the Government's counsel agreed with this proposition. Dkt. No. 93 at 23.

**B. The Government's Complaint Fails to State a Valid Title III Claim Because the List Is Not Subject to Demand Under Title III.**

Defendants argue that the Government has failed to state a valid Title III claim and therefore its complaint should be dismissed and its motion to compel denied.

Under Title III of the CRA, the Government may demand that a state produce a "record or paper required by [52 U.S.C. §] 20701 … to be retained and preserved." 52 U.S.C. § 20703. By its terms, Section 20701 applies to "records and papers which come into [the election officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" *Id.* § 20701. States must retain these documents for "a period of twenty-two months" after any federal "general, special, or primary election[.]" *Id.*

In this case, the Government demands "the current electronic copy of Washington's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number[.]" Dkt. No. 1 ¶ 28(B). The Government's complaint alleges that its need for the List "arises from the Attorney General's investigation into Washington's compliance with federal election law, particularly the NVRA and HAVA." *Id.* ¶ 9.

Defendants argue that the Demand exceeds the Government's authority under Title III for multiple reasons.[7] First, Defendants emphasize that Title III applies only to "records or papers that *come into* [the election officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). Defendants argue that the List is not subject to a Title III demand because it is a document that Hobbs and local election officials continuously compile, update, and maintain, and therefore it

[7] Because the Court finds that the List is not subject to a Title III demand for at least one reason, the Court need not address the rest of Defendants' arguments in favor of dismissal to find the Government's Demand unlawful.

does not passively "come into" Hobbs' possession, nor could it be "preserved" in a static state, as required by Title III. Because Congress did not afford the Government "expansive authority to reach *all* records possessed," but only certain records as defined in Title III, Defendants argue that the List is not subject to the Government's Demand. Dkt. No. 53 at 20–23.

In opposition, the Government contends that even if state election officials did create the List, it nonetheless "came into" Hobbs's possession when state election officials created it, which means that the List is subject to a Title III demand. Dkt. No. 76 at 21. To bolster this reading, the Government cites examples from disparate contexts where it claims that a court has described a document as "coming into" its creator's possession. *Id.* at 21–23. The Government's briefing does not respond to the argument that the List is not subject to Title III because it is a continuously updated document, rather than one that must be retained for 22 months after an election.

The Government's interpretation does not comport with a natural reading of the plain statutory text. If Congress intended that Title III would cover all documents in a state's possession, as the Government would have it, Congress would have said so. By limiting Title III's application to documents that "come into" an election officer's possession, Congress crafted 52 U.S.C. § 20701 to apply to a subset of documents acquired by the State, rather than all documents in the State's possession. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) (noting that "obtain" is defined "to mean, among other things, '[t]o come into the possession or enjoyment of (something) by one's own effort or by request'" (quoting 10 OXFORD ENGLISH DICTIONARY 669 (2d ed. 1989)); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed. 1966))). The Government's strained interpretation fails to ascribe meaning to all the words used in 52 U.S.C. § 20701, which is inconsistent with the rule against surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)

(explaining that statutes should be construed such that "no clause, sentence, or word shall be superfluous, void, or insignificant" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). Along with many other courts that have considered this question, the Court is not persuaded that the List could be subject to a Title III demand because it did not "come into" an election official's possession but was instead created by election officials. *See, e.g.*, *Wisc. Elections Comm.*, 833 F. Supp. 3d at 954; *Caldwell*, 2026 WL 2186515, at *7–8.

Moreover, the List is "constantly evolving" as information is updated, and the Government does not explain how the retention and preservation requirements of 52 U.S.C. § 20703 could apply to a document like the List. The Government's briefing argues that Washington could update the List without facing criminal penalties for altering a document subject to 52 U.S.C. § 20703 (Dkt. No. 76 at 28–29), but ignores Defendants' broader argument that a state's Title III retention and preservation obligations conflict with the reality of mandated List maintenance on an ongoing basis.[8] In the Court's view, this mismatch bolsters Defendants' interpretation of Title III and undercuts the Government's reading, and the Government has not attempted to persuade the Court otherwise. *See Benson II*, 179 F.4th at 480 ("Title III tells election officials to retain and preserve certain records and papers that come into their possession, and the NVRA and HAVA tell election officials to remove ineligible voters from statewide voter registration lists. We should not adopt a reading that would place election officials in violation of one federal law for trying to comply with others.").

[8] At oral argument, the Court asked the Government's counsel to address the application of the 22-month retention obligation to the List demanded by the Government here, which "is a living document, a computerized list, that would far exceed the temporal requirements for retaining those materials." Dkt. No. 93 at 19. Counsel responded that "Title III is a continuing obligation. So they are already required to retain it on a continual basis." *Id*. Neither this answer nor anything that followed satisfactorily explains how a 22-month retention obligation could apply to a List containing "confidential information for *all* of Washington's over five million registered voters, including voters who registered many years and even decades ago," which Washington is "required by law to constantly update[.]" Dkt. No. 81 at 10.

When the Court moves from an analysis of the plain meaning of the statutory language to consider whether the Government's statutory interpretation reflects the purpose of the CRA, the Government's position becomes only less persuasive. The CRA was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race[.]" *Allen v. Milligan*, 599 U.S. 1, 47 (2023) (Thomas, J., dissenting). "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filing out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). For example, election officials rejected "applicants for failing 'to calculate [their] age to the day, misspelling 'Louisiana,'" and "underlining 'Mr.' when it should have been circled[.]" *Id.* (quoting Report of U.S. Comm'n on Civil Rights 1961, at 137). Because "[v]oter registration … was the principal means to suppress Black voter participation[,]" Congress enacted the CRA to address these concerns, "requiring states to retain and preserve all records pertaining to voter registration, voting applications, and payments of poll taxes." *Id.* (first); *Weber*, 816 F. Supp. 3d at 1175 (second).

The Government acknowledges why the CRA was enacted, but nonetheless contends—without citation to authority, historical or otherwise—that it created a "general inspection regime" that permits the Government to demand documents relevant to an investigation for a violation "of any federal law." Dkt. No. 93 at 25. The Government has cited no authority for the proposition that the CRA has been or should be interpreted as "an unlimited tool to consolidate voter data and to expand its own power over elections, rather than to protect the right to vote." Dkt. No. 62 at 11. Nor has the Government attempted to connect its Demand with the purpose of the CRA,

namely, to prevent unlawful disenfranchisement.[9]

For these reasons, because the Government's reading of 52 U.S.C. § 20701 is not persuasive as a matter of statutory interpretation, nor is it consistent with the purpose of the CRA, the Court joins a growing, unanimous consensus of courts to find that the List is not subject to a Title III demand. *See Benson I*, 819 F. Supp. 3d 753, *aff'd, Benson II*, 179 F.4th 470; *Wis. Elections Comm'n*, 833 F. Supp. 3d 949; *Hanzas*, 2026 WL 2754349; *Simon*, 2026 WL 2389778; *Aguilar*, 2026 WL 2364502; *Evans*, 2026 WL 2267774; *Griswold*, 2026 WL 2235374; *Matthews*, 2026 WL 2212877; *Caldwell*, 2026 WL 2186515; *Adams*, 2026 WL 2123871; *Thomas*, 2026 WL 2070437; *Koski*, 2026 WL 2032532; *Bd. of Elections of N.Y.*, 2026 WL 1999921; *Scanlan*, 2026 WL 1864054; *Schmidt*, 2026 WL 1850016; *DeMarinis*, 2026 WL 1780586; *Bellows*, 2026 WL 1430481; *Fontes*, 2026 WL 1177244.

Accordingly, the Government's complaint fails to state a valid claim and must be dismissed. The Government has not requested leave to amend, nor is there any basis to conclude that the deficiencies in the complaint could be cured by amendment. The Court will therefore grant the motions to dismiss with prejudice and without leave to amend, and deny the motion to compel as moot.

---

[9] Indeed, as the Court of Appeals for the Sixth Circuit observed in *Benson II*:

> Congress enacted Title III of the Civil Rights Act of 1960 to help end voting discrimination. Title III of the Act gave teeth to prior civil-rights legislation by empowering the U.S. Attorney General to obtain certain state voting records so that he could investigate potential violations and enforce federal election law. Back then, the government used this power to ensure that everyone who had the right to vote could freely exercise that right. But today, the government invokes Title III for an inverse purpose—to ensure that some people have not voted.

179 F.4th at 474.

## III. CONCLUSION

For these reasons, the Court GRANTS the motions to dismiss (Dkt. Nos. 53, 62, 63) and DENIES AS MOOT the motion to compel (Dkt. No. 29).

Dated this 22nd day of September, 2026.

Kymberly K. Evanson
United States District Judge